## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE NEW YORK TIMES COMPANY<br><br>Plaintiffs,<br><br>v.<br><br>MICROSOFT CORPORATION, OPENAI, INC., OPENAI LP, OPENAI GP, LLC, OPENAI, LLC, OPENAI OPCO LLC, OPENAI GLOBAL LLC, OAI CORPORATION, LLC, and OPENAI HOLDINGS, LLC,<br><br>Defendants. | Case No. 1:23-cv-11195-SHS<br><br>Related Cases:<br>Case No. 1:23-cv-08292-SHS<br>Case No. 1:23-cv-10211-SHS<br>Case No. 1:24-cv-00084-SHS<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO INTERVENE AND DISMISS, STAY OR TRANSFER** |

## TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND ........................................................4

      A.      The *Tremblay* Action...................................................................................................4

      B.      The S.D.N.Y. Actions ..................................................................................................5

III.    THE COURT SHOULD PERMIT INTERVENTION ........................................................8

      A.      The Court Should Permit Intervention as a Matter of Right.....................................8

      B.      In the Alternative, Permissive Intervention is Appropriate.....................................11

IV.     THE FIRST-TO-FILE RULE WARRANTS DISMISSAL OF THE S.D.N.Y.
       ACTIONS, OR IN THE ALTERNATIVE, A STAY OR TRANSFER OF VENUE .........13

      A.      The *Tremblay* Action and the S.D.N.Y. Actions are Competing Lawsuits ............14

      B.      None of the Limited Exceptions to the First-to-File Rule Apply Here.................17

      C.      The S.D.N.Y. Actions Should be Dismissed or Stayed..........................................20

      D.      Alternatively, the S.D.N.Y. Actions Should be Transferred...................................21

V.      CONCLUSION..................................................................................................................22

i

# TABLE OF AUTHORITIES

## Cases

*1724982 Alberta ULC v. Park Ave. Wholesale, Inc.*,
No. 1:21-CV-04343-GHW, 2021 WL 3115125 (S.D.N.Y. July 20, 2021) ............................21

*800-Flowers, Inc. v. Intercontinental Florist, Inc.*,
860 F. Supp. 128 (S.D.N.Y. 1994)...............................................................................13, 19, 20

*Alter et al. v. OpenAI Inc. et al.*
305 F.R.D. 37 (E.D.N.Y. 2015) .............................................................................6, 7, 16, 20

*Am. Steamship Owners Mut. Prot. & Indem. Ass'n, Inc. v. Lafarge N. Am., Inc.*,
474 F.Supp.2d 474 (S.D.N.Y. 2007)......................................................................................14

*Authors Guild et al. v. Open AI, Inc. et al.*,
Case No. 1:23-cv-08292-SHS (S.D.N.Y.) ...................................................................... *passim*

*Basbanes et al. v. Microsoft Corp. et al.*,
No. 24-cv-00084 (S.D.N.Y. Jan. 5, 2024) ....................................................................6, 7, 16

*Brennan v. N.Y.C. Bd. of Educ.*,
260 F.3d 123 (2d Cir. 2001)....................................................................................................10

*Cascade Nat. Gas Corp. v. El Paso Nat. Gas Co.*,
386 U.S. 129 (1967).................................................................................................................9

*U.S. ex rel. Cestra v. Cephalon, Inc.*,
No. 10 Civ. 6457 SHS, 2014 WL 1087960 (S.D.N.Y. Mar. 19, 2014) ................13, 14, 15, 17

*Chabon v. OpenAI, Inc. et al.*,
Case No. 23-cv-04625-CRB (N.D. Cal. 2023) ....................................................................4, 5

*eBay Inc. v. Digital Point Sols., Inc.*,
608 F. Supp. 2d 1156 (N.D. Cal. 2009) .................................................................................19

*Emps. Ins. of Wausau v. Fox Ent. Grp., Inc.*,
522 F.3d 271 (2d Cir. 2008)...........................................................................................14, 18

*First City Nat'l Bank & Tr. Co. v. Simmons*,
878 F.2d 76 (2d Cir. 1989)......................................................................................................13

*Gyadu v. Hartford Ins. Co.*,
No. 97–7720, 1998 WL 30470 (2d Cir. Jan. 28, 1998) .........................................................14

*Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.*,
342 U.S. 180 (1952)................................................................................................................14

*Kohn Law Grp. v. Auto Parts Mfg. Miss., Inc.*,
767 F.3d 1237 (9th Cir. 2015) .........................................................................................17, 20

*Lau v. Wells Fargo & Co.*,
  No. 20-CV-03870 (AJN), 2021 WL 1198964 (S.D.N.Y. Mar. 30, 2021) ...................... *passim*

*N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*,
  599 F.3d 102 (2d Cir. 2010) .................................................................................................13

*Oleg Cassini, Inc. v. Serta, Inc.*,
  No. 11 Civ. 875 PAE, 2012 WL 844282 (S.D.N.Y. Mar. 13, 2012) ................................20, 21

*Olin Corp. v. Lanora Ins. Co.*,
  325 F.R.D. 85 (S.D.N.Y. 2018) ..............................................................................................8

*In re OpenAI ChatGPT Litigation*,
  Master File No. 3:23-cv-03223-AMO (N.D. Cal. 2023) ...................................................1, 3, 5

*Pike Co., Inc. v. Universal Concrete Procs., Inc.*,
  284 F. Supp. 3d 376 (S.D.N.Y. 2018) ...................................................................................12

*Red Rock Sourcing LLC v. JGX, LLC*,
  No. 21 Civ. 1054 (JPC), 2023 WL 1468980 (S.D.N.Y. Feb. 2, 2023) ...................................8

*Robeson v. Howard Univ.*,
  2002 WL 122913 (S.D.N.Y. Jan. 30, 2002) ...........................................................................20

*Sancton et al. v. OpenAI, Inc. et al.*,
  No. 23-cv-10211-SHS (S.D.N.Y. Nov. 21, 2023) ...................................................................6

*Sec. & Exch. Comm'n v. Berman*,
  No. 20 Civ. 10658 (LAP), 2021 WL 2895148 (S.D.N.Y. June 8, 2021)..................................8

*The N.Y. Times Co. v. Microsoft Corp. et al.*,
  Case No. 1:23-cv-11195 (S.D.N.Y. Dec. 27, 2023) ....................................................6, 10, 16

*Thomas v. Apple-Metro, Inc.*,
  No. 14-CV-4120 VEC, 2015 WL 505384 (S.D.N.Y. Feb. 5, 2015).......................................20

*Trbovich v. United Mine Workers of Am.*,
  404 U.S. 528 (1972) ...............................................................................................................10

*Tremblay et al. v. OpenAI, Inc. et al.*,
  Case No. 3:23-cv-03223-AMO (N.D. Cal. June 28, 2023) ............................................ *passim*

*Wyler–Wittenberg v. MetLife Home Loans, Inc.*,
  899 F.Supp.2d 235 (E.D.N.Y. 2012) .....................................................................................14

