# EXHIBIT A

| | |
|---|---|
| **From:** | Jennifer B. Maisel |
| **To:** | Elana.NightingaleDawson@lw.com |
| **Cc:** | NYT-AI-SG-Service@simplelists.susmangodfrey.com; DailyNews-AI-RFEM; ai@loevy.com; openaicopyrightlitigation.lwteam@lw.com; KVPOAI@keker.com; openaicopyright@mofo.com |
| **Subject:** | Re: In re OpenAI Copyright Infringement Litigation, No. 25-md-3143 |
| **Date:** | Friday, May 23, 2025 5:16:38 PM |

Dear Elana, Joe, and Ed,

We are writing in response to the proposal you sent below, late last night, regarding the preservation of output log data, and the meet and confer we had on the subject this afternoon.

Please confirm, in advance of Tuesday's hearing, if OpenAI has preserved, and is undertaking to preserve, output log data for the API and Enterprise products going back more than 30 days.

Regarding your first point, we raised our concerns about the practicability of the approach given that we are not privy to OpenAI's user account information, among other issues with identifying specific infringing user accounts. To the extent we learn of specific entities and users, we understand that you are willing to perform some investigation to either suspend their accounts or preserve output log information related to those accounts. You were, however, not able to share specifics about what investigative abilities OpenAI has in this regard. While we appreciate your proposal, and will explore this possibility, for the reasons stated on the call, it does not resolve our issue with the preservation of output log data.

Regarding your second point, we discussed some of our concerns with the sampling proposal you raised. As an initial matter, you refused to confirm whether or not OpenAI has been destroying all but the last 30 days of output log data for both the API and Enterprise products, and we therefore assume that to be the case. We are materially harmed by the absence of historical data for these products—which we understand to be covered by Judge Wang's order for OpenAI to "preserve and segregate all output log data that would otherwise be deleted on a going forward basis"—and understand your proposal to be limited to ChatGPT Free, Pro, and Plus user conversations. While it was less clear if your request for a stay of the Court's preservation order was limited to such ChatGPT user conversations, we obviously cannot agree to a stay of the order with respect to API and Enterprise output log data when your proposal doesn't address either of these sources of output log data.

One question we raised for you was about why the first sample you proposed included both preserved data and data marked for deletion. If the point is to compare differences between preserved data and data marked for deletion, then isolating those two categories of data would be important. However, you identified technical hurdles with isolating that data. We also were not clear on the size or scope of the respective data populations. For example, would the data marked for deletion be from the same time period as the preserved data, or could a user mark for deletion older data (potentially skewing the samples). For this and other reasons we have concerns about conducting a statistically valid study and cannot agree to your proposal as written.

We also explained that trying to extrapolate – whether forwards or backwards – from the study you proposed would be difficult or impossible given changes in OpenAI's deletion policies over time and changes to its products. Such variability, including with how users may interact with and use ChatGPT over time, challenge your assumption that a sample of retained data and data marked for deletion at one snapshot in time would be identical with such a sample at

another snapshot in time.

Because of these and potentially other issues with the sampling methodology you proposed, which we are just beginning to consider, we articulated a proposal based on our recent letter correspondence for you to search for and retain relevant output log data on a going-forward basis for the last 30 days of output log data that you have indicated you have the ability to search. You said you would look into this but could not answer on the call whether it was technically feasible. Although we have reservations about the sampling approach you have proposed, we appreciate the proposal to try and resolve our dispute. Should you have more information to share with us, or alternate ideas to consider, please reach out. We will do the same.

Best regards,

Jen

On May 22, 2025, at 9:21 PM, Elana.NightingaleDawson@lw.com wrote:

Counsel,
We write to propose a path forward in light of the Court's strong encouragement in its May 16, 2025 Order (MDL ECF 42) and your subsequent Supplemental Motion (MDL ECF 43). First, we propose that the News Plaintiffs provide OpenAI with evidence sufficient to identify specific users who have employed OpenAI's services to generate outputs that you believe are relevant to this case. If the News Plaintiffs do so, OpenAI will implement the appropriate going-forward preservation for those accounts. Second, we propose a mechanism to "determine whether the retained output logs marked for deletion differ in any material way from the retained logs" (MDL ECF 42) while minimizing the potential impacts on the privacy rights of OpenAI's users. As you know, we have already offered to work with you on deriving a sample of retained ChatGPT conversation data for analysis. As part of that process, OpenAI proposes to make available (i) a random sample of anonymized ChatGPT conversation data to include both conversations that would be retained in the ordinary course and conversations that would otherwise be deleted under OpenAI's policies, and (ii) a random sample of anonymized ChatGPT conversation data that would be retained in the ordinary course. Those two samples will enable both parties to analyze the extent to which there is a "higher" "prevalence of harmful outputs" in the data that OpenAI would not retain in the ordinary course (MDL ECF 43 at 2). We suggest that the parties jointly move the Court to vacate the Order at MDL ECF 33 and agree to meet-and-confer to address whether any further preservation is necessary based on your analysis of those samples.
We are available to confer tomorrow between 2pm and 4pm ET; please let us know what works best for you.

Best regards,

Elana

**Elana Nightingale Dawson** | **LATHAM & WATKINS LLP**
555 Eleventh St., NW Suite 1000 | Washington, DC 20004
Tel: 202-637-2303 | Cell: 213-703-8628 | Fax: 202-637-2201 |
http://www.lw.com

_____

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient.  Any review, disclosure, reliance or distribution by others or forwarding without express permission is strictly prohibited.  If you are not the intended recipient, please contact the sender and delete all copies including any attachments.

Latham & Watkins LLP or any of its affiliates may monitor electronic communications sent or received by our networks in order to protect our business and verify compliance with our policies and relevant legal requirements. Any personal information contained or referred to within this electronic communication will be processed in accordance with the firm's privacy notices and Global Privacy Standards available at www.lw.com.