**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THE NEW YORK TIMES COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>MICROSOFT CORPORATION, OPENAI, INC., OPENAI LP, OPENAI GP, LLC, OPENAI, LLC, OPENAI OPCO LLC, OPENAI GLOBAL LLC, OAI CORPORATION, LLC, and OPENAI HOLDINGS, LLC,<br><br>Defendants. | Civil Action No. 1:23-cv-11195<br><br><br>**RULE 26(f) REPORT AND PROPOSED CASE MANAGEMENT PLAN** |

The parties submit this report of their Rule 26(f) conference and proposed case management plan.

**I.   INTRODUCTION**

1.     The parties met and conferred over video as required by Rule 26(f) on February 23, 2024.

2.     The parties' Rule 26(f) report is thus due on March 8, 2024.  *See* Fed. R. Civ. P. 26(f)(2).

**II.   SUMMARY OF CLAIMS AND DEFENSES**

3.     The Times brings claims for direct, vicarious, and contributory copyright infringement under the Copyright Act (17 U.S.C. § 501); violation of the Digital Millennium Copyright Act by removal of copyright management information (17 U.S.C. § 1202); common law unfair competition by misappropriation; and trademark dilution (15 U.S.C. § 1125(c)).

4.     Defendants plan to assert several arguments and/or defenses, including but not limited to, failure to state a claim, no infringement, fair use, substantial noninfringing uses, *scènes*

*à faire*, 17 U.S.C. § 102(b), 17 U.S.C. § 512 (a)-(d), de minimis copying, preemption, and lack of injury.

### A.    **PLAINTIFF'S STATEMENT**

5.      Plaintiff The New York Times Company ("The Times") publishes digital and print products, including its core news product, The New York Times, and other publications such as The Athletic, Cooking, Games, and Wirecutter. The Times owns over 3 million registered, copyrighted works. Producing original independent journalism is at the heart of its mission. Times journalists cover the most important stories across the globe; in a typical year, The Times sends journalists to report on the ground from more than 160 countries.

6.      The Times alleges that Defendants unlawfully copied and used millions of The Times's copyrighted works ("Times Works") to build and operate Defendants' generative artificial intelligence ("GenAI") products, including ChatGPT and Bing Chat (recently rebranded as "Copilot"). Defendants are free-riding on The Times's massive investment in its journalism by using it to build substitutive products without permission or payment, which is unlawful.

7.      The Times alleges that Defendants' unlicensed copying, reproduction, display, and preparation of derivatives of Times Works constitute direct, vicarious, and contributory copyright infringement in violation of The Times's intellectual property rights.

8.      The Times further alleges that Defendants violated the Digital Millennium Copyright Act by removing The Times's copyright management information from Times Works published on The Times's websites and elsewhere.

9.      The Times alleges that Defendants committed common law unfair competition by misappropriation by developing and operating GenAI products that directly compete with The Times. These products display and produce outputs that copy and/or closely summarize Times Works, thereby diverting traffic away from The Times's websites and causing harm to The Times,

including, but not limited to, by usurping commercial opportunities to earn advertising, subscription, licensing, and affiliate revenues.

10.     The Times further alleges that Defendants committed trademark dilution by tarnishment through their unauthorized use of The Times's marks on inaccurate outputs, also called "hallucinations," from Defendants' GenAI products, and the resulting false attribution to The Times of misinformation.

11.     The Times seeks statutory damages, compensatory damages, restitution, disgorgement, and any other relief that may be permitted by law or equity. The Times also seeks injunctive relief.

12.     The Times submits that the principal facts and legal issues in dispute include:

a.      Whether and to what extent Defendants (working together and/or separately) unlawfully copied, reproduced, and/or used Times Works to train or otherwise build and operate their GenAI models;

b.      Whether and to what extent Defendants unlawfully copied, reproduced, and/or used Times Works in the output of their GenAI models and/or GenAI-powered search results;

c.      Whether Defendants' unauthorized use of Times Works was willful;

d.      The degree to which Defendants have profited from their unauthorized use of Times Works to create their GenAI models;

e.      To what extent Defendants' unauthorized use of Times Works has usurped commercial opportunities for The Times;

f.      To what extent Defendants removed copyright management information from Times Works;

g.    To what extent Defendants collaborated, coordinated, or otherwise worked with one another to build and operate the allegedly infringing GenAI models and products;

h.    To what extent Defendants' unauthorized use and reproduction of Times Works, including in connection with inaccurate outputs, has harmed The Times's reputation and/or the strength of its trademarks;

i.    Whether Defendants can establish the elements of fair use despite the commercial purpose and massive scale of Defendants' unauthorized copying of Times Works in full, without transformation, for their original purpose, and the harmful impact of Defendants' actions on the market for Times Works.

