UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE NEW YORK TIMES COMPANY,<br><br>                  Plaintiff,<br><br>    v.<br><br>MICROSOFT CORPORATION, OPENAI, INC., OPENAI LP, OPENAI GP, LLC, OPENAI, LLC, OPENAI OPCO LLC, OPENAI GLOBAL LLC, OAI CORPORATION, LLC, OPENAI HOLDINGS, LLC,<br><br>                        Defendants. | Case No. 1:23-cv-11195 (SHS) (OTW)<br><br>**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF OPENAI DEFENDANTS' MOTION TO DISMISS**<br><br>ORAL ARGUMENT REQUESTED |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT .................................................................................................................. 2

    A. The Times cannot sue for conduct occurring outside the limitations period ................................................................................................... 2

    B. The Times misconstrues the "knowledge" requirement for contributory liability .............................................................................................. 3

    C. The DMCA claim fails for multiple reasons ........................................................... 6

    D. The "Misappropriation" claim is preempted ............................................................ 9

III. CONCLUSION ............................................................................................................. 10

## **TABLE OF AUTHORITIES**

Page(s)

**CASES**

*A&M Records, Inc. v. Napster, Inc.*,
  239 F.3d 1004 (9th Cir. 2001) ................................................................................................ 5, 6

*A'Lor Int'l, Ltd. v. Tapper Fine Jewelry, Inc.*,
  2012 WL 12921035 (C.D. Cal. Aug. 8, 2012) ............................................................................ 9

*Agence France Presse v. Morel*,
  769 F. Supp. 2d 295 (S.D.N.Y. 2011) ........................................................................................ 7

*Arista Recs. LLC v. Usenet.com, Inc.*,
  633 F. Supp. 2d 124 (S.D.N.Y. 2009) .................................................................................... 5, 6

*Arista Recs., Inc. v. Mp3Board, Inc.*,
  2002 WL 1997918 (S.D.N.Y. Aug. 29, 2002) ............................................................................ 5

*Arista Recs., LLC v. Doe 3*,
  604 F.3d 110 (2d Cir. 2010) ....................................................................................................... 5

*BanxCorp v. Costco Wholesale Corp.*,
  723 F. Supp. 2d 596 (S.D.N.Y. 2010) ........................................................................................ 7

*Barclays Cap. Inc. v. Theflyonthewall.com, Inc.*,
  650 F.3d 876 (2d Cir. 2011) ..................................................................................................... 10

*BMG Rts. Mgmt. (US) LLC v. Cox Commc'ns, Inc.*,
  881 F.3d 293 (4th Cir. 2018) .................................................................................................. 3, 4

*Capitol Recs., LLC v. ReDigi Inc.*,
  934 F. Supp. 2d 640 (S.D.N.Y. 2013) ........................................................................................ 5

*Commil USA, LLC v. Cisco Sys., Inc.*,
  575 U.S. 632 (2015) ................................................................................................................ 3, 4

*DBW Partners, LLC v. Mkt. Sec., LLC*,
  2023 WL 2610498 (D.D.C. Mar. 23, 2023) ............................................................................. 10

*Dodds v. Cigna Sec., Inc.*,
  12 F.3d 346 (2d Cir. 1993) ......................................................................................................... 2

*Doe 1 v. GitHub*,
  2024 WL 235217 (N.D. Cal. Jan. 22, 2024) ............................................................................... 9

*Fin. Info., Inc. v. Moody's Inv. Serv., Inc.*,
  808 F.2d 204 (2d Cir. 1986) ..................................................................................................... 10

Page(s)

*Fox News Network, LLC v. TVEyes, Inc.*,
  43 F. Supp. 3d 379 (S.D.N.Y. 2014) .................................................................................. 10

*GC2 Inc. v. Int'l Game Tech. PLC*,
  255 F. Supp. 3d 812 (N.D. Ill. 2017) ..................................................................................... 7

*Global-Tech Appliances, Inc. v. SEB S.A.*,
  563 U.S. 754 (2011) ............................................................................................... 3, 4, 5 6

*Hartmann v. Popcornflix.com LLC*,
  2023 WL 5715222 (S.D.N.Y. Sept. 5, 2023) ..................................................................... 4, 6

*Hirsch v. CBS Broad.*,
  2017 WL 3393845 (S.D.N.Y. Aug. 4, 2017) .......................................................................... 8

*Hirsch v. Rehs Galleries*,
  2020 WL 917213 (S.D.N.Y. Feb. 26, 2020) ........................................................................... 2

*Janik v. SMG Media, Inc.*,
  2018 WL 345111 (S.D.N.Y. Jan. 10, 2018) ........................................................................... 7

