UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE NEW YORK TIMES COMPANY,<br><br>        Plaintiff,<br><br>    v.<br><br>MICROSOFT CORPORATION, OPENAI, INC., OPENAI LP, OPENAI GP, LLC, OPENAI, LLC, OPENAI OPCO LLC, OPENAI GLOBAL LLC, OAI CORPORATION, LLC, and OPENAI HOLDINGS, LLC,<br><br>        Defendants. | Case No. 1:23-cv-11195-SHS |

**DEFENDANT MICROSOFT CORPORATION'S REPLY MEMORANDUM
IN SUPPORT OF PARTIAL MOTION TO DISMISS THE COMPLAINT**

March 25, 2024

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT .......................................................................................................................... 2

I.   THE TIMES FAILS TO STATE A CLAIM FOR CONTRIBUTORY INFRINGEMENT BASED ON USER OUTPUTS. ............................................................................................. 2

    A.  The Complaint Fails To Allege A Specific Instance Of End-User Infringement. ............... 2

    B.  The Complaint Fails To Allege Microsoft's Knowledge Of Direct Infringement. ............. 3

II.  THE TIMES FAILS TO STATE A DMCA § 1202 CLAIM. ..................................................... 5

    A.  The Complaint Does Not Plausibly Allege Microsoft's Intent To Induce, Enable, Facilitate, Or Conceal Infringement By Removal Of CMI. ................................................. 5

    B.  The Complaint Does Not Plausibly Allege "Removal" Of CMI From Copies Of Identical Works. ..................................................................................................................... 7

III. THE TIMES'S MISAPPROPRIATION CLAIM IS PREEMPTED BY THE COPYRIGHT ACT. ........................................................................................................................................ 9

CONCLUSION ...................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arista Records, Inc. v. MP3Board, Inc.*,
  No. 00-cv-4660 (SHS), 2002 WL 1997918 (S.D.N.Y. Aug. 29, 2002) ................................... 4

*Arista Records LLC v. Doe 3*,
  604 F.3d 110 (2d Cir. 2010) .................................................................................................. 4

*Arista Recs. LLC v. Usenet.com, Inc.*,
  633 F. Supp. 2d 124 (S.D.N.Y. 2009) ................................................................................... 4

*Barclays Capital Inc. v. Theflyonthewall.com, Inc.*,
  650 F.3d 876 (2d Cir. 2011) ................................................................................................ 10

*Bell Atlantic v. Twombly*,
  550 U.S. 544 (2007) .............................................................................................................. 3

*BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*,
  881 F.3d 293 (4th Cir. 2018) ................................................................................................ 4

*Doe 1 v. GitHub, Inc.*,
  No. 22-cv-6823 (JST), 2024 WL 235217 (N.D. Cal. Jan. 22, 2024) ................................. 8, 9

*Dress Barn, Inc. v. Klauber Bros., Inc.*,
  No. 18-cv-8085 (DLC), 2019 WL 1949675 (S.D.N.Y. Apr. 22, 2019) ................................. 5

*Hartmann v. Amazon.com, Inc.*,
  No. 20-cv-4928 (PAE), 2021 WL 3683510 (S.D.N.Y. Aug. 19, 2021) ................................ 5

*Lopez v. Bonanza.com, Inc.*,
  No. 17-cv-8493 (LAP), 2019 WL 5199431 (S.D.N.Y. Sept. 30, 2019) ................................ 5

*Luvdarts, LLC v. AT & T Mobility, LLC*,
  710 F.3d 1068 (9th Cir. 2013) .............................................................................................. 4

*Matthew Bender & Co. v. West Publ'g Co.*,
  158 F.3d 693 (2d Cir. 1998) ......................................................................................... 2, 3, 4

*Melendez v. Sirius XM Radio, Inc.*,
  50 F.4th 294 (2d Cir. 2022) .................................................................................................. 3

*ML Genius Holdings v. Google LLC*,
  2022 WL 710744 (2d Cir. Mar. 10, 2022) .......................................................................... 10

*NBA v. Motorola, Inc.*,
   105 F.3d 841 (2d Cir. 1997) ............................................................................................ 9, 10

