


May 3, 2024

**Orrick, Herrington & Sutcliffe LLP**
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669

+1 415 773 5700

**orrick.com**

**Annette L. Hurst**

**E** ahurst@orrick.com
**D** +1 415 773 4585
**F** +1 415 773 5759

**VIA ECF**

Honorable Sidney H. Stein
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007

Re: *The New York Times Company v. Microsoft Corporation, et al.*, Case No.: 23-cv-11195-SHS

Dear Honorable Judge Stein:

Microsoft and OpenAI hereby oppose Plaintiff's motion requesting the entry of its proposed Protective Order and ESI Order (Dkt. 110). Defendants respectfully request that the Court deny Plaintiff's motion, and instead enter the orders Defendants have submitted as Exhibits A and B.[1]

As a threshold matter, Defendants have not unduly delayed negotiations over the orders at issue. While Plaintiff's recounting of the parties' exchanges may accurately list the dates of the parties' communications, it lacks important context. In particular, with respect to the last round of edits offered by Plaintiff, Defendants were unable to meet Plaintiff's arbitrary April 30 deadline only because Defendants wanted to streamline negotiations and present a single counterproposal, rather than a separate proposal from each Defendant. Defendants' efforts were further complicated by their parallel efforts to coordinate the negotiation of similar proposed orders with counsel in the *Authors Guild v. OpenAI Inc.*, 23-cv-8292 (S.D.N.Y.) and *Alter v. OpenAI Inc.*, 23-cv-10211 (S.D.N.Y.) litigation, which involves the same law firm that represents Plaintiff in this case. Defendants moved expeditiously to create unified drafts and were securing final approvals to circulate their counterproposals when Plaintiff filed its motion. Defendants have since shared their counterproposals with Plaintiff, which are attached hereto as Exhibits A and B. For the reasons explained below, the Court should enter Defendants' proposed Orders, not those offered by Plaintiff.

**Protective Order**

The parties are largely aligned on the terms of the proposed Protective Order, but Defendants' proposal is more appropriate for this matter in three important ways.[2] ***First***, Defendants' proposal includes the addition of a standard "clawback" provision that seeks to minimize disputes about

---

[1] Defendants also attach redlines showing the differences between the competing proposals as Exhibits C and D.

[2] While there are other differences between Defendants' proposed Protective Order and Plaintiff's, Defendants believe those discussed in this letter to be the most significant.





inadvertent production of privileged documents. Ex. A at ¶ 13. Courts in this District have acknowledged the benefits of incorporating a clawback provision within a protective order. *See, e.g.*, *Ruggles v. WellPoint, Inc.*, No. 1:08-CV-201 (LEK/RFT), 2010 WL 11570681, at *14 (S.D.N.Y. Dec. 28, 2010) ("a strong claw back provision . . . will guarantee that the information shared will remain confidential, and inadvertent or [un]intentional disclosure of privileged information will not be deemed waived."); *Dorce v. City of New York*, No. 19 Civ. 2216 (JLR) (SLC), 2024 WL 139546, at *5 (S.D.N.Y. Jan. 12, 2024) (a clawback provision "fosters the goal of encouraging free communication between attorney and client by assuring the client that its confidences will not be publicly disclosed because of a minor mistake by otherwise competent counsel, which are, of course, inevitable in complex litigation.") (internal quotation marks omitted). Indeed, this Court routinely adopts protective orders containing similar language. *See, e.g.*, *Morrison v. Scotia Capital (USA) Inc.*, No. 1:21-cv-01859-SHS (S.D.N.Y. Jan. 24, 2024) (ECF No. 73 at ¶ 28); *Cox v. Macy's, Inc.*, No. 1:17-cv-02709-SHS (S.D.N.Y. July 20, 2017) (ECF No. 57 at ¶ 13); *Broker Genius, Inc. v. Zalta*, No. 1:17-cv-0299-SHS (S.D.N.Y. Apr. 28, 2017) (ECF No. 22 at ¶ 11). Defendants' proposal thus promotes efficiency and conserves judicial resources by avoiding unnecessary disputes about inadvertent productions.

