UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE NEW YORK TIMES COMPANY,<br><br>                                Plaintiff,<br><br>         v.<br><br>MICROSOFT CORPORATION, OPENAI, INC., OPENAI LP, OPENAI GP, LLC, OPENAI, LLC, OPENAI OPCO LLC, OPENAI GLOBAL LLC, OAI CORPORATION, LLC, OPENAI HOLDINGS, LLC,<br><br>                                Defendants. | Case No. 1:23-cv-11195 (SHS) (OTW) |

**OPENAI DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF RESPONSE TO PLAINTIFF'S MOTION FOR LEAVE TO FILE
FIRST AMENDED COMPLAINT AND CONDITIONAL CROSS-MOTION**

Defendants OpenAI, Inc., OpenAI LP, OpenAI GP, LLC, OpenAI, LLC, OpenAI OpCo LLC, OpenAI Global LLC, OAI Corporation, LLC, and OpenAI Holdings, LLC (collectively, "OpenAI") do not oppose amendment so long as the case schedule is modified to provide the additional time necessary to litigate a vastly broader case with approximately *seven million additional* works—more than *three times* the number of works originally at issue. Without a modest extension of the fact-discovery deadline from September 17, 2024, to March 17, 2025, OpenAI will be unduly prejudiced by the proposed amendment such that it should not be permitted.

**I.      ARGUMENT**

It is well established that denial of leave to amend may be warranted where the amendment will cause "undue prejudice to the opposing parties." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) ("Leave may be denied for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." (internal quotation marks omitted)). Here, absent a change in the current case schedule, the Times's motion should be denied based on the

undue prejudice to OpenAI that will necessarily result from the proposed amendment.

### A. The Times's Proposed Amendment Materially Expands the Scope of Discovery Needed.

There is no dispute that the Times's proposed amendment will vastly expand the scope of the claims at issue, which will necessarily vastly expand the corresponding discovery needed to investigate the validity of those claims. That is so because, "[t]o establish infringement," the Times must prove "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340, 361 (1991). The Times needs to establish those elements for each and every one of the works it asserts—works the Times says includes the over 3 million articles in the original complaint and the over 7 million articles the Times proposes adding to this case. OpenAI, in turn, must be allowed to explore in discovery the validity of, *inter alia*, the Times's claims of ownership of those over 10 million articles. *Cf., e.g.*, *Wareham v. Complex Media, Inc.*, No. 20-cv-152, 2022 WL 523597, at *5 (S.D.N.Y. Feb. 22, 2022).

Specifically, OpenAI will need to, at the outset, review and attempt to validate the list of new works the Times purported to create based on the Times's own records and Copyright Office data. By the Times's own admission, this is a manual process that must be conducted "by hand" for approximately 3.4 million of the newly added articles. Dkt. 118-1 at 1–2. That manual process is seemingly why it took the Times over five months to seek to add these articles to the case. *See id.* OpenAI is entitled to at least as much time as the Times has had to address and independently assess these newly identified articles. Such review is particularly important here given numerous indicia of the unreliability of the Times's identification of the newly asserted articles. For example, the Times's own motion disclosed for the first time—without any explanation—the existence of a "data processing issue" related to over 3.5 million newly asserted articles. *See* Dkt. 118-1 at 2. It remains unclear why it took the Times over five months to realize that half of the articles it intended

to assert at the outset of this case were missing from its complaint. And since filing its motion, the Times has continued to adjust the list of articles it seeks to assert in this case. For example, on May 29, the Times informed OpenAI of another 42,500 articles it seeks to add to the case and identified nearly 500 other articles for which the Times had previously provided erroneous information. *See* Declaration of Andrew M. Gass ("Gass Decl.") Ex. 1 at 1. OpenAI must be able to explore the veracity of the Times's representations and data regarding the newly asserted articles—exploration that will necessarily require more time for discovery than was allocated when this case involved approximately 3 million articles rather than 10 million, the majority of which have just been identified.

