MORRISON FOERSTER

707 WILSHIRE BOULEVARD
SUITE 6000
LOS ANGELES
CALIFORNIA 90017-3543

TELEPHONE: 213.892.5200
FACSIMILE: 213.892.5454

WWW.MOFO.COM

MORRISON & FOERSTER LLP

AUSTIN, BEIJING, BERLIN, BOSTON,
BRUSSELS, DENVER, HONG KONG,
LONDON, LOS ANGELES, MIAMI,
NEW YORK, PALO ALTO, SAN DIEGO,
SAN FRANCISCO, SHANGHAI, SINGAPORE,
TOKYO, WASHINGTON, D.C.

June 13, 2024

Hon. Sidney H. Stein
United States District Judge
Southern District of New York
500 Pearl Street, Courtroom 23A
New York, New York 10007

Writer's Direct Contact
+1 (213) 892-5656
ABennett@mofo.com

Re:   *The New York Times Company v. Microsoft Corporation, et al.*
      Case No.: 23-cv-11195-SHS: Discovery Dispute Regarding RFPs

Dear Judge Stein:

Plaintiff The New York Times ("The Times") has filed yet another premature letter motion seeking discovery, while the parties are still meeting and conferring, as well as negotiating search terms, and as OpenAI continues to produce responsive documents. The Times's motion should be denied in its entirety.

**1.  OpenAI Has Agreed to Search for Responsive, Non-Privileged IP Policies (RFP 5)**

The Times claims, "OpenAI refuses to search for policies regarding its use of IP in its models." Not so. The Times's RFP 5 requests documents "reflecting policies, procedures, or practices concerning use of intellectual property in AI Models" (RFP 5). OpenAI is searching for and producing responsive, non-privileged documents. Specifically, OpenAI is searching for and producing information about the Copyright Shield policy, as well as documents related to filtering (which detects and removes certain content from the output of OpenAI models) and opting out (which allows content owners to opt out from the web crawler used for OpenAI models). *See* Ex. E at 6. After a reasonable search, these are the materials that OpenAI identified as responsive to this request. OpenAI is not (as The Times falsely suggests) playing "a game of hide-and-seek." *Charles v. City of N.Y.*, No. 11 Civ. 2783 (AT), 2014 WL 1284975, at *14 (S.D.N.Y. Mar. 31, 2014).

The Times attempts to concoct a dispute by arguing that OpenAI is asking it to "guess" the name of OpenAI's copyright policies. That is not true. In a good-faith attempt to work with The Times, OpenAI sought clarification of the additional types of policies that The Times seeks, beyond what OpenAI had already agreed to produce. *See* Ex. E at 6 ("we are still unsure what documents you are looking for other than Copyright Shield"). The Times failed to identify additional categories of documents responsive to this request. As the party requesting discovery, The Times bears the burden of ensuring its request is sufficiently specific and working with OpenAI to provide reasonable limitations. *See Funai Elec. Co. v. Orion Elec. Co., Ltd.*, Nos. 02-Civ.-2605, 01-Civ.-3501, 2002 WL 1808419, at *4 (S.D.N.Y. Aug. 7, 2002) (denying motion to compel where Plaintiff imposed "reasonable" limitation on discovery

**MORRISON FOERSTER**

June 13, 2024
Page Two

request, "requested a more specific definition," but plaintiff did "not provide[] one"). OpenAI's request for further clarification is reasonable. The Times should have to provide it.

2. **Communications "About" OpenAI's Agreements with Third Parties are Irrelevant and Disproportionate to the Needs of the Case (RFP 6)**

RFP 6 seeks documents "concerning alternatives to using copyrighted content to train [Defendants' models] without compensation including using licensing agreements or material in the public domain." As The Times concedes, OpenAI has agreed to produce access agreements with third parties relating to training data. In addition, OpenAI is searching for additional responsive, non-privileged, custodial documents discussing alternatives to such agreements, such as publicly available materials.

The Times, however, also separately seeks communications *about* the training-related agreements. Such information would be irrelevant and cumulative, since OpenAI is already producing the agreements themselves. The Times has made no argument as to why the communications—in addition to the actual agreements themselves—are relevant and proportional to the needs of this case. Furthermore, collecting communications about agreement negotiations would be highly burdensome. This process would require conducting searches on several custodians, and many of the people involved in those communications would be attorneys overseeing the contract negotiations. Thus, each of the collected documents would require a careful privilege review, and many would ultimately be withheld as privileged.

