KEKER VAN NEST & PETERS    LATHAM & WATKINS LLP    MORRISON FOERSTER

October 22, 2024

Hon. Ona T. Wang
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

cc: All Counsel of Record Line (via ECF)

Re:   *New York Times Company v. Microsoft Corp., et al.*, Case No. 1:23-cv-11195-SHS

Dear Judge Wang:

OpenAI respectfully requests a pre-motion conference to address The New York Times' refusal to produce three categories of discrete but highly relevant documents regarding (1) its alleged damages, (2) the benefits of OpenAI's GPT Services to the Times and journalism generally, and (3) the impact of other generative AI products on journalism, including the Times' own use of other generative AI products.[1]  Although these documents are relevant to the Times' claims and OpenAI's defenses thereto, the Times has either refused production outright or limited its responses to produce only documents consistent with its self-serving allegations.

A.     **Analyses of the Times' Alleged Damages (RFPs 35 and 37)**

The Times alleges that OpenAI's technology has had a wide range of negative impacts on its financial position.  Specifically, it alleges that OpenAI's technology "threatens to divert readers, including current and potential subscribers, away from The Times, thereby reducing the subscription, advertising, licensing, and affiliate revenues" it would otherwise obtain.  Dkt. 170, ¶ 157.  In response, OpenAI served document requests designed to probe this assertion, including  (1) "[d]ocuments and [c]ommunications relating to formal or informal analyses relating to trends in readership or online subscriptions and the causes thereof" (RFP 35); and (2) "[d]ocuments and [c]ommunications relating to formal or informal analyses of the performance of content published on [the Times'] website, including without limitation analysis of methods to evaluate that performance" (RFP 37).  *See* Exhibit A at 13.  The Times initially refused to produce any documents in response to these requests, and its subsequent counteroffer of production is far too narrow.  The Times has agreed to produce only: (1) documents sufficient to show trends in readership for the Asserted Works and online subscriptions from 2018 through the present; and (2) documents sufficient to show trends in revenue generated in connection with content published on the Times's website from 2018 to present.[2]  The Times' counteroffer does

---

[1] The parties have met and conferred repeatedly via written communication and telephone conference regarding the RFPs addressed in this motion.  The parties' most recent conferral occurred via video conference on October 18, 2024, which confirmed that the parties are at an impasse.

[2] In the parties' most recent meet and confer, the Times incorrectly contended that OpenAI previously agreed to these limitations.  The Times is mistaken.  OpenAI previously offered to consider substantive

not include *any* documents or communications relating to the causes of any changes in readership or online subscriptions.

That refusal is unjustified. The Times' alleged damages and its position on the fourth fair use factor hinge upon the supposedly dramatic effect of OpenAI's conduct on the Times' revenues and audience. Dkt. 170, ¶ 157. Likewise, OpenAI's fair use defense looks to whether OpenAI's conduct has had an effect on the market for the Times' works. 17 U.S.C. § 107(4). Documents and communications reflecting analyses of trends in readership or online subscriptions and the underlying causes, as requested in RFP 35, are necessary for OpenAI to probe the Times' conclusory and improbable assertion that OpenAI's technology—as opposed to some other, independent factor—has negatively affected the Times' bottom line. Similarly, documents and communications regarding the performance of the Times' website, as requested in RFP 37, are essential to probe the Times' parallel assertion that OpenAI has "divert[ed]" its "readers" away from the Times' website. Dkt. 170, ¶ 157. This is the central allegation underlying the Times' theory of harm in this case. The Times' attempt to limit relevant discovery to high level "documents sufficient to show" across a narrow timeframe is inadequate and improper. To the extent the Times has analyzed such trends along multiple dimensions (e.g. demographic changes, changes to subscription options, print versus digital, etc.), OpenAI is entitled to those documents in discovery. In order to isolate any alleged effect that OpenAI's GPT Services have purportedly had on the Times' finances—as opposed to other variables such as economic conditions, competitive pressures, or other events—OpenAI is entitled to discovery on these issues spanning a reasonable timeframe, and at least 2015 to the present.

