orrick

October 24, 2024

Orrick, Herrington & Sutcliffe LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669

+1 415 773 5700

orrick.com

Annette L. Hurst

E  ahurst@orrick.com
D  +1 415 773 4585
F  +1 415 773 5759

*Via ECF*

The Honorable Ona T. Wang
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re:   *The New York Times Co. v. Microsoft Corp.*,
      No. 1:23-cv-11195-SHS (S.D.N.Y.)

Dear Magistrate Judge Wang:

Pursuant to Section II.b of Your Honor's Individual Practices, Microsoft respectfully requests a conference regarding The New York Times's deficient responses to Microsoft's discovery requests covering undisclosed prompts and outputs from The Times's pre-suit investigation that resulted in the partially disclosed prompts and outputs alleged to be the basis for Count VI for Misappropriation (FAC ¶¶ 127-35) and Count VII for Dilution (FAC ¶¶ 136-42).[1]

In meet and confer, Microsoft offered to resolve this dispute if The Times agreed not to rely upon the facts derived from the prompts and outputs to support Counts VI and VII, including not providing them to its experts. The Times refused, stating that its experts would "see the examples cited in the Complaint" and The Times "may still rely on those examples for purposes of opposing a Rule 12 motion or for framing the proper scope of discovery." Ex. C.

This is a different issue than Exhibit J and the copyright claim previously addressed by the Court on OpenAI's motion. The outputs in Exhibit J were circumstantial evidence regarding the contents of training data exclusively within OpenAI's possession. The Times's copyright infringement claim does not rise or fall on uncited prompts used by The Times to generate outputs suggestive of the contents of that training data. For the reasons explained below, however, Counts VI and VII *do* rise and fall on the contents of these undisclosed prompts. Indeed, the FAC quotes or summarizes them to provide necessary facts. The undisclosed prompts and outputs at issue in this motion are the *only* evidence of the alleged unlawful acts. Without them, The Times has not plausibly stated either claim for Misappropriation or Dilution.

The Times caused the models to behave in the fashion that it claims is unlawful; it has exclusive possession of the relevant information about that; and, it refuses to produce the facts substantiating its allegations of tortious behavior. Federal Rule of Evidence Rule 502(a) requires production in these circumstances as all three prongs for waiver of any applicable protection are met. The waiver was intentional, the disclosed and undisclosed communications concern the same subject matter, and The Times's refusal to disclose the prompts and outputs that form the basis for the Misappropriation and Dilution claims is fundamentally unfair.

**Count VI for Misappropriation (FAC ¶¶ 127-35).** The misappropriation tort requires free-riding by the Defendant on a directly competitive product. *Barclays Capital Inc. v.*

---

[1] Requests for Production Nos. 22, 24, 25, 40, and 47 (Ex. A); Interrogatory No. 2 (Ex. B).

Hon. Judge Wang
October 24, 2024
Page 2



*Theflyonthewall.com, Inc.*, 650 F.3d 876, 905 (2d Cir. 2011). The FAC alleges that Microsoft's Bing/Copilot Chat products do this by summarizing and delivering The Times's information (from *Wirecutter*) in a process referred to as "grounding" or "retrieval-augmented-generation." FAC ¶¶ 72, 108-109, 179. In the ordinary search process, when a user makes a query, the search engine examines its index of underlying internet website data and returns results in the form of URLs and snippets based on an algorithm designed to retrieve information most relevant to that query. *See Authors Guild v. Google, Inc.*, 804 F.3d 202, 208 (2d Cir. 2015) (describing Google Books search engine and its transformative fair use); *U.S. v. Google LLC*, --- F. Supp. 3d ---, 2024 WL 3647498, at *8, *20-21 (D.D.C. Aug. 5, 2024) (describing operation of search engines and methods of ranking search results); *Field v. Google Inc.*, 412 F. Supp. 2d 1106, 1110 (D. Nev. 2006) (describing search indexing and retrieval). In the new generative search process, when a user enters a Bing/Copilot Chat prompt, the model retrieves the index data and generates a response summarizing the information to provide an actual answer to the question, offering links to the URLs comprising the underlying data. *See* FAC ¶¶ 112, 115, 131.

Count VI claims that Bing/Copilot Chat is summarizing *Wirecutter* information in a way that is too "extensive" or "detailed" and therefore improperly substitutes for the original in a way that is meaningfully different from an ordinary search engine. *See* FAC ¶¶ 127, 129. But it was *The Times* who entered the prompts causing Bing/Copilot Chat to allegedly free-ride by giving those "extensive" and "detailed" answers. Only The Times knows how many and what prompts it took to make that happen. The Times could have asked the model to "give all of the information" about a particular recommendation "from *Wirecutter*." Without the prompts, there is no way to evaluate whether Microsoft or The Times caused the model to provide the alleged *overly* "extensive" or "detailed" results. *See Red Mt. Med. Holdings, Inc. v. Brill*, 563 F. Supp. 3d 159, 181 (S.D.N.Y. 2021) (defendant's acts or omissions must cause the misappropriation).

