SUSMAN GODFREY L.L.P.

October 25, 2024

Hon. Ona T. Wang
Southern District of New York
500 Pearl Street
New York, New York 10007

        Re:    *The New York Times Company v. Microsoft Corporation, et al.*,
                No.: 23-cv-11195-SHS: Opposition to OpenAI's Motion to Compel

Dear Magistrate Judge Wang:

    Plaintiff The New York Times Company ("The Times") opposes OpenAI's October 22 request to compel the production of documents. Dkt. 276.

1. **The Times Already Agreed to Produce All Relevant Damages Documents (RFPs 35 & 37).**

    OpenAI claims to be seeking discovery into whether Defendants' conduct has negatively impacted The Times's readership, subscriptions, or revenue, which stems from the allegation that Defendants' unlawful conduct threatens to divert readers away from The Times. *See* Dkt. 276 at 1-2. But The Times already agreed to voluminous discovery on these issues:

    (1) documents regarding any harm or injury alleged in this case, which includes documents relating to reductions in readership, revenue, or online subscriptions (OAI RFPs 26, 135);

    (2) documents concerning OpenAI's impact on The Times's business and/or revenue (OAI RFPs 69, 70);

    (3) documents concerning how OpenAI has diverted Times readers and online traffic (OAI RFPs 94, 98; *see also* OAI RFPs 90, 149, 150);

    (4) analyses and reports regarding whether decreases in traffic to Times websites are attributable to Defendants' generative AI products *or other market forces* (OAI RFP 145);

    (5) documents concerning any revenue The Times receives for the reproduction, distribution, display, or advertising of its copyrighted works (MS RFP 6);

    (6) documents sufficient to show The Times's monthly revenue, including from subscriptions, advertising, and affiliate links from 2015 to present (OAI RFPs 27, 28, 95; MS RFPs 60, 65, 66);

    (7) documents regarding decreases in online traffic or impacts on Wirecutter subscription and advertising revenue attributed to OpenAI (OAI RFP 96);

    (8) documents sufficient to show total page views for the Asserted Works (OAI RFP 29; MS RFP 61);

    (9) documents sufficient to show monthly user visits and traffic to The Times's websites from 2018 to present (OAI RFPs 136, 142-144); and

October 25, 2024
Page 2

(10) documents sufficient to show the number of monthly Times subscribers from 2015 to present (OAI RFP 34).  *See* OpenAI Ex. A-C; Times Ex. 1-3.

Moreover, The Times agreed to produce what OpenAI offered as a compromise on RFPs 35 and 37 months ago: (1) documents sufficient to show trends in readership for the Asserted Works and The Times's online subscriptions, and (2) documents sufficient to show trends in revenue generated in connection with content published on The Times's website.  Ex. 5 at 2. The language The Times agreed to was the exact wording proposed by OpenAI, so any belated issues with this phrasing is entirely of OpenAI's own making.[1]  Ex. 4 at 4.

As for the date range, The Times's offer to produce responsive documents from 2018 to present is reasonable as well.  OpenAI publicly released the first consumer-facing ChatGPT product in November 2022, *see* Dkt. 52 at 9, and the resulting diversion of Times readers and subscribers followed.  Discovery into trends in readership, online subscriptions, and revenue spanning the four-and-a-half years before, and two years after, ChatGPT's release is more than enough time for OpenAI to assess whether its conduct impacted the market for The Times's works, especially when The Times agreed to produce subscription and revenue data going back to 2015.

OpenAI's complete reversal to its original overbroad discovery requests is unproductive and a non-starter.  Discovery into "[a]ll Documents and Communications" relating to "formal or informal analyses relating to trends in readership or online subscriptions and the causes thereof" (RFP 35) and "formal or informal analyses of the performance of content published on Your website" from 2015 to present (RFP 37) is overbroad, and would cover a vast number of daily emails sent by Times employees who review, for example, subscription patterns and audience responses to Times news articles and other content.  OpenAI does not need all such communications for more than seven years preceding ChatGPT's release to assess the causes of any negative impacts on readership, subscriptions, or revenue The Times suffered since November 2022.

2. **The Times Already Agreed to Produce Documents Regarding Defendants' Unlawful Use of Times Content, Including Any Purported "Benefits" (RFP 70).**

OpenAI asserts that discovery into all documents and communications concerning "the benefits of GPT Services to… journalism generally" is relevant to the "public benefit" inquiry of fair use, and that The Times is refusing to produce these documents.  Dkt. 276 at 2.  Not so.

