# Exhibit 4

**Elana Nightingale Dawson**
Direct Dial: 202.637.2303
elana.nightingaledawson@lw.com

555 Eleventh Street, N.W., Suite 1000
Washington, D.C.  20004-1304
Tel: +1.202.637.2200  Fax: +1.202.637.2201
www.lw.com

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Austin | Milan |
| Beijing | Munich |
| Boston | New York |
| Brussels | Orange County |
| Century City | Paris |
| Chicago | Riyadh |
| Dubai | San Diego |
| Düsseldorf | San Francisco |
| Frankfurt | Seoul |
| Hamburg | Silicon Valley |
| Hong Kong | Singapore |
| Houston | Tel Aviv |
| London | Tokyo |
| Los Angeles | Washington, D.C. |
| Madrid | |

# LATHAM & WATKINS LLP

August 6, 2024

**VIA EMAIL**

Zach Savage
zsavage@susmangodfrey.com
Susman Godfrey L.L.P.
One Manhattan West
New York, NY 10001-8602

Re:  *The New York Times Company v. Microsoft Corporation, et al.*, Case No.: 23-cv-11195-SHS

Counsel:

I write regarding certain deficiencies in The Times's responses to OpenAI's first sets of discovery requests and to follow up on several open items from the parties' prior discussions about those responses, including the parties' meet and confer on July 31, 2024.

**A.    The Times's Objections to Definition of "Generative AI" (Request for Production Nos. 4-6, 16, 33, 44-46, 49, 51, 58)**

The Times has objected to OpenAI's definition of "Generative AI," which OpenAI defined to mean "models, algorithms, or other systems that are trained using data to generate new content (including text, images, or other media), such as ChatGPT, Gemini, LLaMA, or Claude."  The Times contends that definition is overbroad "because it applies to products not implicated by the Complaint," and The Times indicates that it has construed the term to mean "Defendants' AI models that emulate the structure and characteristics of input content in order to generate derived synthetic content, such as images, videos, audio, text, and other digital content."  The Times's Responses and Objections to OpenAI's First Set of Requests for Production at 3 (April 8, 2024).

As explained during the parties' July 31 meet and confer, that objection is improper and unduly narrows many of OpenAI's requests.  Discovery relating to artificial intelligence generally and third-party artificial intelligence tools is relevant to The Times's claims and factual allegations.  For example, Request No. 16 seeks discovery regarding The Times's "knowledge of the alleged use of Your Published Works for training Generative AI models," including The Times's knowledge with respect to third-party artificial intelligence tools.  That bears on The Times's claims of harm.  If The Times was aware that the asserted works were being used to train third-party artificial intelligence models, but did not object, that would suggest The Times did not view such training as harmful, contrary to The Times's allegations in this lawsuit.  As

another example, Request Nos. 44, 45, 46 and 49 seek discovery relating to The Times's use of artificial intelligence tools, including third-party tools. The Times's own use of artificial intelligence tools to assist its journalism work is relevant to, *inter alia*, The Times's allegation that "*GenAI Products*"—not just OpenAI's products—"threaten high-quality journalism." Dkt. 1 ¶¶ 47–54 (emphasis added, capitalization normalized).

Please either confirm that The Times will produce discovery concerning Generative AI, as defined and as sought in RFP Nos. 4-6, 16, 33, 44-46, 49, 51, 58, or confirm that the parties are at an impasse.

### B. Communications Between The Times and Certain Third Parties Related to Copyright and Artificial Intelligence (Request for Production No. 24)

Request No. 24 seeks communications between The Times and "other news, media, or writers' organizations and publishers, as well as any other named plaintiff" in certain enumerated litigations "related to copyright and artificial intelligence." The Times has not agreed to produce documents responsive to this Request, but indicated that it would agree to produce responsive documents if the request were narrowed to seek only documents relating to alleged "copyright infringement by OpenAI," rather than "copyright and artificial intelligence" more generally. May 22, 2024 Email from E. Cronin.

