# EXHIBIT 2

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

_____

| | | |
|---|---|---|
| **Bartz, et al.,** | ) | |
| | ) | No. 3:24-CV-05417-WHA |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | San Francisco, California |
| **Anthropic PBC,** | ) | October 10, 2024 |
| | ) | 11:33 a.m. |
| Defendants. | ) | |
| _____ | ) | |

**BEFORE:  THE HONORABLE WILLIAM H. ALSUP, JUDGE**

**<u>REPORTER'S TRANSCRIPT OF PROCEEDINGS</u>**

**<u>INITIAL CASE MANAGEMENT CONFERENCE</u>**

Official Court Reporter:
**Cathy J. Taylor, RMR, CRR, CRC (By Zoom Videoconference)**
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, SPC 31
Phoenix, Arizona 85003-2151
(602) 322-7249

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

1                          **A P P E A R A N C E S**

2    For the Plaintiffs:
          SUSMAN GODFREY, LLP
3         By:   **Justin A. Nelson, Esq.**
          1000 Louisiana Street, Suite 5100
4         Houston, Texas  77002

5         SUSMAN GODFREY, LLP
          By:  **Rohit Dwarka Nath, Esq.**
6         1900 Avenue of the Stars, Suite 1400
          Los Angeles, California  90067
7
          LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
8         By:  **Reilly Todd Stoler, Esq.**
          275 Battery Street, 29th Floor
9         San Francisco, California  94111-3339

10        LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
          By:  **Rachel Geman, Esq.**
11        250 Hudson Street, 8th Floor
          New York, New York  10013-1413
12
     For the Defendant:
13        ARNOLD & PORTER KAYE SCHOLER, LLP
          By:   **Douglas Andrew Winthrop, Esq.**
14             **Estayvaine Bragg, Esq.**
               **Jessica Lim Gillotte, Esq.**
15        Three Embarcadero Center, 10th Floor
          San Francisco, California  94111-4024
16
          LATHAM & WATKINS
17        By:  **Joseph Richard Wetzel, Esq.**
          505 Montgomery Street, Suite 2000
18        San Francisco, California  94111

19

20

21

22

23

24

25

                    UNITED STATES DISTRICT COURT

3

```
1                    P R O C E E D I N G S

2              THE COURTROOM DEPUTY:  Calling Civil Action 24-5417,

3       Bartz, et al., vs. Anthropic PBC.

4              Counsel, please approach the podium.  State your

5       appearances for the record beginning with counsel for

6       plaintiffs.

7              MR. NELSON:  Good morning, Your Honor.  Justin Nelson

8       from Susman Godfrey representing the Bartz plaintiffs.  With me

9       from Susman Godfrey is Rohit Nath.  With me from Lieff Cabraser

10      is Rachel Geman and Reilly Stoler.

11             THE COURT:  Welcome to all of you.

12             And?

13             MR. WINTHROP:  Good morning, Your Honor.  Doug

14      Winthrop from Arnold & Porter on behalf of Anthropic.  I'm here

15      with my colleagues, Estayvaine Bragg and Jessica Gillotte.  And

16      then my co-counsel here, Joe Wetzel, from Latham & Watkins.

17             THE COURT:  All right.  Welcome to all of you.

18             All right.  We're here for a case management

19      conference.  I want -- I've read most of the complaint, but I

20      want to give you a chance to tell me in two minutes, that's it,

21      to summarize your case.

22             And then you'll get two minutes to summarize your

23      case.

24             Go ahead.

25             MR. NELSON:  Thank you, Your Honor.
```

1         This case involves the unauthorized use of hundreds of

2    thousands of copyrighted books that Anthropic is alleged to

3    have taken without permission in something called The Pile.

4    The Pile is a publicly available source that includes within it

5    something called Books3.  Books3 is a pirated database of

6    books.  The allegations are that Anthropic took that pirated

7    data source and used it to train its large language model and

8    specifically, because books are incredibly important to train

9    that large language model, it knew that it was a pirated

10   dataset, and it, nevertheless, did it.

11        The defense that we think is coming is fair use.  We

12   do not think that it is a proper case for fair use.  The very

13   kernel of what these books are about is expressive content.

14   How you say something is incredibly important.  That is exactly

15   what Anthropic does in training.

16        So this is not something, say, like the *Sega* case,

17   where the intermediate copying was for the non-expressive

18   content.  This is directly for the expressive content.  And in

19   many ways this is no different from something like *Napster*,

20   where, for example, a teenager cannot download something from

21   the Internet and listen to music without infringing the

22   copyright.

23        Certainly a corporation cannot download a pirated --

24   known pirated website to its own database and then use it for a

25   commercial purpose.

