KEKER VAN NEST & PETERS    LATHAM & WATKINS LLP    MORRISON FOERSTER

November 18, 2024

Hon. Ona T. Wang
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

cc: All Counsel of Record Line (via ECF)

**Re:** *Dispute re the Times's refusal to provide market-related discovery*

Dear Judge Wang:

OpenAI requests a pre-motion conference to address the Times's refusal to produce two highly-relevant categories of discovery: (1) documents and communications regarding the Times's alleged market harm, *i.e.*, decreases in revenue and traffic, and analyses of the causes; and (2) documents and communications regarding the markets for licensing the Times's works.[1]

These documents are critical to OpenAI's fair use defense. The fourth fair use factor focuses on "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4). A showing that the use had no effect, or only a small effect, on the market for the copyrighted work weighs in favor of fair use. *See Authors Guild v. Google, Inc.*, 804 F.3d 202, 224 (2d Cir. 2015). But critically, only one type of market harm is cognizable: "the harm that results because the secondary use *serves as a substitute for the original work*." *Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87, 99 (2d Cir. 2014) (emphasis added). It is not sufficient for the Times to claim it suffered some revenue loss; factor four still weighs in favor of fair use unless OpenAI's alleged use of the asserted works "serves as [a] substitute for the original work." *Id.* OpenAI is thus entitled to fulsome discovery regarding the Times's alleged losses, including the magnitude of those losses, their causes, and the markets in which they occurred. Summary revenue evidence—which is all the Times has committed to produce so far—is not enough.

1. **The Times should produce documents regarding alleged decreases in its revenue and subscriptions and analyses of the causes (RFPs 141-148).**

The Times alleges that it has suffered substantial harm as a result of OpenAI's use of the asserted works, including that OpenAI's use "deprive[d] [t]he Times of subscription, licensing, advertising, and affiliate revenue" across its multiple offerings. Dkt. 170, ¶¶ 5, 44. Accordingly, OpenAI has requested documents and communications regarding: (1) decreases in traffic to the Times's platforms and the reasons for those decreases (RFPs 142-144); (2) efforts to determine whether those decreases in traffic are "attributable to GPT Services versus other market forces and factors" (RFP 145); and (3) decreases in revenue generated by these offerings (RFPs 141, 146-148). *See* Exhibit A at 31-36. OpenAI is entitled to this discovery to test the Times's

---

[1] The parties' dispute as to revenue and traffic-related documents is not confined to this motion. OpenAI previously filed a separate motion regarding other document requests on similar grounds. *See* Dkt. 276 (moving to compel as to RFPs 35 & 37). That motion remains pending.

assertions of harm and show that OpenAI's use does not result in a substitute for the Times's works—the critical inquiry under the fourth fair use factor. *HathiTrust*, 755 F.3d at 99.

The Times has refused to provide this discovery. Instead, it agreed to produce only a narrow set of (1) only those documents "sufficient to show" decreases in traffic to the Times's websites (RFPs 141-144) and (2) only those analyses explicitly attributing the decreases to GPT Services (RFP 145).[2] But the Times has refused to produce documents or communications that would reveal the Times's own assessments of the alleged decreases in traffic and revenue, including analyses and custodial communications discussing the other—and likely more direct—causes of the alleged declines, even though such information is squarely relevant to OpenAI's fair use defense. The Times's refusal to provide complete discovery on these requests is improper.

*First*, the Times does not contest that the requested discovery is relevant. Nor could it. Communications relating to decreases in traffic and revenue—including the *reasons* for those decreases—are necessary for OpenAI to probe the Times's implausible claim that OpenAI's tools were the cause. OpenAI is entitled to "present evidence of a lack of market harm to support [its] defense of fair use." *Hachette Book Grp., Inc. v. Internet Archive*, 115 F.4th 163, 191 (2d Cir. 2024). The Times's agreement to produce limited, self-serving discovery to try to establish a causal connection between the harm it alleges and OpenAI's use presents a one-sided story. For example, the Times points to its agreement to produce documents "sufficient to show" how OpenAI's conduct has allegedly diverted Times readers (RFPs 94, 98) and documents regarding decreases in traffic and revenue to Wirecutter (RFP 96). But those narrow agreements would exclude any communications regarding the *reasons* for decreases in traffic or revenue, or pre-litigation assessments of its losses and whether OpenAI caused them. These issues are directly relevant to OpenAI's factor four defense, and OpenAI is entitled to discovery on them.

*Second*, the Times has failed to articulate any burden in producing this discovery. Although it has claimed that the RFPs would require the Times to review a vast quantity of documents, it has not provided any support for that assertion (and any search would be subject to term and custodian limits). Any burden claim rings hollow given the Times's demand that OpenAI review 500,000 documents from its 26 existing custodians—plus countless more from 15 new custodians. Indeed, any minimal burden is outweighed by the evidence's relevance to OpenAI's fair use defense. The Times should be ordered to respond to the requests in full.

