

November 18, 2024

Hon. Ona T. Wang
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

cc: All Counsel of Record Line (via ECF)

**Re:** *Discovery dispute concerning five custodians whose files the Times refuses to search*

Dear Judge Wang:

OpenAI requests a pre-motion conference to address The New York Times's ("the Times") refusal to add five ESI custodians, each of whom likely has "unique, relevant and noncumulative evidence." *Coventry Cap. US LLC v. EEA Life Settlements, Inc.*, No. 17 Civ. 7417 (VM), 2021 WL 961750, at *2 (S.D.N.Y. Mar. 15, 2021).[1] The Times has made sweeping allegations regarding the harm OpenAI's tools have caused to the "[t]he Times's relationship with its readers" and "subscription, licensing, advertising, and affiliate revenue"—indeed, to the Times's "ability" to provide the service of "[i]ndependent journalism" itself. *See* Dkt. 170 ("FAC") ¶¶ 1-2, 5. Yet the Times has refused to provide critical discovery from custodians most likely to have documents related to the effect of OpenAI's alleged use upon the potential market for or value of its asserted works (factor four of the fair use inquiry).

The Times's refusal to add these five custodians stands in stark contrast to its own pursuit of more than double the number of custodians it has offered OpenAI. The Times has only agreed to produce discovery from 18 custodians; yet, it demands that OpenAI produce discovery from **41 custodians**—15 more than the 26 custodians whose files OpenAI is already searching. *See* Dkt. 204.[2] The Times has offered no justification for this disparity, nor has it articulated any burden imposed by producing documents from the five custodians OpenAI requests.[3] Discovery is "not a one-way street designed to allow plaintiffs to collect evidence in support of their claims [but] also a mechanism for defendants to accumulate evidence to defend themselves and to test the evidence of their opponents." *See Fioranelli v. CBS Broad., Inc.*, No. 15-CV-952 (VSB), 2019 WL 1059993, at *5 (S.D.N.Y. Mar. 6, 2019). For the reasons set forth below, OpenAI is entitled to the addition of each of the following custodians:

**David Rubin.** Although the Times alleges that OpenAI has harmed its brand, reputation, and trademarks, FAC ¶¶ 201-04, it has not designated a custodian with a focus on brand or reputation

---

[1] The parties have met and conferred repeatedly via email and telephone conference regarding OpenAI's requested custodians, and are at an impasse regarding these issues.

[2] On November 13, 2024, the Times made a demand for seven additional custodians on top of those identified in its motion to compel.

[3] Indeed, OpenAI is the smaller of the two companies. The Times was founded in 1851 and employs 5,800 people. https://www.nytco.com/. By contrast, OpenAI was started in 2015 and has far fewer employees. *See* https://en.wikipedia.org/wiki/OpenAI.

KEKER VAN NEST & PETERS    LATHAM & WATKINS LLP    MORRISON FOERSTER

management. David Rubin, Chief Brand and Communications Officer of The New York Times, and Publisher of Wirecutter, is likely to have unique, responsive information regarding these subjects, given his responsibility for "all corporate, brand and internal messaging, PR and public affairs as well as enterprise wide brand strategy for the Times and its products." Ex. A at 1.

The Times does not deny that OpenAI is entitled to a custodian with documents related to such subjects, but claims that Rubin is cumulative of custodians Ben Frumin, Leilani Han, David Perpich, and Greg Miller. *But these custodians have editorial and commerce-related roles, not roles in brand management.* Ex. B at 2; Ex. C at 1. The Times cannot simultaneously allege that OpenAI has "damaged The Times's 'reputation for accuracy, originality, and quality,'" FAC ¶ 204, and withhold discovery from the custodian most likely to have considered the impact, if any, of OpenAI's alleged conduct on the Times's reputation.

**Joy Robins.** As set forth in OpenAI's concurrently-filed motion to compel, the value of the asserted works is critical to factor four of the fair use inquiry. *See* 17 U.S.C. § 107(4). The Times alleges that one source of value for the asserted works is in driving advertising revenue, and that OpenAI's products have led to a decrease in that revenue. *See, e.g.*, FAC ¶ 5. But no current Times custodian focuses on the Times's overall advertising and revenue generation; and no current Times custodian is likely to have documents confirming or refuting that the Times's overall advertising revenue has been impacted by OpenAI's alleged conduct. Joy Robins, the Times's Global Chief Advertising Officer, is likely to have unique documents relevant to these issues, because she is responsible for "lead[ing] all facets of [the Times] advertising business and guides the strategy and revenue generation of the entire global advertising team[.]" Ex. D at 1.

The Times objects to Robins as cumulative in light of custodians William Bardeen and David Gurian-Peck, the CFO and his Chief of Staff. But the suggestion that Robins, the *head of advertising and revenue generation*, does not have unique, non-cumulative advertising and revenue information is without merit.

