# Exhibit C

| | |
|---|---|
| **From:** | Emily Cronin |
| **To:** | Sarah Salomon; Andrew F. Dawson; Elana.NightingaleDawson@lw.com |
| **Cc:** | openaicopyrightlitigation.lwteam@lw.com; OpenAICopyright@mofo.com; Alex Frawley; NewYorkTimes_Microsoft_OHS@orrick.com; KVP-OAI; #NewYorkTimes-Microsoft-FDBR; NYT-AI-SG-Service@simplelists.susmangodfrey.com; dailynews-ai-rfem@rothwellfigg.com |
| **Subject:** | Re: NYT v. Microsoft - The Times"s Custodians |
| **Date:** | Thursday, October 17, 2024 3:54:23 PM |

**[EXTERNAL]**



Counsel,

The Times agrees to add Ben Frumin, David Gurian-Peck, and Barrett Sheridan as custodians, and will revert back with the list of search terms that The Times plans to run on their custodial files.  The Times does not agree to add Jason Chen as a custodian.  As an editorial director and former deputy editor of Wirecutter, Mr. Chen does not have any unique or superior knowledge of Wirecutter's revenue model that Mr. Frumin would not have as Wirecutter's Editor-in-Chief.

Thank you,
Emily

**Emily Cronin Stillman** | **Susman Godfrey LLP**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
310-789-3157 (o) | 949-436-3222 (c) | ecronin@susmangodfrey.com

This e-mail contains privileged and confidential information which may constitute attorney/client privileged information and/or attorney work product. If you received this message in error, please notify the sender and delete it immediately.

**From:** "Sarah Salomon (via NYT-AI-SG-Service list)" <NYT-AI-SG-Service@simplelists.susmangodfrey.com>
**Reply-To:** Sarah Salomon <SSalomon@keker.com>
**Date:** Monday, October 14, 2024 at 7:53 PM
**To:** Alex Frawley <AFrawley@susmangodfrey.com>, "Andrew F. Dawson" <ADawson@keker.com>, "Elana.NightingaleDawson@lw.com" <Elana.NightingaleDawson@lw.com>
**Cc:** "openaicopyrightlitigation.lwteam@lw.com" <openaicopyrightlitigation.lwteam@lw.com>, "OpenAICopyright@mofo.com" <OpenAICopyright@mofo.com>, NYT-AI-Microsoft-OC <NewYorkTimes_Microsoft_OHS@orrick.com>, KVP-OAI <KVPOAI@keker.com>, #NewYorkTimes-Microsoft-FDBR <NewYorkTimes-Microsoft-FDBR@faegredrinker.com>,

"NYT-AI-SG-Service@simplelists.susmangodfrey.com" <NYT-AI-SG-Service@simplelists.susmangodfrey.com>, "dailynews-ai-rfem@rothwellfigg.com" <DailyNews-AI-RFEM@rothwellfigg.com>
**Subject:** RE: NYT v. Microsoft - October 30 Hearing Agenda

<mark>EXTERNAL Email</mark>

Counsel,

Per the Court's guidance at the September 12 hearing, OpenAI has been diligently making its way through NYT's productions to determine whether appropriate to seek additional designation of custodians. We will follow up further regarding those efforts, but, as an initial matter, OpenAI has identified clear holes in NYT's designation of custodians that are ripe for consideration at the 10/30 hearing. We plan to seek the addition of the below custodians on October 30, absent resolution beforehand:

1. **Ben Frumin (EIC, Wirecutter)**. The First Amended Complaint ("FAC") asserts several Wirecutter copyright registrations. *See* Dkt. 202-2. An entire section of the FAC alleges "[m]isappropriation of [c]ommercial [r]eferrals" focused on Wirecutter content and recommendations, and that such alleged misappropriation "endangers Wirecutter's reputation." Dkt. 170 at 48-52. The alleged misappropriation is said to "usurp specific commercial opportunities . . . such as the revenue generated by Wirecutter recommendations" including "lost advertising and affiliate referral revenue." *Id.* at 66. Yet, NYT has not identified a single Wirecutter custodian to OpenAI. As Editor in Chief of Wirecutter, Frumin is likely to have unique, non-duplicative documents related to NYT's claims regarding the alleged impact of OpenAI's conduct on Wirecutter's revenue and reputation.

2. **Jason Chen (Editorial Director, Wirecutter)**. As set forth above, NYT has put directly at issue Wirecutter's revenue model. *See* Dkt. 170 at 128-129 ("Wirecutter generates the vast majority of its revenue via affiliate referral" and Defendants' conduct "create[s] less incentive for users to navigate to the original source . . . lead[ing] to a loss of revenue for Wirecutter."). Chen is uniquely knowledgeable regarding how Wirecutter makes money, yet he does not appear to be included on any communication or document that has so far been produced by the Times.

3. **David Gurian-Peck (VP, Subscriber Monetization; Chief of Staff to CFO)**. The FAC alleges that Defendants' products "threaten[] to divert readers, including current and potential subscribers, away from the Times, thereby reducing [] subscription . . . revenues." Dkt. 170 at 59. Gurian-Peck is Vice President of

Subscription Growth and Planning.  We would expect that he would have communications and documents regarding alleged threats to subscriptions posed by generative AI, to the extent any exist.  Indeed, a Slack communication from February 2024 indicates he was working on "revenue implications related to the threat of GenAI."  NYT_00202188.  And in an announcement regarding organizational changes that are in part a reaction to "the rise of GenAI,"  David was given a new role to "ensure that teams across missions have clear and ambitious audience goals."  NYT_00204414.  Notwithstanding these allegations, NYT has not identified another custodian with a similar focus on subscription trends. Here too, Gurian-Peck is likely to have unique, non-duplicative information related to NYT's alleged harm, based on his specific involvement with GenAI.

4. **Barrett Sheridan (VP, Strategy and Operations)**.  Sheridan has been with the Times since October 2017 and was aware that OpenAI "acknowledged that their sources include Common Crawl, an open-source dataset, which includes 3M+ NYT articles."  NYT_00467448.  He was leading a team on behalf of A.G. Sulzberger regarding the Times's initial generative AI strategy (*see* NYT_00106562) and is included on several emails with senior leadership regarding AI strategy, including how to "think about allowing access (or not) to [Times] content."  NYT_00048692.  He also appears to have been leading a "GenAI Tech Workstream" (NYT_00040617), yet documents and communications relevant to this workstream do not appear to have been produced by the Times. For a number of reasons, Sheridan is likely to have unique, non-duplicative information, not least of which is that he is likely to have information related to NYT's discovery of OpenAI's alleged infringement.

Please let us know by October 17 if you are willing to add these custodians. We can make ourselves available to discuss as necessary tomorrow. Thank you also for confirming on our October 14 meet and confer that, to the extent a custodian has been offered to Microsoft, NYT will also be searching that custodian's files in response to OpenAI's requests.

Thanks,

**Sarah Salomon**
Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809
415 962 8828 direct | 415 391 5400 main
ssalomon@keker.com | vcard | keker.com