S‍USMAN G‍ODFREY L.L.P.

November 21, 2024

Hon. Ona T. Wang
Southern District of New York
500 Pearl Street
New York, New York 10007

        Re:    *The New York Times Company v. Microsoft Corporation, et al.*,
                 No.: 23-cv-11195-SHS: Opp. to Microsoft's Motion to Compel (Dkt. 320)

Dear Magistrate Judge Wang:

      Plaintiff The New York Times Company ("The Times") opposes Microsoft's November 18 request to compel the production of documents. Dkt. 320. This duplicative motion treats The Times's case as if it is against the entire field of generative AI, when in fact it is directed at Defendants' conduct with respect to their generative AI models and products. This lawsuit is not about "dismantl[ing]" generative AI. Dkt. 320 at 3. To the contrary, The Times sees genuine potential in generative AI technology—it simply believes that, like any new product, its developers should pay for the intellectual property they use to make it.

      Microsoft seeks discovery of all documents and communications concerning The Times's training or fine-tuning of any generative AI model that The Times may have developed, used, or even considered using, including a generative AI tool used for advertising marketing. Dkt. 321-1 at 23-24; Dkt. 321-2 at 20, 22-23 (RFPs 31, 32, 102, 106). Similarly, Microsoft moves to compel the results of an internal Times survey about how Times employees might use generative AI. Dkt. 321-2 at 23-24 (RFP 108). Microsoft's motion is a repeat of OpenAI's two pending motions to compel discovery into The Times's use, creation, and adoption of generative AI tools. *See* Dkt. 236; Dkt. 276. The Times's basis for refusing to produce this material is the same, and The Times incorporates by reference the arguments made in its opposition briefs at Dkt. 239-1 and Dkt. 293.

      Discovery into The Times's development and training of its own generative AI tools and its employees' use of generative AI is irrelevant to both the fair use and substantial non-infringing use defenses. Microsoft's request to compel this discovery should be denied.

1. **The Times Already Agreed to Discovery Into The Times's Use of Defendants' Generative AI Tools.**

      Relevance issues aside, The Times already agreed to voluminous discovery regarding The Times's use of generative AI, including:

    1) Documents regarding The Times's A.I. Initiatives program, which is "charged with leveraging generative artificial intelligence and other forms of machine learning" in The Times's newsroom[1] (OAI RFP 47),

---

[1] *See* https://www.nytco.com/press/introducing-the-a-i-initiatives-team/; https://www.nytco.com/press/zach-seward-is-the-newsrooms-editorial-director-of-a-i-initiatives/.

November 21, 2024
Page 2

2) Documents sufficient to show The Times's past, present, and future efforts to use Defendants' generative AI in the reporting or presentation of content (OAI RFP 49),
3) Documents sufficient to show any training programs The Times is implementing or has implemented about Defendants' generative AI (OAI RFP 46),
4) Documents regarding The Times's policies and procedures regarding the use of Defendants' generative AI tools, and the policies themselves (OAI RFP 44, MS RFPs 29-30), and
5) Documents regarding Defendants' generative AI tools that The Times uses in its reporting or presentation of content (OAI RFP 83).

See Dkt. 239-1 at 1; Dkt. 239-2. What Microsoft seeks here is even broader: Microsoft moves to compel discovery into The Times's development or training of its *own* generative AI tools and how Times employees have individually used generative AI for any reason—which, as this Court previously pointed out, is an entire technological field that would cover a wide array of features like autocorrect. 9-30 Hrg. Tr. 112:21-23.

2. **The Times's Development or Use of Generative AI is Irrelevant to Fair Use.**

Microsoft argues that broad discovery into how The Times develops, trains, or uses generative AI is relevant to the first and fourth factors of the fair use defense to copyright infringement. Dkt. 320 at 1-2. Not so.

The first fair use factor examines "the purpose and character of **the use**, including whether such use is of a commercial nature or is for nonprofit educational purposes." 17 U.S.C. § 107(1) (emphasis added). One sub-factor courts consider is "the extent to which **the secondary use** is transformative." *Hachette Book Group, Inc. v. Internet Archive*, 115 F.4th 163, 179 (2d Cir. 2024) (emphasis added). "The use" at issue is *Defendants'* unauthorized use of Times works—not *The Times's* use of third-party generative AI or The Times's use of its own works to train or fine-tune its own generative AI tools. See Dkt. 239-1; Dkt. 293 (The Times's opposition briefs to OpenAI's prior motions to compel the same discovery). The Times's development or use of generative AI has no bearing on whether *Microsoft's* copying of Times works is transformative.

