SUSMAN GODFREY L.L.P.

November 21, 2024

Hon. Ona T. Wang
Southern District of New York
500 Pearl Street
New York, New York 10007

        Re:    *The New York Times Company v. Microsoft Corporation, et al.*,
                 No.: 23-cv-11195-SHS: Opp. to Microsoft's Motion to Compel (Dkt. 315)

Dear Magistrate Judge Wang:

      Plaintiff The New York Times Company ("The Times") opposes Microsoft's Motion to Compel seeking "evidence regarding the valuation of and market or potential markets for the works-in-suit." Dkt. 315 at 1. Microsoft's repeated assertion that The Times has "refused" to produce documents regarding to the value of the asserted works and the market for them is false: indeed, The Times has expressly agreed to produce documents concerning any valuation of the copyrighted works-in-suit, from 2015 to the present; documents sufficient to identify the "well-established market" for The Times to provide paid access to and use of its copyrighted works-in-suit; and documents sufficient to identify any lost market value of the copyrighted works-in-suit, among other relevant documents. *See* Ex. 1. The Times has agreed to produce more than enough discovery for Microsoft to address the fourth fair use factor. The Court should deny Microsoft's motion.

1. **Microsoft Ignores the Context of the Fourth Fair Use Factor.**

      Microsoft's motion (again) tries to justify voluminous discovery by relying on the fourth fair use factor, but its requests ignore the context of that factor's analysis. The fourth fair use factor focuses on "whether the copy brings to the marketplace a competing *substitute for the original, or its derivative*, so as to deprive the rights holder of significant revenues because of the likelihood that potential purchasers may opt to acquire the copy in preference to the original." *Authors Guild v. Google, Inc*., 804 F.3d 202, 223 (2d Cir. 2015) (emphasis added); *see also* Dkt. 333 at 3 (NYT Opp. to OAI's MTC at Dkt. 310); Dkt. 238 at 1-2 (NYT Opp. to OAI's MTC at Dkt. 236). But determining whether a use provides a "competing substitute" with a "likelihood" of substitution requires looking, first and foremost, at the use itself—making Microsoft's expansive demand for every last email regarding, for instance, traffic to The Times' website or changes in its advertising revenue disproportionate to the needs of the case. *See, e.g., Authors Guild*, 804 F.3d 202 at 224 (considering, for the fourth fair use factor, whether Google's "snippet view" provided "sufficiently significant portions of the original" to create a substitute); *see also Campbell v. Acuff-Rose Music, Inc*., 510 U.S. 569, 591 (1994) (considering, on the fourth factor, whether a parody is a substitute for the original and concluding it is not).

      To be sure, the value of The Times's asserted works is relevant in this case, and The Times has accordingly agreed to produce substantial discovery into that value. Microsoft does not even mention the most relevant source of information about the asserted works' value—the licenses for those works, which The Times has agreed to provide. The Times has also agreed to produce discovery regarding The Times's revenue, subscriptions, and the market for its works, as explained

in detail below and set forth in the chart attached as Exhibit 1. The additional discovery sought by Microsoft goes beyond the bounds of what is necessary for Microsoft to address the fourth fair use factor and is disproportionate to the needs of the case.

2. **The Times Has Agreed to Produce Substantial Discovery Regarding the Overall Market for The Asserted Works.**

The Times has agreed to produce more than enough discovery for Microsoft to evaluate the value of the asserted works and the market for them, including documents responsive to the two "catch-all" RFPs Microsoft raises in its motion to compel: "[d]ocuments concerning the market for the Copyrighted Works-In-Suit" (RFP 8) and "Documents concerning the market for derivatives of Your Copyrighted Works-In-Suit" (RFP 9). The Times has agreed to produce a raft of documents responsive to these requests, including:

- Documents sufficient to show The Times's revenue generated from licensing the copyrighted works from 2015 to present, including subscription-based revenue on a monthly basis from January 1, 2018 through Q1 2024;

- Documents sufficient to show The Times's total revenue, including monthly advertising revenue, revenue from affiliate links, and subscription revenue;

