KEKER VAN NEST & PETERS   LATHAM & WATKINS LLP   MORRISON FOERSTER

January 13, 2025                                                                                              <u>**VIA ECF**</u>

Hon. Ona T. Wang
United States District Court
500 Pearl Street
New York, NY 10007

Re:   <u>***Discovery dispute concerning RFAs aimed at whether The Times has licensed its works to train LLMs***</u>

Dear Judge Wang:

OpenAI requests a pre-motion conference to address The New York Times's refusal to respond to RFAs aimed at whether it has licensed its asserted works to train any large language models ("LLMs").

Whether The Times has licensed its works to train any LLMs is directly relevant to Factor Four of the fair use inquiry because it goes to whether a workable market exists for licensing data to train LLMs. *See Am. Geophysical Union v. Texaco Inc.*, 60 F.3d 913, 930 (2d Cir. 1994) (courts "consider[] only traditional, reasonable, or likely to be developed markets when examining and assessing [Factor Four] a secondary use's 'effect upon the potential market for or value of the copyrighted work.'" (citation omitted)). With this in mind, OpenAI served three RFAs aimed at determining whether The Times has, in fact, licensed its Asserted Works for use as training data: (1) **RFA 36**: Admit that You have never licensed any of Your Asserted Works for use as training data for Generative AI; (2) **RFA 37:** Admit that You are unaware of any of Your Asserted Works ever having been licensed for use as training data for Generative AI; and (3) **RFA 39:** Admit that You have no documentary evidence showing that any Person has actually compensated You any consideration for use of Your Asserted Works to train Generative AI. *See* Ex. A [The Times's Responses to OpenAI's RFAs] at 14-15.

The Times has flatly refused to respond to these RFAs, *id.*, claiming that they "do not address straightforward points that can be admitted or denied." Ex. B [1/8 Muttalib Email Correspondence] at 5. When OpenAI pressed for an explanation of this objection in meet and confer, The Times indicated that it was confused by the use of the term "Generative AI," which is defined in the RFA instructions as "large language models, including the products into which such models are incorporated; this definition includes, but is not limited to, ChatGPT, Gemini, LLaMA, and Claude." Ex. C [OpenAI's RFAs to The Times] ¶ 5.

This objection has no merit, and "[u]nless the court finds an objection justified, it must order that an answer be served." Fed. R. Civ. P. 36(a)(6). Indeed, The Times has used very similar definitions in its ***own*** discovery requests. *See, e.g.*, Ex. D [The Times's RFPs to OpenAI] ¶ 5 (defining "Generative AI Models(s)" as "Models that emulate the structure and characteristics of input data in order to generate derived synthetic content, such as . . . text"); *id.* ¶ 10 (defining "Generative AI Product(s) and Service(s)" as "any publicly available or commercial product or service offering that includes a Generative AI Model"). The import of these RFAs is clear: OpenAI is seeking an admission or denial as to whether The Times has ever licensed its Asserted

Works for use in training LLMs.  These are straightforward questions that demand straightforward answers. *See Freydl v. Meringolo*, No. 09-cv-07196-BSJ, 2011 WL 2566079, at *2 (S.D.N.Y. June 16, 2011) ("requests for admissions are calculated to eliminate the necessity of proving facts that are not in substantial dispute and to narrow the scope of disputed issues"). The Times should be ordered to respond to RFAs 36, 37, and 39.

                                    Sincerely,

| KEKER, VAN NEST & PETERS LLP | LATHAM & WATKINS LLP | MORRISON & FOERSTER LLP |
|---|---|---|
| */s/ Sarah Salomon* | */s/ Elana Nightingale Dawson* | */s/ Rose S. Lee* |
| Sarah Salomon | Elana Nightingale Dawson | Rose S. Lee |