# Exhibit E

OC3AAut1

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   AUTHORS GUILD, *et al.*,

4                   Plaintiffs,

5            v.                          23 Civ. 8292 (SHS)(OTW)

6   OPENAI, INC., *et al.*,

                                         Conference
7

                    Defendants.
8
    ------------------------------x
9                                        New York, N.Y.
                                         December 3, 2024
10                                       9:47 a.m.

11  Before:

12                      HON. ONA T. WANG,

13                                       U.S. Magistrate Judge

14                         APPEARANCES
    SUSMAN GODFREY LLP
15       Interim Class Counsel for Authors Guild and Alter Class
    Actions
16  BY:  ROHIT NATH
         CHARLOTTE LEPIC
17       JORDAN CONNORS
         ALEJANDRA SALINAS
18       AMBER MCGEE
         J. CRAIG SMYSER
19
    SUSMAN GODFREY LLP
20       Attorneys for The New York Times
    BY:  KATHERINE PEASLEE
21       ZACH SAVAGE
         ALEXANDER P. FRAWLEY
22
    ROTHWELL FIGG
23       Attorneys for New York Times and Daily News
    BY:  JENNIFER MAISEL
24       KRISTEN LOGAN

25

                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

OC3AAut1

```
 1                         APPEARANCES (continued)

 2   LOEVY & LOEVY
          Attorneys for Center for Investigative Reporting
 3   BY:  MATT TOPIC

 4
     LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
 5        Attorneys for Authors Guild and Alter Class Plaintiffs
     BY:  RACHEL GEMAN
 6        WESLEY DOZIER
          ANNA J. FREYMANN
 7        REILLY STOLER

 8   KEKER VAN NEST & PETERS
          Attorneys for OpenAI
 9   BY:  ROBERT A. VAN NEST
          PAVEN MALHOTRA
10        MICHELLE YBARRA
          ANDREW DAWSON
11        CHRISTOPHER SUN
          THOMAS E. GORMAN
12        SARAH SALOMON

13   MORRISON & FOERSTER LLP
          Attorneys for OpenAI
14   BY:  JOSEPH GRATZ
          CAROLYN HOMER
15
     COWAN DeBAETS ABRAHAMS & SHEPPARD LLP
16        Attorneys for Authors Guild and Alter Plaintiffs
     BY:  CeCe COLE
17
     LATHAM & WATKINS LLP
18        Attorneys for Microsoft
     BY:  ELANA NIGHTINGALE DAWSON
19
     FAEGRE DRINKER BIDDLE & REATH LLP
20        Attorneys for Microsoft
     BY:  JARED BRYANT
21        JEFFREY S. JACOBSON

22   ORRICK HERRINGTON & SUTCLIFFE LLP
          Attorneys for Microsoft Corporation
23   BY:  ANNETTE L. HURST

24   Also Present:

25   Karen Chesley, The New York Times
     Nick Standish, The New York Times
```

OC3AAut1

1   motion number 230, which they put at the bottom of their list.

2   So maybe let's talk about 309 and if it's resolved, and then

3   when we get to the Authors Guild case, we can see if that is

4   taken care of in the issues in the Authors Guild case.

5           MS. SALOMON:  Your Honor, if I may, just briefly.

6   This is Sarah Salomon from Keker Van Nest & Peters on behalf of

7   OpenAI.

8           We have a custodian motion at Dkt. 316 that I think

9   may have been skipped over.  It's the next one on the agenda.

10          THE COURT:  Okay.  Oh, you know what, I was going

11  to -- I think I was going to grant that.  This is number 316?

12          MS. SALOMON:  That's right, your Honor.

13          THE COURT:  All right.  I'm sorry, it didn't make it

14  into one chart, but let me see.  316.  Right.  Okay.  So this

15  is the issue where the -- let me see the total -- you've

16  provided the hit counts for the eight additional custodians,

17  right?  It's eight additional custodians on which you've agreed

18  to one, and there's seven still in dispute, or is this

19  different?

