# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE NEW YORK TIMES COMPANY<br><br>　　　　　Plaintiff,<br><br>　　　　　v.<br><br>MICROSOFT CORPORATION, OPENAI, INC., OPENAI LP, OPENAI GP, LLC, OPENAI, LLC, OPENAI OPCO LLC, OPENAI GLOBAL LLC, OAI CORPORATION, LLC, and OPENAI HOLDINGS, LLC,<br><br>　　　　　Defendants. | Civil Action No. 1:23-cv-11195-SHS |

**THE NEW YORK TIMES COMPANY'S FOURTH SET OF REQUESTS FOR
PRODUCTION TO MICROSOFT CORPORATION**

Pursuant to the Federal Rules of Civil Procedure and the Local Rules of the Southern District of New York, (the "Local Civil Rules"), The New York Times Company ("NYT") requests that Microsoft Corporation ("Microsoft") produce the requested documents at the offices of Susman Godfrey L.L.P., One Manhattan West, New York, New York 10001-8602, within thirty days after the date of service of this document, or at such other mutually agreeable time and place.

**I.    DEFINITIONS**

The following definitions and instructions apply to the requests listed below:

1.    All definitions and rules of construction set forth in Rule 26.3 of the Local Rules of the Southern District of New York are incorporated by reference herein.

2.    "Affiliate" means, with respect to any Person, any other Person that, directly or indirectly through one or more intermediaries, controls, is controlled by, or is under any common control with, such Person.

1

3. "Agreement(s)" means any contract, agreement, arrangement, or understanding, formal or informal, oral or written, between or among two or more Persons.

4. "AI Model(s)" means a component of an information system and/or large language model that implements artificial intelligence ("AI") technology or uses computational, statistical, or machine-learning techniques to produce outputs from a given set of inputs.

5. "Generative AI Models(s)" means AI Models that emulate the structure and characteristics of input data in order to generate derived synthetic content, such as images, videos, audio, text, and other digital content.

6. "Text Generation AI Model(s)" means Your Generative AI Models, including generative pre-trained transformers or large language models (LLMs), that provide text outputs in response to inputs or prompts, including GPT base, GPT-1, GPT-2, GPT-3, GPT 3.5, GPT-4, GPT-4 Turbo, GPT-4o, MAI-1, and all other versions or other Generative AI Models included in Your Generative AI Products and Services.

7. "Complaint" means the operative complaint in the Action as of the date these Requests are served.

8. "Defendants" means Microsoft and OpenAI.

9. "Electronically Stored Information" or "ESI" refers to information and Documents within the full scope of Federal Rule of Civil Procedure 34 with all Metadata intact—created, manipulated, communicated, stored, and best utilized in digital form, and stored on electronic media.

10. "Generative AI Product(s) and Service(s)" means any publicly available or commercial product or service offering that includes a Generative AI Model, including but not limited to ChatGPT branded products and services, Browse (formerly known as Browse with

Bing), Copilot branded products and services, ChatGPT, Bing Chat, SearchGPT, the OpenAI API, and any other current or anticipated GPT-based product (including CustomGPTs) that relate to content in categories that compete with News Plaintiffs' products—namely news, cooking, consumer reviews, and sports.

11. "Including" means including but not limited to.

12. "Journalism," for the purposes of these requests, means the activity of writing or creating content for newspapers, magazines, news websites, mobile applications, television, podcasts, or any other publication and/or news outlet, and includes the work of The Times as alleged in the Complaint.

13. "Metadata" refers to information about an electronic file that is embedded in the file, describing the characteristics, origins, usage, and validity of the electronic file, and includes but is not limited to descriptive, structural, administrative, and relationship information.

14. "OpenAI" means Defendants OpenAI Inc., OpenAI GP, LLC, OpenAI Opco, LLC, OpenAI Global, LLC, OpenAI Holdings LLC, OpenAI, LLC, or OAI Corporation, LLC, their subsidiaries, affiliates, divisions, predecessors in interest, successors, or assignees, and their respective officers, directors, employees, consultants, representatives, and agents.

