KEKER
VAN NEST
& PETERS          LATHAM & WATKINS LLP          MORRISON FOERSTER

January 13, 2025                                                    **VIA ECF**

Hon. Ona T. Wang
United States District Court
500 Pearl Street
New York, NY 10007

Re:   ***Discovery dispute concerning documents from The Times's licensing consultant in its
      possession, custody or control***

Dear Judge Wang:

OpenAI requests a pre-motion conference to address The New York Times's refusal to produce
documents in its possession, custody or control from its business licensing consultant David B.
Kogan. ██████████████████████████████████████████████████████████████
███████████████████████████████████████████████ Yet The Times refuses to seek
documents from Kogan on the grounds that the requested discovery is not relevant and
duplicative. Ex. A (The Times's Responses and Objections to OpenAI's RFPs) at 11-12.

The Times's productions reveal that The Times has relied heavily on Kogan in developing its
business licensing strategy, ████████████████████████████████████ Ex. B
(NYT_00132058), ████████████████████████████████. *See* Ex. C (NYT_00064854); Ex. D
(NYT_00201884). In fact, ████████████████████████████████████████████████
██████████████████████████████████████████████████████. *See* Ex. E
(NYT_00201888) ██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████. 

As OpenAI has elsewhere briefed, The Times's efforts to license its content to OpenAI and other
tech companies as training data are directly relevant to Factor Four of the fair use inquiry, which
considers a secondary use's "effect [] upon the potential market for or value of the copyrighted
work. 17 U.S. § 107(4). The absence of a "workable" market for licensing The Times's
copyrighted work as training data weighs in favor of fair use. See *Am. Geophysical Union v.
Texaco Inc.*, 60 F.3d 913, 930 (2d Cir. 1994) ("the fourth factor will favor the secondary user
when the only possible adverse effect occasioned by the secondary use would be to a potential
market or value that the copyright holder has not typically sought to, or reasonably been able to,
obtain or capture"). Kogan's documents go directly to whether The Times has sought to, or
reasonably been able to, obtain or capture the value of their work as training data. Courts also
consider a copyright holder's licensing efforts when measuring actual damages in copyright
infringement. *See On Davis v. The Gap, Inc.*, 246 F.3d 152, 167 (2d Cir. 2001), *as amended*
(May 15, 2001). Given Kogan's centrality to The Times's negotiating efforts, OpenAI therefore
sought to confirm that the search for documents and communications related to the licensing of
its asserted works for LLM training that The Times has already agreed to conduct would include
responsive documents in Kogan's possession within The Times's "control." Ex. F (12/23
Frawley Email Correspondence) at 3-4; *see also In re NTL, Inc. Sec. Litig.*, 244 F.R.D. 179, 196

KEKER
VAN NEST
& PETERS          LATHAM & WATKINS LLP          ΙΙΙORRISON FOERSTER

(S.D.N.Y. 2007), *aff'd sub nom. Gordon Partners v. Blumenthal*, No. 02-cv-7377-LAK, 2007 WL 1518632 (S.D.N.Y. May 17, 2007).

The Times does not dispute that it has "control" over Kogan's documents. First, The Times has the "practical ability" to obtain responsive documents from Kogan, which is found where there is "an agreement with a third-party possessor granting a party access to documents, along with an actual mechanism for getting the documents[.]" *SEC v. Strauss*, No. 09-cv-4150-RMB-HBP, 2009 WL 3459204, at *8 (S.D.N.Y. Oct. 28, 2009). Second, The Times has "control over [Kogan's] material[s] [because] it has a legal right to obtain" them. *Id.* at *7 (collecting cases). According to the consulting agreement The Times executed with Kogan in █████████████████ ███████████████████████████████████████████████████████████████████████████ ███████ Ex. G (NYT  00156483) ¶¶ 2, 7, █████████████████████████████████ ████████████████████████ *d.* ¶ 7.

Instead, The Times has asserted, without any support, that "[a]ny responsive documents in Mr. Kogan's possession, custody, and control are duplicative of documents The Times has already produced[.]" Ex. F (12/23 Frawley Email Correspondence) at 2. But it is unclear how The Times can make that assertion when it has refused to even ***ask*** Mr. Kogan whether he has responsive documents—which, under the "practical ability" test, it has an obligation to do. *See Royal Park Investments SA/NV v. Deutsche Bank Natl. Tr. Co.*, No. 14-cv-04394-AJN-BCM, 2016 WL 5408171, at *7 (S.D.N.Y. Sept. 27, 2016) ("[A] number of courts in this District and elsewhere apply the most 'practical' test of all: whether the party has asked the non-party to turn over the documents at issue and, if so, whether the non-party is willing to do so"). Without looking at Kogan's documents, The Times has no way of knowing whether the documents are duplicative of what The Times has already produced.

The Times's assertions of "duplicativeness" are also contradicted by gaps in its production to date. For example, The Times has not produced any documents or emails about the ████████ ████████████████████████████████████████████ *See* Ex. H (NYT  00129017). Nor has The Times produced any documentation underlying ██████████ █████████████████████████████████████████ Ex. E (NYT_00201888). Other holes regarding Kogan's involvement in The Times's licensing negotiations remain in The Times's production; for instance, The Times has not produced ███████████████████████████████████████. *See e.g.*, Ex. I (NYT_00202159) (██████████████████████████████████); Ex. J (NYT_00480306). Kogan may well have responsive documents that plug in those holes; The Times has not explained why it would be unduly burdensome to ask.

For the foregoing reasons, the Court should compel The Times to produce responsive documents in Kogan's possession. If the Court finds that Kogan's documents are not in The Times's possession, custody or control, OpenAI will promptly file a request that the Court issue letters rogatory to the appropriate United Kingdom judicial authority so it may subpoena Kogan in the UK, his country of residence.

KEKER
VAN NEST
& PETERS
LATHAM & WATKINS LLP
ℍORRISON FOERSTER

Sincerely,

| KEKER, VAN NEST & PETERS LLP | LATHAM & WATKINS LLP | MORRISON & FOERSTER LLP |
|---|---|---|
| | */s/ Elana Nightingale Dawson* | |
| */s/ Sarah Salomon* | | */s/ Rose S. Lee* |
| Sarah Salomon | Elana Nightingale Dawson | Rose S. Lee |