January 16, 2025

**VIA ECF**

Honorable Ona T. Wang
United States District Court
500 Pearl Street
New York, NY 10007

Re:   *The New York Times Company v. Microsoft Corp.*, No. 1:23-cv-11195 (S.D.N.Y.): Response to Brief Regarding Data Market and Impact on Content Creators (Dkt. 396)

Dear Magistrate Judge Wang:

Microsoft opposes The New York Times' January 13, 2025 letter, in which Plaintiff asks the Court to extend discovery to issues that are irrelevant to this case, including issues upon which this Court has already determined are inappropriate for discovery. First, Plaintiff asks that Microsoft be compelled to produce unexecuted agreements and related negotiations on training models and for use in RAG despite the fact that the Court already rejected this argument in *Authors Guild v. OpenAI Inc.*, 23-cv-8292 (S.D.N.Y.), and *Alter v. OpenAI Inc.*, 23-cv-10211 (S.D.N.Y.) (the "Class Cases"). Second, Plaintiff asks the Court to require Microsoft to search for and produce documents regarding OpenAI's tax status while providing no explanation on how this is relevant to the claims and defenses in this case. Finally, Plaintiff asks that the Court require Microsoft to produce an amorphous set of speculative documents on impacts experienced by any and all content creators across several industries, regardless of whether the creators or content have any connection to this case. Plaintiff's request for this Court to expand the scope of discovery, even where the Court has explicitly declined to do so in other cases, should be rejected.

**Plaintiff Recycles Futile Arguments Regarding Unexecuted Agreements and Related Negotiations that Have Already Been Raised and Rejected in the Class Cases (RFP Nos. 61, 113, and 114).** Plaintiff's request that this Court compel internal and external "communications about licensing agreements that did ***not*** result in a final executed agreement" (Dkt. 396 at 1) is virtually the same request this Court rejected in the Class Cases during the most recent status conference. There, plaintiffs made similarly broad requests for "negotiations to license copyrighted works" including "unexecuted licenses." *Authors Guild*, 23-cv-8292, Dkt. 269 at 1.

Despite Plaintiff's statements otherwise, the plaintiffs in the Class Cases requested unexecuted agreements and related negotiations for training data related to ***all models and products***, including both those that are and are not at issue in the Class Cases and in the instant case. The plaintiffs in the Class Cases did not qualify their request in any way—they were seeking ***all*** negotiations for all copyrighted works, including ***all*** unexecuted agreements. *Authors Guild*, 23-cv-8292, Dkt. 269 at 1.[1] As Microsoft correctly argued in its response, unexecuted agreements are irrelevant; they are not indicative of fair market value because there was never any actual

---

[1] While the plaintiffs in the Class Cases also included in their motion a request for discovery on "Microsoft's own LLMs," that request was being made under a separate and distinct RFP and was argued in a separate part of the motion. *Authors Guild*, 23-cv-8292, Dkt. 269 at 3.

agreement on the value. *Authors Guild*, 23-cv-8292, Dkt. 279 at 1-2. Plaintiff's attempt to re-hash the argument that such unexecuted agreements are necessary to show the potential or actual market for such data is unavailing because as Microsoft noted previously and as the Court noted during the hearing, Microsoft has already agreed to produce the executed agreements and related negotiations. *Authors Guild*, 23-cv-8292, Dkt. 279 at 1-2; *Authors Guild*, 23-cv-829, Hr'g. Tr. at 142 (Dec. 3, 2024). Further, Microsoft has already agreed to produce the negotiations with Plaintiff over its content. Notably, Plaintiff does not cite a single case, in this district or otherwise, finding that unexecuted agreements and negotiations unrelated to a plaintiff's copyrighted works is relevant to determine whether there is any market for the copyrighted works. Just as the Court found in the Class Cases, requiring Microsoft to produce highly sensitive and irrelevant documents showing business negotiations related to agreements that were never actually executed does not meet the standard under the Federal Rules.

