January 16, 2025

Hon. Ona T. Wang
United Magistrate Judge
Southern District of New York

      RE:    *The New York Times Co. v. Microsoft Corp. et al.,* No. 23-cv-11195, ECF No. 392

Dear Judge Wang:

The Times again raises issues for the Court that are premature and/or inappropriate. First, the meet-and-confer process continues to be productive, and the Times's motion as to RFPs 113 and 114 is on its way to resolution. Second, OpenAI has already agreed to produce many of the financial documents sought by the Times's RFPs 67, 70, 99, and 100. As to the disputes that remain, The Times is engaged in a fishing expedition for documents for which it cannot articulate a good reason for production. The Court should deny The Times's motion.

**Documents Concerning the Market for Training Data and RAG Data:** The parties have had productive conferrals on this RFP. After the filing of The Times's motion, OpenAI believed it had resolved the dispute by agreeing to the only search term The Times had associated with either RFP 113 or RFP 114 as of the filing of its motion. *See also* ECF No. 398 ("The Times has already proposed *a search term* for these RFPs, which includes the word 'market[.]'") (emphasis added). Two days after filing its motion, The Times identified eight *additional* terms that it had never previously identified to OpenAI as part of this dispute. To be clear, OpenAI is not saying no to The Times's proposal. But OpenAI cannot agree to The Times's surprise shoehorning of eight newly identified terms that hit on more than 110,000 documents into a dispute *after* The Times moved on this issue. The parties are working to resolve this dispute and OpenAI asks the Court to order the parties to continue to meet and confer.

**Documents Concerning OpenAI's Revenues and Profits:** The Times has moved to compel OpenAI to produce a variety of financial documents that are either irrelevant or duplicative of documents OpenAI has already agreed to produce. Courts—including the court in the pending class action in N.D. Cal.—regularly reject similar demands. This Court should do the same.

*First*, The Times seeks production of presentations, along with related documents and communications, regarding certain financial metrics. ECF 392 at 2. But OpenAI has already produced, among other things, consolidated, audited financial statements encompassing the relevant business operations. The Times cannot identify any relevant, non-duplicative information it is seeking that is unavailable from those financial statements. Instead, The Times can only speculate that the requested documents *might* contain additional relevant, substantive information, but cannot describe what that information may be, how it might be relevant to the case, or why it is non-duplicative. Given this pure speculation, The Times' demand is improper.

Indeed, what few details The Times provides about the substantive information it hopes to obtain from the requested documents are transparently pretextual or establish that the requested documents are, at best, duplicative. Most notably, The Times asserts that the requested presentations will "describe . . . trends within OpenAI's financial metrics." *Id.* But The Times has no need of presentations describing such trends given that it already has statements containing the underlying financial metrics. (The Times' suggestion that it cannot, on its own, determine whether a metric like revenue is trending up or down by simply referring to the

revenue figures OpenAI has produced defies belief and common sense.)  Next, The Times asserts the requested documents are relevant to fair use because they will prove that OpenAI is engaging in a "commercial" enterprise.  *Id*.  But, again, OpenAI has already produced financial statements documenting the revenue it has derived from selling its products/services.  And The Times cannot explain why it needs additional information to assess whether OpenAI's allegedly infringing use is "commercial."  The Times also argues it needs the presentations to describe how Microsoft's investments have benefitted OpenAI.  But, as The Times concedes, OpenAI is willing to produce executed agreements regarding Microsoft's investment and The Times already possesses financial statements that both reflect those investments and OpenAI's expenses.  The Times asserts that the requested presentations will provide "relevant commentary and analysis lacking from the financial statements."  *Id.*  But what commentary and analysis, exactly?  The financial statements already contain pages of notes providing details on the financial figures in the statements and how those figures were calculated.  And, to date, The Times has never identified any question those pages of notes cannot answer.

Given The Times' inability to identify any specific, relevant, non-duplicative information sought by their demand, its expansive scope is utterly inexplicable.  The Times appears to be demanding production of presentations (and related documents) that merely contain the words "revenue," "profits," or "valuation" while refusing to provide any detail to narrow the search to target particular presentations, presumably in the hopes that this broad search might uncover something unexpected.  In other words, this is a fishing expedition, and plainly inappropriate.  Indeed, Judge Illman recently denied a substantially similar motion to compel in *In re ChatGPT*, where plaintiffs broadly requested any documents related to, among other things, OpenAI's business plan, market strategy, growth plan, and revenue operations plan.  3:23-cv-03223-AMO, ECF No. 247 at 2 (N.D. Cal. Jan. 13, 2025).  Judge Illman denied the motion after concluding that plaintiffs had failed to show the request was "relevant and proportional beyond what has been and is already being produced" given that OpenAI had already agreed to search for a variety of documents, including audited financial statements.  The same is true of The Times's demand here.

