March 31, 2025

Hon. Ona T. Wang
Southern District of New York

                Re:    *The New York Times Company v. Microsoft Corp.*, No.: 23-cv-11195

Dear Magistrate Judge Wang:

        The New York Times Company ("The Times") renews its January 13, 2025 request for an order requiring OpenAI to produce discrete financial documents and investor materials. Dkt. 398. As narrowed through the meet-and-confer process, which has been ongoing since November 2024, The Times seeks a small number of documents about OpenAI's valuation and profits.

        OpenAI is reportedly raising money at a valuation of $300 billion,[1] yet it has refused to produce any discovery that reflects or explains this value. In contrast, ████████████████████████████████████████████████████ (if the reporting is accurate) it is one of the richest companies in the world. This matters for a number of reasons, including: (1) the first fair use factor—the purpose and character of the use, (2) OpenAI's ability to pay for copyrighted content, (3) willfulness and motive, and (4) damages.

        Since the last hearing, the parties have met and conferred by email and videoconference, and The Times has made three offers narrowing its request for these documents. But OpenAI has refused to agree to produce anything. *See* Exs. 2, 3, 4 (copies of emails exchanged); Ex. 4 (OpenAI agreeing on February 10 to "bring this dispute to the Court again"). OpenAI should be ordered to produce: (1) documents reflecting internal evaluations of its anticipated profits and OpenAI's valuation, and (2) documents provided to the following OpenAI investors that discuss OpenAI's anticipated profits and valuation: Microsoft, MGX, Thrive Capital, Softbank, and Tiger Global.[2]

    **1.  The Commercial Nature of OpenAI's Copyright Infringement**

        The first fair use factor, the "purpose and character" of the use, "requires the district court to determine whether the allegedly infringing use is commercial or noncommercial." *A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1015 (9th Cir. 2001). Commercialization is not a binary proposition. Instead, "[t]he greater the private economic rewards reaped by the secondary user (to the exclusion of broader public benefits), the more likely the first factor will favor the copyright holder and the less likely the use will be considered fair." *Am. Geophysical Union v. Texaco Inc.*, 60 F.3d 913, 922 (2d Cir. 1994). Here, OpenAI argues that its conduct qualifies as fair use because it (allegedly) built "a revolutionary technology with the potential to augment human capabilities" that will "add trillions of dollars of growth across the global economy." Dkt. 52 (MTD Br.) at 1. Meanwhile, OpenAI refuses to provide basic discovery into "the private economic rewards" that it anticipates "reap[ing]" for itself and its employees, thus preventing The Times (and the Court) from balancing those "private economic rewards" against the alleged "public benefits" that OpenAI touts. *Texaco*, 60 F.3d at 922.

---

[1] https://www.bloomberg.com/news/articles/2025-03-26/openai-close-to-finalizing-its-40-billion-softbank-led-funding?embedded-checkout=true.

[2] For Microsoft, OpenAI should produce responsive documents related to Microsoft's 2019 investment of $1 billion, 2021 investment of $2 billion, and 2023 investment of $10 billion. *See* https://medium.com/@DiscoverLevine/a-timeline-of-openais-technology-funding-and-history-c91cbc071a85.

At the January hearing, OpenAI claimed The Times already has the information it needs because OpenAI has produced its financial statements. Jan. 22, 2025 Tr. at 78:21-25. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

There will be a vigorous dispute regarding the commercial nature of OpenAI's business; even if the court "were to accept" OpenAI's "contention that its purpose" was in part to benefit all of humanity, evidence of "profit motivation would weigh heavily" against fair use. *Psihoyos v. Nat'l Exam'r*, 1998 WL 336655, at *3 (S.D.N.Y. June 22, 1998). The requested documents, including materials provided to investors, will reveal the extent to which OpenAI's copying was "designed to serve [its] bottom line," as opposed to its alleged mission to benefit humanity. *Barcroft Media, Ltd. v. Coed Media Grp.*, 297 F. Supp. 3d 339, 353 (S.D.N.Y. 2017). Finally, The Times seeks to compare OpenAI's internal financial projections and valuation documents with the corresponding information it has provided to investors, which will avoid any dispute about whether the investor documents paint an overly rosy picture of the company's financial future.

### 2. OpenAI's Ability to Pay for Copyrighted Content

Discovery into OpenAI's finances is also relevant to assessing whether OpenAI can pay to license the copyright-protected content without which it claims it would be "impossible to train today's leading AI models."[4] For fair use, the court must assess whether OpenAI "stands to profit from exploitation of the copyrighted material without paying the customary price." *Harper & Row Publishers v. Nation Enters.*, 471 U.S. 539, 562 (1985). OpenAI has suggested that it cannot pay the customary price, urging that if OpenAI is "left without fair use access" to an "unfettered" supply of content—that is, content which it does not have to pay to license—then foreign companies like DeepSeek will overtake OpenAI and threaten our "national security."[5] Discovery into expected profits and valuation, including its most recent $300 billion valuation, will reveal OpenAI's true ability to pay for the content that makes its products work and give The Times a path to challenge OpenAI's argument that its products cannot exist if it must pay licensing sees.

