# EXHIBIT 3

| | |
|---|---|
| **From:** | Christopher S. Sun |
| **To:** | Alex Frawley; KVP-OAI; openaicopyrightlitigation.lwteam@lw.com; OpenAICopyright@mofo.com |
| **Cc:** | NYT-AI-SG-Service@simplelists.susmangodfrey.com; dailynews-ai-rfem@rothwellfigg.com; ai@loevy.com; #NewYorkTimes-Microsoft-FDBR; NewYorkTimes_Microsoft_OHS@orrick.com |
| **Subject:** | RE: NYT v. OpenAI - Disputed RFPs |
| **Date:** | Friday, February 14, 2025 5:48:04 PM |

Hi Alex,

I do think that we have a disagreement about Plaintiffs' request for projections and valuations. But I don't know that it's as straightforward as: you want them, we won't give them to you. I think the deeper problem is that we haven't heard an adequate explanation regarding what you want them for and why the information we have offered to produce is inadequate. For example, you previously tried to justify the request for projections as being relevant to the commercial nature of OpenAI's products and services. But I already offered to discuss agreeing to conduct a reasonable search for documents about the commercialization of OpenAI's products and services—to the extent OpenAI has not already agreed to produce such documents—in an attempt to resolve this dispute and inquired why projections would be uniquely relevant to that issue specifically. I still haven't heard back from you on that.

Plaintiffs have generally just been asserting that projections/valuations are relevant to damages while refusing to say how or why the financial information OpenAI has already produced to date is inadequate. If you can explain how you think these documents might be useful, it will help us potentially brainstorm alternative ways to get at the same information or a narrower scope of production. And if you're unwilling to provide that information, that would also be helpful to know. That same issue is affecting your demand for the secondary category of documents. At the outset, can you explain what was wrong about my characterization? If we are misunderstanding something, I need to know that to help move these negotiations forward. I'd appreciate it if you would tell me what I'm getting wrong.

I also appreciate your suggestion of a limited production of materials provided to investors. But the offer still doesn't address my underlying concern. You're still demanding production of a broad category of documents without regard to what information they might contain. As I noted in my prior email, "I think it would be more efficient if you told us what, precisely, you are trying to learn from these documents that wouldn't be found in the documents OpenAI has already agreed to produce. If there are questions you are trying to answer, we should discuss. I think that would be a more fruitful path to a potential compromise." Is there any such question?

To lay my cards on the table, absent an explanation for what substantive information you're requesting, it seems like you don't have any particular reason for wanting these materials other than speculation that they might contain helpful information without knowing what information, specifically, they might contain and whether that information is relevant and non-duplicative. That feels awfully close to a fishing expedition. Indeed, it feels like you're asking for "pitch documents provided to MGX, Thrive Capital, and Tiger Global" because you need those documents to figure out what it is you are looking for so that you can then demand further documents. If that is what you're doing, it's not proper.

I again reiterate my offer to discuss performing a reasonable search for documents discussing specific and relevant substantive issues that you don't think are covered by OpenAI's existing offers.

Chris

**From:** Alex Frawley <AFrawley@susmangodfrey.com>
**Sent:** Friday, February 7, 2025 3:47 PM
**To:** Christopher S. Sun <CSun@keker.com>; KVP-OAI <KVPOAI@keker.com>; openaicopyrightlitigation.lwteam@lw.com; OpenAICopyright@mofo.com
**Cc:** NYT-AI-SG-Service@simplelists.susmangodfrey.com; dailynews-ai-rfem@rothwellfigg.com; ai@loevy.com; #NewYorkTimes-Microsoft-FDBR <NewYorkTimes-Microsoft-FDBR@faegredrinker.com>; NewYorkTimes_Microsoft_OHS@orrick.com
**Subject:** RE: NYT v. OpenAI - Disputed RFPs

**[EXTERNAL]**

Hi Chris,

Thanks for the call on Tuesday to discuss the below issues.

We agreed on the call that the parties have a dispute about the relevance of financial projections and valuation documents. I discussed this exact issue on multiple meet-and-confers with your colleagues between November and January, we argued this issue in briefing on our motion to compel, we argued this issue at the hearing, we argue it below in our emails, and we briefly argued it again during our call on Tuesday. The parties were already at an impasse, and that impasse remains.

