**VIA ECF**

June 6, 2025

Hon. Ona T. Wang
Southern District of New York

    *In re OpenAI, Inc., Copyright Infringement Litigation*, 25-md-3143 (SHS) (OTW)
    This Document Relates To: All Actions

Dear Magistrate Judge Wang:

    We write on behalf of News Plaintiffs and Class Plaintiffs to respectfully ask the Court to adopt Plaintiffs' proposed omnibus protective order, which is attached to this letter as Exhibit A. A redline comparing the parties' proposals is attached as Exhibit B. The parties have met and conferred and agreed on most provisions, but four disputes remain, which are summarized below.

    **1.**    **Use of Defendants' Claimed AEO Documents at Defendants' Depositions**

    Plaintiffs object to Defendants' proposal to limit the use of Defendants' "Attorneys' Eyes Only" ("AEO") documents to deponents who are "current officers, directors, or employees of the producing party," or deponents "who otherwise possessed or knew the information" in the document. Ex. B ¶ 24(f)-(g). Plaintiffs should be allowed to use any AEO document produced by either Defendant at any deposition of either Defendant's current or former employees.[1]

    Defendants' proposed limitations are unworkable given their rampant over-designation of documents as AEO. OpenAI and Microsoft have each designated 65% of their documents as AEO. That percentage is suspiciously close to the 70% threshold that "support[s] an inference of bad faith" and justifies full-fledged re-review of all AEO documents. *United States v. Planned Parenthood Fed'n of Am.*, 2022 WL 19010531, at *3 (N.D. Tex. Dec. 15, 2022). In light of Defendants' over designation, their proposed limitations will invariably lead to disputes, delay, and prejudice to Plaintiffs. Practically speaking, the parties will spend hours debating whether a witness "otherwise possessed or knew the information" in a document before Plaintiffs can even show that document to a witness. When such disputes are not resolved, Plaintiffs may need to move the Court for additional time with a witness. The alternative path is equally unappealing. Plaintiffs would need to reveal their work product in advance by sending lists of documents to Defendants before depositions for pre-clearance.[2]

    This issue is critical and should be resolved now. Given the extensive collaboration between Microsoft and OpenAI to develop and commercialize the models and products at issue in these cases, it should come as no surprise that documents produced by one Defendant often discuss the other Defendant and/or their collaboration. Take for example Exhibit 1, which is a Microsoft email thread among its executives, including CEO Satya Nadella, to discuss ██████████ ████████████████████████████████████████████████████████████████████████████

---

[1] For former employees, to assuage any alleged confidentiality concerns, Plaintiffs' proposal limits the use of AEO material to documents that predate the former employee's departure from the company.

[2] For the same reasons, the Court should strike Defendants' vague language limiting the use of "Confidential" documents at depositions to deponents "to whom disclosure is reasonably necessary." Ex. B ¶ 23(f).

▇▇▇▇▇▇ Plaintiffs should be allowed to use this document with OpenAI employees, including Sam Altman, to ask about how OpenAI responded to these issues (if at all). As another example, Exhibit 2 is an OpenAI slack thread in which Sam Altman ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Plaintiffs reasonably seek to use this document to ask Microsoft employees about its contributions to OpenAI, without first needing to quibble over whether a witness "possessed or knew" every piece of information in the document. As yet another example, Exhibit 3 is a Microsoft email thread discussing ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ A Microsoft employee recounts ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ at -271. Plaintiffs should be allowed to use this document at Mr. Ryder's deposition and/or with another OpenAI employee who worked with Mr. Ryder ▇▇▇▇▇▇▇▇▇▇▇▇.

    Plaintiffs' proposal is more than reasonable, particularly because this problem is entirely of Defendants' making. When News Plaintiffs raised a similar dispute at the January 2025 conference concerning Microsoft's over-use of the AEO designation, this Court agreed with News Plaintiffs that the sample documents submitted "didn't initially strike me as documents that ought to have an AEO designation." Jan. 22, 2025 Hearing Tr. at 7:21-25. These examples are not outliers. OpenAI has even designated *public news articles* AEO (*e.g.*, Ex. 4), underscoring the substantial problems with Defendants' designation selection process. Rather than demand the full-fledged re-review permitted by the case law, Plaintiffs merely seek permission to use AEO documents produced by Defendants at Defendants' depositions.