*Zero-Techs., LLC v. The Clorox Co.*,
  No. 22-3989, 2024 WL 434169 (E.D. Pa. Jan. 30, 2024).......................................................20

**Statutes**

17 U.S.C. § 106..............................................................................................................................4

17 U.S.C. § 501 ........................................................................................................5, 6

17 U.S.C. § 1202 (b) ..............................................................................................*passim*

28 U.S.C. § 1404(a) ...............................................................................................*passim*

Cal. Bus. & Prof. Code §§ 17200, et seq. .........................................................4, 16, 21

**Other Authorities**

Fed. R. Civ. P. 12 ..........................................................................................................5

Fed. R. Civ. P. 23 ..........................................................................................................8

Fed. R. Civ. P. 24 ........................................................................................8, 9, 10, 11

Fed. R. Civ. P. 24(b) ...................................................................................................12

Fed. R. Civ. P. 26(f) ...............................................................................................5, 11

Fed. R. Civ. P. 45(c)(1) ...............................................................................................19

## I.       INTRODUCTION[1]

Plaintiff-Intervenors Paul Tremblay, Sarah Silverman, Christopher Golden, Richard Kadrey, Michael Chabon, Ta-Nehisi Coates, Junot Díaz, Andrew Sean Greer, David Henry Hwang, Matthew Klam, Laura Lippman, Rachel Louise Snyder, Ayelet Waldman, and Jacqueline Woodson (collectively, "*Tremblay* Plaintiffs") are named Plaintiffs in the first-filed class action entitled *Tremblay et al. v. OpenAI, Inc. et al.*, Case No. 3:23-cv-03223-AMO (N.D. Cal. June 28, 2023) (the "*Tremblay* Action").[2] They are book authors and playwrights who initiated the first litigation in the United States alleging that OpenAI Inc. and its affiliate entities (collectively, "OpenAI") infringed authors' copyrights when they made unauthorized copies of Plaintiffs' copyrighted works to train artificial-intelligence products known as large language models. On June 28, 2023, after a significant and lengthy pre-filing investigation, Plaintiffs' attorneys filed the *Tremblay* Action. Lawsuits subsequently filed in the Southern District of New York, beginning three months later with *Authors Guild et al. v. Open AI, Inc. et al.*, Case No. 1:23-cv-08292-SHS (S.D.N.Y.) ("*Authors Guild* Action"), consist of substantially similar allegations and claims against OpenAI. The *Tremblay* Action was pending in the Northern District of California well-before the filing of the *Authors Guild* Action, or any of the subsequently filed S.D.N.Y. Actions.

The *Tremblay* Plaintiffs' Complaint was the first in the United States to allege that OpenAI committed direct copyright infringement when it made copies of the *Tremblay* Plaintiffs' books—without the *Tremblay* Plaintiffs' permission—in order to train OpenAI's language

---

[1] On February 12, 2024, the *Tremblay* Plaintiffs filed an analogous motion in the three actions consolidated under *Authors Guild et al. v. Open AI, Inc. et al.*, Case No. 1:23-cv-08292-SHS (S.D.N.Y.).

[2] As described below, the *Tremblay* Action and all other related actions have been consolidated under the master caption *In re OpenAI ChatGPT Litigation*, Master File No. 3:23-cv-03223-AMO (N.D. Cal. 2023).

models. Now, there are numerous copycat cases—including all of the lawsuits pending before this Court. Meanwhile, the *Tremblay* Action has substantially advanced with motion practice and discovery well underway. *See* Declaration of Christopher J. Hydal ("Hydal Decl."), ¶¶ 6-7. A case schedule has been entered in *Tremblay*, including dates through class certification and *Daubert* motions. *Tremblay* Action, ECF No. 51.

The subsequently filed S.D.N.Y. Actions are strikingly similar to the first-filed *Tremblay* Complaint. Like the *Tremblay* Action, each of the S.D.N.Y. Actions asserts copyright infringement claims arising from the impermissible copying and other use of Plaintiffs' and other authors' copyrighted works used as training for OpenAI's large language models, and the commercial products based on that technology. Those claims share common or overlapping theories of liability. Like the *Tremblay* Action, each of the S.D.N.Y. Actions asserts these claims on behalf of classes entirely identical to or subsumed by the class first defined in the *Tremblay* Action against OpenAI and its affiliates, who are also Defendants in all relevant actions. The parties in the S.D.N.Y. Actions readily admit that the *Tremblay* Action was first-filed, pending, and well underway in the Northern District of California.

On October 6, 2023, the court in the *Tremblay* Action entered a pretrial schedule. This was preceded by OpenAI making a highly unusual request: to litigate substantive issues before class certification. Specifically, OpenAI sought to schedule motions for summary judgment before motions for class certification. *See Tremblay* Action, ECF No. 50 at *12:4-5. After OpenAI requested briefing on this issue, the court rejected OpenAI's preferred approach, and instead adopted and entered the schedule proposed by Plaintiffs, which provides that motions for class certification will be heard first. The parties are proceeding according to that schedule. Hydal Decl. ¶¶ 6-7.

On November 22, 2023, OpenAI—which is represented by the same counsel in all actions—still held the view that the *Authors Guild* Complaint is substantially similar to the first-

2

filed *Tremblay* Action. It, in fact, represented to this Court it would seek dismissal of the

substantially similar *Authors Guild* Complaint under the first-to-file rule:

> Defendants anticipate filing a motion to dismiss under the first-filed rule, or, in the alternative, to stay this action pending resolution of the three substantially similar putative class actions pending in the District Court for the Northern District of California, or, in the further alternative, to transfer this matter to the Northern District of California either under the first-filed rule or 28 U.S.C. § 1404(a).

ECF No. 31, ¶ 16.[3] The *Tremblay* Plaintiffs relied on this misrepresentation.

But recently, OpenAI changed course. Apparently unsatisfied, and aiming to undercut and

undo the *Tremblay* court's scheduling order, OpenAI sought to enter a competing schedule in the

Southern District of New York. In so doing, OpenAI reversed itself, ignored its prior

representations and its stated intent to seek a stay and transfer of the S.D.N.Y. Actions. In

apparent exchange for the *Authors Guild* Plaintiffs' agreement to the schedule rejected by the

*Tremblay* court, OpenAI agreed to forego its first-to-file motion, a motion to transfer, or indeed

any challenges to the Complaint in the S.D.N.Y. Actions. ECF No. 56, ¶¶ 1–3.

By its blatant forum shopping, OpenAI is creating the likelihood—or certainty—of

inconsistent rulings in overlapping class actions and the attendant waste of judicial resources.

This is precisely the type of procedural gamesmanship the first-to-file rule was adopted to arrest.

To avoid duplicative efforts, judicial waste, and potentially disparate rulings, the Court

should apply the first-to-file rule and dismiss, or in the alternative, stay or transfer the S.D.N.Y.

Actions.[4]

---

[3] References to "ECF No." shall refer to electronic filings in the *Authors Guild* Action unless otherwise noted.