## B.    DEFENDANTS' STATEMENT

13.    ***OpenAI Defendants.*** OpenAI is an artificial intelligence (AI) research and deployment company, with a mission to ensure that artificial general intelligence benefits all of humanity.  OpenAI researches, develops, and releases cutting edge AI technology, including ChatGPT and its underlying large language models, as well as tools and best practices for the safety, alignment, and governance of AI.

14.    Developing a large language model like the one underlying ChatGPT and Bing Chat requires teaching the model intelligence and language, such as the ability to predict, reason and solve problems, as well as aligning it to human values and preferences.  Teaching a model to understand language and the facts that constitute humans' collective knowledge, for instance, involves showing the model a wide diversity of text, and having it try to predict the word that comes next in each of a huge range of sequences.  This requires an enormous amount of computation, as models review, analyze, and learn from trillions of words. Through this extensive

4

process, the model not only learns how words fit together grammatically, but also how words work together to form higher-level ideas, and ultimately how sequences of words form structured thoughts or pose coherent problems.  For example, when we think of the word "cloud", we might also think of related words like "sky" and "rain"; when given a sentence like "The secret to happiness is", we might think of various philosophical ideas.  In gaining fluency with predicting the next word, the model thereby learns concepts and the building blocks of intelligence.

15.    The New York Times ("Plaintiff") is one of the many newspapers that has leveraged such models in its own operations.  After months of negotiations over broader partnership agreements, Plaintiff brought this lawsuit claiming "billions of dollars in statutory damages."  Dkt. 1 ¶ 9.  Plaintiff's lawsuit alleges that its works were shown to OpenAI's large language models as part of their training; that those models learned from those works; and that this process infringed Plaintiff's copyrights.  Further, Plaintiff alleges that "individuals can access [this] content through Defendants' [LLM] products without having to pay for it," and that those products are therefore a "substitute for The Times and steal audiences away from it."  Dkt. 1 ¶¶ 8, 157.

16.    ***Microsoft Corporation.***  Microsoft is a Washington Corporation with its principal place of business in Redmond, Washington.  Founded in 1975, Microsoft is a technology company whose mission is to empower every person and every organization on the planet to achieve more. Microsoft is creating the platforms and tools, powered by artificial intelligence, that deliver better, faster, and more effective solutions to support small and large business competitiveness, improve educational and health outcomes, grow public-sector efficiency, and empower human ingenuity. Microsoft is committed to making the promise of AI real – and doing it responsibly.

17.    Defendants deny that they have violated any of Plaintiff's rights.  The principal facts in dispute include:

a.   Whether Plaintiff's copyrighted works at issue ("Plaintiffs' Works") were actually used to train the large language models used for ChatGPT and Bing Chat.

b.   Whether and how the alleged inclusion of Plaintiff's Works in the training data results in copying of those works.

c.   Whether and to what extent the alleged use of each of Plaintiff's Works served a new and different purpose from the original purpose of each of those works.

d.   Whether and to what extent there exists a licensing market to use Plaintiff's Works in the manner alleged.

e.   Whether and to what extent any use of Plaintiff's Works by Defendants or their users affected any market for those works.

f.   Whether and to what extent Defendants' products serve as a substitute for Plaintiff's Works.

g.   Whether and to what extent Plaintiff was harmed by the alleged use of Plaintiff's Works.

h.   Whether and to what extent the alleged use of Plaintiff's Works serves the public interest.

i.   Whether Defendants Microsoft, OpenAI Inc., OpenAI GP, OpenAI LP, OAI Corporation LLC, OpenAI Holdings LLC, and OpenAI Global LLC have the right and ability to control the alleged activity by Defendants OpenAI LP, OpenAI Global LLC, OpenAI OpCo LLC, and OpenAI, LLC.

j.   Whether Defendants Microsoft, OpenAI Inc., OpenAI GP, OpenAI LP, OAI Corporation LLC, OpenAI Holdings LLC, and OpenAI Global LLC derive a direct financial benefit from the alleged inclusion of the Times Works in the training data.