*Lefkowitz v. John Wiley & Sons, Inc.*,
  2014 WL 2619815 (S.D.N.Y. June 2, 2014) .......................................................................... 4

*Lopes v. Mellon Inv. Serv. LLC*,
  2007 WL 4258189 (S.D.N.Y. Dec. 3, 2007) .......................................................................... 6

*Lopez v. Bonanza.com, Inc.*,
  2019 WL 5199431 (S.D.N.Y. Sept. 30, 2019) ........................................................................ 6

*Luvdarts, LLC v. AT&T Mobility, LLC*,
  710 F.3d 1068 (9th Cir. 2013) ........................................................................................... 4, 6

*McGlynn v. Sinovision Inc.*,
  2024 WL 643021 (S.D.N.Y. Feb. 15, 2024) ........................................................................... 2

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
  545 U.S. 913 (2005) ............................................................................................................... 4

*Miller v. Netventure24 LLC*,
  2021 WL 3934262 (S.D.N.Y. Aug. 6, 2021) .......................................................................... 9

*Minden Pictures, Inc. v. Buzzfeed, Inc.*,
  390 F. Supp. 3d 461 (S.D.N.Y. 2019) .................................................................................... 3

*New York Times Co. v. Roxbury Data Interface, Inc.*,
  434 F. Supp. 217 (D.N.J. 1977) ............................................................................................. 3

Page(s)

*Olusola v. Don Coqui Holding Co., LLC*,
    2021 WL 631031 (E.D.N.Y. Feb. 18, 2021) .............................................................................. 9

*Parisienne v. Scripps Media, Inc.*,
    2021 WL 3668084 (S.D.N.Y. Aug. 17, 2021) ..................................................................... 2, 3

*Perfect 10, Inc. v. Amazon.com, Inc.*,
    508 F.3d 1146 (9th Cir. 2007) .............................................................................................. 9

*Pers. Keepsakes, Inc. v. Personalizationmall.com, Inc.*,
    2012 WL 414803 (N.D. Ill. Feb. 8, 2012) ............................................................................. 7

*PK Music Performance, Inc. v. Timberlake*,
    2018 WL 4759737 (S.D.N.Y. Sept. 30, 2018) ...................................................................... 2

*Reilly v. Plot Com.*,
    2016 WL 6837895 (S.D.N.Y. Oct. 31, 2016) ........................................................................ 9

*Rosen v. Amazon.com, Inc.*,
    2014 WL 12597073 (C.D. Cal. May 28, 2014) ..................................................................... 6

*Shihab v. Complex Media, Inc.*,
    2022 WL 3544149 (S.D.N.Y. Aug. 17, 2022) ....................................................................... 8

Snail Games USA Inc. v. Tencent Cloud LLC,
    2022 WL 3575425 (C.D. Cal. June 6, 2022) ......................................................................... 6

*Staehr v. Hartford Fin. Servs. Grp., Inc.*,
    547 F.3d 406 (2d Cir. 2008) .................................................................................................. 2

*State St. Glob. Advisors Tr. Co. v. Visbal*,
    431 F. Supp. 3d 322 (S.D.N.Y. 2020) ............................................................................... 4, 6

*Tremblay v. OpenAI, Inc.*,
    2024 WL 557720 (N.D. Cal. Feb. 12, 2024) ..................................................................... 7, 9

*Wolk v. Kodak Imaging Network, Inc.*,
    840 F. Supp. 2d 724 (S.D.N.Y. 2012) ................................................................................... 6

*Wood v. Observer Holdings, LLC*,
    2021 WL 2874100 (S.D.N.Y. July 8, 2021) .......................................................................... 7

*Y.Y.G.M. SA v. Redbubble, Inc.*,
    75 F.4th 995 (9th Cir. 2023) .................................................................................................. 5

**STATUTES**

17 U.S.C. § 1202(b) ....................................................................................................................... 8

Page(s)

17 U.S.C. § 1202(c) ................................................................................................................. 6, 8

17 U.S.C. § 1203(a) ..................................................................................................................... 9

## OTHER AUTHORITIES

Cade Metz, *Meet GPT-3.  It Has Learned to Code (and Blog and Argue)*, N.Y.
  Times (Nov. 24, 2020),
  https://www.nytimes.com/2020/11/24/science/artificial-intelligence-ai-
  gpt3.html ................................................................................................................................ 2

Jason Koebler, *NYTimes Files Copyright Takedown Against Hundreds of Wordle
  Clones*, 404 Media (Mar. 7, 2024, 4:45 PM),
  https://www.404media.co/nytimes-files-copyright-takedowns-against-
  hundreds-of-wordle-clones/ .................................................................................................... 3