*New London Assocs., LLC v. Kinetic Soc. LLC*,
   384 F. Supp. 3d 392 (S.D.N.Y. 2019) ..................................................................................... 5

*State St. Glob. Advisors Tr. Co. v. Visbal*,
   431 F. Supp. 3d 322 (S.D.N.Y. 2020) ..................................................................................... 5

*Stevens v. Corelogic, Inc.*,
   899 F.3d 666 (9th Cir. 2018) ............................................................................................. 6, 7

*Viacom Int'l, Inc. v. YouTube, Inc.*,
   676 F.3d 19 (2d Cir. 2012) ..................................................................................................... 4

**Statutes**

Copyright Act, 17 U.S.C. §§ 101 *et seq.*

   § 1202 ............................................................................................................................ 1, 5, 8, 9

   § 1202(b)(3) ............................................................................................................................ 6

Fed. R. Civ. P. 8 ............................................................................................................................ 3

**PRELIMINARY STATEMENT**

The Times offers no solution for the Complaint's core deficiency: that it alleges not a single real-world instance of someone using the GPT-based products in a way that violates The Times's rights or harms its interests. Microsoft made this point prominently and repeatedly, with no meaningful response. *See* Mot. 2, 3, 8, 9, 10, 11, 12, 13, 16-17, 19-20. That is dispositive, because it confirms that The Times's claims for contributory infringement, DMCA, and state misappropriation are just hypothetical—based only on what an LLM-based product may be *capable* of doing, not on anything actual people have used these products to do.

Rather than address its Complaint's shortcomings, The Times begins by erecting a straw man, arguing that "[GenAI] models are nothing like VCRs," and then pre-litigating fair-use issues that are irrelevant here. Opp. 1. Microsoft's point was not that VCRs and LLMs are the same. It was that content creators have tried before to smother the democratizing power of new technology based on little more than doom foretold. The challenges failed, yet the doom never came. And that is why plaintiffs must offer more than imagined fears before the law will block innovation. That The Times can only think to dodge this point is telling indeed.

Having failed to plausibly plead its claims, The Times mostly just pleads for discovery. But the defects in its Complaint are too fundamental to brush aside. The Times is not entitled to proceed on contributory infringement claims without alleging a single instance of end-user infringement of its works. Part I, *infra*. It is not entitled to discovery on § 1202 claims without even a *theory* of how the absence of CMI would somehow aid or conceal real-world piracy. Part II, *infra*. And it is not entitled to smuggle copyright claims past a fair-use defense by disguising them as state-law misappropriation torts. Part III, *infra*. The Motion should be granted.

1

**ARGUMENT**

I. **THE TIMES FAILS TO STATE A CLAIM FOR CONTRIBUTORY INFRINGEMENT BASED ON USER OUTPUTS.**

As Microsoft's Motion explained, the Complaint fails to allege a specific instance of an end-user infringing The Times's works, or Microsoft's knowledge of any such act. Mot. 10-13. The Times's response proves there are no such allegations. Opp. 7-11. It argues only that some unidentified person conceivably could have used a multi-purpose GPT-based product to infringe some unidentified work at some unidentified time. That is legally insufficient.

A. **The Complaint Fails To Allege A Specific Instance Of End-User Infringement.**

The Times does not contest that it must plausibly allege an act of direct infringement before seeking to hold Microsoft contributorily liable. But it offers only a passive-voiced assertion "that … infringement has taken place," and supports this with footnoted links from outside the Complaint—like a five-paragraph online article from gizmodo.com reporting that some users were able to "bypass paywalled websites." Opp. 7-8 & n.1 (internal citation omitted). None of the materials identify a specific instance of anyone infringing *anyone's* works. This is like alleging that "some online articles report infringement happens on Facebook." That does not support a claim. The Times cannot save a Complaint that identifies no instance of infringement by pointing to a secondary source that identifies no instance of infringement.

Nor can The Times fill the void with its other passive-voiced assertion that "prompts given to Defendants' chatbots" yielded short passages of The Times's works. Opp. 8. The Times is talking about its *own* prompts that allegedly "generated … outputs … that … violate The Times's copyrights." Opp. 8. An author cannot infringe its own works. Indeed, the Second Circuit rejected this self-infringement tactic in *Matthew Bender & Co. v. West Publ'g Co.*, explaining that the plaintiff "failed to identify any primary infringer, other than [its own]

2

counsel." 158 F.3d 693, 706 (2d Cir. 1998). The Times offers no response to this, nor to the argument that "The Times does not allege that any actual user of a GPT-based product would prompt it" the way The Times itself has. Mot. 11.