***Second***, Defendants propose adding an "Editorial Decision-Making" category to the otherwise agreed-upon bar against disclosure of "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" material to certain inhouse counsel of the Receiving Party. Ex. A at ¶ 15(b). This provision is crucial because Plaintiff continues to report extensively on this litigation. Defendants recognize that The New York Times has a right to report the news. But it would be inappropriate for The New York Times' inhouse attorneys conducting, for example, prepublication review of reporting about Defendants to have access to Defendants' highly confidential information. There is too great a risk that Defendants' highly confidential information may be improperly used, even if inadvertently. The Court should not allow Plaintiff to use the discovery process to transmit confidential information to its editorial staff.

***Finally***, Defendants propose clarifying the process by which a party may challenge a confidentiality designation. Ex. A at ¶ 18. Defendants propose that an Objecting Party serve upon the Designating Party "a written notice stating with particularity the grounds of the objection" to any confidentiality designation. *Id*. Then, if the parties cannot "reach agreement promptly," both parties will address the dispute with the Court in accordance with Paragraph 2(G) of the Court's Individual Practices. *Id*. Adopting this process will reduce uncertainty, promote efficient resolution of confidentiality disputes, and avoid burdening this Court with unnecessary motion practice.

**<u>ESI Order</u>**

With respect to the ESI Order, the parties are again largely in agreement. That said, the proposals






diverge with respect to three issues: (1) custodial collection and production (Ex. B, ¶¶ 4-5); (2) the meet and confer process for using technology assisted review ("TAR") (*Id.*, ¶ 7), and (3) the categories of documents that need not be listed on a privilege log (*Id.*, ¶ 10).

***Custodial Collection.*** Plaintiff's ESI Order is unreasonable because it offers no presumptive cap on the number of persons for custodial ESI collection (i.e., email), as is common in ESI Orders.[3] Defendants' competing proposal includes an initial presumptive—but not absolute—cap on the number of custodians of ten (10) custodians per party, with additional custodians to be added upon a showing of good cause. Defendants have a large number of employees, and the risk of duplicative, broad, and disproportionately burdensome discovery is significant. The cap encourages Plaintiffs to prioritize and enables Defendants to be efficient in their collection and review of documents. Without a cap, Plaintiff can simply make an endless number of requests for custodians and keywords without any effective limit. Defendants' proposed ESI Order also provides for a reasonable timeline for the exchange of search terms and hit reports as part of a continued meet and confer process to streamline discovery.

***Technology Assisted Review***. With respect to TAR, Defendants' additions to this provision simply ensure that—in the unlikely event of a dispute—the parties have the ability to meet and confer regarding any such dispute (with the hope of resolution) prior to burdening the Court. The additions also set a clear schedule for doing so, in order to keep the document production process streamlined and efficient. Defendants believe that including this more structured protocol for resolving disputes, as opposed to simply requiring advance agreement for the use of TAR (as set forth in Plaintiff's proposal), will increase efficiency and streamline the discovery process.

***Privilege Logs.*** Finally, with respect to the privilege log provision, Defendants' additions, which include extending the period for which privileged communications need not be logged, as well as the clear recital of certain lawsuits and investigations involving either or both Defendants, seek to clarify the parties' obligations and lessen the burden on the parties with respect to logging presumptively privileged communications regarding unrelated lawsuits and investigations. Such logging is unnecessary in this matter and would only serve to unnecessarily waste the parties' time and resources.

OpenAI and Microsoft agree that these issues need to be resolved and respectfully submit that Defendants' proposals, as embodied in the attached alternative Protective Order (Ex. A) and ESI Order (Ex. B), are more reasonable and appropriate here, and should be entered by the Court.

---

[3] *See, e.g.*, Ex. E (N.D. Cal. Model ESI Order requiring parties to limit "email production requests to . . . five custodians"); Ex. F (D. Del. Model ESI Order providing that "each party shall disclose . . . 10 custodians").






Respectfully submitted,

*/s/ Annette L. Hurst*

Annette L. Hurst, *for Defendant Microsoft Corporation*

*/s/ Allyson R. Bennett*

Allyson R. Bennett, *for the OpenAI Defendants*