OpenAI must likewise be provided sufficient time to take discovery on the validity of the Times's asserted copyrights, including the over 7 million articles it now seeks to add to this case. Although a "certificate of a registration" "constitute[s] prima facie evidence of the validity of the copyright," 17 U.S.C. § 410(c), it does not create an "irrebuttable presumption of copyright validity and where other evidence in the record casts doubt on the question, validity will not be assumed." *Urbont v. Sony Music Entertainment*, 831 F.3d 80, 89 (2d Cir. 2016) (quoting *Estate of Burne Hogarth v. Edgar Rice Burroughs, Inc.*, 342 F.3d 149, 166 (2d Cir. 2003)). OpenAI must have the opportunity to develop evidence that "casts doubt on the question" of validity. OpenAI must be able to probe, for example, whether the Times fails to meet the ownership requirement for any of the approximately ten million (if amended) articles under the "work for hire" doctrine or if there is "evidence of a contrary [ownership] agreement." *See id.* at 89–93 (discussing factors and evidence that is probative regarding the question of ownership). The fact that it took the Times over five months just to identify the additional 7 million articles it seeks to assert reinforces the fact that OpenAI will need at least that long to obtain a full and fair opportunity to test the Times's newly asserted articles.

3

In addition, the fair use analysis requires an evaluation of "whether *each* of the copyright takings alleged in the complaint is substantial and whether any *individual* taking is likely to impair the market for or value of the copyrighted work." *Coleman v. ESPN, Inc.*, 764 F. Supp. 290, 295 (S.D.N.Y. 1991) (emphasis added). Further, the "second statutory [fair use] factor . . . calls for recognition that some works are closer to the core of intended copyright protection than others." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 586 (1994). One "distinction[]" that is important, for example, is "whether the work is express[ive] or creative, such as a work of fiction, or more factual with a greater leeway being allowed to a claim of fair use where the work is factual or informational." *Harbus v. Manhattan Institute for Policy Research, Inc.*, 19-cv-6124, 2020 WL 1990866 at *6 (S.D.N.Y. Apr. 27, 2020). Indeed, three of the five categories of articles the Times identified in its complaint—"Investigative Reporting," "Breaking News Reporting," and "Beat Reporting"—are inherently factual. Dkt. 1 at ¶¶ 33–37. To support its fair use defense, OpenAI will need time to assess—and to take discovery on—what types of articles are included in the additional seven million articles the Times seeks to add.

Extending the deadline for fact discovery in this case to March 17, 2025, will also serve the interests of efficiency and judicial economy by making it possible for the schedule in this case to more closely align with the schedule that is set in *Daily News LP et al v. Microsoft Corporation et al*, which involves a nearly identical complaint for copyright infringement (save for the works at issue), is based on the same theories asserted here, and involves overlapping plaintiffs' counsel. *See* Related Case Statement at 3, 24-cv-03285-SHS (S.D.N.Y. Apr. 30, 2024), ECF No. 3 ("Counsel for Plaintiffs here are also representing The New York Times as co-counsel."). In light of that overlap, OpenAI anticipates soon filing a motion to consolidate the *Daily News* case with this one, at least, for pre-trial purposes. That said, regardless of whether the cases are ultimately consolidated, an extension of the fact-discovery schedule now is necessary should the Times be

4

permitted to amend its complaint.