Indeed, The Times has refused to produce communications about its own licensing agreements in response to a nearly identical request from OpenAI. *See* Ex. E at 11 (acknowledging that "The Times has not agreed to produce communications related to The Times's licensing agreements"). The Times claims that it should not be required to produce such communications because "the parties are differently situated." Dkt. 141 at 2. But that assertion is pure *ipse dixit*. The Times may not simply declare that the parties are "differently situated" in order to impose disparate discovery demands on OpenAI. If anything, The Times's communications about its licenses are far more relevant, because they would reveal The Times's discussions about its licensing fees which are directly relevant to The Times's alleged damages. Nonetheless, The Times refuses to produce such communications, while also demanding that OpenAI make a similar production.

3. **OpenAI's Formation of a For-Profit Entity Is Irrelevant (RFP 11)**

RFP 11 seeks "documents concerning OpenAI's transition to a for-profit company." Dkt. 141 at 2 (internal quotation marks omitted). This request seeks irrelevant information. Indeed, The Times has not explained why OpenAI's formation as a for-profit entity is relevant, nor provided any case law to support the purported relevance.

The Times appears to assert that OpenAI's commercial status is relevant to the fair use analysis, but the only case The Times cites confirms that analysis considers the "purpose and

**MORRISON FOERSTER**

June 13, 2024
Page Three

character of the use," **not the defendant's corporate form**. *See* Dkt. 141 at 2 (quoting *A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1015 (9th Cir. 2001)). The Times has not cited any case that considered why an entity adopted a particular corporate form in analyzing fair use.

The Times asserts that OpenAI is playing "word games" by pointing out that OpenAI never *transitioned* to a for-profit company, but instead *created* a for-profit arm. Not so. OpenAI accurately communicated that no entity has undergone a "transition" to a for-profit entity, but instead that a new for-profit entity was created. OpenAI volunteered that information during a meet and confer to be helpful, not intransigent. Regardless, as OpenAI has made clear, the basis of OpenAI's refusal to produce documents in response to this request is that the request seeks irrelevant information. Indeed, The Times has acknowledged that this is the case. *See* Ex. E at 12 (correspondence from counsel for The Times describing "OpenAI's view" that "such documents are not relevant to fair use or any other issue in the case").

**4. OpenAI Is Already Producing Communications with Microsoft (RFP 15)**

The Times claims that "OpenAI[ ] refus[es] to produce any documents on the sole ground that Microsoft has already agreed to produce documents in its possession." Dkt. 141 at 3. Once again, The Times has prematurely raised this issue with the Court. The meet and confer process on this issue is incomplete, and the parties are not at an impasse. The Times should be ordered to meet and confer further with OpenAI, so that the parties can try to resolve this dispute without burdening the Court.

As OpenAI has made clear, Microsoft has already agreed to produce "responsive, nonprivileged documents concerning any commercial or collaborative efforts or contractual agreements between Microsoft and OpenAI relating to OpenAI's Text Generation AI Models identified in the Complaint." Ex. E at 7. What OpenAI has objected to is producing duplicative documents that Microsoft has already agreed to produce and is producing. To that end, OpenAI asked The Times to "identify what documents, if any, you seek and that you are not already receiving from Microsoft." *See id.* The Times did not respond substantively to that email; rather, it filed its letter motion. This motion is thus premature, and the parties should continue meeting and conferring to determine whether they are at an impasse on this issue.

**5. OpenAI Has Agreed to Produce RAG-Related Documents (RFPs 12 & 13)**

The Times claims that "OpenAI has evaded The Times's efforts to clarify whether it will produce any additional documents about Retrieval Augmented Generation (RAG)." This is yet another example of The Times needlessly burdening the Court with a manufactured discovery issue, where there is no ripe dispute. As OpenAI has made clear, *see* Ex. E at 1, OpenAI has agreed to search for and produce responsive, non-privileged documents sufficient to show how OpenAI uses RAG in connection with ChatGPT and its understanding of the RAG technology, and has applied "RAG" and "Retrieval Augmented Generation" as search terms. There is thus no need to burden the Court with this issue, as there is no live dispute.

**MORRISON FOERSTER**

June 13, 2024
Page Four

       Respectfully submitted,

 /s/ *Allyson R. Bennett*
Allyson R. Bennett
*Morrison & Foerster LLP*

 /s/ *Joseph R. Wetzel*
Joseph R. Wetzel
*Latham & Watkins LLP*

 /s/ *Nicholas S. Goldberg*
Nicholas S. Goldberg
*Keker, Van Nest & Peters LLP*


cc: All Counsel of Record (via ECF)

\* The parties use electronic signatures with consent in accordance with Rule 8.5(b) of the Court's ECF Rules.

sf-5992816