### B. The Benefits of OpenAI's GPT Services to Journalism (RFP 70)

The Times alleges that OpenAI's products threaten not just the Times' business, but journalism more broadly. Specifically, it alleges that if the "Times *and other news organizations*" cannot produce independent journalism, "there will be a vacuum that no computer or artificial intelligence can fill[,]" and "the cost to society will be enormous." *Id.* ¶¶ 47-48 (emphasis added). In response to these conclusory allegations, OpenAI requested "[d]ocuments and [c]ommunications concerning . . . the benefits of [OpenAI's] GPT Services to [the Times] or journalism generally" in RFP 70.[3] *See* Exhibit B at 8. But the Times has refused to produce any documents related to the impact of OpenAI's GPT Services on the journalism industry, instead confining its productions to the impact on the Times itself.[4] The Times' refusal prejudices OpenAI's ability to prepare its defenses.

---

limitations *if* the Times significantly expanded the date range for production. The Times rejected that proposal and offered an unacceptably narrow timeframe of documents.

[3] RFP 70 also requested other categories of documents, about which the parties have met and conferred. At present, OpenAI does not move to compel as to any other category within RFP 70.

[4] Indeed, the Times originally only agreed to produce documents reflecting the impact of OpenAI's GPT Services on the Times *as alleged in the complaint*—in other words, confining its production to documents supporting its case but withholding documents that contradict it. *See* Exhibit C at 11-12. It was only in the meet-and-confer process that the Times stated that it would produce documents reflecting the impact more broadly.

First, the Times has put the effects of OpenAI's technology on journalism writ large at issue, and its refusal to produce documents related to the same precludes OpenAI from fully investigating the falsity of the Times' claims. OpenAI is entitled to discovery that undercuts the Times' assertion that generative AI portends the end of independent journalism. If the Times is in possession of evidence to support its assertions, it should produce it. Second, the requested documents are directly probative of OpenAI's fair use defense. The Times' attempt to narrow the aperture and avoid a consideration of broader market effects of OpenAI's GPT Services is inconsistent with decades of case law demonstrating that fair use is a context-specific defense. Far from focusing on the parochial interests of individual plaintiffs, the fair use doctrine requires an assessment of "the public benefits the copying will likely produce." *Google LLC v. Oracle America, Inc.*, 593 U.S. 1, 35 (2021). And OpenAI's GPT Services have produced just those "public benefits" for the broader market. GPT Services provide tools and capabilities in various contexts—including in journalism—which did not exist before. The beneficial impact of OpenAI's technology on journalism is also relevant to whether that technology is transformative, a critical consideration under the first fair-use factor. *See id.* at 19. To the extent the Times has documents related to the beneficial impact of OpenAI's technology on journalism, they are relevant and discoverable here.

### C. Impact of Generative AI Products on the Times and Journalism (RFPs 76 & 82)

Likewise, the Times should be ordered to produce information regarding (1) the impact of third-party generative AI products on journalism (RFP 76), and (2) the Times' own use of AI products in support of its business (RFP 82). *See* Exhibit B at 10-11.

The Times has refused to produce such documents, arguing that the use or impact of third-party products—as opposed to OpenAI's own products—is not relevant. Dkt. 262 at 20. That assertion has no merit; the requested documents are directly relevant to the allegations underlying the Times' claims and OpenAI's fair use defense. As to the first, the Times has recognized that OpenAI's technology is at the forefront of a broad industry that is built upon large language models that are developed in similar ways via similar complex training processes. *See* Dkt. 170, ¶¶ 75-80. Thus, documents reflecting the impact of third-party generative AI products on journalism are likely to be probative of what benefits generative AI services, and OpenAI's technology in particular, might have on journalism. Likewise, documents regarding the Times' own use of third-party generative AI products are likely to undercut the Times' contention that generative AI products "[t]hreaten [h]igh-[q]uality [j]ournalism[.]" *Id.* at 14; *see also id.* ¶ 47. Such documents would demonstrate the ways in which generative AI can *help*, not harm, journalism. Finally, these documents are highly relevant to OpenAI's fair use defense. The Times' refusal to produce them once again runs afoul of the Supreme Court's guidance that fair use is a pragmatic test that calls for, among other things, consideration of "significant changes in technology." *Google LLC*, 593 U.S. at 19.

Respectfully,

| KEKER, VAN NEST & PETERS LLP[*] | LATHAM & WATKINS LLP | MORRISON & FOERSTER LLP |
|---|---|---|
| */s/ Andrew F. Dawson*<br>Andrew F. Dawson | */s/ Elana Nightingale Dawson*<br>Elana Nightingale Dawson | */s/ Rose S. Lee*<br>Rose S. Lee |

---

[*] All parties whose electronic signatures are included herein have consented to the filing of this document.

4

2809123