**Count VII for Dilution (FAC ¶¶ 136-42)**. Similarly, in Count VII, The Times alleges that the generative search outputs falsely attribute inaccurate information to its works, thereby tarnishing its famous mark. FAC ¶ 202; *see Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 110 (2d Cir. 2009); *see Deere & Co. v. MTD Prods., Inc.*, 41 F.3d 39, 43 (2d Cir. 1994) (tarnishment means consumers will associate the mark with inferior goods and services). The FAC asserts that Bing/Copilot Chat gave answers that were "hallucinations" in generative search outputs and attributed that incorrect information to The Times. *See* FAC ¶¶ 142, 201.

Again, the only way to evaluate whether it was The Times or Bing/Copilot Chat who caused the "wrong" answer is to look at the prompt. The Times's consultant could have instructed Bing/Copilot Chat to give a wrong answer and attribute that to The Times. Additionally, tarnishment requires not just the wrong answer but also a reason to believe that the consumer associates the error with The Times. The only way to evaluate the risk of a consumer actually thinking that it was The Times's fault that they got a wrong answer from Bing/Copilot Chat is to look at the entire interaction. Indeed, The Times recognizes this, as the Count VII Dilution claim discloses much about the prompts, including summaries and quotes. FAC ¶¶ 138–141.

The Times's insistence upon providing these facts to its experts would enable the experts to conceal any difficulties The Times had in producing hallucinations while simultaneously benefiting from its prior work. For example, about half of the alleged hallucinatory outputs in the FAC concern the subject of health or medicine. But it may have taken The Times's consultant hundreds or thousands of prompts to hit upon a prompting strategy resulting in that subject

Hon. Judge Wang
October 24, 2024
Page 3



matter. All of those prior efforts would be excluded from the denominator of the new expert in assessing the rate of allegedly hallucinatory outputs. This would allow the expert to conceal the true ratio of the purported problem, presenting it as significant when it is not.

***Rule 502 Compels Disclosure.*** Having wielded prompts and outputs to supply the entire factual basis of its claims of Misappropriation and Dilution, The Times cannot use the work product doctrine to shield the underlying evidence of those facts from scrutiny. In the first instance, the *facts* of the contents of the prompts and outputs are neither an attorney mental impression nor an attorney-client communication. They are simply facts about inputs and corresponding outputs to the model (which, indeed, were disclosed to a third party as part of the process). Those facts do not acquire privilege simply because they were also communicated to and used by counsel. At most they are qualified work product because they were created pursuant to a lawyer's supervision, but the disclosure of and reliance upon such data in the FAC necessitates a waiver of work product in these circumstances.

Work product protection is waived if "(1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together." Fed. R. Evid. 502(a). Rule 502(a) "is grounded upon notions of fairness in order to prevent selective and misleading presentation of evidence to the disadvantage of the adversary." *In re Symbol Techs., Inc. Sec. Litig*., 2017 WL 1233842, at *16 (E.D.N.Y. Mar. 31, 2017) (selective disclosure of memoranda in complaint resulted in waiver).

This standard is plainly met with respect to Counts VI and VII. First, the FAC discloses information about the prompts. By characterizing, purporting to summarize, and in some instances even quoting the prompts at issue, The Times disclosed and relied upon the information at issue in a legally operative complaint. Second, the disclosed and undisclosed information concern the "same overall subject matter." *Symbol Techs.*, 2017 WL 1233842, at *15. Third, they ought in fairness be considered together because The Times has put them at issue. The Times cannot selectively rely on facts regarding portions of its prompts and outputs without disclosing the rest. Nor can The Times disclaim reliance upon these facts, since it agrees it intends to rely upon them to meet Rule 12 and inform the scope of discovery and its experts. Manipulative partial disclosure is clearly one of the circumstances requiring a waiver under Rule 502(a). *In re Commodity Exch., Inc., Gold Futures and Options Trading Litig.*, 2019 WL 13046984 at *2 (S.D.N.Y. Feb. 25, 2019) (requiring full disclosure of statistical analyses supporting plaintiff's claim because it might disprove the core allegations in the complaint); *Fin. Guar. Ins. Co. v. Putnam Advisory Co*., LLC, 314 F.R.D. 85, 90 (S.D.N.Y. 2016) (work product protection over economic analysis waived where plaintiff quoted three statements from the analysis and relied on same in defending against motion to dismiss); *Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc*., 1997 WL 801454, at *1-3 (S.D.N.Y. Dec. 31, 1997) (waiver extends to all experiments conducted on the issue because the party "may not selectively produce reports that favor its position while withholding reports that are potentially adverse to its position").

Finally, this waiver ought to extend to the entirety of the pre-suit testing of the models aimed at producing evidence of misappropriation and tarnishment. There is no other way to ascertain whether the information upon which The Times relies in support of its claims was unfairly produced through a lengthy and manipulative process designed to produce just the right output.

Respectfully submitted,

*/s/ Annette L. Hurst*

Annette L. Hurst