The fourth fair use factor looks at "the effect of ***the use*** upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4) (emphasis added).  Likewise, the "public benefit" inquiry examines "the public benefits ***the copying*** will likely produce."  *See Google LLC*

---

[1] On August 6, OpenAI asked if The Times would agree to limit RFP 35 to "documents sufficient to show trends in readership for The Times's works and online subscriptions covered The Times's Asserted Works for some specified timeframe," and "whether it would agree to produce such discovery for the past thirty years." Ex. 4.  OpenAI posed the same questions for RFP 37, offering to limit it to "documents sufficient to show trends in revenue generated in connection with content published on The Times's website." *Id.*  These offers were not contingent on a particular timeframe, and during subsequent meet and confers the parties negotiated only the timeframe.  Ex. 6 at 1, 3.

October 25, 2024
Page 3

*v. Oracle Am., Inc.*, 593 U.S. 1, 35 (2021) (emphasis added).  "The use" and "the copying" are *Defendants'* copying and use of Times works.  The Times already agreed to produce all documents regarding Defendants' use of Times works—regardless of whether those documents concern any purported "benefits" of Defendants' use or not.  *See, e.g.*, OAI RFPs 1, 70, 109; MS RFPs 12, 14.  To the extent that OpenAI seeks some other hypothetical subset of documents regarding "benefits" their generative AI has on "journalism generally" that have nothing to do with their use of Times works or its effect on the market for Times works, those are irrelevant.

3. **Third-Party Generative AI Tools' Impact on Journalism is Irrelevant (RFP 76).**

Discovery into the impact of *third-party* generative AI tools on the journalism market is wholly irrelevant for the reasons outlined in The Times's opposition to OpenAI's September 3 motion to compel.  *See* Dkt. 238 at 1-2.

Every element of the fair use defense in this case centers on *OpenAI and Microsoft's* infringing use of Times works in Defendants' own generative AI tools.  *See* 17 U.S.C. § 107(1), (4).  The first factor looks at "the purpose and character of the use"—as in, OpenAI and Microsoft's use of Times works.  *Id.*  And the "effect on the market" factor analyzes "the public benefits the copying will likely produce"—again, examining OpenAI and Microsoft's copying.  *Google*, 593 U.S. at 3.  To the extent a look at broader industry conduct is relevant, it is as part of an analysis about the impact *Defendants'* copying has on publishers' businesses and whether it decreases their incentive to create works in the first place.  *See Sega Ent. Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1523 (9th Cir. 1992) (internal citations omitted) (a fair use analysis may consider whether, if "the challenged use should become widespread, it would adversely affect the potential market for the copyrighted work").  The impact of *non-party* generative AI tools on journalism has nothing to do with whether Defendants' conduct is fair use.  Nor is discovery into the impact of third-party generative AI on the broader journalism market relevant to the harm *OpenAI and Microsoft's* copying of Times works has caused The Times.

4. **The Times's Use of Third-Party AI Products Is Irrelevant (RFP 82).**

Similarly, discovery into all documents and communications regarding The Times's use of third-party generative AI tools for "marketing research, to personalize marketing, or to create audiences for third party advertisers," Dkt. 262 at 19, is irrelevant to whether Defendants' infringement of Times works caused The Times harm or threaten to do so.  Nor is it relevant to fair use.  OpenAI does not explain how it could be, *see* Dkt. 276 at 3, but to the extent that OpenAI claims that discovery into The Times's use of third-party generative AI for marketing relates to the "effect on the market" analysis, OpenAI is wrong.  As explained, the only relevant "market effects" are the public benefits that *OpenAI's and Microsoft's* copying of Times works might produce.  *See Google*, 593 U.S. at 35.[2]

---

[2] OpenAI's claim that "significant changes in technology" justify this discovery is wrong.  *See* Dkt. 276 at 3 (quoting *Google*, 593 U.S. at 19).  The language it cites from *Google v. Oracle* relates to how courts should interpret ambiguous language in the Copyright Act—not whether courts should permit free-ranging discovery into the irrelevant conduct of third parties who operate in the same field as the Defendants.

October 25, 2024
Page 4

Respectfully submitted,

*/s/ Ian B. Crosby*
Ian B. Crosby
Susman Godfrey L.L.P.

*/s/ Steven Lieberman*
Steven Lieberman
Rothwell, Figg, Ernst & Manbeck

cc: All Counsel of Record (via ECF)