As discussed during the parties' July 31 meet and confer, The Times's proposed limitation is unduly narrow. The Times's own allegations depend in many instances on the operation and impact of generative artificial intelligence beyond OpenAI's services, and The Times's limitation would carve out communications about such matters. *See, e.g.*, Dkt. 1 ¶¶ 47–54. Moreover, by limiting the communications to alleged "infringement," The Times's proposal would exclude communications about other various relevant subjects, such as potential copyright licensing.

Please either confirm that The Times will produce documents responsive to the full scope of the Request or confirm that the parties are at an impasse.

### C. Total Page Views for Asserted Works, by Hour, For 14-Day Period Following Publication (Request for Production No. 30)

Request No. 30 seeks "[d]ocuments sufficient to show the total page views for each of Your Asserted Works for each hour of each day during the 14-day period following its publication." The Times initially responded that it would not produce documents in response to this request. Then, after the parties met and conferred, The Times indicated it would reevaluate its objections. *See* May 15, 2024 Email from E. Cronin ("We'll let OpenAI know if we are standing on our responses/objections or if there is a subset of responsive documents we can produce soon."). However, as discussed during the parties' July 31 meet and confer, The Times has not stated whether it will continue to stand on its objections.

Please either confirm that The Times will produce documents responsive to the full scope of the Request or confirm that the parties are at an impasse.

LATHAM&WATKINS LLP

### D. Licensing of the Asserted Works (Request for Production Nos. 33 and 43)

Following the parties' prior conferences regarding Request for Production Nos. 33 and 43, which relate to licensing of the Asserted Works, there are two remaining disputes: (1) The Times has refused to produce documents and communications related to failed licensing attempts in connection with the Asserted Works, and (2) The Times has agreed to produce licensing records from only January 1, 2018 to the present.  *See* May 22, 2024 Email from E. Cronin.  We address each dispute in turn.

#### 1. *Failed Licensing Attempts*

Rather than seek *all* documents and communications relating to failed licensing attempts in connection with the Asserted Works, OpenAI would be willing to agree to limit that aspect of Request Nos. 33 and 43 to seek only (a) term sheets for any licensing deals concerning the Asserted Works that did not result in an executed license, and (b) documents sufficient to show all attempts to license the Asserted Works *for training of or use with Generative AI products and services* (using the definition of "Generative AI" in OpenAI's discovery requests).

Please let us know if The Times will agree to this proposal.

#### 2. *Timeframe*

In the interest of avoiding burdening the Court with this dispute, OpenAI proposes the following compromise with respect to timeframe:

- The Times agrees to impose no time restriction on its search for and production of documents responsive to Request for Production No. 33 and 43 that concern licensing, or attempted licensing, of the Asserted Works *for training of or use with Generative AI products and services*; and

- For any other types of documents The Times has agreed to produce in response to Request for Production Nos. 33 and 43, The Times agrees to search for and produce materials from January 1, 2011 to the present.

Please let us know if this is agreeable to The Times.

### E. Analyses Relating to Trends in Readership or Online Subscriptions (Request for Production No. 35 and 37)

Request No. 35 seeks "[a]ll Documents and Communications relating to formal or informal analyses relating to trends in readership or online subscriptions and the causes thereof."  Request No. 37 seeks "All Documents and Communications relating to formal or informal analyses of the performance of content published on Your website, including without limitation analysis of methods to evaluate that performance."  The Times has refused to produce documents responsive to these Requests unless OpenAI narrows their scope.

As explained on the parties' July 31 meet and confer, in the interest of compromise, OpenAI is open to narrowing Request No. 35 if The Times agrees to produce documents sufficient to show trends in readership for The Times's works and online subscriptions covering The Times's Asserted Works for some specified timeframe. Please let us know The Times's position, including whether it would agree to produce such discovery for the past thirty years.

Similarly, OpenAI is willing to narrow Request No. 37 if The Times agrees to produce documents sufficient to show trends in revenue generated in connection with content published on The Times's website for some specified timeframe. Please let us know The Times's position, including whether it would agree to produce such discovery for the past thirty years.