UNITED STATES DISTRICT COURT

1          Thank you, Your Honor.

2          THE COURT:  A very good, short summary.  You get an

3     A plus.  I don't have to agree with everything, but you did

4     what I asked.  In two minutes or less, you summarized the case.

5          Okay.  Mr. Winthrop, you get two minutes.

6          MR. WINTHROP:  All right.  And the bar has been set

7     high, so I will --

8          THE COURT:  Be good.

9          MR. WINTHROP:  Anthropic is an AI research company.

10    Its core product is Claude, which is a family of large language

11    models.  And that's a text-based type of generative AI system

12    that uses deep learning techniques and large data sets to

13    understand, summarize, generate, and predict new content.

14          Anthropic's Claude models performed tasks -- tasks

15    involving language, reasoning, analysis, and coding, among

16    other things.  Its users are individuals seeking help with

17    drafting an email, all the way to businesses looking to enhance

18    their internal functions, create complex financial forecasts,

19    that sort of thing.

20          The plaintiffs here, as counsel said, are three

21    authors that they say -- they're asserting a single claim of

22    copyright infringement.  A number of the AI copyright cases in

23    the Northern District have many, many claims.  This has one

24    claim, a single claim of direct copyright infringement.  And

25    the claim is based solely on the theory that Anthropic's

1   intermediate use of copyrighted works to teach its generative

2   AI models statistical patterns about how humans use language

3   constitutes copyright infringement.

4           Critically, this is super important when you think

5   about the other AQ -- AI cases around the Northern District and

6   the country.  There is no claim in this case that any output

7   ever generated by any Anthropic AI model is substantially

8   similar to any of the copyrighted works.

9           So this is a classic fair use, a transformation -- a

10  transformative use of taking data, using it to train these

11  machines, to teach it about language, and then something new is

12  created from that.

13          There are procedural issues in this case in terms of

14  whether they have adequately alleged that, in fact, their

15  clients' books were, in fact, in this dataset.

16          THE COURT:  Well, they do allege it.

17          MR. WINTHROP:  What's that?

18          THE COURT:  They do.  They certainly allege that they

19  are.

20          MR. WINTHROP:  They don't -- we would submit, Your

21  Honor, they don't allege it in any kind of way that's factual.

22  And they do --

23          THE COURT:  Why don't you just tell us.  Were they or

24  not?

25          MR. WINTHROP:  The -- I don't know the answer to that.

1          THE COURT:  Well, take a deposition tomorrow.

2          MR. WINTHROP:  Yeah, I understand.

3          THE COURT:  Let's find out.  I'm going to authorize

4     that.

5          MR. WINTHROP:  Thank you, Your Honor.

6          THE COURT:  And this is ridiculous for you to hide

7     behind that.  Either these books were read and part -- in part

8     of your program or they weren't.  And for you to say they got

9     to allege it when it's all within the -- your -- your company's

10    records, I don't stand for that.

11         MR. WINTHROP:  Yeah.  What I was -- just to be clear,

12    what my argument is, Your Honor, is they're alleging the books

13    were in a data set, and then they're saying that dataset was

14    used.

15         Our only point is the dataset is outside, and there --

16    what we're saying is there's no clear allegation that they were

17    in that dataset that they have access to.  That's -- to be very

18    clear, that's my point.

19         THE COURT:  And is that true, that you don't allege

20    that?

21         MR. NELSON:  We absolutely allege it, Your Honor.  We

22    allege it, for example, when we talk about the various

23    plaintiffs.

24         THE COURT:  I read that -- I read that this morning,

25    And it seemed to me you said that all three plaintiffs, their

1    books were in what's it called Book3.

2          MR. NELSON:  Books3, Your Honor.  It's paragraphs 56

3    through 58 of the complaint.

4          THE COURT:  And -- and so if that's -- why isn't that

5    good enough?

6          MR. WINTHROP:  The way -- Your Honor, the way it is

7    phrased, and I'll go to it, is this.  If you look at 56, they

8    say, "Plaintiff Bartz is the author of a number of books,"

9    blah, blah, blah.  "This novel was included in the Books3

10   dataset, based on public reporting about the dataset.  Pirated

11   copies of her work are available online through websites like

12   LibGen and Bibliotek.  Bartz is the author and owner of the

13   registered copyrights works."

14         So they're citing websites like LibGen and Bibliotek.

15   They don't -- what our problem is, Your Honor, is that they

16   don't clearly state, like, they've done their work and they

17   have concluded that these books are in Books3.

18         It's a very simple, straightforward argument.  If

19   it's -- if they're in there, fine, we move on that -- from

20   that.  But that's the critical thing, that the complaint is

21   worded in a very odd way.

22         THE COURT:  But why can't they rely upon public

23   reporting?