### 2. The Times should produce documents regarding the alleged markets for licensing its works (RFPs 18, 33, 160-161)

Discovery regarding the Times's alleged licensing markets—both (1) the primary licensing market and (2) any alleged market to license the asserted works for training large-language models ("LLMs")—is directly probative of whether OpenAI's products and services have caused harm to those markets. To that end, OpenAI has requested documents and communications relating to (i) the Times's efforts to license the asserted works (RFPs 18, 33); (ii) the market for licensing or using the Times's works for AI training, including documents showing or refuting

---

[2] The Times has refused to state in writing whether its offer on RFP 145 encompasses analyses that identify entirely different causes for such declines. Those analyses would demonstrate that any decreases in traffic were in fact caused by forces for which OpenAI is not responsible.

whether such a market currently exists (RFP 160); and (iii) whether the Times's works have ever been used for the purpose of analyzing language patterns (RFP 161). *See* Exhibit A at 45-46; Exhibit B at 16-17, 26-27. The Times initially refused to produce any documents in response to these requests, and now purports to limit productions to two narrow subsets of responsive documents: copies of licenses for the asserted works, and custodial communications limited to specific attempts to license the Times's works for LLM training. The Times refuses to produce (1) *any* communications regarding licensing the asserted works in its primary licensing market, *i.e.*, for purposes other than LLM training, or (2) any communications regarding the existence (or lack thereof) of a functioning market for LLM-related licenses. This refusal is improper.[3]

*First*, this discovery is highly probative under the fair use inquiry. Documents regarding licenses for the Times's works in the *primary* market (or attempts to enter into such licenses) are directly relevant to the Times's claim that OpenAI's products have harmed its ability to license its works for reproduction, derivative uses, and distribution, among other things. *Bill Graham Archvs. v. Dorling Kindsersley*, 448 F.3d 605, 614 (2d Cir. 2006) (first inquiry under fourth fair use factor is whether a challenged use "impact[s] [The Times's] primary market for the sale of [its products]"). The Times's attempt to limit production to the licenses themselves is wholly insufficient; OpenAI is entitled to documents that counter the Times's assertion that GPT Services have acted as a substitute for the Times' works and that show that GPT Services have not affected the Times's ability to license its works in its primary licensing market.

*Second*, OpenAI is entitled to fulsome discovery into alleged harm to a *potential* market for licensing the Times's works for LLM-training. In "every fair use case," the "plaintiff suffers a loss of a *potential* market if that potential is defined as the theoretical market for licensing the very use at bar." *Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 91 (2d Cir. 2014) (quoting 4 *Nimmer on Copyright* § 13.05[A][4]) (emphasis in original). Therefore, courts have held that "[o]nly an impact on potential licensing revenues for *traditional, reasonable, or likely to be developed markets*" are relevant to the fourth factor. *Am. Geophysics Union v. Texaco Inc.*, 60 F.3d 913, 930 (2d Cir. 1994) (emphasis added). Courts have been similarly clear that "a copyright holder cannot prevent others from entering fair use markets merely by developing or licensing a market for [those uses]." *Bill Graham Archvs.*, 448 F.3d at 615. In other words, the court considers both whether a cognizable potential market even exists, *and* whether the Times intended to participate in or benefit from it. *See Am. Geophysical Union*, 60 F.3d at 930. Any of the Times's communications regarding a licensing market for LLM training are indisputably relevant to the former; they are also the best, and perhaps only, source of information for the latter. If Times employees recognized that such licensing efforts were not feasible at scale or that there was no market for such licenses, those documents would be critical to establishing a lack of a cognizable market and thus the absence of market harm.

*Finally*, the Times has not articulated any burden with producing this discovery. Indeed, the Times has insisted that OpenAI produce communications regarding licenses and attempted licenses. The Times should be ordered to provide reciprocal discovery.

---

[3] The Times also refuses to respond to OpenAI ROGs 9 and 10 asking it to describe each alleged market for the asserted works for which it claims harm. This further prevents OpenAI from marshaling fair use evidence.

2827912

Respectfully,

| KEKER, VAN NEST & PETERS LLP[*] | LATHAM & WATKINS LLP | MORRISON & FOERSTER LLP |
|---|---|---|
| */s/ Andrew F. Dawson* <br> Andrew F. Dawson | */s/ Elana Nightingale Dawson* <br> Elana Nightingale Dawson | */s/ Rose S. Lee* <br> Rose S. Lee |

_____

[*] All parties whose electronic signatures are included herein have consented to the filing of this document.

4

2827912