**Michael Greenspon.** OpenAI has sought discovery into the Times's licensing of its asserted works, including any analyses of what defined markets exist for licensing the Times's works (including any theoretical market for licenses to train LLMs).[4] Such discovery is critical to the factor four inquiry. *See Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 614 (2d Cir. 2006) (the factor four inquiry "look[s] at the impact on potential licensing revenues for 'traditional, reasonable, or likely to be developed markets.'" (quotation omitted)). OpenAI seeks Michael Greenspon, the Times's Global Head of Licensing and Print Innovation, as a custodian because he is "responsible for The Times'[s] global licensing strategy and businesses," Ex. E at 1, and likely to possess market analyses essential to OpenAI's fair use defense.

The Times does not dispute that Greenspon has such documents, but argues that he is cumulative of custodian Greg Miller, Executive Director of Licensing and Branded Services. But Miller's focus is narrower than Greenspon's. *See* Ex. F at 2 (describing Miller's job responsibilities as including "negotiat[ing] opportunities to develop new branded commerce products and

---

[4] The Times has sought discovery into OpenAI's data access agreements (both executed and contemplated), and is seeking at least two additional custodians, beyond those OpenAI has already identified, to cover this issue.



services"). And the fact that Miller was involved in a particular Microsoft licensing negotiation—which the Times emphasized in meet and confer—does not indicate that he is likely to have documents related to, for example, the overall alleged impact of OpenAI's products on the Times's ability to license its asserted works. *See* Ex. B at 6; *see also* Ex. G at 3 (the Times agreeing to produce documents concerning "the impact of OpenAI's conduct . . . on The Times's business and/or revenue").

**Hannah Masuga.** The Times concedes that discovery into the operation and enforcement of its paywall and other exclusion protocols is relevant and proportional to the needs of this case. Ex. B at 7 (acknowledging that the "Times's paywall and bot blocking" are relevant).[5] OpenAI seeks Hannah Masuga as a custodian because her former position as the Technical Product Director of Machine Learning Platform gives her insight into how the Times's paywall and other exclusion protocols work and are enforced.

The Times does not deny that Masuga has such information. Instead, it says that custodian Christine Liang, the Times's Senior Director of Technical Search, suffices because she is "knowledgeable" about paywalls and bot blocking. *Id.* But Liang is responsible for search engine optimization—the process of improving the Times's visibility in search engines. Ex. H at 1-2. While she may have some familiarity with paywall and bot blocking in that role, the Times has not indicated that she is likely to have key documents regarding the Times's enforcement of its exclusion protocols. Masuga, or another custodian with such knowledge, should be added.

**Sam Dolnick.** The Times claims its journalism is threatened by OpenAI's products. FAC ¶¶ 1-2. But the Times has not designated a custodian with knowledge of how its editorial processes—and ability to produce journalism—has been impacted by OpenAI's alleged conduct. Discovery to date has revealed that Sam Dolnick, the Times's Deputy Managing Editor, has a particular focus on the alleged impact of generative AI on the Times's newsroom, including positive impacts. *See, e.g.*, Ex. I (Dolnick memorandum for newsroom and opinion staff setting guidelines for the Times's use of generative AI tools); Ex. J (Dolnick memorandum on the potential benefits of artificial intelligence).

The Times does not deny that OpenAI is entitled to a custodian who possesses documents related to this subject or that Dolnick has such documents. Instead, the Times claims that Dolnick is cumulative of custodians Alex Hardiman, A.G. Sulzberger, and Zach Seward. Hardiman is the Times's Chief Product Officer. The Times does not claim that she has any involvement in the newsroom. Likewise, Seward is editorial director of artificial-intelligence initiatives and tasked with leading a small team to "experiment with generative A.I. tools." Ex. K. He does not have the broader focus on the impact of generative AI on the newsroom that Dolnick does. Finally, the notion that custodian A.G. Sulzberger—the Times's Chairman and Publisher—is likely to have communications regarding the impact of generative AI on the newsroom that are cumulative of Dolnick's is not credible. The Times should add Dolnick as a custodian.

For the foregoing reasons, the Court should compel the Times's addition of these five custodians.

---

[5] Consistent with this admission, the Times has requested from OpenAI documents and communications related to the alleged impact of the Times's paywall and other exclusion protocols on OpenAI's gathering of training data.

Respectfully,

| KEKER, VAN NEST & PETERS LLP[i] | LATHAM & WATKINS LLP | MORRISON & FOERSTER LLP |
|---|---|---|
| */s Andrew F. Dawson*<br>Andrew F. Dawson | */s Elana Nightingale Dawson*<br>Elana Nightingale Dawson | */s Rose S. Lee*<br>Rose S. Lee |

---

[i] All parties whose electronic signatures are included herein have consented to the filing of this document.