Nor is it relevant to the fourth fair use factor, which examines "the effect of the use upon the potential market for or value of the copyrighted work," 17 U.S.C. § 107(4), and "the public benefits the copying will likely produce," *Google LLC v. Oracle Am., Inc.*, 593 U.S. 1, 35 (2021). See Dkt. 239-1 at 1-2. Again, "the use" at issue is Defendants' unauthorized use of Times works—not The Times's use of generative AI, whether developed internally or by a third party.

Microsoft misreads *Google v. Oracle* to argue that "failed efforts by The Times to develop its own genAI system using its own works would undermine its claims of harm" in the fourth fair use inquiry. Dkt. 320 at 2. But the Court's analysis in that case was focused on whether Oracle was likely to use its right to create derivative works to prepare a new version of its software for use with a mobile phone. *Google*, 593 U.S. at 35-36. The works at issue here in this case are The Times's articles that were copied, in their original form, for Defendants' generative AI models and products. Whether The Times is positioned to "develop its own Generative AI system using its works" has no bearing on the issue under the fourth fair use factor in this case, namely, like in

*Google*, whether The Times is able to offer its works for use in training generative AI models *by others*. *See* Dkt. 320 at 2. Similarly, because no adaptation of Times Works is required for their use with generative AI, such use of those works *in their existing form* by The Times itself does not implicate any beneficial "creative production of new expression" for the public that would be foreclosed by the enforcement of The Times's exclusive rights in those works. *Google*, 593 U.S. at 35.

### 3. **The Times's Development, Training, or Use of Its Own Generative AI is Irrelevant to the Substantial Non-Infringing Use Defense.**

Nor is discovery into The Times's training or use of its own generative AI models relevant to Microsoft's "substantial non-infringing use" defense to secondary liability for infringing uses of its own and OpenAI's generative AI products by others. At the outset, it is worth noting that the contributory infringement claim against Microsoft has two parts: (i) a claim that Microsoft is secondarily liable for training models with OpenAI; and (ii) a claim that Microsoft's Bing Chat/Copilot products generate infringing outputs in response to user prompts. Dkt. 170 ¶¶ 174-180. The existence of "substantial non-infringing uses" is not a defense to either part. For the model training component, there is no dispute that OpenAI engaged in direct copying to train models that, unless excused by fair use, would constitute infringement. For the user prompting component, Microsoft's "ongoing relationship" with its users and the ability to monitor their behavior placed it in a "position to control" their use of those products, thereby removing this case from the rule in *Sony*. 464 U.S. 417, 437–38 (1984).[2]

But even if this doctrine applied, *Sony* and *Cartoon Network* both addressed whether the potential for non-infringing use could negate contributory liability for infringements resulting from the operation by others of the Defendant's allegedly infringing product. *See Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 417 (1984); *Cartoon Network LP, LLLP v. CSC Holdings, Inc.*, 536 F.3d 121, 133 (2d Cir. 2008). Thus, *Viacom Int'l Inc. v. Youtube Inc.*, 253 F.R.D. 256, 261-62 (S.D.N.Y. 2008), ordered a *Defendant* asserting that defense to produce evidence regarding non-infringing uses of its own product. Neither *Viacom* nor any other case that Microsoft has cited ordered a copyright plaintiff to produce evidence regarding non-infringing uses of *an entirely different product*.

Even if some potential uses of generative AI technology by others were relevant to this defense, the use by The Times of its *own works* to train or ground the outputs of a generative AI model would not be. The Times owns those works. It can't infringe its own copyrights. Using its content to train generative AI models says nothing about whether others might use Defendants' generative AI products in a non-infringing way. The Times has already agreed to produce documents regarding its use of the Defendants' products for which it seeks to hold Microsoft secondarily liable. Microsoft is entitled to no more.

---

[2] The parties briefed the issue of whether the "substantial non-infringing use" defense applies to The Times's contributory infringement claim against Microsoft in Microsoft's pending motion to dismiss and The Times's opposition. *See* Dkt. 65 at 13; Dkt. 76 at 10-11. Any ruling on its applicability here would be premature.

November 21, 2024
Page 4

                        Respectfully submitted,

                        */s/ Ian B. Crosby*
                        Ian B. Crosby
                        Susman Godfrey L.L.P.

                        */s/ Steven Lieberman*
                        Steven Lieberman
                        Rothwell, Figg, Ernst & Manbeck

cc:       All Counsel of Record (via ECF)