- Documents sufficient to calculate or estimate per-display revenues associated with The Times's Asserted Works by source, including revenues from subscriptions, advertising revenues (including cost per impression), and revenues from affiliate links;

- Documents and Communications sufficient to reflect the revenue Wirecutter has generated via "affiliate referral," as alleged in Paragraph 128 of the Complaint;

- Documents concerning any valuation of the Copyrighted Works-In-Suit, from 2015 to the present;

- Documents sufficient to identify the well-established market for The Times to provide paid access to and use of its copyrighted works-in-suit as alleged in ¶ 155 of the Complaint; and

- Documents sufficient to identify any alleged lost market value of the copyrighted works-in-suit as alleged in ¶ 156 of the complaint.

*See* Ex. 1. Microsoft offers no argument about why this documentation is insufficient to assess the value of The Times's asserted works and the market for them.

3. **The Times Is Already Producing Discovery for the Subtopics OpenAI Identifies.**

Microsoft's Motion points to additional RFPs targeting documents regarding The Times's subscriptions, advertising revenue, and website. As set forth below, The Times has already agreed to provide substantial discovery into each subject:

Subscription Cancellation (RFPs 75–77, 80): The Times produced a survey (attached here as Exhibit 2) that allows users canceling their subscription to select reasons for the cancellation, including "AI makes my subscription unnecessary." Ex. 2. The Times has agreed to provide Defendants with documents sufficient to show the results of this survey, as well as of any other surveys regarding subscription cancellations related to generative AI. Microsoft's further demand

for ***all*** surveys or analyses regarding subscriptions to The Times is overbroad and unduly burdensome. Microsoft's claim that The Times is somehow cherry-picking only supportive evidence to produce is baseless: The Times has agreed to provide these survey results regardless of how many surveys indicate "AI" as contributing to the reader's decision to cancel their subscription. Surveys and other reports that do not consider or address generative AI at all simply are not relevant.

<u>Website Traffic (RFPs 89, 101)</u>: These RFPs target traffic to The Times's website, which is typically measured in page views, and advertising revenue. The Times has agreed to produce:

- Documents sufficient to show how The Times analyzes the financial value of content on its website and the results of such analyses, including without limitation analyses of the financial value of page views and other indicators of financial performance;

- Documents sufficient to show The Times's total revenue, broken down by source, including without limitation advertising revenue, revenue from affiliate links, subscription revenue by subscription type, whether personal or commercial, online or print) for each month beginning January 2015 to the present;

- Documents sufficient to calculate or estimate per-display revenues associated with The Times's Asserted Works by source, including without limitation revenues from subscriptions, advertising revenues (including cost per impression), and revenues from affiliate links. Each metric shall include both (i) the total number since the work's publication and (ii) a breakdown by month from month of publication to the present;

- Documents sufficient to show the total page views for each of the Asserted Works for each month, beginning with the month of the work's publication to the present;

- Analyses or reports regarding trends in click-through rates from search engines to the nytimes.com domain;

- Documents sufficient to show increases, decreases, fluctuations, or changes in traffic (1) to Wirecutter, The Athletic, and NYT Cooking and (2) to affiliate links from The Times's website; and

- Documents regarding The Times's efforts to ascertain whether decreases, if any, in traffic to its sites (including but not limited to The New York Times, Wirecutter, The Athletic, and NYT Cooking) is attributable to GPT Services versus other market forces and factors.

*See* Ex. 1. Advertising revenue naturally changes based on page views, and The Times has agreed to provide documents showing exactly how it analyzes this, along with documents analyzing whether any drop in traffic was caused by Defendants' services or something else. In an effort to resolve this Motion, it also agreed to search Joy Robins's files. Given the breadth of these documents, The Times should not have to search for and produce every email referencing changes to its advertising revenue or web traffic.

The Times respectfully requests that the Court deny Microsoft's Letter Motion to Compel at [Docket No. 315](#).

November 21, 2024
Page 4

        Respectfully submitted,

        */s/ Ian B. Crosby*
        Ian B. Crosby
        Susman Godfrey L.L.P.

        */s/ Steven Lieberman*
        Steven Lieberman
        Rothwell, Figg, Ernst & Manbeck

cc:    All Counsel of Record (via ECF)