20          MS. SALOMON:  Sorry, your Honor.  This is OpenAI's

21  motion for four additional custodians from The Times.

22          THE COURT:  Oh.  Okay.  Let me see.  I'm sorry.  316.

23  Oh, okay.  Yes.  This is the one where I wanted to know what

24  you had to suggest that these custodians had unique

25  information.

OC3AAut1

1          MS. SALOMON:  A couple things, your Honor, and I can

2    go custodian by custodian if that would be helpful.

3          So, first, for David Rubin who's the chief brand and

4    communications officer of the New York Times.  We've seen him

5    on some communications vis-a-vis licensing and with high-level

6    executives.  But I think more crucially The Times has already

7    conceded that he is likely to have information regarding the

8    harm or impact of -- on The Times' reputation of OpenAI's

9    products and services.

10         And the same is true of Michael Greenspan, who is The

11   Times global head of licensing.  The Times has already conceded

12   that he has responsive information with respect to the markets

13   for their asserted works, and with respect to any alleged harm

14   to those licensing markets.  For Hannah Masuga, she's the

15   technical director of machine learning.  And so she is likely

16   to understand how The Times pay wall works and interacts with

17   bots.

18         And finally for Sam Dolnick, he's a deputy editor.

19   And without getting into any kind of confidential memos, he's

20   conveyed information about the impact of OpenAI's services on

21   the Newsroom.  And so The Times has conceded the relevance of

22   these four custodians, but solely argues duplicativeness.

23         THE COURT:  Wait, let me stop you right there.  So

24   when I issued my decision on ECF 236, there were certain

25   categories of documents that The Times had already agreed to

OC3AAut1

```
 1    provide that weren't at issue.  Right?  And is it from those
 2    documents that you're seeing that these people are involved?
 3              MS. SALOMON:  That's correct, your Honor.
 4              THE COURT:  All right.  But they weren't custodians --
 5    I mean, I guess the argument cuts both ways because if you got
 6    the documents that referenced these people and suggested that
 7    these people would have information, and you got them from --
 8    not these people as custodians, then that shifts in one
 9    direction toward maybe they don't have unique documents.
10              MS. SALOMON:  Sure, your Honor.
11              THE COURT:  At the same time.
12              MS. SALOMON:  I take your point.  I think that at this
13    stage, the best thing to do would be exactly what OpenAI has
14    had to do vis-a-vis its eight -- or maybe that number has since
15    grown -- custodians is provide the hit counts as across our
16    current search terms.  And if it reflects duplicativeness,
17    that's one thing, but we just don't have that information yet.
18              THE COURT:  Okay.  So has New York Times provided the
19    hit counts?  Do you have the hit counts for these four proposed
20    custodians?
21              MS. PEASLEE:  Sure.  Katherine Peaslee from Susman
22    Godfrey for The New York Times.  We have not provided hit
23    counts from these custodians, your Honor, because in order to
24    provide the hit counts, we have to first collect those
25    documents, which for The New York Times is actually a fairly
```

OC3AAut1

1   slow and cumbersome process.  And because we don't believe that

2   these custodians have any non-duplicative documents and we've

3   not heard any other reasons from OpenAI for us to think

4   otherwise.  We have not taken the steps of collecting them.  We

5   are preserving their documents.  But we just don't see a basis

6   for collecting documents from custodians who will be

7   duplicative.

8           Exactly to your point, your Honor, the reason they

9   know about these custodians is because they appear on documents

10  that have already been produced.  And we've laid out in the

11  response the reasons why custodians we have agreed to,

12  including ones we've more recently added, are better sources

13  for these documents.  Certainly equally good sources for the

14  documents they're seeking anyway.

15          I will say particularly with respect to Sam Dolnick,

16  OpenAI has said they need his documents because he has a

17  broader focus on the impact of GenAI on the Newsroom.  Putting

18  aside the fact that we disagree he would have non-duplicative

19  documents on that point, that's also an area of discovery that

20  is not at issue in this case, per your Honor's order on the

21  22nd.  So we think that knocks that one out.