15. "Relating to" means discussing, describing, referring to, pertaining to, containing, analyzing, studying, reporting on, commenting on, evidencing, constituting, setting forth, considering, recommending, concerning, or pertaining to, in whole or in part.

16. "Microsoft" or "You" or "Your" means Defendant Microsoft Corporation, its subsidiaries, affiliates, divisions, predecessors in interest, successors, or assignees, and their respective officers, directors, employees, consultants, representatives, and agents.

17. "News Plaintiffs" means Plaintiffs The New York Times Company, the Daily News LP Plaintiffs, and Center for Investigative Reporting, collectively.

18. The "Daily News LP Plaintiffs" include all of the plaintiffs in *Daily News, LP, et al. v. Microsoft Corp., et al.*, No. 1:24-cv-3285 (S.D.N.Y.).

19. "The Times" or "The New York Times" means Plaintiff The New York Times Company, its subsidiaries, affiliates, divisions, predecessors in interest, successors, or assignees, and their respective officers, directors, employees, consultants, representatives, and agents.

20. "Times Content" means material published by The Times, including in print, online, audio, or in any other format, whether on Times-owned platforms or available through third-party sources. "Times Content" includes all New York Times interest-specific publications, sub-brands, and products, including The Athletic, Cooking, Games, and Wirecutter.

21. "Training Dataset(s)" means the data and content used to pre-train, train, fine-tune, or otherwise affect the performance of the Generative AI Models, including any data and content used for reinforcement learning from human feedback or reinforcement learning from AI feedback.

## II. INSTRUCTIONS

1. Produce all responsive documents prepared, sent, or received, in whole or in part, during the time period applicable to the request. You should identify in some reasonable manner the person from whose files each document you produce was found.

2. You are to produce all documents, as defined above, that are in the possession, custody or control of you, or in the possession, custody or control of any attorney or agent for you. Without limiting the terms, "possession, custody, or control" of an item means that you either have physical possession of the item or have a right to possession of the item that is equal or superior to the person who has physical possession of the item.

4

3.      You are under a duty to supplement your responses to these discovery requests pursuant to FRCP 26. If after you produce any of the discovery requested below you discover or receive additional documents or information responsive to the requests, you should promptly produce such additional documents or information to the full extent required by the rules.

4.      Pursuant to FRCP 26, you are to provide a privilege log for any documents you have withheld on the basis of privilege(s). Request for such a log is hereby made, effective as of the response date of these requests. If you assert a claim of privilege with respect to any document request, or portion thereof, you should produce a log, accounting for each document withheld individually, and providing the nature of the privilege being claimed; the type of document, date, author, addressees or recipients, and general subject matter of the document, and such other information as is sufficient to identify the document. If a claim of privilege applies to only a portion of a document, the document should be produced, and the portion claimed to be privileged obscured and stamped "redacted."

5.      The documents requested below should be produced in the manner that they are kept in the usual course of business. Documents should be produced with the label or labels from any file folder, binder, file drawer, file box, notebook, computer disk, or other container in which the document was found. Documents on computers or computer disks, including but not limited to electronic mail and corresponding attachments, should be produced in both native format and single-page TIFF format with optical character recognition (OCR). Even if only part of a document is responsive to a request, you should still produce the entire document including all attachments.

6.      All duplicates or copies of documents are to be provided to the extent they have handwriting, additions, or deletions of any kind different from the original document being produced.

7. All documents which cannot be legibly copied should be produced in their original form.

8. If any documents requested herein have been lost, discarded or destroyed, they shall be identified as completely as possible, including, without limitation, the following information: (a) the date of disposal; (b) the manner of disposal; (c) the reason for disposal; (d) the person authorizing disposal; and (e) the person disposing of the document.