With respect to RFP Nos. 113 and 114, in addition to being irrelevant and unnecessary because Microsoft has agreed to produce documents that may conceivably be relevant to the existence of a market, Plaintiff's request for documents beyond unexecuted agreements and negotiations is not ripe for consideration. As Microsoft indicated in its responses to these requests (neither of which are tailored to the models or Generative AI products and services identified in the Complaint), it was willing to meet and confer as to their scope. Dkt. 396-2 at 30-33. As written, these requests could capture a great magnitude of documents. For instance, the requests as written would require Microsoft to investigate instances where any of its thousands of its employees over the past several years engaged in "*any* discussion of the existence or non-existence of such a market" or came into possession of *any* document, including external analyses or news articles, on the topic. During the single meet and confer on this issue, Plaintiff confirmed that negotiating search terms should suffice for custodial documents. Microsoft indicated a willingness to consider such search terms and to further consider how a reasonable search for noncustodial documents could be conducted. In a follow-up communication, Plaintiff suggested it may need to propose new search terms in addition to those the parties are already negotiating, but those search terms have not been discussed between the parties. Dkt. 386-1 at 9-10. Plaintiff also failed to provide any specificity as to these broad requests. *Id.* Given this, there is no ripe dispute for the Court with respect to RFP Nos. 113 or 114.

**<u>Documents Concerning OpenAI's Non-Profit Status Are Irrelevant and Plaintiff's Continued Revision of the Relevant Time Frame Is Improper and Burdensome (RFP No. 123).</u>** Microsoft has already agreed to produce documents related to its investments in OpenAI. Dkt.396-2 at 42-43. While Plaintiff is now trying to use this request as a means to get all further documents related to any ongoing investments by Microsoft in OpenAI, the specific request under which Plaintiff seeks to compel is very narrow: "Documents concerning whether Microsoft's potential or actual investments in OpenAI, including in the year[] . . . 2024, would affect OpenAI's non-profit status, mission, or ability to engage in non-commercial activities." However, it is entirely unclear how documents in response to this request beyond those that Microsoft has already agreed to produce are at all relevant to this case or why this topic warrants an additional investigation into this specific topic. Plaintiff's reliance on 17 U.S.C. § 107(1) is unavailing given that, as Plaintiff admits, the analysis there is on the use of and "the commercial nature of ***Defendants' products***," not the tax status of the Defendant. Dkt. 396 at 3 (emphasis added). Even if § 107(1) required a look at the defendant's tax status, that is already known to Plaintiff. Documents regarding Microsoft's investment simply are not implicated by that inquiry.

**Microsoft Has Already Agreed to Produce Custodial Documents Regarding Any Alleged Impact of Microsoft's Conduct on Content Creators (RFP No. 109).** Plaintiff's final request is not ripe for resolution by the Court. As Plaintiff notes, Microsoft has agreed to produce any such documents that occur in the custodial documents that it collects and reviews based upon search terms, as well as to search for noncustodial documents regarding any impact as the New Plaintiffs. Dkt. 396 at 3; *see also* Dkt. 396-2 at 26-27; Dkt. 386-1 at 9. Following the single meet and confer on this issue and two business days before filing its motion, Plaintiff presented a so-called compromise position as to noncustodial documents. Dkt. 386-1 at 9. Additional meet and confer is required with respect to this new proposal, so that the parties can try to reach agreement around questions such as how Plaintiff is defining "the publishing industry, the news industry, cooking websites, and product recommendation websites."[2] To that end, Microsoft requests that the Court deny this particular request and allow further meet and confer to resolve this issue.

Respectfully submitted,                          Respectfully submitted,

/s/ Annette L. Hurst                             /s/ Jared B. Briant

Annette L. Hurst                                 Jared B. Briant

*Counsel for Defendant Microsoft Corporation*

---

[2] During the meet and confer, Plaintiff suggested it may be willing to limit the request to "journalism," but then made this very different, seemingly broader, proposal in the follow up communication, and the parties have not yet further discussed the specifics of that proposal.