*Second*, The Times moves to compel OpenAI to produce information about its projected revenue streams and future profits, which it asserts is relevant to damages.  ECF No. 392.  But The Times cannot identify ***any*** case holding that financial projections are discoverable in a copyright action—because they aren't.  Courts addressing the issue have held as much.  For example, in *Phoenix Technologies Ltd. v. Vmware, Inc.*, Judge Ryu denied a motion to compel production of the defendant's sales projections after concluding that there was no reason to believe that "projected sales data would be relevant to [plaintiff's] damages calculation, especially in light of the actual sales information that has already been produced."  No. 15-CV-01414-HSG(DMR), 2016 WL 5725044, at *2 (N.D. Cal. Sept. 30, 2016).  Judge Illman reached a similar conclusion in *In re ChatGPT*, holding that "Defendants are correct that damages in copyright actions are limited and that Plaintiffs have failed to provide an adequate basis for documents related to 'projected income.'  This is especially true considering OpenAI's production of documents related to actual income."  3:23-cv-03223-AMO, ECF No. 247 at 2*.*

Against the weight of these cases, The Times cites a single case to support its argument.  *See Looney Ricks Kiss Architects, Inc. v. Bryan*, No. CIV.A. 07-572, 2010 WL 5175167 (W.D. La.

Dec. 7, 2010). But that case addresses whether a copyright plaintiff can recover future profits from an infringer under 17 U.S.C. § 504(b), not whether financial projections are discoverable in a copyright case. It is therefore entirely inapposite. *See Phoenix Techs.*, 2016 WL 5725044, at *2 (distinguishing a similar case because it "did not address the discoverability of a defendant's projected sales"). Its unrelated holding also conflicts with the rulings of courts in this Circuit and should be disregarded for that reason as well. *See Burns v. Imagine Films Ent., Inc.*, No. 92-CV-2438, 2001 WL 34059379, at *5–6 (W.D.N.Y. Aug. 23, 2001) (holding that "calculation of future profits under § 504(b) must be deemed speculative since it is premised on the assumption that Defendants will opt to distribute a version of [the movie] *Backdraft* that includes segments that a jury has found to infringe Plaintiffs' copyright").

*Third*, The Times moves to compel OpenAI to produce "information about its referral, affiliate, advertising, and paid search revenue." ECF No. 392 at 3. But OpenAI has already agreed to produce non-privileged documents in its possession, custody, and control, if any, sufficient to show its referral, affiliate, advertising, and paid search revenue on an annual basis, to the extent that information is kept in the ordinary course of business. Unsatisfied, The Times now requests any documents "concerning" those revenues. As above, The Times has failed to explain why it would need documents discussing these figures if it can get the figures itself, to the extent they exist. This demand, too, is duplicative.

**Documents Produced to Government Authorities:** The Times's RFP 106 requests any document OpenAI has ever submitted to any government worldwide, regardless of the applicable law or the purpose of the submission. It is overbroad and disproportionate to the needs of the case. The only documents implicated by the Times's motion, to the extent any exist, pertain to foreign proceedings in which U.S. law does not apply.[1] The Times offers no authority for the idea that documents produced to foreign entities under foreign legal standards are relevant or proportional to the needs of this case.[2] They are not.

As an example of the documents it seeks, the Times points to a public statement submitted by OpenAI in response to a House of Lords inquiry. ECF No. 392 at n.5. But this submission shows why the Times's motion should be denied. Unsurprisingly, the House of Lords was interested in issues specific to the U.K., including whether its existing regulations sufficiently govern A.I. OpenAI's opinions on U.K. law have vanishingly little relevance here.

Although RFP 106 seeks only documents unrelated to the laws applicable in this case, the Times argues such documents are relevant because they may contain "factual information" about subjects like "OpenAI's model training practices." *Id.* at 3. The Times purported justification is telling. The Times has served 130 RFPs, including more than 20 addressing OpenAI's model training practices. Any documents relevant to that issue specifically, or the case generally, is already captured by the Times's other requests. RFP 106 is a fishing expedition that will only create burden and reel in duplicative or irrelevant materials. The motion should be denied.

---

[1] The Times's RFP 2 seeks the same documents but is limited to U.S. proceedings. OpenAI has already produced all responsive documents (without conceding their relevance or proportionality). ECF 339 at 1.

[2] The sole case cited by the Times, *Waldman v. Wachovia Corp.*, No. 080-cv-2913, 2009 WL 86763 (S.D.N.Y. Jan. 12, 2009), does not support its position. Unlike here, the documents sought in *Waldman* were provided to domestic regulators applying the same domestic laws at issue in the litigation.

Sincerely,

MORRISON & FOERSTER LLP
*/s/ Rose Lee*
Rose Lee

KEKER, VAN NEST & PETERS LLP
*/s/ Christopher Sun*
Christopher Sun

LATHAM & WATKINS LLP
*/s/ Elana Nightingale Dawson*
Elana Nightingale Dawson