### 3. Willfulness and Motive

OpenAI's anticipated profits and valuation are also relevant to The Times's allegations of willful infringement. FAC ¶¶ 124-26. "[T]he profitability of the accused product is likely relevant to the determination of willful infringement, as greater profitability translates into a possible financial motive for knowingly infringing." *Distributors, LLC v. London Luxury,* 2010 WL 4008193, at *5 (N.D. Ill. Oct. 13, 2010) (patent infringement case). This is not merely a problem at the company-wide level; it also drives individual incentives too, because reportedly some 400

---

[3] https://www.cnbc.com/2025/02/07/softbank-set-to-invest-40-billion-in-openai-at-260-billion-valuation-sources-say.html.

[4] House of Lords Submission at 4 (Dec. 5, 2023), https://committees.parliament.uk/writtenevidence/126981/pdf/.

[5] OpenAI Ltr. to Faisal D'Souza, Office of Science and Technology Policy (Mar. 13, 2025), at 4, https://cdn.openai.com/global-affairs/ostp-rfi/ec680b75-d539-4653-b297-8bcf6e5f7686/openai-response-ostp-nsf-rfi-notice-request-for-information-on-the-development-of-an-artificial-intelligence-ai-action-plan.pdf.

OpenAI employees own company stock, the value of which is driven by the misuse of The Times's copyrighted content.[6] Evidence that OpenAI and its employees anticipate a significant financial reward for their work is relevant to assessing their motive for infringement.

Moreover, given OpenAI employees' stock ownership, this discovery is relevant to assessing OpenAI witnesses' credibility and bias. *See Savoca v. United States*, 2013 WL 10054393, at *5 (S.D.N.Y. Mar. 18, 2013) (evidence that a witness has a "personal stake in the case" is relevant to "impeaching his or her credibility"). At the last hearing, OpenAI's counsel conceded that OpenAI's financial projections **will change for the worse** if "this case goes to trial" and OpenAI "receive[s] a judgment of infringement." Jan. 22, 2025 Tr. at 83:9-25. Individual witnesses thus have a personal stake in the judgement, because the value of their shares may be significantly less should The Times win this case.

### 4. Valuations and Profits Are Relevant to Assessing Damages

As The Times explained previously (Dkt. 398), a copyright defendant's valuation and anticipated profits are relevant to assessing disgorgement damages. *See Daily Palm, LLC v. Bird Rides, Inc.*, 2021 WL 6496853, at *1 (C.D. Cal. Oct. 18, 2021) (crediting plaintiffs' argument that disgorgement can "be measured by any increase in the valuation of Defendant caused by Defendant's alleged infringement of Plaintiff's copyrighted work," and ordering discovery into the "valuation of defendant"); *Looney Ricks Kiss Architects, Inc. v. Bryan*, 2010 WL 5175167, at *2 (W.D. La. Dec. 7, 2010) ("This Court cannot agree with the Apartment Owners' interpretation that in 17 U.S.C. § 504(b) 'any' is confined to 'past' and 'present' profits only."); *Burns v. Imagine Films Ent., Inc.*, 2001 WL 34059379, at *5 (W.D.N.Y. Aug. 23, 2001) ("Certainly, the term 'any profits' in § 504(b) can be read as encompassing future profits. . . . That the revenues have not yet been received is not, in itself, a bar to arriving at a reasonably accurate calculation."). While OpenAI has argued that anticipated profits are speculative, "[s]uch challenges to the viability of Plaintiff's claim do not affect the proper scope of discovery." *Bird Rides*, 2021 WL 6496853, at *1. The parties should defer that fight to the summary judgment and/or *Daubert* stage.

### 5. The Times's Request is Modest and Proportionate to the Needs of the Case

Finally, as revised, The Times's request poses no undue burden to OpenAI. In fact, OpenAI has acknowledged in meet-and-confers that OpenAI's internal evaluations about its anticipated profits and valuation comprise a "discrete" set of documents, and that OpenAI is objecting exclusively on relevance grounds. Ex. 3 at 3. As for the investor materials, The Times has substantially narrowed its ask by targeting just five investors: Microsoft, MGX, Thrive Capital, Tiger Global, and Softbank. Moreover, The Times is only seeking documents that address OpenAI's anticipated profits and valuation—as opposed to all documents provided to those investors. This compromise proposal is consistent with this Court's guidance, at the last hearing, "to think about whether there are particular investments or transactions or particular presentations or other documents . . . that you might want to ask OpenAI to focus on" and to "try to address OpenAI's concern about the request being overbroad." Jan. 22, 2025 Hearing Tr. at 87:12-22. The burden is especially light here because OpenAI has already located the "data rooms" it used to share documents with most of these investors, meaning that OpenAI already knows exactly where to find the responsive materials. *See* Ex. 5 at 2.

---

[6]https://fortune.com/2024/12/17/hundreds-openai-employees-10-million-payday-softbank-stock-tender-offer-details/ (discussing "multi-million dollar paydays" for OpenAI employees based on a "special stock sale").

                                          Respectfully,

                                          */s/ Ian Crosby*
                                          Ian B. Crosby
                                          Susman Godfrey L.L.P.

cc:    All Counsel of Record (via ECF)