We appreciate you acknowledging below that our request is for a "discrete" set of documents. Providing this information will not entail a burdensome investigation. We think the best path forward is for OpenAI to produce these documents. *See Daily Palm, LLC v. Bird Rides, Inc.*, 2021 WL 6496853, at *1 (C.D. Cal. Oct. 18, 2021) ("In this copyright action, Plaintiff claims entitlement to the disgorgement of Defendant's 'profits,' to be measured by any increase in the valuation of Defendant caused by Defendant's alleged infringement of Plaintiff's copyrighted work. . . . Defendant argues that disgorgable 'profits' do not comprehend increased valuation and that, in any event, Plaintiff will be unable to prove the required causal link between the alleged infringement and any increased valuation. ***Such challenges to the viability of Plaintiff's claim do not affect the proper scope of discovery***. Accordingly, the Motion is granted as to [requests for production and an interrogatory seeking information about the defendant's valuation]" (emphasis added)). Indeed, the discussion below of various "hypotheticals" underscores why it is premature to debate whether and how projections and valuation documents should be used at summary judgment, *Daubert*, and/or trial.

Finally, you also stated on the call that OpenAI is, in fact, withholding valuation documents and projections that surface through custodial document review, to the extent those documents are not separately responsive to other RFPs for which OpenAI has agreed to produce documents. Based on our review of OpenAI's productions, we have not received any documents about OpenAI's projections nor valuation documents, which is why we continue to follow up.

As for what you describe as the second category of documents, I don't agree with your characterization of our requests. But here is a revised proposal to move things forward. Based on our review of OpenAI's productions, OpenAI has not produced materials that OpenAI

provides to investors or potential investors. We therefore lack documents discussing what OpenAI tells investors about OpenAI's plans for growing its revenues and profits, including with respect to continuing to develop the products at issue in this case. As a first step, we ask OpenAI to produce pitch documents provided to MGX, Thrive Capital, and Tiger Global. It makes sense to begin here because, as noted below, OpenAI has already agreed to search data rooms used for those investors for another document request, so this focus minimizes the burden to OpenAI. Once we receive these materials, we will evaluate them and decide whether any additional documents are needed, and perhaps none will be.

We are available to meet and confer about this proposal.

Best,
Alex

---

**From:** Christopher S. Sun <CSun@keker.com>
**Sent:** Tuesday, February 4, 2025 3:45 PM
**To:** Alex Frawley <AFrawley@susmangodfrey.com>; KVP-OAI <KVPOAI@keker.com>; openaicopyrightlitigation.lwteam@lw.com; OpenAICopyright@mofo.com
**Cc:** NYT-AI-SG-Service@simplelists.susmangodfrey.com; dailynews-ai-rfem@rothwellfigg.com; ai@loevy.com; #NewYorkTimes-Microsoft-FDBR <NewYorkTimes-Microsoft-FDBR@faegredrinker.com>; NewYorkTimes_Microsoft_OHS@orrick.com
**Subject:** RE: NYT v. OpenAI - Disputed RFPs

EXTERNAL Email
Hi Alex,

I read your email as addressing two principal requests. First, a demand for discrete documents regarding projections / valuations, and second, a broader request for documents that discuss, to various degrees, OpenAI's financial results. The precise scope and contours of what Plaintiffs are demanding is unclear from your email, but I'm responding to the best I can with the hope and understanding that you will provide greater clarity down the road.

Projections / Valuations

I'll start here with the obvious omission from your email—we have now identified multiple cases establishing that financial projections aren't relevant to this copyright action, including an order that issued in the parallel proceeding in N.D. Cal. See In re ChatGPT, 23-cv-03223-AMO (N.D. Cal. Jan. 13, 2025); Phoenix Techs. Ltd. v. Vmware, Inc., No. 15-CV-01414-HSG(DMR), 2016 WL 5725044, at *2 (N.D. Cal. Sept. 30, 2016). None of the cases you cite address the question of whether projections are discoverable where, as here, the responding party has agreed to produce historical financial data. In those circumstances, the projections are, at best, duplicative and disproportionate to the needs of the case. Valuations, if possible, are even further afield. In my general experience they don't have anything to do with a company's immediate operations, but are instead based on extrapolations of the value of third party investments. Can you explain how that would be relevant to Plaintiffs' damages claim?

Next, you say that projections/valuations are relevant to fair use. But we covered this at the hearing. As you concede, the relevant inquiry for factor one is "whether the allegedly infringing use is commercial or noncommercial." A&M Recs., Inc. v. Napster, Inc., 239 F.3d 1004, 1015 (9th Cir. 2001). I note two aspects of that quote for your consideration. The first is that the quote is written in the present tense. It asks if the use is currently commercial, not whether the use will be commercial in the future. That being the case, why would projections be relevant to that inquiry, particularly given OpenAI's production of audited historical financials? The second thing I want to point out is that the quote identifies the relevant question as involving a binary inquiry: whether the use is "commercial or noncommercial." You cite no law that suggests that the degree of commercial use is relevant to factor one. Do you have one? Regardless, what fact would projections or valuations provide that would be relevant to the factor one inquiry that wouldn't already be addressed by the audited financials we have produced?