    2.    **Sharing Defendants' AEO Documents with News Plaintiffs' Decisionmakers**

    The second dispute also arises from Defendants' over-use of the AEO designation. News Plaintiffs seek permission to share OpenAI's AEO documents with a small group of their clients' key decisionmakers. Ex. B ¶ 24(b). Microsoft agreed to this exact accommodation for its own documents to avoid having to re-review and re-designate them. *Times* Dkt. 303. Given that OpenAI has designated the same portion of its documents as AEO (65%), Plaintiffs seek the same accommodation from OpenAI. Otherwise, Plaintiffs cannot share the substantial majority of the documents with their clients, including for example documents which highlight how Mr. Brockman personally led OpenAI's efforts to obtain Times content. Ex. 5 at -88 (Brockman and a colleague discussing his ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

    3.    **Cross-Use of Plaintiffs' Documents by Defendants**

    Plaintiffs object to Defendants' proposal to allow cross-use of each plaintiff's documents for any purpose in every action. *See* Ex. B ¶ 6(b).[3] With respect to cross-production, the parties are not similarly situated. OpenAI moved to centralize these cases in one MDL so they could "avoid duplicative discovery—including especially multiple [] depositions of OpenAI's witnesses." MDL Pet. at 1. The JPML centralized these cases based on efficiencies to be gained from coordinating discovery into *Defendants*' conduct—not plaintiffs' conduct. *See, e.g.*, Transfer Order at 2 (reasoning that "[e]ach action will involve overlapping, complex, and voluminous discovery regarding how *defendants* trained and designed their LLMs" (emphasis added)). Cross-

---

[3] Plaintiffs will of course meet and confer if a specific need arises for limited cross-use of a plaintiff's document.

production of Defendants' documents is crucial to enable the coordinated discovery and depositions that Defendants sought and have obtained. Plaintiffs cannot collectively select deponents and prepare for depositions unless each plaintiff has the same set of documents from Defendants.

By contrast, there is no reason why Defendants need NYT documents to litigate their case against the Daily News, and vice versa. Unlike Microsoft and OpenAI, who are alleged co-infringers in the same lawsuits, there are no allegations that any plaintiff collaborated with another plaintiff on relevant issues, so there is no reason to use one plaintiff's documents in depositions of another plaintiff's witness. Defendants' proposal would also prejudice and harm Plaintiffs, who are direct competitors. There is no reason to effectively force The Times to share confidential information about its licensing strategy with, for example, the Center for Investigative Reporting or the New York Daily News.

Finally, Defendants themselves have declined to allow documents to be presumptively used in cases where they are not a party. Microsoft has insisted, and Plaintiffs have agreed, to exclude Microsoft's documents from actions where Microsoft is not a party. *See* Ex. B ¶ 6(a) (limiting Defendants' cross-production obligations to "Actions where they are a party"). For example, Microsoft's documents will not be cross-produced in the *Ziff Davis* case, since Microsoft is not a party in that case. Yet Defendants are demanding that Ziff Davis's documents be cross-produced in the *Times* case, where Ziff Davis is not a party. These positions cannot be reconciled. If anything, it makes far more sense to require cross-production of Microsoft's documents in cases where Microsoft is not a party, given Microsoft's substantial collaboration with OpenAI on the relevant models and products.

### 4. Restrictions on Source Code Printing

Plaintiffs object to Defendants' proposed limitation on the number of source code printouts that may be requested (500 pages) per plaintiff in each action, which is too low given the volume of source code that has been produced thus far. Ex. B ¶ 21(l). In fact, the prior protective order in the *Authors Guild* case did not impose any presumptive limit. *See* Dkt. 148 ¶ 10(k) (permitting the receiving party "to make a reasonable number of printouts"). Moreover, this additional limitation is unnecessary given that the parties have already agreed to a consecutive page limit. Ex. B ¶ 21(l). Consistent with that prior agreement, the parties should address any burden concerns on a case-by-case basis and meet and confer as appropriate to resolve disputes.

Respectfully,

*/s/ Davida Brook*
Davida Brook
Susman Godfrey LLP
News Plaintiffs' Liaison Counsel

*/s/ Justin Nelson*
Justin Nelson
Susman Godfrey LLP
Lead Class Counsel

cc: All Counsel of Record (via ECF)