[4] In addition to this Motion, the *Tremblay* Plaintiffs have filed, in the *In re OpenAI ChatGPT Litigation*, a motion to enjoin OpenAI and its counsel from proceeding in the S.D.N.Y. Actions under the first-to-file rule. *See Tremblay* Action, ECF No. 98.

## II.      FACTUAL AND PROCEDURAL BACKGROUND

### A.      The *Tremblay* Action

On June 28, 2023, author Paul Tremblay filed *Tremblay et al. v. OpenAI, Inc. et al.*, Case

No. 3:23-cv-03223-AMO in the United States District Court for the Northern District of

California against OpenAI, Inc., OpenAI, L.P., OpenAI OpCo, L.L.C., OpenAI GP, L.L.C.,

OpenAI Startup Fund GP I, L.L.C., OpenAI Startup Fund I, L.P., and OpenAI Startup Fund

Management, L.L.C. (collectively, "Defendants"). The *Tremblay* Action asserts these claims on

behalf of all persons or entities domiciled in the United States who own a United States'

copyright in any work that was used as training data for the OpenAI Language Models during the

Class Period. *See* Hydal Decl. Ex. A (*Tremblay* Compl., ¶ 42). Specifically, *Tremblay* alleges

that OpenAI engaged in, created, maintained, and operated their large language models in

violation of the *Tremblay* Plaintiffs' rights, including claims for Direct Copyright Infringement

(17 U.S.C. § 106); Vicarious Copyright Infringement (17 U.S.C. § 106); violation of the Digital

Millennium Copyright Act (17 U.S.C. § 1202 (b)) ("the DMCA"); and California state law

claims, including Unfair Competition (Cal. Bus. & Prof. Code §§ 17200, et seq.), Negligence,

and Unjust Enrichment. This was the first case in the United States bringing such claims and

asserting these theories on behalf of copyright protected authors.

On July 7, 2023, Plaintiffs Sarah Silverman, Christopher Golden, and Richard Kadrey

filed their complaint alleging similar claims on behalf of an identical proposed class of plaintiffs.

*See* Hydal Decl. Ex. B (*Silverman* Compl.)

On September 8, 2023, Plaintiffs Michael Chabon, David Henry Hwang, Matthew Klam,

Rachel Louise Snyder, and Ayelet Waldman filed their complaint captioned *Chabon v. OpenAI,*

*Inc. et al.*, Case No. 23-cv-04625-CRB (N.D. Cal. 2023) on behalf of an identical proposed class

of plaintiffs. *See* Hydal Decl. Ex. C (*Chabon* Compl.). On October 5, 2023, the *Chabon*

complaint was amended to add Plaintiffs Laura Lippman, Jacqueline Woodson, Andrew Sean

Greer, Ta-Nehisi Coates, and Junot Díaz as additional Plaintiffs. *See* Hydal Decl. Ex. D (*Chabon* Am. Compl.).

As noted above, the actions pending in the Northern District of California—the original *Tremblay* complaint, the *Silverman* complaint, and the amended *Chabon* complaint—have now been related and consolidated under the master caption *In re OpenAI ChatGPT Litigation*. ECF Nos. 26, 53, 74.

On October 6, 2023, the *Tremblay* court entered a pretrial schedule in the consolidated actions. *Tremblay* Action, ECF No. 51. The schedule provides for discovery, class certification, expert disclosures and *Daubert* motions. *Id.* Notably, over OpenAI's objections, this scheduling order sequences class certification before summary judgment. *See id.* The parties have also briefed and argued a Rule 12 motion, conducted a Rule 26(f) conference, and exchanged initial disclosures. Hydal Decl., ¶ 7. The parties have negotiated a protective order and are negotiating a discovery protocol which will cover the production of electronically stored information. Plaintiffs and OpenAI have each served requests for production and interrogatories. *Id.*, ¶ 6. The parties have also prepared and served written objections and responses to the various discovery requests and met and conferred on discovery requests. *Id.*

### B.     The S.D.N.Y. Actions

Following the *Tremblay* Action, four actions were filed in the Southern District of New York. They are each essentially copies of *Tremblay*, some more obvious than others. Three months after the *Tremblay* Action, on September 19, 2023, the Authors Guild filed its Complaint against OpenAI, naming the identical affiliated OpenAI entities. ECF No. 1. Like the *Tremblay* Action, the *Authors Guild* Action is brought on behalf of a nationwide class of authors which overlaps with the class set forth in *Tremblay*. The *Tremblay* proposed class already includes all such persons in the *Authors Guild* class. Like *Tremblay*, the *Authors Guild* Complaint alleges claims for Copyright Infringement under 17 U.S.C. § 501, Vicarious Copyright Infringement,

and Contributory Copyright Infringement. *Id.*, ¶¶ 44-46. In essence, like *Tremblay*, the *Authors Guild* Action alleges facts and asserts claims against OpenAI for infringing Plaintiffs' registered Copyrights when training OpenAI's large language models. *Id.*

On November 21, 2023, Julian Sancton filed in this Court a substantively similar class action complaint against OpenAI and affiliated Defendants OpenAI, Inc., OpenAI GP, LLC, OpenAI, LLC, OpenAI OpCo LLC, OpenAI Global LLC, OAI Corporation, LLC, OpenAI Holdings, LLC, and Microsoft Corporation. *Sancton et al. v. OpenAI, Inc. et al.*, No. 23-cv-10211-SHS (S.D.N.Y. Nov. 21, 2023), ECF No. 1. On December 19, 2023, the *Sancton* complaint was amended to add Jonathan Alter and others as Plaintiffs and recaptioned to become *Alter et al. v. OpenAI Inc. et al.* ("*Alter* Action"). ECF No. 26 (Am. Compl.). Also like the *Tremblay* Action, the *Alter* Action brings claims based on the use of Plaintiffs' copyrighted material in the training of Defendants' large language models. The *Alter* Action asserts claims of copyright infringement and contributory infringement. *Id.*, ¶¶ 33-36. This Court has since related and consolidated the *Authors Guild* Action and the *Alter* Action. ECF Nos. 56, 67.

On December 27, 2023, The New York Times Company filed a complaint against OpenAI (including its affiliates) and Microsoft Corporation. *The N.Y. Times Co. v. Microsoft Corp. et al.*, Case No. 1:23-cv-11195 (S.D.N.Y. Dec. 27, 2023) ("*New York Times* Action"). Like its predecessors, the *New York Times* Action asserts a claim for direct copyright infringement, vicarious copyright infringement, contributory copyright infringement, violation of the Digital Millennium Copyright Act, common law unfair competition by misappropriation, and trademark dilution. *Id.*, ¶¶ 158-204. The *New York Times* Action is brought on behalf of a sole plaintiff that is subsumed within the class asserted in the *Tremblay* Action.