k.  Whether Microsoft has contributed to copyright infringement, acted in a way that promoted infringing use, or did anything to induce infringing use by investing in OpenAI and developing a supercomputing system capable of supporting OpenAI's large language models.

l.  Whether Defendants' had actual knowledge of the use of their products to create specific outputs that allegedly infringe Plaintiff's Works.

m.  Whether Defendants' products are capable of substantial non-infringing uses.

n.  Whether Plaintiff included CMI in Plaintiff's Works.

o.  Whether that alleged CMI was intentionally removed during the training process with "reasonable grounds to know" that such removal "will induce, enable, facilitate, or conceal an infringement" of copyright.

p.  Whether that alleged CMI was intentionally removed from model outputs with "reasonable grounds to know" that such removal "will induce, enable, facilitate, or conceal an infringement" of copyright.

q.  Whether users of Defendants' products are likely to be confused by model outputs that contain "hallucinations" along with references to the registered trademarks referenced in Paragraph 199 of the Complaint.

18.  Defendants summarize the legal issues as follows:

a.  Whether Plaintiff own valid, enforceable copyrights in the asserted works.

b.  Whether Plaintiff's copyright registrations are valid and provide a basis for bringing suit under 17 U.S.C. § 411(a).

c.  Whether Plaintiff claims are barred, in whole or in part, by the statute of limitations or equitable doctrines such as laches, waiver, or estoppel.

7

    d.   Whether Plaintiff can meet its prima facie burden of establishing that Defendants directly infringed Plaintiff's Works.

    e.   Whether, assuming Plaintiff can prove Defendants engaged in prima facie acts of infringement, Defendants' alleged use of Plaintiff's Works to train a large language model is a fair use under 17 U.S.C. § 107.

    f.   Whether Plaintiff is entitled to relief under a vicarious copyright infringement claim.

    g.   Whether Plaintiff is entitled to relief under a contributory copyright infringement claim.

    h.   Whether Plaintiff is entitled to relief for violation of Section 1202(b) of the Copyright Act.

    i.   Whether Plaintiff is entitled to relief for unfair competition by misappropriation under common law.

    j.   Whether Plaintiff is entitled to relief for trademark dilution under 15 U.S.C. § 1125(c).

    k.   Whether the Copyright Act preempts Plaintiff's claim for unfair competition by misappropriation.

    l.   Whether, assuming Defendant is found liable on one or more theories, Plaintiff is legally entitled to the full measure of damages it seeks.

## III.   <u>INITIAL DISCLOSURES</u>

    19.   **Plaintiff's Position:**  Plaintiff intends to serve its initial disclosures when they are due under Rule 26(a)(1)(C) on March 8, 2024, fourteen days after the parties conducted their Rule 26(f) conference on February 23, 2024. The parties have not reached an agreement to serve initial disclosures by a later date.

20.     **Defendants' Position:**  At the parties' Rule 26(f) conference, Defendants proposed exchanging initial disclosures on March 15, 2024.  Plaintiff indicated preliminary agreement with that plan, but on March 8, 2024 included in this report that the parties "have not reached an agreement" on the issue.  Defendants plan to serve initial disclosures on March 15, 2024.

## IV.     MOTION PRACTICE

### A.     PLAINTIFF'S STATEMENT

21.     Plaintiff anticipates filing a motion for summary judgment on certain issues that may narrow the case.

### B.     DEFENDANTS' STATEMENT

22.     Defendants filed partial Motions to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on February 26, 2024 (OpenAI) and March 4, 2024 (Microsoft).  Defendants also anticipate filing motions for summary judgment on certain issues that may narrow the case. Further, Defendants anticipate that both parties may file various discovery motions.

## V.     SCOPE OF DISCOVERY

23.     The parties agree that discovery is governed by the Federal Rules of Civil Procedure, the Local Rules of United States District Courts for the Southern and Eastern Districts of New York, and this Court's Individual Practices.