Melanie Pinola & Kaitlyn Wells, *The Best Office Chair*, N.Y. Times (Feb. 21,
  2024), https://www.nytimes.com/wirecutter/reviews/best-office-chair/ ................................ 10

**I.       INTRODUCTION**

The New York Times has changed its story.  No longer is this case about a fundamental threat to journalism itself, on the mistaken premise that access to Times articles through ChatGPT will drive readers to cancel subscriptions in droves or imperil the newspaper's very existence.  *Cf.* Compl. ¶¶ 1, 5, 47, Ex. J.  Now that OpenAI has highlighted the falsity of that core narrative in the Complaint, the Times has charted a new course.

What the Times's opposition belatedly clarifies is that this case is fundamentally about *inputs* and not *outputs*.  The focus now is on the use of some Times articles among billions of other texts and trillions of other words to train OpenAI's large language models.  This "lead claim" about *inputs* runs headlong into decades of case law affirming that it is lawful to use pre-existing content in the service of creating a new technology for a new and different service.  Dkt. 73 at 1 ("Opp.").

The Times explains its backtracking by saying that its allegations regarding the appearance of passages from Times articles in ChatGPT outputs were just part of an "investigation" into what content was used to train OpenAI's model.  *Id*.  But as OpenAI explained in its opening brief, none of that was a secret that required any kind of investigation at all.  The Times's own Complaint in fact cites to a 2019 publication by OpenAI saying as much.  Compl. ¶ 85 & n. 14–17.  For this reason, OpenAI respectfully requests that the Court grant the present motion to enforce the statute of limitations with respect to that stale and long-known conduct.

The Times's arguments with respect to the other counts fare no better.  The sensible path for this litigation is to follow the lead of other courts that have considered and dismissed similar claims, and to trim the facially infirm legal theories from the suit at the outset.  That way, the parties can focus their attention on the core issue—that using publicly available information to extract uncopyrightable ideas and facts about language and the world to create a large language

1

model that powers transformative generative artificial intelligence is a quintessential fair use under longstanding copyright doctrine.

## II.   ARGUMENT

### A.   The Times cannot sue for conduct occurring outside the limitations period

In response to OpenAI's statute of limitations argument, *see* Mot. at 15, the Times invokes the "discovery rule." *See Hirsch v. Rehs Galleries,* 2020 WL 917213, at *4 (S.D.N.Y. Feb. 26, 2020). While plaintiffs do not have a "general duty to police the internet," *see* Opp. at 7–8, the discovery rule imposes a "duty of inquiry" once the relevant "circumstances would suggest" that a violation has occurred, *Dodds v. Cigna Sec., Inc.*, 12 F.3d 346, 350 (2d Cir. 1993). Even a "mere hunch, hint, suspicion, or rumor of a claim" can "give rise to [the] duty to inquire." *Parisienne v. Scripps Media, Inc.*, 2021 WL 3668084, at *4 (S.D.N.Y. Aug. 17, 2021).

The Times cites a number of cases in which courts held that mere allegations that the defendant's work was published are insufficient, absent some reason to believe that the plaintiff was *actually* on inquiry notice of the claim.[1] Here, however, the Times itself reported in November 2020 that OpenAI trained its models by "analyzing . . . nearly a trillion words posted to blogs, social media and the rest of the internet."[2] There is no "factual dispute" here: everyone agrees *that the Times itself said this*. *Contra* Opp. at 7–8. That alone was enough to raise a "suspicion" and "awaken inquiry" into the matter. *Parisienne*, 2021 WL 3668084, at *3–4. And even a cursory investigation would have uncovered public documents[3] stating that the "NYTimes" was one of the

---

[1] *PK Music Performance, Inc. v. Timberlake*, 2018 WL 4759737, at *8–9 (S.D.N.Y. Sept. 30, 2018) (no duty to "scour" music releases); *McGlynn v. Sinovision Inc.*, 2024 WL 643021, at *1–2 (S.D.N.Y. Feb. 15, 2024) (no duty to monitor all websites); *Hirsch*, 2020 WL 917213, at *5 (same); *Parisienne*, 2021 WL 3668084, at *3 (same).

[2] Cade Metz, *Meet GPT-3. It Has Learned to Code (and Blog and Argue)*, N.Y. Times (Nov. 24, 2020), https://www.nytimes.com/2020/11/24/science/artificial-intelligence-ai-gpt3.html. The Times suggests that OpenAI may not rely on its articles, Opp. at 7 n.2, but does not dispute their authenticity. In any case, courts "take judicial notice of the *fact* [of] press coverage . . . [to] decid[e] whether so-called 'storm warnings' were adequate to trigger inquiry notice." *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008).