Instead The Times invokes "the importance of discovery." Opp. 8. The consequences of heeding this discovery plea are immense when one considers what discovery might entail. The Times seemingly plans to ask how countless people make private use of an information-processing tool. The volume of user data would be staggering, and invasive peering into the behavior of ordinary people who are strangers to this lawsuit would be unavoidable. Meanwhile, despite its apparent desire to inquire into how the public uses LLMs, *The Times itself has been refusing requests to retain its user data related to The Times's use of GPT-based products.* There is no small hypocrisy in The Times seeking to discover and impugn how the public uses GPT-based products while insisting that its own uses are protected from view.

In any event, Rule 8 requires more than mere hypotheses and conclusions to obtain discovery. "[A] district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." *E.g.*, *Bell Atlantic v. Twombly*, 550 U.S. 544, 558 (2007) (quotation omitted). Were there a serious prospect of conduct or harm of the type that The Times hypothesizes, surely it would have already experienced some of these effects and thus be able to articulate them in its pleading. As it stands, The Times offers only the sorts of "conclusory assertions … of an impermissible use [and] hypotheticals in support of those conclusions" that cannot "support a plausible … claim." *Melendez v. Sirius XM Radio, Inc.*, 50 F.4th 294, 307 (2d Cir. 2022).

### B. The Complaint Fails To Allege Microsoft's Knowledge Of Direct Infringement.

Neither does the Complaint allege Microsoft's knowledge of infringement. Microsoft's Motion explained that contributory liability is appropriate only where a defendant (a) has

3

knowledge of "specific acts of infringement" and (b) has "actual knowledge," as opposed to mere constructive knowledge, of those acts. Mot. 12. The Times conflates these requirements to avoid addressing the specific-knowledge requirement. To be clear: Microsoft's Motion should be granted because The Times points to no allegation that Microsoft knew of a "specific act" of infringement, nor that "Microsoft has the ability to know that some user has engaged, is engaging, or will engage in an infringing use." Mot. 12.

The Times does briefly suggest that the "law in this circuit" does not require "'knowledge of specific infringements.'" Opp. 9 (quoting *Arista Recs. LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 154 (S.D.N.Y. 2009)). The cases it cites do not address the question of generalized-versus-specific knowledge—rather, they pertain only to the question of actual-versus-constructive knowledge. And unlike here, in each case The Times cites the defendant possessed extensive knowledge of specific acts.[1] The Times does not even try to address the reasoning of two circuits that have demanded specific knowledge, *Luvdarts, LLC v. AT & T Mobility, LLC*, 710 F.3d 1068, 1072-73 (9th Cir. 2013), and *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 881 F.3d 293, 310 (4th Cir. 2018); *Matthew Bender*'s recognition that knowledge cannot be based on "hypothesized" infringement, 158 F.3d at 707 n.23; or the Second Circuit's adoption of the same specific-knowledge requirement in *Viacom Int'l, Inc. v. YouTube, Inc.* for the related Digital Millenium Copyright Act safe harbor, 676 F.3d 19, 32 (2d Cir. 2012).

As for the Complaint, The Times points to nothing that could satisfy the proper standard.

---

[1] *Usenet.com*, 633 F. Supp. 2d at 155 ("[O]n many occasions, Defendants' users explicitly told Defendants' … employees that they were engaged in copyright infringement."); *Arista Records, Inc. v. MP3Board, Inc.*, No. 00-cv-4660 (SHS), 2002 WL 1997918, at *7 (S.D.N.Y. Aug. 29, 2002) ("posted links [to infringing music] themselves promoted their illegal nature"); *Arista Records LLC v. Doe 3*, 604 F.3d 110, 121 (2d Cir. 2010) ("identif[ication] on a Defendant-by-Defendant basis … the IP address with the date and time of capture and a list of copyrighted recordings that each Defendant has … downloaded and/or distributed").