### B. The Times's Contention that Its Proposed Amendment Will Not Affect the Schedule Is Incorrect.

The Times resists the notion that its proposed amendment would affect the current case schedule, contending instead that "[t]he proposed amendment will not affect the schedule that the Court has set for hearing the threshold fair use question because the answer to that question does not turn on the number of works asserted." Dkt. 118-1 at 1. The Times is wrong in several respects. First, the Times provides no explanation let alone support for its assertion that the Court has set a schedule "for hearing the threshold fair use question." Dkt. No. 118-1 at 1. Indeed, the Times previously took the opposite position—arguing that the fair use issue should *not* be bifurcated and decided first. *Compare* Dkt. 72 ¶ 37, *with id.* ¶ 49. The Court agreed, ordering that motions for summary judgment on all issues be due by the same date (currently, January 7, 2025). *See* Dkt. 112. As a result, discovery related to all issues in this case—from ownership of the works at issue to the question of fair use—must be conducted as to all works at issue by the deadline for completing fact discovery.

Second, for the reasons discussed above, the Times's suggestion that the addition of over 7 million articles will not affect the case schedule strains credulity. Equally troubling is the fact that the Times has failed to produce *any* documents in the nearly three months since OpenAI served its first set of requests for production. *See* Gass Decl. ¶ 3. If the Times were allowed to insert over 7 million additional articles into this case, its discovery obligations will expand accordingly— as will OpenAI's entitlement to seek further discovery on these newly and late-disclosed works. To take just one example, the Times has already agreed to produce the deposit copies for each asserted work—discovery that will necessarily more than triple in volume if the Times's motion is granted. The Times has had over five months to engage in its own investigation and analysis into its newly identified articles—time it claims it needed before it could assert them. *See, e.g.*,

5

Dkt. 118-1 at 2.  OpenAI is surely entitled to at least the same amount of time to take discovery into the articles about which, until now, OpenAI (unlike the Times) had no idea were at issue.[1]

### C. When the Times Filed Suit, the Times Knew or Should Have Known of Most of the Facts Underlying Its Proposed Amendment.

The Times's motion also suggests that it "knew or should have known of the facts upon which the amendment is based when the original pleading was filed," *Ruotolo v. City of New York*, No. 03-cv-5045 (SHS), 2006 WL 2372236, at *2 (S.D.N.Y. Aug. 16, 2006), *aff'd*, 514 F.3d 184 (2d Cir. 2008).  For approximately 3.6 million of the newly asserted articles, the Times simply says they were "inadvertently omitted from the original complaint" due to a "processing issue." Dkt. 118-1 at 2.  The Times says nothing about what this processing issue involved, let alone when it was discovered.  Nor does the Times explain why for approximately 10,000 articles "registration information was not available at the time of filing (i.e. October 2023 – January 2024)," *id.*, many of which were presumably published before the Times filed suit.  And for the "[a]pproximately 3.4 million works registered from April 1928 to August 1950," the Times's only explanation for its delay is that it wanted more time for its own analysis of those works.  *See id.* at 2 (seeking to justify the delay based on the fact that the "Copyright Office's online database for such works consists only of scanned images of card catalog files, which had to be reviewed and correlated with the Times's own records of its online works by hand").  In other words, the Times decided to take for itself an additional five months to consider these 3.4 million articles in light of its own records—records which have not yet been produced in this case, let alone reviewed by OpenAI—while simultaneously depriving OpenAI of the same.  The reason for this approach appears clear— the Times always intended to assert these articles but did not want to wait until its own analysis was done to file the complaint.  And so rather than wait, the Times filed its complaint and then

---

[1] Fact discovery is currently set to close on September 17, 2024—three and a half months from now.  Dkt. 112.

6

took the time it wanted to "review[] and correlate[]" the Times's records to the Copyright Office's records without once telling OpenAI or the Court that it had millions upon millions of articles waiting in the wings. The Times's silence about its intent to triple the number of articles at issue is all the more troubling given its simultaneous push for the abbreviated case schedule the Court adopted. *See* Dkt. 72 at 14–15; Dkt. 112. Although a plaintiff's knowledge "of the facts upon which the amendment is based when the original pleading was filed" can be a basis to deny leave to amend, *Ruotolo*, 2006 WL 2372236, at *2, extending the current case schedule would at least mitigate the Times's improper omission of the newly asserted articles from its original complaint.