### F. The Times's Commercial Agreements for Access to Third-Party Content (Request for Production No. 41)

Request No 41 seeks "[a]ll Documents and Communications relating to any commercial arrangements through which You obtain access to third-party content for use by Your Employees, including without limitation enterprise subscriptions to other news sources, research databases, and online libraries." The Times has refused to produce responsive documents, based on relevance objections and other grounds. This Request is relevant to, *inter alia*, the ways in which The Times uses third-party content for its own content creation and learning—matters that The Times has put directly at issue with respect to OpenAI's alleged use of content.

Please either confirm that The Times will produce documents responsive to the full scope of the Request or confirm that the parties are at an impasse.

### G. The Times's Potential Adoption of Generative AI for Use by Its Employees (Request for Production No. 45)

Request No. 45 seeks "[a]ll Documents and Communications relating to Your potential adoption of Generative AI for use by Employees of The New York Times Company, including Communications with any Generative AI company regarding that potential adoption." The Times refused to produce responsive documents, but indicated after the parties met and conferred that The Times would be willing to consider a narrowed Request.

OpenAI is willing to narrow this Request as follows: All Documents and Communications relating to Your plans to promote or facilitate the use of Generative AI by Employees of The New York Times Company. For the avoidance of doubt, this proposal is based on OpenAI's definition of Generative AI, which is addressed at the outset of this correspondence.

Please let us know if The Times will agree to this proposal or confirm that the parties are at an impasse.

### H. The Times's Efforts Undertaken to Separate The Times's Reporting on OpenAI and Its Activities Underlying this Lawsuit (Request for Production No. 56)

Request No. 56 seeks "[a]ll Documents and Communications relating to any efforts You have undertaken to separate Your reporting on OpenAI and Your activities underlying the preparation and prosecution of this lawsuit." The Times has refused to produce responsive documents, objecting based on alleged overbreadth, reporter's privilege, and other grounds.

This Request is relevant in view of The Times's allegations of harm. The Times alleges that it has a reputation for "independence" and "integrity," and its Asserted Works "fill an important need for trustworthy news" in an "era in which speculation, disinformation, and spin often drown out the truth when news breaks." Dkt. 1 ¶¶ 31, 33–34, 47, 128. Thus, The Times has put at issue the trustworthiness of its journalism, including how The Times covers matters, like this lawsuit, in which it has a financial interest.

Please either confirm that The Times will produce documents responsive to the full scope of the Request or confirm that the parties are at an impasse.

### I. The Times's Computation of Damages (Interrogatory No. 1)

Interrogatory No. 1 seeks a description of The Times's "computation of the amount of each type of monetary relief sought, including the amount of actual damages You claim to have suffered, the amount of Defendants' profits You seek to disgorge, and the amount of statutory damages You claim to be entitled to."

The Times's response is cursory and lacks any computation of The Times's alleged damages. The Times filed this lawsuit over eight months ago and it has had more than ample time to provide a fulsome response to this interrogatory. Indeed, the Southern District of New York Local Rules recognize that it is appropriate to seek via interrogatory "the computation of each category of damages alleged." *See* Local Civil Rule 33.3(a). Please provide a date by when The Times expects to supplement its response to provide substantive details.

\*   \*   \*

It remains OpenAI's understanding from the parties' prior conferrals and correspondence that the parties are at an impasse with respect to the following discovery requests to The Times (in addition to those already raised with the Court): Request for Production Nos. 18 (arrangements or agreements permitting a third party to reproduce or display the Asserted Works), 42 (documents sufficient to show the relevant category of each Asserted Work), and 50–51 (documents relating to training of certain artificial intelligence tools by The Times). We also understand that we are at an impasse with respect to Request for Production Nos. 4–6, which concern the reproduction or attempted reproduction of the Asserted Works via Generative AI services other than GPT Services, and that, even if the dispute regarding the definition of "Generative AI" discussed above is resolved, The Times is not willing to produce the discovery

**LATHAM&WATKINS**LLP

sought by these requests.  If The Times's positions regarding any of these requests have changed, please let us know immediately.

   For the items above that were discussed during the parties' July 31 meet and confer, please kindly provide the requested information by August 7.  For other items, please provide The Times's availability to meet and confer on August 12 or 13.

          Sincerely,

          */s/ Elana Nightingale Dawson*

          Elana Nightingale Dawson
          of LATHAM & WATKINS LLP