24         MR. WINTHROP:  With what public reporting?  Can't

25   they -- shouldn't they say what public reporting?  I don't

UNITED STATES DISTRICT COURT

```
 1   mean -- I don't mean this to be like --
 2          THE COURT:  Answer that.  Help me out here.  What
 3   public reporting?
 4          MR. NELSON:  The Atlantic Magazine.  The Atlantic
 5   Magazine has created basically a facsimile of the Books3
 6   database.  Prior to alleging these particular books, we ran
 7   them through the facsimile of the Books3 database, and all of
 8   them were in it.  So that is exactly why.  We do not have the
 9   Books3 -- that's we were careful with what we said, which is
10   the Books3 is Books3, which has its own set of issues, which is
11   a pirated website, Your Honor.
12          So instead of going to a pirated website, we went to
13   the facsimile of the website, which is the Atlantic database,
14   ran those names through, and saw that they all hit upon it.
15   And not just that, the LibGen and Bibliotek references are
16   there to show that it is reasonable to expect, certainly way
17   more than plausible to expect that these are in the Books3
18   database given that they are also in other pirated websites.
19          THE COURT:  Well, wait.  I didn't understand the last
20   point.  When -- you called something Atlantic.
21          MR. NELSON:  The Atlantic Magazine, Your Honor.
22          THE COURT:  All right.  So you went to Atlantic
23   Magazine, and all three of the novels were in the list.
24          MR. NELSON:  Thank you, Your Honor.  Yes.
25          THE COURT:  Is that true?
```

UNITED STATES DISTRICT COURT

 1              MR. NELSON:  Correct.

 2              THE COURT:  All right.  So why is that not good

 3     enough?

 4              MR. WINTHROP:  Because that is not in the complaint,

 5     and we talked this morning.  And if I -- they saw from the

 6     statement one concern we have, and they told me they were going

 7     to try to tell me and show me that, in fact, they have this

 8     evidence.

 9              I am skeptical, Your Honor, but I'm open-minded.  I

10     don't want to file a motion.

11              THE COURT:  Please don't file one when it's that easy.

12              I want you by the end of the week, show him the

13     Atlantic list.  Highlight the names of the three.

14              MR. NELSON:  Absolutely, Your Honor.

15              THE COURT:  All right.  Okay.  Now, do you deny that

16     your company uses Books3?

17              MR. WINTHROP:  I don't know at this point that the --

18     the full use of the training, but that's -- so that would be a

19     question --

20              THE COURT:  That's what's alleged.

21              MR. WINTHROP:  Yes --

22              THE COURT:  So --

23              MR. WINTHROP:  -- I understand.

24              THE COURT:  -- why don't you go take the deposition

25     tomorrow of a 30(b)(6) person to find out if they're using

1    Books3.

2            This ought to be -- the facts here should not be in

3    dispute.  If it's truly fair use, you should be open about

4    everything that happened --

5            MR. WINTHROP:  Yeah.

6            THE COURT:  -- and -- and so that they -- we -- okay.

7            Now, what is your answer to his point?  His point is,

8    we're not selling pirated copies.  We're not going out -- and

9    what's the name of this book?  The Last -- the Lost Night, a

10   novel.

11           They're not going out and selling bootleg copies of

12   this novel.  Kind of the classic misuse of copyright.

13           What they're doing is, he says, a transformative use,

14   the words in that novel and, as you say, the expression to

15   train their -- what's it called?

16           MR. WINTHROP:  It'll a model.  Claude.

17           THE COURT:  Claude, yes.

18           So that -- I can see the argument.  I'm not saying I

19   agree with it.  I don't know yet.  But tell me, preview what

20   your response to that's going to be.

21           MR. NELSON:  Sure.  And we'll put aside the output

22   case, whether it actually is transformative.  But just this is

23   an input case.  The -- the copying of a pirated book is a

24   copyright violation.  And the American -- the *A&M Records vs.*

25   *Napster*, 239 F.3d 1004 at 1015, Ninth Circuit, I'm going to

UNITED STATES DISTRICT COURT

1    motion.

2            Now, I might -- I probably -- I won't say I would

3    automatically go along with it, but I -- but -- but right now I

4    want to have a date, a deadline date.

5            MR. WINTHROP:  And so --

6            THE COURT:  And as we get closer, if you think you

7    both agree this -- that this is premature, you could probably

8    talk me out of the deadline.