22          THE COURT:  I mean, to be fair, that motion was --

23  that motion was filed before I issued ECF 344.  So I guess what

24  I'm trying to understand is in light of what I said in ECF 344,

25  is there a narrower scope?  And what else do you have that

OC3AAut1

1    suggests that there's unique documents?

2          And, again, I'm going to caution, I don't want this in

3    any way to be a backdoor around what I said in ECF 344.  Okay?

4    Go ahead.

5          MS. SALOMON:  Sure, your Honor.  May I just address a

6    few points?

7          Ms. Peaslee has raised that The Times has agreed to

8    produce documents from other custodians, but as yet, has not --

9    I believe it's 22.

10          THE COURT:  Okay.  Let's stay on this issue first.

11          MS. SALOMON:  In terms of whether there's a narrower

12    scope?

13          THE COURT:  Yeah.

14          MS. SALOMON:  Your Honor, the documents we're seeking

15    from these four custodians are not implicated by 344.  It's

16    information that The Times concedes that we're entitled to in

17    terms of its brand, its reputation, and any harm therefrom.  In

18    terms of its licensing markets, I haven't understood The Times

19    to say that is irrelevant or not impacted by -- or impacted by

20    that order.  Vis-a-vis Mr. Dolnick, what we're asking for is

21    specifically defendants' conduct, any impact on the Newsroom,

22    and not the scope of other generative AI products.

23          And so it's not our understanding at least that

24    anything that we've been asking for is impacted by that order

25    here.

OC3AAut1

1          THE COURT:  Okay.  So maybe my question is for

2    Ms. Peaslee because my sort of ultimate thing to go to is how

3    long is it going to take to run, you know, collect and run and

4    provide hit counts of non-duplicative documents?

5          MS. PEASLEE:  Sure, your Honor.

6          So The Times could do that in a couple of weeks I

7    believe.  But what I will say is that there are other

8    custodians we have agreed to add.  And that's relevant because

9    in order for us to collect documents from these individuals and

10   run search terms, we will have to pause the process of

11   collecting documents from the ones we have agreed to.  There's

12   one person internal at The Times who does the collection

13   process and gets those to us.  And so it's just going to slow

14   down the discovery that we have agreed to and that the parties

15   are cooperating on.

16         So that's a factor to take into consideration.  And,

17   again, we just don't think that it's warranted in this case

18   because there's nothing that OpenAI has pointed to suggest

19   these additional custodians are necessary.

20         MS. SALOMON:  Your Honor.

21         THE COURT:  What are the other custodians you've

22   agreed to add?  How many are they?

23         MS. PEASLEE:  I believe there are ten recent

24   custodians, and I can point to the ones that we think are

25   relevant to the ones they've asked for.  For instance, for

OC3AAut1

```
 1   David Rubin, we think Amy Weisenbach, Greg Miller, Ben Frumin,

 2   Leilani Han and David Perpich are all just as good or better

 3   sources for the documents they're seeking.  And they're all

 4   people that we are collecting documents from, running search

 5   terms over, forming that process on .

 6        MS. SALOMON:  Your Honor, may I respond briefly?

 7        THE COURT:  Sure.

 8        MS. SALOMON:  As yet, The Times hasn't given a clear

 9   indication of why it would be unduly burdensome to perform the

10   basic exercise of collecting documents from custodians.  If the

11   issue is they only have one person who is doing that, then

12   perhaps they should level up and assign additional people to do

13   that.  But that's a basic function of discovery in a case

14   you've brought.

15        THE COURT:  Why is it so burdensome?  Talk to me about

16   the document -- I mean, I hate to get this granular, but you

17   all are making me get this granular.  I would prefer not to get

18   there.

19        Why is it that there's only one person at the New York

20   Times who's doing the document collection?

21        MS. PEASLEE:  Well, your Honor, there's one person

22   whose function it is and it's a small company, so just -- it's

23   not -- they are not a software company.  They don't have, you

24   know, an expansive IT department who can assign a bunch of

25   people to do this.  And, in fact, The Times specifically hired
```