9. If no Documents responsive to a particular request exist, state that no responsive Documents exist.

### III.   DOCUMENT REQUESTS

**REQUEST FOR PRODUCTION NO. 92:**

Documents concerning all historical search performance data collected by Microsoft since 2018 for each of News Plaintiffs' websites,[1] including documents concerning historical search performance data related to (i) impressions (ii) clicks, (iii) average click-through rate, (iv) average position, (v) crawl requests, (vi) crawl errors, and (vii) indexed pages.[2]

**REQUEST FOR PRODUCTION NO. 93:**

Documents concerning all historical search performance data for each of the News Plaintiffs' websites as it relates to Bing Chat, including (i) documents concerning Bing Chat search performance data related to impressions, clicks, and the average citation position for the News Plaintiffs' URLs and (ii) documents concerning the queries, prompts, or keywords used to generate these impressions and/or clicks.

---

[1] News Plaintiffs' websites include but are not limited to: nytimes.com, cooking.nytimes.com, theathletic.com, wirecutter.com, chicagotribune.com, nydailynews.com, sun-sentinel.com, orlando-sentinel.com, denverpost.com, mercurynews.com, ocregister.com, and twincities.com.

[2] *See* Search Performance, WEBMASTER TOOLS HELP, https://www.bing.com/webmasters/help/c680da36#:~:text=The%20Search%20performance%20report%20contains,traffic%20sources%20to%20your%20website (last accessed Nov. 15, 2024).

6

**REQUEST FOR PRODUCTION NO. 94:**

Documents regarding the decision whether to include or exclude the Bing Chat historical search performance data, described in Request for Production No. 92, in Bing Webmaster Tools.

**REQUEST FOR PRODUCTION NO. 95:**

Documents concerning Microsoft's claims that Bing Chat drives incremental traffic to publisher sites, including any analysis performed to support these claims.[3]

**REQUEST FOR PRODUCTION NO. 96:**

Documents sufficient to show any analysis performed by You concerning any indirect revenue attributable to News Plaintiffs' content in search, including as such analysis relates to News Plaintiffs' content in outputs in generative search and chat features.

**REQUEST FOR PRODUCTION NO. 97:**

Documents concerning the removal of any content, including information regarding authorship, date of publication, publishing entity, title, copyright notices, and terms and conditions for use, from News Plaintiffs' works in connection with retrieval-augmented generation.

**REQUEST FOR PRODUCTION NO. 98:**

Documents regarding the purpose for which you used natural-language textual data to train Generative AI Models, including, without limitation, whether the purpose of such use included exploitation of the expressive characteristics of such data, or was merely limited to the discovery of functional characteristics or underlying facts .

**REQUEST FOR PRODUCTION NO. 99:**

---

[3] *See, e.g.*, Yusuf Mehdi, *Driving More Traffic and Value to Publishers from the New Bing*, MICROSOFT BING BLOGS (Mar. 29, 2023), https://blogs.bing.com/search/march_2023/Driving-more-traffic-and-value-to-publishers-from-the-new-Bing.

7

Documents regarding whether and to what extent the expressive characteristics of natural-language textual data Defendants used to train Generative AI Models affect the expressive characteristics of output from Generative AI Products and Services.

**REQUEST FOR PRODUCTION NO. 100:**

Documents concerning any internal or external presentations regarding the growth, size, earning potential, valuation, and profitability of 1) OpenAI, 2) Microsoft's investment in OpenAI, and 3) Defendants' roles in the overall Generative AI market.

**REQUEST FOR PRODUCTION NO. 101:**

Documents concerning any internal or external presentations showing profits and losses related to Defendants' Generative AI Products and Services.

**REQUEST FOR PRODUCTION NO. 102:**

Documents concerning any valuation of, or attempt to value, Times Content.

**REQUEST FOR PRODUCTION NO. 103:**

Documents sufficient to show, from 2015 to present, Defendants' capital expenditures for their Generative AI Products and Services, including the dollar amount of capital purchases to train or develop Defendants' Generative AI Models and the number of GPUs used.