After that, you discuss willfulness. But your attempt to manufacture a "gotcha" moment is as tortured as it is unproductive. I honestly don't understand what argument you are trying to make here. Perhaps you fundamentally misunderstood my argument. So I'll clarify. In the hypothetical world where Plaintiffs win a judgment of infringement, one of two things must be true with respect to the financial projections you request: they either encompass the infringing conduct or they do not. In the event they do not encompass the conduct (hypothetically) found to be infringing, they wouldn't be relevant to the damages calculation. But even if they did (hypothetically) encompass conduct found to be infringing, they would still be speculative because they would have been prepared before the (hypothetical) judgment issued and therefore would not account for actions OpenAI might take in response to the (hypothetical) judgment. That was the point you missed when analyzing Burns and an argument you have never addressed. I wasn't making a representation about what would happen to OpenAI's financial projections if a judgment issued against it. Indeed, my whole point is that it is impossible to know, which is why damages in copyright actions aren't based on projections.

I sincerely do not understand your argument about bias. Is your point that, because OpenAI has prepared financial projections, it is biased? About what? How would financial projections impeach a witness's credibility? Which witness? Please clarify.

Broader Request for Documents re: Financials

I appreciate your attempts to brainstorm a proposal, but it does not address the concerns we've raised about these requests. These RFPs (or at least how Plaintiffs have characterized them) encompass documents that merely reference financial information, regardless of whether they are otherwise relevant to the case. That isn't an efficient way to proceed and isn't how the parties in this (or any other action) typically handle RFPs. Indeed, that was precisely why Judge Illman denied even narrower requests in the N.D. Cal. action. See In re ChatGPT, 23-cv-03223-AMO (N.D. Cal. Jan. 13, 2025).

I think it would be more efficient if you told us what, precisely, you are trying to learn from these documents that wouldn't be found in the documents OpenAI has already agreed to produce. If there are questions you are trying to answer, we should discuss. I think that would be a more fruitful path

to a potential compromise.

With respect to the custodial searches, OpenAI confirms that it will produce non-privileged documents that hit on the agreed terms and fall within the scope of what it has agreed to produce.

Chris

---

**From:** Alex Frawley <AFrawley@susmangodfrey.com>
**Sent:** Tuesday, January 28, 2025 5:21 PM
**To:** KVP-OAI <KVPOAI@keker.com>; openaicopyrightlitigation.lwteam@lw.com; OpenAICopyright@mofo.com
**Cc:** NYT-AI-SG-Service@simplelists.susmangodfrey.com; dailynews-ai-rfem@rothwellfigg.com; ai@loevy.com; #NewYorkTimes-Microsoft-FDBR <NewYorkTimes-Microsoft-FDBR@faegredrinker.com>; NewYorkTimes_Microsoft_OHS@orrick.com
**Subject:** NYT v. OpenAI - Disputed RFPs

---

**[EXTERNAL]**

---

Counsel for OpenAI:

We write concerning the motion to compel we filed at Dkt. 398. This motion concerned three categories of disputes. The parties have already resolved category 1 (documents concerning the market for training data and RAG data). The court denied our motion with respect to category 3 (documents produced to foreign government authorities). For the balance of the motion (i.e., category 2), the Court directed the parties to "meet and confer regarding the production of documents sought." Dkt. 441 at 3. Consistent with that order, we write to discuss our request for documents concerning OpenAI's revenues and profits.

As you know, the parties have a dispute about whether financial projections and valuation documents are relevant. We continue to believe this information is relevant for multiple reasons, two of which (damages and fair use) we have already addressed in our briefing. During oral argument on this motion, it became clear that this information is also relevant to motive and bias.

Regarding damages, valuation documents and financial projections are relevant to disgorgement damages. *See Daily Palm, LLC v. Bird Rides, Inc.*, 2021 WL 6496853, at *1 (C.D. Cal. Oct. 18, 2021) ("In this copyright action, Plaintiff claims entitlement to the disgorgement of Defendant's 'profits,' to be measured by any increase in the valuation of Defendant caused by Defendant's alleged infringement of Plaintiff's copyrighted work. . . . Defendant argues that disgorgable 'profits' do not comprehend increased valuation and that, in any event, Plaintiff will be unable to prove the required causal link between the alleged infringement and any increased valuation. Such challenges to the viability of Plaintiff's claim do not affect the proper scope of discovery. Accordingly, the

Motion is granted as to [requests for production and an interrogatory seeking information about the defendant's valuation]"); *Burns v. Imagine Films Ent., Inc.*, 2001 WL 34059379, at *5 (W.D.N.Y. Aug. 23, 2001) ("Certainly, the term 'any profits' in § 504(b) can be read as encompassing future profits. . . . That the revenues have not yet been received is not, in itself, a bar to arriving at a reasonably accurate calculation."); *Looney Ricks Kiss Architects, Inc. v. Bryan*, 2010 WL 5175167, at *2 (W.D. La. Dec. 7, 2010) ("Congress modified 'profits' with the adjective 'any' not 'past,' 'present' or even 'future.' This Court cannot agree with the Apartment Owners' interpretation that in 17 U.S.C. § 504(b) 'any' is confined to 'past' and 'present' profits only.'").