On January 5, 2024, Nicholas Basbanes and other Plaintiffs filed in this Court a complaint against OpenAI (including its affiliates) and Microsoft Corporation. *Basbanes et al. v. Microsoft Corp. et al.*, No. 24-cv-00084 (S.D.N.Y. Jan. 5, 2024). Like the others, the *Basbanes*

Action asserts a claim for direct copyright infringement, vicarious copyright infringement, and contributory copyright infringement. *Id.*, ¶¶ 26-29. Also like the *Authors Guild* and *Alter* Actions, the *Basbanes* Action brings these claims on behalf of a nationwide class of all authors, coextensive with the class asserted in the *Tremblay* Action. The *Basbanes* Action was consolidated with the *Authors Guild* Actions on February 6, 2024. *Basbanes* Action, ECF No. 32.

The S.D.N.Y. Actions largely duplicate the first-filed *Tremblay* Action. Each arises out of the same nucleus of facts and is based on the same conduct and similar theories of liability. *Tremblay* was the first case in the United States to allege claims arising from the impermissible use of plaintiffs' copyrighted material in connection with the training of OpenAI's large language models and commercialized generative AI products. The S.D.N.Y. Actions followed suit, alleging substantially similar facts. Based on those facts, like *Tremblay*, they plead substantially similar claims for direct copyright infringement, vicarious copyright infringement, and contributory copyright infringement. They do so on behalf of proposed classes or plaintiffs who are either identical to or are entirely subsumed by the proposed class defined in the first-filed *Tremblay* Action pending in the Northern District of California.

In fact, OpenAI agrees. *See Tremblay* Action, ECF No. 50 (Joint Case Management Statement) ("The Parties are also aware of a case filed in the District Court for the Southern District of New York . . . . The case appears to include duplicative causes of action."). This basic fact lies at the heart of OpenAI's stated position that it would move to dismiss the *Authors Guild* Action under the first-to-file rule. Meanwhile, the parties and the Northern District of California court have advanced the *Tremblay* Action by consolidating the cases, negotiating and entering a pretrial schedule, fully briefing a dismissal motion, and are continuing to conduct discovery.

What changed? OpenAI failed to obtain the pretrial schedule it wanted from the *Tremblay* court. After extensive argument and briefing by both OpenAI and the *Tremblay*

7

Plaintiffs, the Northern District of California adopted and entered the schedule suggested by the *Tremblay* Plaintiffs. In particular, the *Tremblay* Plaintiffs sought to sequence the class determination prior to summary judgment, which is the accepted procedure under Rule 23.

Once that schedule was entered, OpenAI reversed course, looking for a better deal. It then decided it was better served by multiplying the proceedings and litigating subsequently filed cases after it obtained the scheduling concessions it preferred from Plaintiffs in the S.D.N.Y. Actions. ECF No. 65. Despite the *Tremblay* court's scheduling order, despite the parties' attempts in compliance with that order, and despite its prior representations, OpenAI decided to proceed in a more favorable district. Defendants' forum shopping violated the first-to-file rule and should not be allowed.

## III.    THE COURT SHOULD PERMIT INTERVENTION

### A.    The Court Should Permit Intervention as a Matter of Right

Under Federal Rule of Civil Procedure 24(a)(2), intervention as a matter of right is appropriate where: an applicant (1) timely claims (2) an interest relating to the property or transaction which is the subject of the action and (3) is so situated that the dispositions of the action may as a practical matter impair or impede the applicant's ability to protect that interest, (4) unless his or her interest is adequately represented by existing parties. *AB ex rel. CD v. Rhinebeck Cent. Sch. Dist.*, 224 F.R.D. 144, 155 (S.D.N.Y. 2004) (citing *Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 96 (2d Cir. 1990).

Timeliness of a motion to intervene is assessed by considering the totality of the circumstances. *Red Rock Sourcing LLC v. JGX, LLC*, No. 21 Civ. 1054 (JPC), 2023 WL 1468980, at *4 (S.D.N.Y. Feb. 2, 2023); *see also Sec. & Exch. Comm'n v. Berman*, No. 20 Civ. 10658 (LAP), 2021 WL 2895148, at *2 (S.D.N.Y. June 8, 2021) (finding motion to intervene filed within three months after being served with complaint timely); *Olin Corp. v. Lanora Ins. Co.*, 325 F.R.D. 85, 88 (S.D.N.Y. 2018) (granting motion for intervention as of right even where

"discovery deadlines have come and gone[.]").

Here, the *Tremblay* Plaintiffs have timely filed a Motion to intervene for the limited purpose of bringing this Motion to Dismiss, Stay or Transfer this Action Pursuant to the first-to-file rule. Each of the S.D.N.Y. Actions was filed well after the first-filed *Tremblay* Action and within the past five months, with several filed within the past month and a half or so. Upon learning of the substantially similar cases filed in S.D.N.Y., Plaintiffs' counsel in *Tremblay* immediately investigated whether intervention was warranted. Hydal Decl., ¶ 8. In particular, the *Tremblay* Plaintiffs sought to determine OpenAI's position with respect to the subsequently filed S.D.N.Y. Actions. OpenAI's counsel informed Plaintiffs' counsel that it intended to proceed in the Northern District of California, where the first-filed *Tremblay* Action is pending, and would move to dismiss or to transfer the *Authors Guild* Action under the first-to-file rule. This position was subsequently confirmed by defense counsel in statements made to this Court:

> Defendants anticipate filing a motion to dismiss under the first-filed rule, or, in the alternative, to stay this action pending resolution of the three substantially similar putative class actions pending in the District Court for the Northern District of California, or, in the further alternative, to transfer this matter to the Northern District of California either under the first-filed rule or 28 U.S.C. § 1404(a).

ECF No. 31, ¶ 16. The *Tremblay* Plaintiffs relied on these representations when made.

As soon as the *Tremblay* Plaintiffs learned that OpenAI had reversed course and would not move to dismiss the *Authors Guild* Action under the first-to-file rule, they began working on the instant Motion. This Motion, which seeks to avoid piecemeal litigation, judicial inefficiency and possibly contradictory rulings under the first-to-file doctrine, is timely and should be considered at this juncture.

The second and third requirements of Rule 24(a)(2) are also met because the *Tremblay* Plaintiffs have an interest in avoiding contradictory rulings. *Cascade Nat. Gas Corp. v. El Paso Nat. Gas Co.*, 386 U.S. 129, 134 (1967) ("If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to

intervene . . .”). As explained in more detail below, both the first-filed *Tremblay* Action and the S.D.N.Y. Actions involve the same substantive questions of copyright law. Further, the consolidated *Authors Guild* Action is being litigated on behalf a class that is coextensive with and entirely subsumed by the class defined in the first-filed *Tremblay* Action. The *New York Times* Action is brought on behalf of a sole Plaintiff that is subsumed by the class asserted in the *Tremblay* Action. By its forum shopping, OpenAI is creating the likelihood–or certainty–of inconsistent rulings in overlapping class actions and the attendant waste of judicial resources. Consequently, the *Tremblay* Plaintiffs “should . . . be entitled to intervene[.]” *Id.* The risk of inconsistent rulings and needless expenditure of judicial resources is all but guaranteed if the S.D.N.Y. Actions are permitted to proceed.