24.     **Plaintiff** anticipates that discovery will be needed on at least the following subjects:

  a.     Defendants' corporate structures;

  b.     Training data and the sources of training data, including Times Works, used in any Microsoft and/or OpenAI GenAI model, including but not limited to the training data for GPT-1, GPT-2, GPT-3, GPT 3.5, GPT-4, GPT-5 and all versions thereof (collectively, the "Models");

c.    The Models, including their training, dataset construction, dataset cleaning, training methods, weighting for training data or similar, fine-tuning, and grounding, along with any source-code, parameters, algorithms, architecture, hardware, or software;

d.    The development and commercialization of the Models;

e.    User requests, traffic, and behavior when interacting with the Models;

f.    Output generated by the Models, including output that repeats or summarizes training material or contains hallucinations or misinformation;

g.    Licensing deals or negotiations, including those involving the use of content for training or operating the Models and Microsoft and OpenAI's GenAI products;

h.    Actual or potential harms caused by the Models, including to content creators;

i.    Business plans, product plans, and financial projections for both Microsoft and OpenAI, including those that pertain to offering news and other content offered by The Times;

j.    Use of Times content for synthetic search, also called retrieval augmented generation;

k.    The presence of copyrighted content in datasets used to train the Models, or within the Models themselves, including such content that belongs to The Times;

l.    Microsoft's role in developing and commercializing the Models; and

m.      The relationship between Microsoft and OpenAI, including Microsoft's investments in OpenAI, role in licensing deals involving the Models, and control over OpenAI;

n.      Defendants' knowledge of their infringing conduct, including Defendants' communications about their unlicensed use of copyrighted content in third-party training sets and/or the Models, and efforts to disguise or otherwise cover up their copying of copyrighted content belonging to The Times.

Defendants reserve all rights to object to Plaintiff's efforts to seek discovery into such matters.

25.     **Defendants anticipate** that discovery will be needed on at least the following subjects:

a.      Plaintiff's lack of harm.

b.      Plaintiff's ownership of and copyright interest in the works that are the subject of its complaint.

c.      Plaintiff's works, and where and how they are published.

d.      The licensing and distribution of all Plaintiff's works that it asserts to form any basis for its claims, and all other facts concerning the market for such works.

e.      Any copyright registrations or applications for registration of any of the Plaintiff's works that it asserts to form any basis for their claims.

f.      All use by Plaintiff of ChatGPT, Bing Chat or any other AI service offered by any Defendant.

g.      Plaintiff's reporting on OpenAI, ChatGPT, Bing Chat or any other AI service offered by any Defendant.

    h.      All efforts by Plaintiff or anyone acting on its behalf to prompt ChatGPT or any other AI service offered by any Defendant to create the outputs included in the Complaint, including, but not limited to, Exhibit J thereto.

    i.      The availability of third-party content that is similar to or describes Plaintiff's Works.

    j.      Third-party content discussing or reporting on the same subject matter as Plaintiffs' works-in-suit.

## VI.    DISCOVERY ORDERS

26.    Plaintiff provided Defendants with a proposed agreed protective order and a proposed agreed order regarding the production of Electronically Stored Information (ESI) on February 23, 2024. Defendants have not yet responded to either proposal.

27.    If the parties are unable to agree to one or more provisions of such orders, the parties anticipate submitting competing proposals to the Court. Plaintiffs intend to submit their proposed orders to the Court for approval as soon as March 22, 2024, if Defendants have still not substantively engaged and made progress on this issue by that time.

28.    **Plaintiff proposes** that, in light of the number of parties and the anticipated need for expert testimony on various issues, more than ten depositions per side will be necessary. *See* Fed. R. Civ. P. 30(a)(2)(A)(i).

29.    **Defendants propose** that it is premature to evaluate the appropriate number of depositions, and that the parties should meet and confer closer to the end of fact discovery in good faith regarding the appropriate number of depositions for this case.

30.    Plaintiff does not currently anticipate that, other than Plaintiff's proposal as to the number of depositions, further modifications of the defaults established by the Federal Rules of Civil Procedure will be necessary.

31.     Defendants do not currently anticipate that modifications of the defaults established by the Federal Rules of Civil Procedure will be necessary.

32.     If circumstances change, the parties agree to work together in good faith to accommodate reasonable requests to modify these defaults to minimize the need for this Court's intervention.

## VII.   DISCOVERY DISPUTES

33.     The parties agree that discovery disputes are governed by Rule 2(G) of this Court's Individual Practices, as well as any applicable provisions of such orders regarding confidentiality, privilege, and ESI as the Court may enter.