[3] The Times concedes these sources were incorporated into the Complaint. Opp. at 7 n.2; *id.* at 13 (relying on same).

2

"top 15 domains by volume" in OpenAI's training data. GPT-2 Model Card (Nov. 2019); Mot. at 5–8.[4] As a sophisticated publisher that vigorously enforces its rights both through litigation and other means,[5] the Times had a duty to take prompt action after being put on notice of what it now claims to be alleged infringement. *See Minden Pictures, Inc. v. Buzzfeed, Inc.*, 390 F. Supp. 3d 461, 467 (S.D.N.Y. 2019) (considering plaintiff's relative sophistication and enforcement history). Because it failed to do so, the statutory time limit bars the Times from pursuing those stale claims.

### B. The Times misconstrues the "knowledge" requirement for contributory liability

The Times misapprehends the law of contributory liability in two respects. The first relates to the requisite *degree* of alleged knowledge. According to the Times, the law requires only allegations that the defendant "should have known" it was facilitating infringement. Opp. at 10. But the Times overlooks the Supreme Court's rulings in *Global–Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754 (2011) and *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632 (2015), which held that (1) "contributory infringement cannot be based on a finding that a defendant 'should have known' of infringement," and (2) either "actual knowledge" or "willful blindness" is required. *BMG Rts. Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 881 F.3d 293, 308–09 & n.5 (4th Cir. 2018) (summarizing cases). Those Supreme Court rulings apply with full force in copyright cases. *Id.* at 309 & n.5 ("*Global-Tech*'s rejection of any mental state lower than willful blindness cannot be limited to patent law"); *see also* Mot. at 15. As such, they abrogated the cases the Times cites for its "should have known" standard, which each predated *Global-Tech* and *Commil*. Opp. at 9–14.

The Times's second error relates to the *specificity* of alleged knowledge: according to the

---

[4] These disclosures need not have "reveal[ed] the full scope of Defendants' conduct," *contra* Opp. at 8, because "[a] plaintiff need not know every permutation of their injury" to be on "notice," *Parisienne*, 2021 WL 3668084, at *4.

[5] Compl. ¶ 49 (discussing enforcement); Jason Koebler, *NYTimes Files Copyright Takedown Against Hundreds of Wordle Clones*, 404 Media (Mar. 7, 2024, 4:45 PM), https://www.404media.co/nytimes-files-copyright-takedowns-against-hundreds-of-wordle-clones/; *New York Times Co. v. Roxbury Data Interface, Inc.*, 434 F. Supp. 217, 221–24 (D.N.J. 1977) (denying Times's motion for preliminary injunction against research tool after finding of fair use); Compl., *The New York Times Company v. Powerhouse Books, et al.*, No. 15-cv-09706 (S.D.N.Y., filed Dec. 11, 2015).

Times, it suffices to plead that a defendant was *generally* aware that some users might use its service to infringe some (unspecified) copyrighted work. Opp. at 10–13. Again, the Times ignores dispositive precedent: in *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, the Supreme Court explained that courts may not "presum[e] or imput[e] intent . . . solely from the design or distribution of a product capable of substantial lawful use"—even if the product's manufacturer "**knows [it] is in fact used for infringement**."[6] That rule serves a critical role: by "limit[ing] liability to instances of more acute fault than the mere understanding that some of one's products will be misused," it "leaves breathing room for innovation and vigorous commerce." *Id*. Ignoring it would impose unprecedented liability on any manufacturer that sells a product or offers a service that could be used to facilitate infringement downstream, alongside non-infringing uses.[7]

For these reasons, every court to analyze the question has held that the law requires either "actual knowledge" or "willful blindness" of *specific* infringing activity.[8] Mot. at 16 (discussing *Luvdarts* and *BMG*). Indeed, every court in this district to analyze the issue has agreed. *See, e.g., Lefkowitz v. John Wiley & Sons, Inc.*, 2014 WL 2619815, at *11 (S.D.N.Y. June 2, 2014) (analyzing issue in light of *Grokster* and holding that "general awareness that third parties allegedly infringed" was "not sufficient"); *see also* Mot. at 16 n.35 (citing other cases).[9]

The Times's opposition ignores OpenAI's discussion of *Grokster*, *Global-Tech*, and *Commil*, and attempts to distinguish *BMG* and *Luvdarts* by pointing to factual differences irrelevant to the core legal question discussed. Opp. at 14 n.6. It also points to off-hand statements

---

[6] 545 U.S. 913, 932–33 (2005) (emphasis added) (citation omitted).