It invokes the same footnoted material that identifies no specific act. Opp. n.1 & 10. It also paraphrases its Complaint as alleging that "The Times contacted Microsoft to provide notice of observed copyright infringement." Op. 10 (citing Compl. ¶¶ 54, 126). The Complaint absolutely does not allege that. It says that "The Times … raise[d] intellectual property concerns." Compl. ¶ 54. The Times does not and cannot allege that it told Microsoft of specific end-user activity.

Last, The Times again invokes "discovery," Opp. 10, chiding Microsoft for citing cases "decided after the pleading stage" that *established* the relevant standards, Opp. 7, rather than cases dismissing pleadings by *applying* them. Five recent cases from this district alone are set out in the margin.[2] Courts routinely dismiss deficient claims like this. This Court should too.

## II.   THE TIMES FAILS TO STATE A DMCA § 1202 CLAIM.

As the Motion explained, The Times's § 1202 claims fail because the Complaint does not allege Microsoft's culpable awareness that removal of CMI would facilitate infringement of The Times's works, nor that CMI was removed from identical copies of The Times's works. Mot. 13-20. The Times's response reveals exactly why courts have now repeatedly rejected § 1202 claims advanced against LLMs: Such claims, which are designed to thwart distribution of pirated copies of works, are fundamentally inapt when applied to a machine that generates brand new language in the form of conversational excerpts or snippets of information.

### A. The Complaint Does Not Plausibly Allege Microsoft's Intent To Induce, Enable, Facilitate, Or Conceal Infringement By Removal Of CMI.

The Times acknowledges that it must allege Microsoft's awareness that removal of CMI

---

[2] *Hartmann v. Amazon.com, Inc.*, No. 20-cv-4928 (PAE), 2021 WL 3683510, at *7 (S.D.N.Y. Aug. 19, 2021); *Lopez v. Bonanza.com, Inc.*, No. 17-cv-8493 (LAP), 2019 WL 5199431, at *24-25 (S.D.N.Y. Sept. 30, 2019); *Dress Barn, Inc. v. Klauber Bros., Inc.*, No. 18-cv-8085 (DLC), 2019 WL 1949675, at *5 (S.D.N.Y. Apr. 22, 2019); *State St. Glob. Advisors Tr. Co. v. Visbal*, 431 F. Supp. 3d 322, 358 (S.D.N.Y. 2020); *New London Assocs., LLC v. Kinetic Soc. LLC*, 384 F. Supp. 3d 392, 410 (S.D.N.Y. 2019).

will somehow "induce, enable, facilitate, or conceal an infringement." 17 U.S.C. § 1202(b)(3). To establish this, The Times must also lay a necessary factual predicate: That in the real world, removal of CMI would plausibly increase the likelihood or ease of infringement, or decrease The Times's ability to detect such infringement. If the absence of CMI is immaterial to piracy in the real world, there is no basis for concluding that Microsoft was *aware* it could have any effect on piracy—much less aid it. That is the basic teaching of the Ninth Circuit's decision in *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 675 (9th Cir. 2018), and The Times does not contest it.

Here again, The Times fails to allege a single fact about what has happened or is likely to happen in the real world. It begins by promising "ample detail to support its allegation that Microsoft knew or should have known that removal of CMI would 'facilitate or conceal' its infringement." Opp. 12. But it quotes only a conclusory contention that "CMI would not be retained … or displayed … and thereby facilitate or conceal … infringement." *Id.* (citing Compl. ¶ 125). It then cites three paragraphs, the first of which (¶ 124) says nothing about CMI, and the other two of which (¶¶ 188, 190) are just additional formulaic recitations of the element. That is not "ample detail." It is *no* detail. For both training-based and output-based CMI theories, The Times simply never explains how non-inclusion of CMI would aid piracy.

***Training and development.*** For alleged removal of CMI during training, The Times argues that "[t]he result is that the copyrighted nature of Times content is concealed from users of Defendants' products." Opp. 13. According to The Times, this "'conceal[s]' and 'facilitate[s]' Defendants' *own* infringement," *id.*—for which The Times again cites the same ¶ 125 and its bare recitation of the claim element. The Times does not offer a theory of *whom* removal of CMI would conceal infringement *from*, or *how* removal could conceivably make it easier for anyone to train a model using copyrighted works when training takes place outside of public view.