### D. If Amendment Is Permitted, OpenAI's Pending Motion To Dismiss Should Be Applied to the Times's Amended Complaint.

In addition to seeking leave to add over 7 million articles to this case, the Times also attempts to extend even further the timeline for such amendment to "twenty-one days after" the Court rules on the pending motions to dismiss, Dkt. 118-1 at 2—a timeline that would put amendment well past the May 20 amendment deadline. Dkt. 112. There is no legitimate basis, and the Times identifies none, to forestall the proposed amendment any further. Rather, should amendment be permitted, OpenAI respectfully requests that the Court exercise its discretion to consider OpenAI's pending motion to dismiss, Dkt. 51, "in light of the facts alleged in the amended complaint." *Pettaway v. National Recovery Solutions, LLC*, 955 F.3d 299, 303–04 (2d Cir. 2020); *see also id.* ("[W]hen a plaintiff properly amends her complaint after a defendant has a filed a motion to dismiss that is still pending, the district court has the option of either denying the pending motion as moot or evaluating the motion in light of the facts alleged in the amended complaint."). Such an approach is particularly appropriate here because the Times "does not assert any new causes of actions respecting the additional works," Dkt. 118-1 at 2, and, as a result, the arguments in OpenAI's pending motion apply with equal force to the proposed amended complaint.

7

## II. CONCLUSION

For the foregoing reasons, OpenAI respectfully requests that, if the Court grants the Times's motion to amend, that it (1) require that such amendment occur immediately; (2) evaluate OpenAI's pending motion to dismiss in light of the amended complaint; and (3) extend the fact-discovery deadline to March 17, 2025.

Dated: June 3, 2024

Respectfully submitted,

By: /s/ *Andrew M. Gass*

LATHAM & WATKINS LLP
Andrew M. Gass (*pro hac vice*)
 andrew.gass@lw.com
Joseph R. Wetzel
 joseph.wetzel@lw.com
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: 415.391.0600

Sarang V. Damle
 sy.damle@lw.com
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: 202.637.2200

Allison L. Stillman
 alli.stillman@lw.com
Luke A. Budiardjo
 luke.budiardjo@lw.com
1271 Avenue of the Americas
New York, NY 10020
Telephone: 212.751.4864

By: /s/ *Allyson R. Bennett*

MORRISON & FOERSTER LLP
Joseph C. Gratz (*pro hac vice*)[*]
 jgratz@mofo.com
Vera Ranieri (*pro hac vice*)
 vranieri@mofo.com
425 Market Street
San Francisco, CA 94105
Telephone: 415.258.7522

Allyson R. Bennett (*pro hac vice*)
 abennett@mofo.com
Rose S. Lee (*pro hac vice*)
 roselee@mofo.com
707 Wilshire Boulevard, Suite 6000
Los Angeles, CA 90017-3543
Telephone: 213.892.5454

---

[*] The parties use electronic signatures with consent in accordance with Rule 8.5(b) of the Court's ECF Rules.

By: */s/ Michelle S. Ybarra*

KEKER, VAN NEST & PETERS LLP
Robert A. Van Nest (*pro hac vice*)[*]
  rvannest@keker.com
R. James Slaughter (*pro hac vice*)
  rslaughter@keker.com
Paven Malhotra
  pmalhotra@keker.com
Michelle S. Ybarra (*pro hac vice*)
  mybarra@keker.com
Nicholas S. Goldberg (*pro hac vice*)
  ngoldberg@keker.com
Thomas E. Gorman (*pro hac vice*)
  tgorman@keker.com
Katie Lynn Joyce (*pro hac vice*)
  kjoyce@keker.com
Sarah Salomon (*pro hac vice*)
  ssalomon@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415.391.5400

*Attorneys for OpenAI Defendants*

---

[*] The parties use electronic signatures with consent in accordance with Rule 8.5(b) of the Court's ECF Rules.