9            MR. WINTHROP:  All right.  And I trust that if the

10   feeling of good spirit we had this morning in terms of

11   agreement somehow dissipates in the case and we can't agree, I

12   assume we still can come to you and attempt to persuade you

13   on --

14           THE COURT:  Yes, you could.

15           MR. WINTHROP:  -- on the --

16           THE COURT:  Yeah.

17           MR. WINTHROP:  Yeah.

18           THE COURT:  You could always do that.

19           MR. WINTHROP:  Yeah, I thought.

20           THE COURT:  Because everyone knows that I'm

21   Mr. Reasonable.

22           MR. WINTHROP:  That's why I said it.  Yep.

23           MR. NELSON:  Your Honor, we do actually -- we take you

24   seriously on taking a quick deposition on -- on some of these

25   issues.  We do think --

                    UNITED STATES DISTRICT COURT

1          THE COURT:  And I'm serious, too.

2          MR. NELSON:  Oh, absolutely.

3          I do think that it would be more efficient if this

4   week or early next week we are able to issue requests for

5   admission and interrogatories --

6          THE COURT:  Yeah.

7          MR. NELSON:  -- on these issues.

8          Thank you.

9          THE COURT:  Oh, yeah.  This -- the purpose of this

10  discovery thing, it's open.  Today under the rule, discovery is

11  wide open.  No stonewalling.

12         And you could take the -- it's wide open.  You could

13  take the plaintiff's depositions.

14         MR. WINTHROP:  Oh, yeah.

15         THE COURT:  Find out if they really wrote these books.

16         MR. WINTHROP:  Let -- let me just be clear.  The point

17  I was making was, is the -- are there books in Books3?

18         If that's easily demonstrated to us by what they're

19  saying, we don't -- that was the only point.  We want to -- we

20  want to get to the heart of this, too, Your Honor.

21         THE COURT:  Well, it could be if you took their

22  depositions somehow they've given away the copyrights.

23         MR. WINTHROP:  That -- there may be some issues there,

24  too, Your Honor.

25         THE COURT:  I'm telling you --

UNITED STATES DISTRICT COURT

1            MR. WINTHROP:  Yeah.

2            THE COURT:  -- half the class actions I've always

3    done, there's always a problem with the plaintiffs that the

4    lawyers have failed to --

5            MR. WINTHROP:  Yeah.

6            THE COURT:  -- discover.

7            Now, maybe your firms are so great.  But I'm telling

8    you they range from convicted felon -- convicted felon.

9    There's no way a convicted felon is going to represent -- have

10   a fiduciary duty unless the whole class is one of convicted

11   felons so --

12           MR. WINTHROP:  You just -- just took away one of my

13   motions.

14           THE COURT:  All right.

15           MR. WINTHROP:  But that's okay, Your Honor.

16           THE COURT:  So there.  You might want to take their

17   deposition.

18           All right.  How much more damage can I do this

19   morning?

20           I'm going to get out an order --

21           MR. WINTHROP:  Thank you.

22           THE COURT:  -- that captures this.

23           And you owe me a suggested -- I want you to talk about

24   the tutorial.  And if you agree, I would like to do it, but I'm

25   not ordering it yet.  But if you both say, we could do this on

```
 1    January 10th, then I'd probably go along with that.
 2              MR. NELSON:  Thank you, Your Honor.  And we will
 3    confer on that.
 4              And I do -- we have talked a lot about Books3.  To be
 5    clear, our allegation is that they are in the training data for
 6    Anthropic.  Books3 is the most glaring example of that.  But I
 7    think, for example, to get around the issue of -- of saying
 8    that they do not use it, it would be -- they are not used at
 9    the training data whatsoever, it's something that we'll explore
10    during discovery.
11              THE COURT:  You should do a request to admit that
12    said:  Admit that you used the Last Night -- Lost Night, a
13    novel, as part of the training.
14              MR. NELSON:  Thank you, Your Honor.  That's exactly
15    what --
16              THE COURT:  And if they don't admit or deny something
17    that simple, there will be -- you'll be in trouble with the
18    poor judge.
19              That's something you can admit or deny easily.  You
20    probably know it right now.  Okay.
21              MR. NELSON:  Thank you, Your Honor.
22              THE COURT:  All right.  Good luck to both sides.
23              MR. NELSON:  Thank you.
24              MR. WINTHROP:  Thank you.
25              THE COURTROOM DEPUTY:  Court is adjourned.
```

1          (Proceedings conclude at 12:07 p.m.)

2                          ---oOo--

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4                        **C E R T I F I C A T E**

5

6          I, CATHY J. TAYLOR, do hereby certify that I am duly

7    appointed and qualified to act as Official Court Reporter.

8          I FURTHER CERTIFY that the foregoing pages constitute

9    a full, true, and accurate transcript of all of that portion of

10   the proceedings contained herein, had in the above-entitled

11   cause on the date specified therein, and that said transcript

12   was prepared under my direction and control.

13         DATED this 10th day of October, 2024.

14

15

16

17                        _/s/Cathy J. Taylor_____
                          Cathy J. Taylor, RMR, CRR, CRC
18

19

20

21

22

23

24

25

                        UNITED STATES DISTRICT COURT