OC3AAut1

```
 1   a new person, took on a temp, I believe, in order to help

 2   facilitate this process.  They're just not set up the same way

 3   that say a Microsoft or an OpenAI might be to facilitate this

 4   kind of electronic discovery.

 5            THE COURT:  So the one person who's doing it is the

 6   new hire?

 7            MS. PEASLEE:  I believe that's correct.

 8            MS. SALOMON:  Your Honor, apologies for interjecting,

 9   but might I suggest an ESI vendor.  I know you don't want to

10   get this granular, but there are ways around this.  This is not

11   a new problem or issue.

12            THE COURT:  Ms. --

13            MS. PEASLEE:  I'm sorry?  I'm sorry, I thought you

14   said --

15            THE COURT:  Yeah.  So are you using an ESI vendor?

16            MS. PEASLEE:  Yes.  We are absolutely using an ESI

17   vendor.  It's the collection process that someone internal has

18   to go do and then get it to the vendor.

19            THE COURT:  So the vendor can't help in that process?

20            MS. PEASLEE:  There have been security concerns on The

21   Times' side about having the ESI vendor go into their systems.

22            THE COURT:  All right.  What's the other, the other

23   custodians you've agreed to add and you said you'd have to

24   pause from the other additional custodians, how long is that

25   process going to take?
```

OC3AAut1

```
 1              MS. PEASLEE:  Well, it would just -- we would pause

 2     while we collect the other materials, go back, continue.

 3              THE COURT:  No, I'm saying if you put these custodians

 4     hit count at the end of the collection for the other

 5     custodians, how long does that push back this issue?

 6              MS. PEASLEE:  Sure.  I don't know the exact answer.  I

 7     would guess a couple of weeks.  But I don't want to commit to a

 8     firm date because, frankly, I don't know exactly where they

 9     are.

10              THE COURT:  Okay.  Meet and confer on this issue.

11              Look, I'm inclined to give you the hit counts, but

12     given what I've heard about the issues that The Times is

13     dealing with in terms of document collection, that, you know,

14     you may have to talk about whether you would rather get the

15     documents from the custodians you've heard, you have gotten,

16     and you get to review them, keeping in mind what The Times is

17     saying about how these four additional proposed custodians

18     probably only have things that are duplicative.

19              You have another conversation after you get these

20     additional custodians documents, see if this is still an issue.

21     If it is, I'm going to ask them to provide hit counts, but I'm

22     not going to make them do that work and pause other things

23     they're doing right now.  Particularly, if it's standing in the

24     way of you actually getting documents they've agreed to

25     produce.  Okay?
```

OC3AAut1

 1              MS. SALOMON:  Thank you, your Honor.

 2              MS. PEASLEE:  Thank you, your Honor.

 3              THE COURT:  So meet and confer on that.  Okay.

 4         So now are we down to the question of Slack messages

 5    in ECF 309?  Is there anything remaining in dispute in ECF 309

 6    now?

 7              MR. FRAWLEY:  Good morning, your Honor.  Alexander

 8    Frawley from Susman Godfrey for The New York Times.

 9         I think, your Honor, there are two things remaining in

10    dispute for Dkt. 309, and they're the two issues related to

11    Microsoft.  One of those issues is the Slack channel issue that

12    you just mentioned.  For that issue, all we're seeking is

13    confirmation from Microsoft or OpenAI that this process of

14    OpenAI reviewing these Slack channels is not going to result in

15    omitting documents from the agreed upon Microsoft custodians.

16    So it doesn't matter to us if Microsoft does the pull and

17    produces the documents or if OpenAI does the pull and produces

18    the documents.  We just want to make sure we're not missing out

19    upon the agreed upon Microsoft custodians.  And if we can get

20    that assurance from either defendant, then this portion of the

21    motion can be resolved, too.

22         The second issue is about the format of text messages

23    that Microsoft will produce.  And I think on that issue, your

24    Honor, we've been meeting and conferring.  We're happy to pause

25    on that issue for now.  Microsoft hasn't produced any text