**REQUEST FOR PRODUCTION NO. 104:**

Documents sufficient to show Microsoft's number of employees from 2015 to present, broken down by employee function, including technical staff, administrative staff, and management or leadership staff.

**REQUEST FOR PRODUCTION NO. 105:**

Documents sufficient to show Microsoft's number of employees from 2015 to present, broken down by employee function, including technical staff, administrative staff, and management or leadership staff.

**REQUEST FOR PRODUCTION NO. 106:**

Documents submitted to any government entity, in both the U.S. and elsewhere, that are related to any of the allegations in the Complaint or the defenses thereto, including (i) copyright and intellectual property laws or rules; (ii) Defendants' business plans and monetization strategies related to generative AI; (iii) risks associated with the development of generative AI; (iv) OpenAI's non-profit status; and (v) the relationship between the Defendants.

**REQUEST FOR PRODUCTION NO. 107:**

Documents concerning Defendants' demand, need, and/or desire for high-quality content and the potential lack of supply of such content for purposes of developing Defendants' Generative AI Products and Services.

**REQUEST FOR PRODUCTION NO. 108:**

Documents concerning the expected cost or financial impact to Defendants' Generative AI Products and Services if Defendants were required to purchase, license, or otherwise compensate copyright owners for copyrighted content.

**REQUEST FOR PRODUCTION NO. 109:**

Documents reflecting the actual or expected financial impact of Defendants' Generative AI Products and Services on copyright owners, including News Plaintiffs and other content creators.

**REQUEST FOR PRODUCTION NO. 110:**

Documents concerning actual or expected competition between Defendants' Generative AI Products and Services and Persons engaged in Journalism, including any competitive analyses.

**REQUEST FOR PRODUCTION NO. 111:**

Documents regarding the potential for Defendants' Generative AI Products and Services to replace human writers, including journalists.

**REQUEST FOR PRODUCTION NO. 112:**

Documents regarding the market for AI products and services, including any competitive analyses and market research reports.

**REQUEST FOR PRODUCTION NO. 113:**

Documents concerning the market for training data, including any discussion of the existence or non-existence of such a market and the actual or potential monetization of training data.

**REQUEST FOR PRODUCTION NO. 114:**

Documents concerning the market for content for retrieval-augmented generation or generative search features, including any discussion of the existence or non-existence of such a market.

**REQUEST FOR PRODUCTION NO. 115:**

Documents reflecting the actual, expected, or potential financial impact of Defendants' Generative AI Products on Your enterprise and/or market value.

**REQUEST FOR PRODUCTION NO. 116:**

Documents related to Defendants' efforts to protect and enforce their copyrights, including through litigation, and the actual or expected value of Defendants' copyrighted materials related to those efforts.

**REQUEST FOR PRODUCTION NO. 117:**

Documents concerning actual or potential harm Defendants' Generative AI Products and Services and/or AI products and services generally have on News Plaintiffs', the news industry, and/or society in general.

**REQUEST FOR PRODUCTION NO. 118:**

Documents reflecting any valuation of Defendants' Generative AI Products and Services, including internal analyses, third-party valuations, and investor related valuation documents.

**REQUEST FOR PRODUCTION NO. 119:**

Documents related to Defendants' ability to identify and monitor user sessions where Defendants' Generative AI Products and Services output copyrighted content (or suspected copyrighted content) to the user.

**REQUEST FOR PRODUCTION NO. 120:**

Documents concerning any data or datasets compiled by You that comprise user sessions where Defendants' Generative AI Products and Service output copyrighted content (or suspected copyrighted content) to the user.

**REQUEST FOR PRODUCTION NO. 121:**

Documents concerning Defendants' development of filters and/or classifiers related to anti-regurgitation or copyright efforts and deployment of such filters and/or classifiers in Defendants' Generative AI Products and Services, including documents sufficient to show: (i) all versions of such filters and/or classifiers; (ii) any changes or updates made to such filters and/or classifiers and the reasons for such changes or updates, (ii) the results of any red-teaming or evaluations related to such filters and/or classifiers, (iii) the rules or policies for determining when and how such filters and/or classifiers are to be triggered, (iv) the rate at which such filters and/or classifiers are triggered in response to user queries, (v) Defendants' ability to track and monitor

11

user conversations that trigger such filters and/or classifiers, and (vi) all conversations about such filters and/or classifiers.