As for fair use, the requested documents are relevant to at least factor one because they provide insight into "whether the allegedly infringing use is commercial or noncommercial." *A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1015 (9th Cir. 2001). OpenAI's principal product is ChatGPT, and The Times alleges that ChatGPT was illegally developed with Times content. The Times also alleges that ChatGPT illegally outputs Times content, including to serve as a substitute for Times works. Documents concerning OpenAI's valuation and financial projections are therefore relevant to understanding how OpenAI plans to continue commercializing ChatGPT, including to compete with Times works. Relatedly, unless OpenAI is willing to stipulate that it has entirely abandoned its initial non-profit mission, The Times is entitled to discovery to understand not only how OpenAI makes money today, but its plans to do so in the future, including by way of the models and products improperly built with Times content.

Also, the requested documents are relevant to motive, including to prove OpenAI's willful infringement. At the January 22 hearing, OpenAI's counsel suggested that if OpenAI is found to have committed copyright infringement, OpenAI's financial projections and valuation will materially change for the worse. *See* Jan. 22, 2025 Tr. at 83:1-25 (Counsel for OpenAI arguing that any financial projections are currently "speculative" because they do not account for the possibility of "OpenAI [] receiv[ing] a judgment of infringement"). That argument supports our claim for willful infringement, including ongoing willful infringement. OpenAI is incentivized to disregard copyright law and continue infringing Times works to sustain its favorable financial trajectory. *See JAB Distributors, LLC v. London Luxury, LLC*, 2010 WL 4008193, at *5 (N.D. Ill. Oct. 13, 2010) (holding, in a patent infringement case, "that the profitability of the accused product is likely relevant to the determination of willful infringement, as greater profitability translates into a possible financial motive for knowingly infringing"). Likewise, the requested documents are relevant to assessing OpenAI witnesses' credibility and bias. *See Savoca v. United States*, 2013 WL 10054393, at *5 (S.D.N.Y. Mar. 18, 2013) (evidence that a witness has a "personal stake in the case" is relevant to "impeaching his or her credibility").

We understand from the January 22 hearing and January 24 order that the Court believes

the parties should reach agreement on a reasonable scope for these document requests. Therefore, OpenAI should no longer refuse to entertain these requests on the ground that OpenAI believes the information is irrelevant. OpenAI should now be willing to discuss a reasonable scope for these document productions. To help formulate that scope, it would be helpful to know if OpenAI intends to argue that licensing data to train its models, or for the purposes of RAG, would be so costly that it would be difficult or impossible to build generative AI models and products. The revenue that OpenAI anticipates it can generate is clearly relevant to rebutting that argument, but if OpenAI does not intend to raise that argument, we can consider that information.

In the meantime, as a way to resolve this issue, we have a proposal.

For custodial documents, the parties have now reached agreement on the search terms to be run on OpenAI's custodians' ESI. Those terms should yield documents responsive to these Requests. Given that OpenAI is already running these terms, it should produce any responsive documents that it finds.

For non-custodial documents, OpenAI should begin by searching the same repositories that OpenAI has already agreed to search in connection with resolving the RFP 76 dispute in the *Daily News* case. That RFP sought:

> Documents and communications made in connection with Defendants' fundraising efforts involving potential investors, including but not limited to MGX, Thrive Capital, and Tiger Global concerning any discussion of (a) this litigation or the litigation styled *The New York Times Company v. Microsoft Corporation, et al.*, Case No.: 23-cv-11195-SHS (S.D.N.Y) or (b) whether OpenAI's use of copyrighted content constitutes copyright infringement or is subject to the defense of fair use.

OpenAI agreed to search for documents in response to this request, including by searching repositories that "will encompass, but will not be limited to, data rooms that OpenAI shares with investors." Nov. 18, 2024 email from C. Sun. OpenAI should search the same repositories to locate documents responsive to the disputed RFPs at issue here, or any other repositories where investor presentations are stored. This proposal narrows the scope of OpenAI's search to focus on repositories likely to contain responsive documents.

Finally, for both custodial and non-custodial documents, we propose the same approach to resolving the dispute over RFP 70, which seeks documents concerning referral, affiliate, advertising, and paid search revenue.

We would like to discuss this proposal with you, so please let us know when you are

available to meet and confer this week.

Best,
Alex

**Alexander P. Frawley | Susman Godfrey LLP**

One Manhattan West, 50th Floor | New York, NY 10001

212.729.2044 (office) | 917.599.6613 (cell)

afrawley@susmangodfrey.com | www.susmangodfrey.com