With respect to the last requirement, courts in the Second Circuit permit intervention unless the interests of the existing parties are “so similar to those of [the *Tremblay* Plaintiffs] that adequacy of representation is assured.” *Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123, 132-33 (2d Cir. 2001). Certainty about how existing parties will litigate is not required. *See Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 (1972) (finding sufficient doubt about the adequacy of representation satisfies the adequacy element of Rule 24(a)(2)). Here, the interests between the *Tremblay* Plaintiffs and the S.D.N.Y. Plaintiffs are incongruent. First, the Authors Guild, an **advocate and promoter of generative AI**, has already disclosed its plan to work with a management organization to license copyrights and other intellectual property to companies commercializing or monetizing generative AI products such as OpenAI. *See infra*, n.5. Forcing the *Tremblay* Plaintiffs to commit to a licensing regime controlled by a third party would

unfairly limit and restrict the remedies available to the *Tremblay* Plaintiffs.[5] Second, the *Authors Guild* Action purports to represent classes that duplicate and are entirely subsumed by the proposed class in *Tremblay*. Thus, the *Tremblay* Plaintiffs' interests are not likely to be adequately represented by the S.D.N.Y. Plaintiffs. Accordingly, intervention as a matter of right is appropriate.

### B.    In the Alternative, Permissive Intervention is Appropriate

Permissive intervention is appropriate where (1) the motion is timely; (2) the proposed intervenors have "a claim or defense that shares with the main action a common question of law or fact"; and (3) intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b).

Here, the Court should permit intervention for the limited purpose of filing this Motion to Dismiss, Stay, or Transfer. As discussed below, the S.D.N.Y. Actions involve substantially similar Defendants, the same putative nationwide class, the same artificial intelligence technology, and the allegations, claims and proposed classes are substantially similar to those before the court in the first-filed *Tremblay* Action—all of which was known to the Authors Guild and their counsel at the time of filing. *See*, *e.g.*, Authors Guild, *AG Statement on Writers' Lawsuits Against OpenAI* (June 29, 2023) https://authorsguild.org/news/statement-on-writers-lawsuits-against-openai/ ("We applaud [the *Tremblay* Plaintiffs] for asserting their rights in the lawsuits against OpenAI, and we are standing by to provide support if requested."); ECF No. 31, ¶ 16, n.2 (identifying the *Tremblay* Actions in their joint Rule 26(f) Report and Proposed Case Management Plan). Accordingly, the *Tremblay* Plaintiffs clearly have claims that share "common

---

[5] *See* Authors Guild, FAQs on the Authors Guild's Positions and Advocacy Around Generative AI (last visited Feb. 5, 2024) https://authorsguild.org/advocacy/artificial-intelligence/faq/ ("Authors Guild is proposing to create a collective license whereby a collective management organization (CMO) would license out rights on behalf of authors, negotiate fees with the AI companies, and then distribute those payment to authors who register with the CMO.").

questions of law or fact" with the S.D.N.Y. Actions. *See* Fed. R. Civ. P. 24(b); *see also Pike Co., Inc. v. Universal Concrete Procs., Inc.*, 284 F. Supp. 3d 376, 296 (S.D.N.Y. 2018) (permitting intervention where "claims involve the interpretation of the rights and obligations of the parties within same contract.").

Permitting intervention will also not unduly delay or prejudice the parties' rights. The *Tremblay* Action is already substantially advanced and the litigation is proceeding apace. *See supra*, section I. The S.D.N.Y. Actions, filed months afterwards, are well-behind. Given that there appear to be no Plaintiffs in the S.D.N.Y. Actions who are not part of the proposed *Tremblay* class, and the claims are identical, permitting intervention here will not cause any prejudice to the S.D.N.Y. Plaintiffs. The S.D.N.Y. Plaintiffs will continue to be represented should this Court stay, dismiss, or transfer the S.D.N.Y. Actions.[6] *See Lau v. Wells Fargo & Co.*, No. 20-CV-03870 (AJN), 2021 WL 1198964, at *2 (S.D.N.Y. Mar. 30, 2021) (dismissing subsequent action under first-to-file rule, and noting plaintiffs in subsequently-filed class action would not be prejudiced because they could opt-in to the class in first-filed action).

OpenAI's rights will also not be prejudiced or delayed. They are already parties to and have been defending against the *Tremblay* Action. Further, Defendants have already appeared in *Tremblay*, and are fully engaging with the *Tremblay* Plaintiffs' counsel, including by actively

---

[6] The converse, however, is not true. The *Tremblay* Plaintiffs may not have their interests represented if the S.D.N.Y. Actions are permitted to proceed. The Authors Guild has stated its intent to explore licensing deals with OpenAI, and it is a promoter of generative AI. *See* Authors Guild, FAQs on the Authors Guild's Positions and Advocacy Around Generative AI (last visited Feb. 5, 2024) https://authorsguild.org/advocacy/artificial-intelligence/faq/ ("Authors Guild is proposing to create a collective license whereby a collective management organization (CMO) would license out rights on behalf of authors, negotiate fees with the AI companies, and then distribute those payment to authors who register with the CMO."). Allowing the later-filed S.D.N.Y. Actions to proceed not only risks conflicting court decisions, but also risks the interests and rights of the *Tremblay* Plaintiffs in fully prosecuting their rights and recovering complete relief.

engaging in all aspects of discovery. *See supra*, section II.A.

In sum, the permissive intervention requested in the alternative here is appropriate and necessary to apply and enforce the well-established first-to-file rule to avoid the judicial inefficiency and likely contradictory rulings that will result if parallel and near-identical class actions proceed in two different districts. Accordingly, the Court should grant this Motion and permit intervention.

### IV. THE FIRST-TO-FILE RULE WARRANTS DISMISSAL OF THE S.D.N.Y. ACTIONS, OR IN THE ALTERNATIVE, A STAY OR TRANSFER OF VENUE

First-to-file motions provide the mechanism to address and prevent litigation of similar subsequently filed cases. *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010) ("Where there are two competing lawsuits, the first suit should have priority."). The rule is a "well-settled principle in this Circuit." *First City Nat'l Bank & Tr. Co. v. Simmons*, 878 F.2d 76, 79 (2d Cir. 1989). "The rule applies where 'the claims, parties, and available relief . . . [do] not significantly differ between the actions,' but 'the issues need not be identical' so long as 'the named parties . . . represent the same interests.'" *Lau*, 2021 WL 1198964 at *2 (quoting *Oleg Cassini, Inc. v. Serta, Inc.*, No. 11 Civ. 875 PAE, 2012 WL 844282, at *3 (S.D.N.Y. Mar. 13, 2012)). "Generally, there is a strong presumption in favor of the forum of the first-filed suit." *800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F. Supp. 128, 131 (S.D.N.Y. 1994). The first-filed rule "should not be disregarded lightly." *Id.* at 132 (citing *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625 (9th Cir. 1991)).