## VIII.  CASE SCHEDULE

34.     The parties agree that discovery opened when they held their Rule 26(f) conference on February 23, 2024. The parties disagree about the appropriate scheduling and sequencing of the case.  The parties' competing scheduling proposals are as follows:

| **Case Event** | **Plaintiff's Proposed Date** | **OAI's Proposed Date** | **Microsoft's Proposed Dates** |
|---|---|---|---|
| *Discovery opens* | February 23, 2024 (Date of Rule 26 conference) | February 23, 2024 (Date of Rule 26 conference) | Phase 1 – February 23, 2024 (Date of Rule 26 conference) Phase 2 – September 17, 2024 |
| *Last day to amend pleadings and join other parties* | April 26, 2024 | June 21, 2024 | June 21, 2024 |
| *Substantial production of documents* | June 14, 2024 (for all RFPs served by February 28, 2024) | February 7, 2025 | Phase 1 – August 16, 2024 Phase 2 – March 7, 2025 |
| *Close of fact discovery* | September 17, 2024 | April 7, 2025 | Phase 1 – October 4, 2024 Phase 2 – April 7, 2025 |
| *Opening expert reports* | October 18, 2024 | May 21, 2025 | Phase 1 – October 18, 2024 Phase 2 – May 21, 2025 |
| *Responsive expert reports* | November 18, 2024 | July 9, 2025 | Phase 1 – November 18, 2024 Phase 2 – July 9, 2025 |
| *Close of expert discovery* | December 9, 2024 | August 13, 2025 | Phase 1 – December 9, 2024 Phase 2 – August 13, 2025 |
| *Deadline to file motions for summary judgment* | January 7, 2025 | September 26, 2025 | Phase 1 – January 7, 2025 Phase 2 – September 26, 2025 |
| *Deadline to oppose motions for summary judgment* | February 7, 2025 | October 27, 2025 | Phase 1 – February 7, 2025 Phase 2 – October 27, 2025 |
| *Hearing on motions for summary judgment* | Court's discretion | Court's discretion | |
| *Deadline to submit joint pretrial order pursuant to Rule 3(A) of the Court's Individual Practices* | Court's discretion | Court's discretion | |
| *Deadline to submit documents required by Rule 3(B) of the Court's Individual Practices* | Court's discretion | Court's discretion | |

| | | | |
|---|---|---|---|
| *Final pretrial conference* | Court's discretion | Court's discretion | |
| *Trial* | Court's discretion | Court's discretion | |

### A.     PLAINTIFF'S PROPOSED SCHEDULE

35.     Plaintiff proposes that this case follow the same schedule to which Defendants stipulated in *Authors Guild et al. v. OpenAI, Inc. et al.* (No. 1:23-cv-08292), *Alter et al. v. OpenAI, Inc. et al.* (No. 1:23-cv-10211), and *Basbanes et al. v. OpenAI, Inc. et al.* (No. 1:23-cv-00084) (collectively the "Consolidated Class Actions"). Plaintiff disagrees that the additional legal theories it has asserted in this case implicate a substantially broader scope of discovery than those asserted in the Consolidated Class Actions.

36.     The outputs of the GPT models at issue will be the subject of discovery in those suits because the potential for those outputs to substitute for works used to train the models bears on whether copying for that purpose is fair use. The commercialization of products based on those models will likewise be at issue in those suits for the same reason. Plaintiff's assertion in this case that producing those outputs may in some circumstances also be infringing or violate other laws does not put additional products or technology at issue.

37.     This substantial overlap in relevant discovery makes Microsoft's proposal to phase litigation of "inputs" and "outputs" claims unfeasible. Phasing discovery would also engender disputes about the phase to which particular topics of discovery pertain. Plaintiff also believes that judicial economy, the parties, and the public would benefit from addressing fair use issues as they pertain to all forms of copying with respect to all categories of works at issue in all the related generative AI cases currently pending before this Court during the same time frame.

38.     This case is also not meaningfully behind the Consolidated Class Actions. Plaintiff served requests for production on February 23rd that substantially overlap with those previously

served in the Consolidated Class Actions for which the Court has ordered the Defendants to substantially complete production by June 14, 2024. Defendants could have but chose not to serve discovery requests when discovery opened in this case. They also have not moved to stay discovery pending resolution of their partial motions to dismiss. Because Defendants' partial motions to dismiss pertain only to legal theories, such as contributory infringement, removal of copyright management information, and unfair competition, that concern products and functionality that is at issue under unchallenged claims, they do not promise to meaningfully narrow the scope of discovery if granted.