[7] *Grokster*, 545 U.S. at 957–58 (Breyer, J., concurring) (rule "shelters VCRs, typewriters, tape recorders, photocopiers, computers, . . . [and] Internet search engines," all of which could be used to infringe copyright).

[8] *See, e.g., BMG*, 881 F.3d at 308; *Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1072–73 (9th Cir. 2013).

[9] The Times ignores Judge Failla's analysis of this issue in *Lefkowitz*, and brushes off OpenAI's other cases by focusing on stray references to the words "should have known" or "constructive," *see* Opp. at 14 n.5, while entirely overlooking those courts' careful explanations that "generalized knowledge by the defendant of the possibility of infringement" does not suffice, *see, e.g., State St. Glob. Advisors Tr. Co. v. Visbal*, 431 F. Supp. 3d 322, 358 (S.D.N.Y. 2020); *see also Hartmann v. Popcornflix.com LLC*, 2023 WL 5715222, at *6 (S.D.N.Y. Sept. 5, 2023) (similar).

made in opinions that did not grapple with the degree or specificity of the requisite knowledge. Its only Second Circuit authority is an opinion that pre-dates *Global-Tech* and states, in a paragraph summarizing general copyright principles, that a defendant who has "reason to know" of infringement can be contributorily liable. *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 118 (2d Cir. 2010). But that was dictum: the *Doe 3* case had nothing to do with contributory liability. *Id.* And even if it were binding, the "reason to know" phrasing corresponds to a willful blindness standard,[10] which requires more than an allegation that the defendant "should have known," *see infra* 6. Regardless, the panel's only support for this statement were decisions holding that "actual, *specific* knowledge of direct infringement"—or willful blindness to the same—is required.[11] The Times's other cases are equally unavailing.[12] The Opposition does not not identify a single case in which a court has analyzed the issue and concluded that an allegation that the defendant "should have known" of the general possibility of infringement states a contributory liability claim.

Measured against the proper standard, the Complaint does not allege that OpenAI had the requisite knowledge. Mot. at 15–17. The Times points to (1) its allegation that there were "many" "highly publicized" examples of "infringement after ChatGPT . . . [was] released," (2) statements suggesting that a former board member raised (unspecified) "copyright issues," and (3) OpenAI's general awareness of the phenomenon of training data regurgitation. Opp. at 10–13. None of these

---

[10] *Y.Y.G.M. SA v. Redbubble, Inc.*, 75 F.4th 995, 1001 (9th Cir. 2023).

[11] *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1021–22 (9th Cir. 2001) (emphasis added); *see also id.* (defendant cannot be liable "merely because the . . . system allows for the exchange of copyrighted material," relying instead on "*actual* knowledge that *specific* infringing material is available" (emphasis in original)).

[12] In each case, courts found the knowledge requirement satisfied based on clear and undisputed evidence of actual knowledge of or willful blindness to specific, identifiable infringements—without any discussion of whether negligence or generalized knowledge of infringement would have sufficed. *See Arista Recs. LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 132–33 (S.D.N.Y. 2009) (defendant published "[web]pages devoted to [specific] artists" and "expressly promoted the availability of 'FREE MUSIC'"); *Capitol Recs., LLC v. ReDigi Inc.*, 934 F. Supp. 2d 640, 645–46 (S.D.N.Y. 2013) (defendant operated a "marketplace" of "digital music files" and provided "thirty-second clips," "album cover art," and other "promotional material"); *Arista Recs., Inc. v. Mp3Board, Inc.*, 2002 WL 1997918, at *1, 7–8 (S.D.N.Y. Aug. 29, 2002) (defendant knew of filenames like "SUPERiLLEGAL MP3z" and its staff "personally searched for links to songs and posted" them in response to "requests").

allegations relate to ChatGPT users creating *copies of Times articles*. At best, they suggest "generalized knowledge . . . of the possibility of infringement," which is not enough. *Visbal*, 431 F. Supp. 3d at 358. And the Times's allegation that it "told" OpenAI "that its products were contributing to copyright infringement" is equally irrelevant, Opp. at 11–12, because nothing in the Complaint suggests that it notified OpenAI of any *specific* instances of infringement, much less specific infringements of the works in suit, as the law requires. Numerous cases hold that such allegations are insufficient to state a claim.[13] The Times cites no contrary authority.[14]