6

In any event, the Complaint acknowledges Microsoft's position that the conduct involved in training and developing an LLM is fair use, and that fair use is not infringement. Mot. 16. A defendant that believes its conduct is fair use cannot also believe it is infringing. The Times counters that its Complaint alleged only that "publicly, Defendants insist" that their conduct is fair use. Opp. 14. But it does not dispute its failure to "allege that Microsoft's belief in its fair use rights is ingenuine or objectively unreasonable." Mot. 16. So the point stands—Microsoft insists its use is fair, and the Complaint does not contest that Microsoft holds that belief.

*Allegedly infringing output.* As for allegedly infringing outputs, Microsoft explained that "nowhere does the Complaint allege that if end-users *did* make [infringing] use, the alleged absence of CMI would in any way facilitate that infringement or make it harder to police it than it would be if CMI were preserved." Mot. 16-17. The Times attempts no response, and it cites nothing in its Complaint supporting the notion that the lack of CMI could have any effect. A more fundamental pleading failure is hard to imagine.

The Times implicitly acknowledges that *Stevens v. Corelogic* forecloses any *output-based* CMI claim where, as here, a plaintiff cannot explain how the absence of CMI would be material to infringement. Opp. 15-16. It offers only the non-response that The Times also raises a *training*-based theory, *id.*, which fails for other reasons explained above.

**B. The Complaint Does Not Plausibly Allege "Removal" Of CMI From Copies Of Identical Works.**

The Times concedes away several key legal propositions regarding its failure to allege removal of CMI from substantially identical copies of its works. First, it does not dispute that a CMI removal claim does not lie "where the offenders copied only 'aspects' or 'elements' of a copyrighted work." Opp. 17. Second, it does not contest that "fail[ure] to transpose CMI" from one work into another does not give rise to a claim. Opp. 18 (acknowledging rule). Third—and

7

most importantly—The Times nowhere refutes robust case law holding that removal of CMI from "an excerpt or modification of the original copy" does not violate § 1202.  Mot. 18.

The Times instead claims that Microsoft "relies on a fundamental misreading of the Complaint," because "[a]t all three steps—compiling training datasets, compiling synthetic search results, and preparing end-user outputs—The Times has alleged that Defendants copied entire articles and removed CMI from them."  Opp. 16.  This critique is hard to understand, because The Times immediately contradicts itself, conceding that "synthetic search results and outputs contain[] verbatim excerpts of Times works"—not "entire articles."  *Id.* at 17.  Indeed, The Times nowhere disputes that for synthetic search results through GPT-based Bing tools, the Complaint alleges only "paraphrases and direct quotes."  Mot. 19.  Nor does it contest that the only examples even its own elaborate prompting could coax from ChatGPT are mere excerpts.

The upshot is simple:  For synthetic search results and ChatGPT outputs, the Complaint alleges only the sorts of non-actionable excerpts courts have rejected at the pleading stage, in relation to the very generative AI technology at issue here.  *Doe 1 v. GitHub, Inc.*, No. 22-cv-6823 (JST), 2024 WL 235217, at *8-9 (N.D. Cal. Jan. 22, 2024).  As for alleged training-stage removal of CMI, The Times does not clarify what precisely it is alleging *Microsoft* has done during the training process to remove CMI.  Mot. 20.  But it matters little because it is so implausible that removal of CMI during training would ever facilitate or conceal infringement, *supra* 5-7, that such a claim could never succeed.

Finally, The Times attempts to downplay the several generative AI opinions dismissing CMI claims at the pleading stage.  Opp. 19.  The only case The Times invokes in support of its claims is the first decision in *Doe 1 v. GitHub, Inc.*, in which the court initially allowed § 1202 claims to move forward, but dismissed those very claims months later based on an "unresolved

8

argument from the prior briefing." 2024 WL 235217, at *8. That argument, which the *Doe 1* court accepted, is the very same identical-copy requirement The Times fails to satisfy here. This case should join the consensus dismissing § 1202 claims incongruously advanced against LLMs.