**REQUEST FOR PRODUCTION NO. 122:**

Documents concerning Defendants' anti-regurgitation efforts, including documents sufficient to show: (i) any changes or updates made to such anti-regurgitation efforts, (ii) the results of any red-teaming and evaluations performed in connection with such anti-regurgitation efforts, (iii) any rules, policies, or guidance related to such anti-regurgitation efforts, (iv) the contents of any dataset related to copyrighted content used in such anti-regurgitation efforts.

**REQUEST FOR PRODUCTION NO. 123:**

Documents concerning whether Microsoft's potential or actual investments in OpenAI, including in the years 2016, 2019, and 2024, would affect OpenAI's non-profit status, mission, or ability to engage in non-commercial activities.

**REQUEST FOR PRODUCTION NO. 124:**

Documents sufficient to show any indirect or direct financial stake that each custodian has in Your business.

**REQUEST FOR PRODUCTION NO. 125:**

Documents sufficient to show (i) Your policy and practice for requiring Your employees to sign non-disclosure agreements; and (ii) any non-disclosure agreements between You and Your custodians.

**REQUEST FOR PRODUCTION NO. 126:**

Documents sufficient to show (i) Your policy and practice for requiring Your employees to sign non-disclosure agreements; and (ii) any non-disclosure agreements between You and Your custodians.

**REQUEST FOR PRODUCTION NO. 127:**

All employment agreements between You and Your custodians.

**REQUEST FOR PRODUCTION NO. 128:**

Documents concerning work performed by employees of Microsoft on the premises of or using computer systems or other facilities owned or controlled by OpenAI.

**REQUEST FOR PRODUCTION NO. 129:**

Documents concerning the ability or inability of Defendants' Generative AI Models to engage in abstract reasoning or to derive principles, rules, or underlying facts from training data.

Dated: November 19, 2024       /s/ Ian Crosby

Ian Crosby *(admitted pro hac vice)*
Genevieve Vose Wallace *(admitted pro hac vice)*
Katherine M. Peaslee *(admitted pro hac vice)*
SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101
Telephone: (206) 516-3880
Facsimile: (206) 516-3883
icrosby@susmangodfrey.com
gwallace@susmangodfrey.com
kpeaslee@susmangodfrey.com

Davida Brook *(admitted pro hac vice)*
Emily K. Cronin (*admitted pro hac vice*)
Ellie Dupler *(admitted pro hac vice)*
SUSMAN GODFREY L.L.P.
1900 Ave of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
dbrook@susmangodfrey.com
ecronin@susmangodfrey.com
edupler@susmangodfrey.com

Elisha Barron (5036850)
Zachary B. Savage (ZS2668)
Tamar Lusztig (5125174)
Alexander Frawley (5564539)

Eudokia Spanos (5021381)
SUSMAN GODFREY L.L.P.
One Manhattan West
New York, NY 10001
Telephone: (212) 336-8330
Facsimile: (212) 336-8340
ebarron@susmangodfrey.com
zsavage@susmangodfrey.com
tlusztig@susmangodfrey.com
afrawley@susmangodrey.com
espanos@susmangodfrey.com

Scarlett Collings (4985602)
SUSMAN GODFREY L.L.P.
1000 Louisiana, Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile (713) 654-6666
scollings@susmangodfrey.com

Steven Lieberman (SL8687)
Jennifer B. Maisel (5096995)
Kristen J. Logan *(admitted pro hac vice)*
ROTHWELL, FIGG, ERNST & MANBECK, P.C.
901 New York Avenue, N.W., Suite 900 East
Washington, DC 20001
Telephone: (202 783-6040
Facsimile: (202) 783 6031
slieberman@rothwellfigg.com
jmaisel@rothwellfigg.com
klogan@rothwellfigg.com

*Attorneys for Plaintiff*
*The New York Times Company*

## CERTIFICATE OF SERVICE

I declare that I am employed with the law firm of Susman Godfrey L.L.P., whose address is 1900 Ave of the Stars, Suite 1400, Los Angeles, CA 90067. I am not a party to the within cause, and I am over the age of eighteen years.