The first-to-file rule aims to prevent "duplicative litigation." *U.S. ex rel. Cestra v. Cephalon, Inc.*, No. 10 Civ. 6457 SHS, 2014 WL 1087960, at *4 (S.D.N.Y. Mar. 19, 2014) (citing *Emps. Ins. of Wausau v. Fox Ent. Grp., Inc.*, 522 F.3d 271, 275 (2d Cir. 2008)). More specifically, the principle underlying the rule promotes "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of

litigation . . . ." *Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952). Another purpose of the doctrine involves "considerations of comity" that militate against multiple district courts simultaneously entertaining competing lawsuits. *Cephalon*, 2014 WL 1087960 at *4 (citing *Byron v. Genovese Drug Stores, Inc.*, No. 10-CV-03313, 2011 WL 4962499, at *2 (E.D.N.Y. Oct. 14, 2011)).

The "central question" in determining whether the first-filed rule applies is whether "there are two competing lawsuits." *Cephalon*, 2014 WL 1087960, at *4 (citing *N.Y. Marine & Gen. Ins. Co.,* 599 F.3d at 112). Lawsuits compete where "the prior action concerned the same parties and involved the same general dispute." *Gyadu v. Hartford Ins. Co.*, No. 97–7720, 1998 WL 30470, at *2 (2d Cir. Jan. 28, 1998). Where two actions constitute competing lawsuits, "exceptions to the doctrine's application are few and limited." *Id.* at *3 (citing *N.Y. Marine & Gen. Ins. Co.,* 599 F.3d at 112). Indeed, the Second Circuit has "recognized only two exceptions to the first-filed rule: (1) where the 'balance of convenience' favors the second-filed action . . . and (2) where 'special circumstances' warrant giving priority to the second suit." *Emps. Ins. of Wausau v. Fox Entm't Grp.,* 522 F.3d 271, 275 (2d Cir. 2008).

### A.  The *Tremblay* Action and the S.D.N.Y. Actions are Competing Lawsuits

Lawsuits are competing where "the prior action concerned the same parties and involved the same general dispute." *Cephalon*, 2014 WL 1087960, at *4 (citing *Gyadu*, 1998 WL 30470, at *2). To be "competing," this Court has stated that the two lawsuits "need not be identical, they must have 'sufficient overlapping factual and legal issues.'" *Id.* at *3 (citing *MasterCard Int'l, Inc. v. Lexcel Sols., Inc.*, No. 03 Civ. 7157, 2004 WL 1368299, at *8 (S.D.N.Y. June 16, 2004)); *Wyler–Wittenberg v. MetLife Home Loans, Inc.*, 899 F.Supp.2d 235, 244 (E.D.N.Y. 2012); *Am. Steamship Owners Mut. Prot. & Indem. Ass'n, Inc. v. Lafarge N. Am., Inc.*, 474 F.Supp.2d 474, 481 (S.D.N.Y. 2007)).

This Court has cautioned against an "overly formulistic approach" to the first-to-file inquiry, making clear that such an approach "would undercut the conservation of judicial resources and the efficient disposition of litigation." *Cephalon*, 2014 WL 1087960, at *4. "Lawsuits that feature both overlapping and non-overlapping claims cannot be inherently disqualified from the first-filed rule, or else redundancy would abound and litigants could evade transfer by adding a non-duplicative claim to their pleadings." *Id.* And, although "'[t]he classic context for applying the rule is where mirror-image lawsuits between the same parties are filed in different venues, limiting the rule to that context would disserve judicial economy by promoting litigation that is substantially duplicative but formally discrepant." *Id.* (citation omitted).

In *Cephalon*, this Court found two lawsuits to be competing where certain claims asserted in each complaint described "essentially the same scheme." *Cephalon*, 2014 WL 1087960, at *5. There, the two lawsuits were filed against the same drug-manufacturer defendant, alleging violations under the False Claims Act for the defendant's promotion of certain "off-label" drugs. *Id.* Even though the two lawsuits contained non-overlapping claims and involved non-overlapping products manufactured by the defendant, "the common ground [was] substantial." *Id.* at *6. In assessing similarity, this Court observed that the concurrent litigation involved sufficiently similar substantive issues that "presented redundancies that contravene the interests of judicial economy and implicate issues of comity." *Id.* Additionally, this Court noted that although different relators brought each *qui tam* action, both relators brought the actions on behalf of the federal government and various state governments. *Id.* at *5 (noting that one relator sued on behalf of the United States and twenty-eight states, while the other sued on behalf of the United States and all fifty states). Thus, this Court determined there was sufficient overlap between the parties and claims in the two cases and transferred the subsequently filed case to the Eastern District of Pennsylvania, where the first-filed case was pending. *Id.* at **5, 7.

15

Here, the S.D.N.Y. Actions are competing with the first-filed *Tremblay* Action because both lawsuits arise from the same nucleus of fact and law, and involve the same parties. Both the S.D.N.Y. Actions and the *Tremblay* Action also include the same class (or a subset) of literary authors seeking redress against essentially the same Defendants for the same infringing conduct. Specifically, both lawsuits allege that OpenAI infringed plaintiffs' copyrights when they made copies of plaintiffs' copyrighted works to train their large language models. Compare, *Tremblay* Compl., ECF. No. 1 (Hydal Decl. Ex. A.) with *Authors Guild* Action, ECF No. 69; *Alter* Action, ECF No. 1; *Basbanes* Action, ECF No. 1; *N.Y. Times* Action, ECF No. 1. Indeed, all actions bring causes of action for direct copyright infringement based on this theory. Like the *Tremblay* Complaint, the subsequent *Authors Guild* Complaint alleges that OpenAI likely trained its large language model using "two internet-based books corpora" called "Books1" and "Books2," which comprise copyrighted materials. *Compare* Hydal Decl. Ex. A (*Tremblay* Compl.) at ¶¶ 24-35 with ECF No. 1, ¶¶ 92-108. Similarly, the *Authors Guild* Complaint adopts the same theory of *prima facie* liability alleged against OpenAI in the first-filed *Tremblay* Complaint—that ChatGPT could create a detailed summary of specific infringed works. Hydal Decl. Ex. A (*Tremblay* Compl.) at ¶¶ 5, 38-41 with ECF No. 1, ¶ 149.

The fact that the *Tremblay* Action contains causes of action that do not entirely overlap with those in the S.D.N.Y. Actions is of no moment.[7] At their core, all actions allege claims against OpenAI for its trespass and misuse of Plaintiffs' exclusive rights under the Copyright Act, and involve the same substantive questions of copyright law. Adjudication of these claims

---

[7] The *Tremblay* Action includes causes of action for violations of the Digital Millennium Copyright Act – Removal of Copyright Management Information ("CMI") (17 U.S.C. § 1202(b)) ("the DMCA"), Unfair Competition (Cal. Bus. & Prof. Code §§ 17200, et seq.), Negligence, and Unjust Enrichment. The standard requires "substantial similarity." The overlap between the central causes of action is clear. Namely, Defendants violated copyright law by training large language models on copyright protected works. There is more than substantial similarity here.

by two separate district courts would "present[ ] redundancies that contravene the interests of judicial economy . . ." *Cephalon*, 2014 WL 10878960 at *5.