39.     It is premature to hold Plaintiffs to a substantial completion date to produce discovery in response to requests that Defendants have not yet served. But there is no reason Defendants should not produce documents responsive to the requests Plaintiffs have already served at the same time that they produce substantially the same documents in the Consolidated Class Cases.

**B.  OPENAI'S PROPOSED SCHEDULE**

40.     It is not workable to agree to the same expedited schedule as the schedule the parties recently stipulated to in the Consolidated Class Actions.  Defendants agreed to that schedule in the Consolidated Class Actions as part of a broader case administration agreement (which included, *inter alia*, stipulations as to the sequencing of class certification and summary judgment). Defendants have made no such agreement in this case.  Nor could they, as the expedited schedule for the Consolidated Class Actions is inappropriate here for a number of reasons.

41.     First, this case is very different from the Consolidated Class Actions.  In particular, Plaintiff's complaint focuses heavily on the "*outputs* of Defendants' GenAI models," and its legal claims focus on allegations that those outputs, *e.g.*, (1) constitute unauthorized reproductions, displays, or derivatives works based on Plaintiff's Works; (2) "usurp specific commercial

opportunities" in violation of New York unfair competition law; and (3) constitute trademark dilution in violation of the Lanham Act.  *See* Dkt. 1 ¶¶ 8, 163, 194, 202.  By contrast, the Consolidated Class Actions are narrowly focused on the use of works during the process for *training* GenAI models.  Indeed, the plaintiffs in the Consolidated Class Actions expressly disclaimed any output-based theories of liability.  *See* Transcript of Nov. 29, 2023 Proceedings at 14:12–23, No. 23-cv-08292, Dkt. 44 (S.D.N.Y., filed Dec. 15, 2023) (counsel conceding that "the output issue" is "not core to the prima facie proof of infringement").

42.     Moreover, the New York Times's complaint includes a number of distinct claims not at issue in the Consolidated Class Actions, including (1) a claim that Defendants are contributorily liable for acts of "direct infringement perpetrated by end-users of the GPT-based products;" (2) a claim for "Common Law Unfair Competition By Misappropriation" that focuses on model outputs referencing Plaintiff's Wirecutter feature; and (3) a claim for trademark dilution under the federal Lanham Act.  Dkt. 1 ¶¶ 179, 194, 202.  As a result of those differences, the scope of discovery in this case will differ substantially from the far narrower scope of discovery in the Consolidated Class Actions, which the parties to those cases agreed to conduct on an expedited schedule.  For example, discovery in this case will include, among other things, a rigorous examination of the methodology Plaintiff used to generate the outputs cited in the Complaint, discovery into the commercialization of products incorporating OpenAI's models, and whether GPT-based products' outputs contained Plaintiff's trademarks or attributed incorrect information to Plaintiff.  Defendants cannot be expected to conduct that broad discovery in the same expedited timeframe to which the parties to the Consolidated Class Actions stipulated is inappropriate here.

43.     Second, this case lags far behind the Consolidated Class Actions, making any suggestion that discovery should proceed within the same or any similar time frame impractical. The Consolidated Class Actions are already well into discovery following an initial conference on

November 6, 2023, *see* No. 23-cv-08292, Dkt. 31 ¶ 1 (S.D.N.Y., filed Nov. 22, 2023), and their substantive scope has been settled via a stipulation in which Defendants agreed not to file a motion to dismiss under Rule 12(b).  No. 23-cv-08292, Dkt. 56 (S.D.N.Y., filed Jan. 22, 2024).  By contrast, discovery in this case commenced only 14 days ago, and Defendants filed motions to dismiss certain claims in the operative complaint.  *See supra*.  The substantive scope of this case will not be settled until later this year (or later), once the Court resolves those motions and any subsequent motions to dismiss that Defendants file in response to any amended complaint.  Plaintiff's schedule, however, would require the parties to complete fact discovery by September 2024, regardless of whether the parties are continuing to litigate the legal merits of the pleadings at that time.