As a final effort to save this claim, the Times argues in a footnote that its "allegations suggest willful blindness." Opp. at 14 n.6. But that requires that the defendant took "deliberate actions to avoid learning of" the infringement. *Global-Tech*, 563 U.S. at 769 (distinguishing willful blindness from lower "recklessness" standard). There are no such allegations here. The Times also urges this Court to overlook these failures in the hope that discovery will reveal the factual basis its complaint lacks. Opp. at 11. But a plaintiff "has no right to obtain discovery on a claim that he has not adequately pled." *Lopes v. Mellon Inv. Serv. LLC*, 2007 WL 4258189, at *7 (S.D.N.Y. Dec. 3, 2007). The cited cases do not suggest otherwise.[15]

C. The DMCA claim fails for multiple reasons

*The Times failed to specify any valid CMI.* The Times insists that the "specific location" of its copyright notice and hyperlinks to its terms of service are irrelevant to whether they were

---

[13] *See Luvdarts*, 710 F.3d at 1072–73 ("150–page–long lists of titles" that did not "identify which . . . were infringed, who infringed them, or when" were "indistinguishable from a generalized notification that infringement is occurring"); *Lopez v. Bonanza.com, Inc.*, 2019 WL 5199431, at *25 (S.D.N.Y. Sept. 30, 2019) (same); *Wolk v. Kodak Imaging Network, Inc.*, 840 F. Supp. 2d 724, 746–47, 751 (S.D.N.Y. 2012) (same).

[14] *See* Opp. at 12. *Napster* simply recognized that letters identifying "*specific* infringing material" would suffice to establish actual knowledge. 239 F.3d at 1021 (emphasis added); *see also Arista*, 633 F. Supp. 2d at 155 (same); *Hartmann*, 2023 WL 5715222, at *6 (same). These cases do not suggest that a letter "rais[ing] intellectual property concerns" without identifying specific infringements is enough. Compl. ¶ 54; *supra* note 13.

[15] *See Snail Games USA Inc. v. Tencent Cloud LLC*, 2022 WL 3575425, at *1–2, 5 (C.D. Cal. June 6, 2022) (claim adequately stated because notice "informed defendant of [specific] infringement"); *Rosen v. Amazon.com, Inc.*, 2014 WL 12597073, at *1–2 (C.D. Cal. May 28, 2014) (same).

"conveyed in connection with" its articles as the DMCA requires. Opp. at 16; 17 U.S.C. § 1202(c). But the Times ignores *Wood v. Observer Holdings, LLC*, in which Judge Stanton explained that the "Terms and copyright notice" on a website "do not constitute CMI" because they require users to navigate to a "separate website." 2021 WL 2874100, at *6 (S.D.N.Y. July 8, 2021).[16] Nor does it contend with cases demanding "more than a boilerplate . . . notice near a copyrighted work" before finding that the CMI was conveyed "in connection with" it. *GC2*, 255 F. Supp. 3d at 821.[17]

*The Times has not alleged CMI was removed from datasets.* As OpenAI explained in its motion, while the Complaint is replete with conclusory assertions that OpenAI "removed [t]he Times's [CMI]," it lacks alleged facts suggesting that this removal actually occurred—*i.e.*, the same flaw that provided a basis for dismissal in *Tremblay v. OpenAI, Inc.*, 2024 WL 557720, at *4 (N.D. Cal. Feb. 12, 2024). *See* Mot. at 18–20. The Times's only response is to argue that "[t]he omission of CMI in [the Complaint's] outputs suggests that CMI was removed during the training process; otherwise the models would have outputted all CMI as well." Opp. at 16–17.

That makes no sense. The Times acknowledges that the parts of its articles that OpenAI's services reproduced "contain[] no information that could qualify as CMI." Mot. at 21; Opp. at 19. That OpenAI's models did not *insert* CMI into these excerpts after being manipulated into reproducing them does not support the Times's conclusory allegation that OpenAI scrubbed or otherwise "removed" CMI from its datasets.

The Times also insists it has adequately pleaded that OpenAI's supposed removal of CMI

---

[16] *See GC2 Inc. v. Int'l Game Tech. PLC*, 255 F. Supp. 3d 812, 821–22 (N.D. Ill. 2017) (allegation that website "has a link at the bottom of the page . . . to [the] terms of use" was insufficient); *see also* Mot. at 18 n.39 (citing cases).