### III. THE TIMES'S MISAPPROPRIATION CLAIM IS PREEMPTED BY THE COPYRIGHT ACT.

The Motion explained that settled Second Circuit authority squarely preempts The Times's attempt to disguise a copyright claim as a state-law misappropriation tort. Mot. 20-25. The Times *says* that it has pled the elements of the sort of "narrow 'hot-news' misappropriation claim" that might survive preemption. *NBA v. Motorola, Inc.*, 105 F.3d 841, 852 (2d Cir. 1997). *See* Opp. 21. But its actual allegations do not come remotely close to doing so.

*"Hot news" theory.* At an absolute minimum, a hot-news claim requires the misappropriation of hot news *when it is hot*. As *NBA* puts it, the plaintiff must establish that the defendant appropriates news with "time-sensitive value" "precisely at the point where the profit is to be reaped." 105 F.3d at 851. The Times cannot satisfy this requirement. Its move is to say that The Times "engages in breaking news reporting," then claim "examples of The Times's breaking news content appearing in Defendants' synthetic search results." Opp. 22. This is sleight of hand. The Times neither asserts nor alleges a single example of misappropriation of breaking news *while it is breaking*, as a hot-news claim would require. A search engine result that relays news after The Times has already broken it is not misappropriation of *breaking* news.

The Times also says it has alleged that Bing's search results "directly compete" with The Times. Opp. 22. It theorizes about "divert[ing] important traffic" or "creat[ing] less incentive for users to navigate." *Id.* (citing ¶¶ 110, 129). But again, The Times has not alleged a *single instance* of a *single real person* ever actually using GPT-based tools to do what The Times suggests. So it cannot possibly allege that traffic has been or is being diverted, or that incentives

9

to view The Times have been reduced.  The Times does not even allege in the most generic sense that its subscription revenue or traffic has fallen since the introduction of the tools it challenges, let alone the far more stringent requirement that the "existence or quality" of The Times's work is "substantially threatened."  *NBA*, 105 F.3d at 845.

***"Recommendations" theory.***  For its recommendations theory, The Times again identifies no real-world allegation suggesting diversion of revenues from its Wirecutter site, and therefore fails to allege direct competition between Microsoft's search engine and Wirecutter.

Contrary to The Times's suggestion (at 24), Microsoft absolutely "dispute[s] the plausibility" of the allegation that Wirecutter reviews are "time-sensitive" in the way the law requires.  Mot. 23.  The Times at most alleges product recommendations that are *timely*, in the sense that they are connected to products someone may want now.  "[T]imeliness" is not "the issue"; The Times has not alleged that "misappropriated *information* is time-sensitive in nature." *ML Genius Holdings v. Google LLC*, 2022 WL 710744, at *6 (2d Cir. Mar. 10, 2022).

Microsoft also disputes, *contra* Opp. 25, that The Times's theory differs from the one rejected in *Barclays Capital Inc. v. Theflyonthewall.com, Inc.*, 650 F.3d 876, 902-07 (2d Cir. 2011).  *Barclays* rejected a claim based on alleged misappropriation of *the fact of the plaintiffs'* recommendation.  *Id.*  Same here.  The Times's explicit theory is that users could theoretically ask for Wirecutter recommendations *by name* without visiting the Wirecutter website, not that Microsoft has set up some parallel time-sensitive product recommendation website.  Mot. 23 (citing Compl. ¶¶ 128-29).  This is precisely the sort of recommendations-based claim *Barclays* preempts as a copyright claim in disguise.

## CONCLUSION

The Court should grant the partial motion to dismiss in its entirety.

|  |  |
|---|---|
| Dated: New York, New York<br>March 25, 2024 | Orrick, Herrington & Sutcliffe LLP<br><br>By:  /s/ *Annette L. Hurst*<br>Annette L. Hurst (*Pro Hac Vice*)<br>The Orrick Building<br>405 Howard Street<br>San Francisco, CA  94105-2669<br>Telephone: (415) 773-5700<br>Facsimile: (415) 773-5759<br>ahurst@orrick.com<br><br>Christopher J. Cariello<br>51 West 52nd Street<br>New York, NY 10019<br>Telephone: (212) 506-3778<br>Facsimile: (212) 506-5151<br>ccariello@orrick.com<br><br>Attorneys for Defendant<br>Microsoft Corporation |