I further declare that on November 19, 2024, I served a copy of:

**THE NEW YORK TIMES COMPANY'S SECOND SET OF REQUESTS FOR PRODUCTION TO MICROSOFT CORPORATION**

☒ **BY ELECTRONIC SERVICE [Fed. Rule Civ. Proc. Rule 5(b)(2)(E)]** by electronically mailing a true and correct copy through Susman Godfrey L.L.P.'s electronic mail system to the email address(es) set forth below, or as stated on the attached service list per agreement in accordance with Fed. Rule Civ. Proc. Rule 5(b)(2)(E).

☐ **BY PERSONAL SERVICE** I caused to be delivered such envelope by hand to the offices of the addressee.

**See Attached Service list**

I declare under penalty of perjury that the following is true and correct.

Executed at Los Angeles, California, this 19th day of November, 2024.

____Ellie Dupler_____          _____/s/ Ellie Dupler_____
            (Type)                                              (Signature)

15

## SERVICE LIST

OpenAICopyright@mofo.com

Joseph C. Gratz
Vera Ranieri
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105-2482
Telephone: (415) 268-6066
Facsimile: (415) 268-7522
jgratz@mofo.com
Vranieri@mofo.com

Allyson R. Bennett
Rose S. Lee
Morrison & Foerster LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles CA 90017
Telephone: (213) 892-5200
Facsimile: (213) 892-5454
Abennett@mofo.com
RoseLee@mofo.com

*Attorneys for Defendants*
*OpenAI, Inc., OpenAI LP, OpenAI GP, LLC,*
*OpenAI, LLC, OpenAI OpCo LLC, OpenAI*
*Global LLC, OAI Corporation, LLC, And*
*OpenAI Holdings, LLC*

OpenAICopyrightLitigation.lwteam@lw.com

Andrew Gass
Joseph Richard Wetzel , Jr.,
LATHAM & WATKINS, LLP
505 Montgomery Street, Ste. 2000
San Francisco, CA 94111
Telephone: (415)391-0600
Facsimile: (415)-395-8095
andrew.gass@lw.com
joe.wetzel@lw.com

Allison Levine Stillman
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212)906-1200
Facsimile: 212-751-4864
alli.stillman@lw.com

Sarang Damle
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
Telephone: (202)637-2200
Facsimile: 202-637-2201
sy.damle@lw.com

*Attorneys for Defendants*
*OpenAI, Inc., OpenAI LP, OpenAI GP, LLC,*
*OpenAI, LLC, OpenAI OpCo LLC, OpenAI Global*
*LLC, OAI Corporation, LLC, And OpenAI*
*Holdings, LLC*

NewYorkTimes_Microsoft_OHS@orrick.com

Annette L. Hurst
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105
Telephone: (415)773-5700
Facsimile: (415)773-5759
ahurst@orrick.com

Christopher J. Cariello
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019
Telephone: (212) 506-3778
Facsimile: (212) 506-5151
ccariello@orrick.com

*Attorneys for Defendant*
*Microsoft Corporation*

MicrosoftNYClassActionFDBR@faegredrinker.com;

Jeffrey S. Jacobson
FAEGRE DRINKER BIDDLE & REATH LLP
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 248-3191
jeffrey.jacobson@faegredrinker.com

Jared B. Briant
FAEGRE DRINKER BIDDLE & REATH LLP
1144 15th Street, Suite 3400
Denver, Colorado 80202
Telephone (303) 607-3588
jared.briant@faegredrinker.com

*Attorneys for Defendant*
*Microsoft Corporation*