The parties in *Tremblay* sufficiently overlap with the parties in the S.D.N.Y. Actions. Indeed, each member of the class asserted in the S.D.N.Y. Actions are members of the *Tremblay* class. The proposed class in the *Tremblay* Action is coextensive with and entirely subsumes the S.D.N.Y Actions. *See Lau*, 2021 WL 1198964, at *2 (finding second-filed action as brought on behalf of the same persons as a first-filed action where class of plaintiffs was "entirely subsumed" within collective definition in first-filed action); *Cephalon*, 2014 WL 10878960, at *5 (similar).

There is also more than sufficient overlap among the Defendants. Even though the later-filed S.D.N.Y. Actions include certain affiliate entities not named in the first-filed *Tremblay* Action, the difference is nominal and immaterial.[8] *See Kohn Law Grp. v. Auto Parts Mfg. Miss., Inc.*, 767 F.3d 1237, 1240 (9th Cir. 2015) ("[C]ourts have held that the first-to-file rule does not require exact identity of the parties"); *see also id.* (collecting cases). The Defendants are sufficiently overlapping for the purposes of the rule. *See Cephalon*, 2014 WL 1087960, at *4 (noting an "overly formulistic approach" to the first to file inquiry "would undercut the conservation of judicial resources and the efficient disposition of litigation."). Indeed, OpenAI has conceded the two actions are sufficiently similar for purposes of the first-to-file rule. ECF No. 31, ¶ 16.

**B.     None of the Limited Exceptions to the First-to-File Rule Apply Here**

None of the exceptions to the first-to-file rule apply. Again, the Second Circuit has

---

[8] The Defendants are all OpenAI affiliates. Many of them are the same. Even though the later-filed S.D.N.Y. Actions include certain affiliate entities not named in the first-filed *Tremblay* Action (OpenAI LLC, OpenAI Global LLC, and OpenAI Holdings LLC) the difference is negligible because the non-overlapping parties are clearly affiliates of OpenAI.

"recognized only two exceptions to the first-filed rule: (1) where the 'balance of convenience' favors the second-filed action . . . and (2) where 'special circumstances' warrant giving priority to the second suit." *Fox Entm't Grp.,* 522 F.3d at 275. Neither apply here. The balance of convenience weighs heavily in favor of the *Tremblay* Action. Likewise, the circumstances warrant giving priority to the first-filed *Tremblay* Action.

In assessing the "balance of convenience" courts in this circuit look to "the ties between the litigation and the forum of the first-filed action." *Id.* (citing *Motion Picture Lab'y Tech'ns Loc. 780, I.A.T.S.E. v. McGregor & Werner, Inc.*, 804 F.2d 16, 19 (2d Cir. 1986)). And, "factors relevant to the balance of convenience analysis are essentially the same as those considered in connection with motions to transfer venue pursuant to 28 U.S.C. § 1404(a)." *Fox Entm't Grp.*, 522 F.3d at 275. Among these factors are:

> (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of the parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties.

Here, the balance of convenience weighs heavily in favor of transfer to the Northern District of California. OpenAI's corporate headquarters is located in the Northern District of California at 3180 18th Street in San Francisco, within a stone's throw of the courthouse in which the *Tremblay* Action was filed and is being litigated. The technology and the commercial products at issue were created, developed, marketed, and sold from within the heart of the Northern District of California. As a result, many of the relevant documents and sources of proof are located in the Northern District of California. Plaintiffs chose this forum for that reason, as well as the fact that the court routinely handles complex copyright and other commercial matters, as well as class actions involving technology companies that are based there. In addition to party witnesses, third parties and former employees are likewise located in the Northern District, well within 100 miles of the courthouse and therefore can only there be compelled to appear at trial.

*See* Rule 45(c)(1) (100-mile rule). Substantial evidence is located there, the precipitating conduct occurred there, and the vast majority of the witnesses work and reside there.

In addition, the parties have retained counsel located in the Northern District of California. It would be significantly more expensive to litigate this matter in New York, far away from the witnesses and counsel. The balance of convenience therefore weighs heavily against allowing the litigation to proceed in the Southern District of New York.[9]

Additionally, there are no "special circumstances" that warrant giving priority to the later-filed S.D.N.Y. Actions. "Generally, a 'special circumstances' exception to the first-filed rule exists where 'forum shopping alone motivated the choice of the situs for the first suit.'" *800-Flowers, Inc.*, 860 F. Supp., at 132 (citation omitted). In fact, consideration of those circumstances supports enforcing the rule, not ignoring it. As OpenAI has made plain, it was its stated intent to seek a transfer to the Northern District of California. ECF No. 31, ¶ 16. OpenAI then reversed course and extracted scheduling concessions from Plaintiffs in the S.D.N.Y. Actions, including the sequencing of summary judgment motions and class certification.[10] In other words, OpenAI decided not to move to dismiss under the first-to-file rule in *Authors Guild* because those Plaintiffs agreed to give OpenAI what the *Tremblay* court would not—namely, its preferred sequencing of case-management events. That is precisely the forum shopping the first-

---

[9] There do not appear to be any relevant forum-selection clauses. While the claims arise under federal copyright law, California clearly has an interest in regulating businesses and illegal conduct which take place within its boundaries. California also has a large community of authors and other persons affected by the challenged conduct and likely is home to far more class members than any other single state. *See eBay Inc. v. Digital Point Sols., Inc.*, 608 F. Supp. 2d 1156, 1162 (N.D. Cal. 2009) ("In the absence of an enforceable forum-selection clauses, it is apparent that eBay has alleged sufficient facts to establish that venue is proper in this district.").

[10] In the *Tremblay* Action, OpenAI sought a case schedule sequencing summary judgment before class certification. *Tremblay* Action, ECF No. 50 at 8:25-7. *Tremblay* Plaintiffs opposed. *Id*. at 12:2-25. The court disagreed with OpenAI and sequenced class certification before summary judgment. *Tremblay* Action, ECF No. 51. OpenAI then chose not to seek to dismiss, stay or transfer the cases before this Court under the first-to-file rule.

to-file rule is designed and intended to prevent. *See Robeson v. Howard Univ.*, 2002 WL 122913, at *2 (S.D.N.Y. Jan. 30, 2002) (explaining that one exception to the first-to-file rule is to "protect [ ] potential plaintiffs who wish to resolve a controversy amicably, 'without fear that the defendant will be permitted to take advantage of the opportunity to institute litigation in a district of its own choosing . . .'"); *800-Flowers, Inc.,* 860 F. Supp. at 132. Giving priority to the S.D.N.Y. Actions "would sanction the type of procedural gamesmanship and litigation tactics the judicially declared exceptions to the first-to-file doctrine were designed to guard against." *Zero-Techs., LLC v. The Clorox Co.*, No. 22-3989, 2024 WL 434169, at *12 (E.D. Pa. Jan. 30, 2024); *see also Kohn Law Grp.*, 767 F.3d at 1240 (explaining that the rule's application "avoids awarding such gamesmanship and is consistent with the policy of the first-to-file rule, which is to maximize judicial economy, consistency, and comity.").