44.     Indeed, Plaintiff's schedule would have this Court order the substantial completion of document production deadline to refer to Requests for Production that were served by a date *in the past*.  Unsurprisingly, OpenAI has not yet served Requests for Production, not least because it filed a motion to dismiss that would substantially curtail the scope of discovery.  OpenAI is in the process of determining what Requests would be appropriate given the different scope and nature of The New York Times' action as compared to the Consolidated Class Actions, and expects to serve that discovery soon.  OpenAI also expects that if its motion to dismiss is denied, OpenAI will serve additional discovery.  Moreover, the parties were still discussing the scope of discovery and its limits at the time of that deadline.  Plaintiff's schedule means that Defendants are given no opportunity to serve Requests for Production such that The New York Times is required to substantially complete its production by any meaningful deadline.  This is not reasonable or workable.

45.     Finally, while Microsoft's proposal has facial appeal, it presents challenges.  In particular, the schedule risks the parties debating whether any given discovery is included in

"phase 1" or "phase 2," which will lead to disputes that will be a drain on both party and Court resources. (For example, do allegations that the models can be made, under highly artificial circumstances, to output portions of some of the material on which they were trained, and facts about the robust efforts made to prevent such misuse, relate to "phase 1" or "phase 2"?) To be clear, OpenAI intends to coordinate discovery to the extent practicable with the Consolidated Class Actions, but seeks to avoid an artificially compressed timeline or a timeline that will encourage disputes.

46.     As such, OpenAI proposes the schedule above, which would allow this Court to apply the fair use doctrine in the first instance to the Consolidated Class Actions. In the meantime, the parties in this case can develop a factual record so that the Court can subsequently apply its fair use analysis to the distinct facts of this case, as appropriate.

## C.     MICROSOFT'S PROPOSED SCHEDULE

47.     Microsoft agrees with OpenAI that it is unworkable for The New York Times to seek to adopt the expedited schedule to which the parties agreed in the Consolidated Class Actions. As The Times itself acknowledged in opposing the California Plaintiffs' motions to intervene and dismiss, the claims in this case go beyond the training of OpenAI's models to include "additional forms of direct copyright infringement, including based on how [Microsoft's and OpenAI's] artificial intelligence products generate infringing output in response to user prompts." ECF 59 at 16. The scope of this case is significantly broader both factually – in challenging an entire suite of Microsoft products not at issue in the Consolidated Class Actions – and legally, as well, since The Times posits a number of legal theories not at issue in the Consolidated Class Actions.

48.     This material difference is particularly significant for Microsoft because additional Microsoft products are at issue in this case that are not at issue in the Consolidated Class Actions. Consequently, this case will require additional discovery, including, *inter alia*, discovery into the

commercialization of Microsoft products not at issue in the Consolidated Class Actions, and into subjects such whether GPT-based products' outputs contained Plaintiff's trademarks or attributed incorrect information to Plaintiff.   Both the different claims alleged and the additional discovery required in this case render the Consolidated Class Actions schedule untenable here.

49.     Microsoft also recognizes, however, that this case and the Consolidated Class Actions have some overlapping factual and legal issues related to the training of OAI's models and the fundamental proposition whether using copyrighted material to train an AI model is a fair use.  That question will be resolved on the expedited schedule in the Consolidated Class Actions entered by the Court pursuant to the parties' stipulation and joint request.  Accordingly, there may be significant benefit to the Court and the parties to coordinate discovery between the Consolidated Class Actions and The Times's case with respect to that issue and to hear summary judgment on that issue at the same time as the summary judgment on fair use in the Consolidated Class Actions. Coordinating discovery and summary judgment briefing on that issue would also have the benefit of giving the Court time to rule on the pending motions to dismiss filed by all Defendants in this case, and for the parties to consider the proper scope of additional discovery in light of whatever claims remain after the Court resolves those motions.  Accordingly, Microsoft proposes that the Court sequence the case into two phases, the first phase to address the issues pertaining to whether training OAI's models is a fair use of copyright on the schedule proposed by The Times (and aligned with the Consolidated Class Actions schedule), and the second phase to address the remainder of The Times's claims on the schedule outlined by OAI.  A chart setting forth the parties' respective proposals is inserted below.