[17] *See also Pers. Keepsakes, Inc. v. Personalizationmall.com, Inc.*, 2012 WL 414803, at *7 (N.D. Ill. Feb. 8, 2012) (notices "not close" to the work were not CMI; noting that rule "prevents a 'gotcha' system where a . . . piece of text has no CMI near it but the plaintiff relies on a general copyright notice buried elsewhere on the website"). The Times's authorities are inapposite. *See Janik v. SMG Media, Inc*., 2018 WL 345111, at *12–13 (S.D.N.Y. Jan. 10, 2018) (plaintiff provided "contact sheet" along with photograph); *Agence France Presse v. Morel*, 769 F. Supp. 2d 295, 305 (S.D.N.Y. 2011) (CMI appeared "next to the [works]"); *BanxCorp v. Costco Wholesale Corp*., 723 F. Supp. 2d 596, 610 (S.D.N.Y. 2010) (discussing CMI claim without discussing "conveyed with" requirement).

from training datasets was committed with "reasonable grounds to know[] that it will induce, enable, facilitate, or conceal" OpenAI's use of Times articles as training data. 17 U.S.C. § 1202(b); Opp. at 18–19.  But the Times makes no attempt to explain how that "conceal[ment]" would operate, or to reconcile this assertion with the examples of OpenAI's services candidly disclosing that the text provided in outputs was published by "The New York Times." *See, e.g.*, Compl. ¶ 104.  As the Times's own cases establish, pleading a CMI claim requires a plaintiff to "plausibly allege[]" facts that would support a reasonable inference that the defendant intended to facilitate or conceal infringement.[18]  The failure to do so here warrants dismissal by itself.

*The Times has not alleged CMI was removed from outputs.*  The Times's other CMI claim alleged that OpenAI "removed" the Times's "copyright notices" from the "outputs of [its] models" that contain text from Times articles.  Compl. ¶ 187 (emphasis added).  But here again, the actual excerpted text fragments that ChatGPT produced never contained any CMI, even in their original form.  Mot. at 21.  The text of the second "paragraph" of the Times's 2012 *Snow Fall* article, for example, does not include a "copyright notice[]" or anything else that fits the statutory definition of CMI, *see* Compl. ¶¶ 104, 187; 17 U.S.C. § 1202(c).  So when the Times asked ChatGPT to reproduce it, ChatGPT's obliging response *also* did not include any CMI.  Compl. ¶ 104.  Put simply, OpenAI could not have "removed" CMI from the paragraph because there was no CMI to remove.  The Times's only response—that "the relevant text here refers to the articles that GPT-4 memorized [*i.e.*, the input], not the memorized output itself"—is just misdirection.  Opp. at 19.  Clearly the relevant text for a claim "based on outputs" is the output, not the input.  *Id.*

OpenAI also cited cases establishing that the DMCA requires an affirmative act of

---

[18] *Shihab v. Complex Media, Inc.*, 2022 WL 3544149, at *5 (S.D.N.Y. Aug. 17, 2022) ("reasonable to infer" scienter based on surreptitious "removal of . . . watermarks from [] Photographs"); *Hirsch v. CBS Broad.*, 2017 WL 3393845, at *1, 8 (S.D.N.Y. Aug. 4, 2017) (where TV show used plaintiff's photograph, defendant's decision to "crop[] out" the plaintiff's "gutter credit" "supplie[d] a fair basis on which to infer" scienter).

8

"removal" rather than a mere "omission[]," and that omission of CMI from AI outputs that are "not identical" to the originals is insufficient.[19]  The Times simply ignores these authorities. Similarly, OpenAI cited cases explaining that the *display* of outputs does not constitute a "distribution" in this context.  Mot. at 20 & n.45.  And again, the Times ignores those cases, and instead cites a case unrelated to CMI, *see Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007), along with a case that does not address the display-vs.-distribution distinction at all, *see Reilly v. Plot Com.*, 2016 WL 6837895, at *11 (S.D.N.Y. Oct. 31, 2016) (addressing posting of image on public website, not user interface like ChatGPT).

*The Times has not alleged it was "injured" by the alleged CMI violation.*  Finally, the Times contends that it alleged an "injury" sufficient to confer statutory standing under 17 U.S.C. § 1203(a) because the outputs cited in its complaint allegedly create the "false impression" that OpenAI "has the right to distribute" these articles, and may make it "easier for [] potential infringers" to copy its articles.  Opp. at 20–21.  But neither of these harms is alleged in the Complaint.  *See* Compl. ¶¶ 154–57.  In the alternative, the Times then suggests that it has standing notwithstanding the complete absence of alleged "injury."  Opp. at 21.  But the language of 17 U.S.C. § 1203(a) forecloses that contention, and no case suggests otherwise.[20]

D.   The "Misappropriation" claim is preempted

The Times now asserts that its misappropriation claim is based on the alleged dissemination of "time-sensitive" "breaking news content."  Opp. at 22–24 & n.10.  This is perplexing, as the most recent articles referenced in the Complaint's examples were over six months old at the time of the Complaint, Compl. ¶¶ 118, 121; *see also id.* at 104–21 & Ex. J (all others between 2.5 and

---

[19] *A'Lor Int'l, Ltd. v. Tapper Fine Jewelry, Inc.*, 2012 WL 12921035, at *10 (C.D. Cal. Aug. 8, 2012); *Doe 1 v. GitHub*, 2024 WL 235217, at *9 (N.D. Cal. Jan. 22, 2024); *Tremblay*, 2024 WL 557720, at *5; *see* Mot. at 21 & n.46.