### C.      The S.D.N.Y. Actions Should be Dismissed or Stayed

It is well-established that "a district court has broad discretion to dismiss a lawsuit that is duplicative of a prior action." *Thomas v. Apple-Metro, Inc.*, No. 14-CV-4120 VEC, 2015 WL 505384, at *2 (S.D.N.Y. Feb. 5, 2015). Under the first-to-file rule, there is a "**strong presumption**" in favor of dismissal of a later-filed lawsuit. *Oleg Cassini*, 2012 WL 844284, at *3 (emphasis added). Alternative forms of relief, such as transfer or stay of the later-filed action, may be appropriate "if dismissal would create a 'risk of prejudice' to the parties in the later-filed action." *Lau*, 2021 WL 1198964, at *5 (citing *Naula v. Rite Aid of N.Y.*, No. 08 CIV. 11364 (PGG), 2010 WL 2399364, at *5 (S.D.N.Y. Mar. 23, 2010)); *see also AEI Life, LLC v. Lincoln Ben. Life Co.*, 305 F.R.D. 37, 44 (E.D.N.Y. 2015) ("In the interest of judicial economy, the first-to-file rule allows a court to stay an action that involves the same parties, issues, and facts as an action currently pending in another court.").

Because the first-to-file rule requires that the Court here give priority to the first-filed *Tremblay* Action, the Court should dismiss or stay the later-filed S.D.N.Y. Actions. Here,

dismissal is the preferred form of relief because there would be no resulting prejudice to the S.D.N.Y. Plaintiffs—each are members of the proposed *Tremblay* class which bring virtually identical claims[11] and violations of federal and state law. *See Lau*, 2021 WL 1198964, at *2 (dismissing subsequent action under the first-to-file rule, and noting plaintiffs in later-filed class-action lawsuit would not be prejudiced because they could opt into first-filed class). In dismissing the cases, the Court would relieve its docket from unnecessary and duplicative matters.

Accordingly, the Court should dismiss, or alternatively, stay this action.

### D.    Alternatively, the S.D.N.Y. Actions Should be Transferred

If the Court determines that dismissal is not appropriate, notwithstanding the "strong presumption" in favor of dismissal (*Serta*, 2012 WL 844284, at *3), the Court should transfer the S.D.N.Y. Actions to the Northern District of California or stay further proceedings. Section 1404(a) allows a district court to transfer a case for the convenience of parties and witnesses to "any other district or division where it might have been brought" if doing so is "in the interest of justice." 28 U.S.C. § 1404(a). Courts in the Second Circuit evaluate a potential transfer in two steps. "The initial inquiry is whether the case could have been brought in the proposed transferee district . . . ." *1724982 Alberta ULC v. Park Ave. Wholesale, Inc.*, No. 1:21-CV-04343-GHW, 2021 WL 3115125, at *2 (S.D.N.Y. July 20, 2021). "An action might have been brought in the forum to which the movant seeks to transfer it if subject matter jurisdiction, personal jurisdiction, and venue would have been proper in the transferee court at the time of filing." *Id.* (citing *City of*

---

[11] The *Tremblay* Action contains causes of action for violations of the Digital Millennium Copyright Act – Removal of Copyright Management Information ("CMI") (17 U.S.C. § 1202 (b)) ("the DMCA"), Unfair Competition (Cal. Bus. & Prof. Code §§ 17200, et seq.), Negligence, and Unjust Enrichment. The overlap between the central causes of action is clear. Namely, defendants' violations of copyright law by training large language models on copyright protected works.

*Pontiac Gen. Emps. Ret. Sys. v. Dell Inc.*, No. 14-cv-3644 (VSB), 2015 WL 12659925, at *2 (S.D.N.Y. Apr. 30, 2015) (internal quotation marks omitted)).

Here, the Northern District of California would have subject-matter jurisdiction over both the S.D.N.Y. Actions and the *Tremblay* Action because the suits give rise to a federal question under the Copyright Act. And, for the reasons discussed in section IV.B., *supra*, venue is proper under section 1404(a). The facts giving rise to this case are centered in the Northern District of California. The evidence, including third-party witnesses, is located there as well. Indeed, many of those witnesses could not be compelled to travel from California to New York for trial. As such, if the Court determines that dismissal is not warranted, a stay of proceedings or transfer to the Northern District of California would be appropriate.

Accordingly, the Court should give priority to the *Tremblay* Action under the first-to-file rule.

## V.     CONCLUSION

For the foregoing reasons, the *Tremblay* Plaintiffs respectfully request the Court grant this Motion to intervene and grant their Motion to dismiss or, in the alternative, stay or transfer the S.D.N.Y. Actions under the first-to-file rule.

Dated: February 23, 2024                    By:     */s/ Christopher J. Hydal*
                                                            Christopher J. Hydal

                                                    Christopher J. Hydal
                                                    **JOSEPH SAVERI LAW FIRM, LLP**
                                                    40 Worth Street, Suite 602
                                                    New York, NY 10013
                                                    Telephone: (646) 527-7310
                                                    Facsimile:  (212) 202-7678
                                                    Email:      chydal@saverilawfirm.com

Joseph R. Saveri (*pro hac vice forthcoming*)
Cadio Zirpoli (*pro hac vice forthcoming*)
Christopher K. L. Young (*pro hac vice forthcoming*)
Holden Benon (*pro hac vice forthcoming*)
Aaron Cera (*pro hac vice forthcoming*)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1000
San Francisco, California 94108
Telephone: (415) 500-6800
Facsimile:  (415) 395-9940
Email:   jsaveri@saverilawfirm.com
          czirpoli@saverilawfirm.com
          cyoung@saverilawfirm.com
          hbenon@saverilawfirm.com
          acera@saverilawfirm.com


Matthew Butterick (*pro hac vice forthcoming*)
1920 Hillhurst Avenue, #406
Los Angeles, CA 90027
Telephone:  (323)968-2632
Facsimile:  (415) 395-9940
Email:       mb@but.ericklaw.com

Bryan L. Clobes (pro hac vice)
**CAFFERTY CLOBES MERIWETHER
& SPRENGEL LLP**
205 N. Monroe Street
Media, PA 19063
Telephone:     215-864-2800
Email:          bclobes@caffertyclobes.com

Alexander J. Sweatman (pro hac vice anticipated)
**CAFFERTY CLOBES MERIWETHER
& SPRENGEL LLP**
135 South LaSalle Street, Suite 3210
Chicago, IL 60603
Telephone:     312-782-4880
Email:          asweatman@caffertyclobes.com

Daniel J. Muller (State Bar No. 193396)
**VENTURA HERSEY & MULLER, LLP**
1506 Hamilton Avenue
San Jose, California 95125
Telephone: (408) 512-3022
Facsimile: (408) 512-3023
Email:          dmuller@venturahersey.com


*Counsel for Individual and Representative Plaintiffs
and the Proposed Class*