Dated: March 8, 2024                              / Ian Crosby_____
                                                  Ian Crosby (admitted pro hac vice)
                                                  Genevieve V. Wallace (admitted pro hac vice)
                                                  SUSMAN GODFREY L.L.P.
                                                  401 Union Street, Suite 3000

Seattle, WA 98101
Telephone: (206) 516-3880
Facsimile: (206) 516-3883
icrosby@susmangodfrey.com
gwallace@susmangodfrey.com

Davida Brook *(admitted  pro hac vice)*
Emily K. Cronin (*admitted pro hac vice*)
Ellie Dupler *(admitted pro hac vice)*
SUSMAN GODFREY L.L.P.
1900 Ave of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
dbrook@susmangodfrey.com
ecronin@susmangodfrey.com
edupler@susmangodfrey.com

Elisha Barron (5036850)
Tamar Lusztig (5125174)
Alexander Frawley (5564539)
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (212) 336-8330
Facsimile: (212) 336-8340
ebarron@susmangodfrey.com
tlusztig@susmangodfrey.com
afrawley@susmangodrey.com

Steven Lieberman (SL8687)
Jennifer B. Maisel (5096995)
Kristen J. Logan *(admitted pro hac vice)*
ROTHWELL, FIGG, ERNST & MANBECK, P.C.
901 New York Avenue, N.W., Suite 900 East
Washington, DC 20001
Telephone:  (202 783-6040
Facsimile: (202) 783 6031
slieberman@rothwellfigg.com
jmaisel@rothwellfigg.com
klogan@rothwellfigg.com

*Attorneys for Plaintiff*
*The New York Times Company*

Dated:        March 8, 2024                MORRISON & FOERSTER LLP


By:  *Allyson R. Bennett*
Joseph C. Gratz (admitted *Pro Hac Vice*)
JGratz@mofo.com
Vera Ranieri (admitted *Pro Hac Vice*)
VRanieri@mofo.com
425 Market Street
San Francisco, CA  94105-2482
Telephone:  415.268.7000
Facsimile:  415.268.7522

Allyson R. Bennett (admitted *Pro Hac Vice*)
ABennett@mofo.com
Rose Lee (admitted *Pro Hac Vice*)
roselee@mofocom
707 Wilshire Boulevard
Los Angeles, CA 90017
Telephone: 213.892.5200
Facsimile: 213.892.5454

*Attorneys for Defendants*
OPENAI, INC., OPENAI GP, LLC, OPENAI,
LLC, OPENAI OPCO LLC, OPENAI GLOBAL
LCC, OAI CORPORATION, LLC, and OPENAI
HOLDINGS, LLC

Dated:        March 8, 2024                LATHAM & WATKINS LLP

By:   *Andrew Gass*
_____

Andrew Gass (admitted *Pro Hac Vice*)
andrew.gass@lw.com
Joseph R. Wetzel, Jr.
joe.wetzel@lw.com
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: 415.391.0600
Facsimile: 415.395.8095

Sarang Damle
sy.damle@lw.com
555 Eleventh Street NW
Suite 1000
Washington, DC 20004
Telephone: 202.637.2200
Facsimile: 202.637.2201

Allison Levine Stillman
alli.stillman@lw.com
Luke Budiardjo
luke.budiardjo@lw.com
1271 Avenue of the Americas
New York, NY 10020
Telephone: 212.906.1200
Facsimile: 212.751.4864

*Attorneys for Defendants*
OPENAI, INC., OPENAI GP, LLC,
OPENAI, LLC, OPENAI OPCO LLC,
OPENAI GLOBAL LCC, OAI
CORPORATION, LLC, and OPENAI
HOLDINGS, LLC

Dated:   March 8, 2024   By:   _Annette L. Hurst_

ORRICK, HERRINGTON & SUTCLIFFE LLP
Annette L. Hurst (admitted *pro hac vice*)
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
Telephone:  (415) 773-5700
Facsimile:  (415) 773-5759
ahurst@orrick.com

Christopher J. Cariello
51 West 52nd Street
New York, NY 10019
Telephone: (212) 506-3778
Facsimile: (212) 506-5151
ccariello@orrick.com

FAEGRE DRINKER BIDDLE & REATH LLP
Jeffrey S. Jacobson
1177 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 248-3191
jeffrey.jacobson@faegredrinker.com

Jared B. Briant (admitted *pro hac vice*)
1144 15th Street, Suite 3400
Denver, Colorado 80202
Telephone: (303) 607-3588
jared.briant@faegredrinker.com

*Attorneys for Defendant*
*Microsoft Corporation*

## CERTIFICATE OF SERVICE

I hereby certify this 8th day of March, 2024, I caused a true and correct copy of the foregoing to be electronically filed with the Clerk of the court using the CM/ECF system which will send notification to the attorneys of record and is available for viewing and downloading.


*/s/ Ian Crosby*
Ian Crosby