[20] *Cf. Olusola v. Don Coqui Holding Co., LLC*, 2021 WL 631031 (E.D.N.Y. Feb. 18, 2021) (discussing statutory damages, not standing); *Miller v. Netventure24 LLC*, 2021 WL 3934262, at *8 (S.D.N.Y. Aug. 6, 2021) (same); *Reilly*, 2016 WL 6837895, at *8 (same); *see also* Opp. at 20–21 (citing these cases).

9

12 years old). For that reason, the Times has not stated a traditional "hot news" claim, which requires "publication of information gathered by another before he has been able to utilize his competitive edge." *Fin. Info., Inc. v. Moody's Inv. Serv., Inc.*, 808 F.2d 204, 209 (2d Cir. 1986) (dismissing claim where information was "at least ten days old").

Regardless, the misappropriation claim fails because, like the defendant in *Barclays*—and unlike the defendant in *INS*—OpenAI does not pass off Times content "as though [OpenAI] itself had gathered it." 650 F.3d 876, 903 (2d Cir. 2011). The Times attempts to brush this off as a "factual dispute," but it does not point to any allegation suggesting any passing off. Mot. at 25; Opp. at 23–25. That alone is dispositive: *Barclays* holds that such passing off is an essential element of the "narrow" category of "*INS*-type non-preempted claims." *Id.* at 896–97, 902–04; *see also Fox News Network, LLC v. TVEyes, Inc.*, 43 F. Supp. 3d 379, 399 (S.D.N.Y. 2014) (dismissing claim because "TVEyes is not passing off Fox News' content as its own"); *DBW Partners, LLC v. Mkt. Sec., LLC*, 2023 WL 2610498, at *5 (D.D.C. Mar. 23, 2023) (same).

The Times also failed to allege that OpenAI's activities constitute a "threat to the very existence of [its] product or service." *Barclays*, 650 F.3d at 900. None of the facts alleged suggests that ChatGPT makes it impossible for Wirecutter to exist. Rather, they demonstrate that ChatGPT provides summaries of Wirecutter *conclusions* before directing users to Wirecutter's website, where users can read an extensive discussion of purchase considerations (which ChatGPT does not provide) and click on links to buy products (yielding revenue for the Times).[21]

## III. CONCLUSION

For the foregoing reasons, the Court should grant OpenAI's motion.

---

[21] *See, e.g.*, Melanie Pinola & Kaitlyn Wells, *The Best Office Chair*, N.Y. Times (Feb. 21, 2024), https://www.nytimes.com/wirecutter/reviews/best-office-chair/ (extensive commentary on "comfort," "lumbar and back support," "ease of reclining," etc., with videos to demonstrate); Compl. ¶¶ 134–35 (referring to this article).

Dated: March 18, 2024 	Respectfully submitted,

By: */s/ Andrew M. Gass*

LATHAM & WATKINS LLP
Andrew M. Gass (*pro hac vice*)
  andrew.gass@lw.com
Joseph R. Wetzel
  joseph.wetzel@lw.com
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: 415.391.0600

Sarang V. Damle
  sy.damle@lw.com
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: 202.637.2200

Allison L. Stillman
  alli.stillman@lw.com
Luke A. Budiardjo
  luke.budiardjo@lw.com
1271 Avenue of the Americas
New York, NY 10020
Telephone: 212.751.4864

By: */s/ Joseph C. Gratz*

MORRISON & FOERSTER LLP
Joseph C. Gratz (*pro hac vice*)[*]
  jgratz@mofo.com
Vera Ranieri (*pro hac vice*)
  vranieri@mofo.com
425 Market Street
San Francisco, CA 94105
Telephone: 415.258.7522

Allyson R. Bennett (*pro hac vice*)
  abennett@mofo.com
Rose S. Lee (*pro hac vice*)
  roselee@mofo.com
707 Wilshire Boulevard, Suite 6000
Los Angeles, CA 90017-3543
Telephone: 213.892.5454

*Attorneys for OpenAI Defendants*

---

[*] The parties use electronic signatures with consent in accordance with Rule 8.5(b) of the Court's ECF Rules.

11