KEKER VAN NEST & PETERS         LATHAM & WATKINS LLP         MORRISON FOERSTER

June 10, 2025

Hon. Ona T. Wang
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

cc: All Counsel of Record (via ECF)

Re: *Discovery dispute concerning deficiencies in The Times's privilege logs*
    *In re OpenAI Copyright Infringement Litigation*, No. 1:25-md-03143-SHS-OTW
    This Document Relates to: *NYT v. Microsoft et al.*, No. 1:23-cv-11195-SHS-OTW

Dear Judge Wang:

OpenAI requests a pre-motion conference regarding The Times's refusal to address deficiencies in its privilege logs. The Times has broadly asserted privilege over (1) communications regarding a third-party "trade association," citing attorney-client, common-interest, and an unspecified "First Amendment" privilege; and (2) Generative AI Guidance that may have been broadly disseminated to employees. But The Times's log entries fail to provide sufficient information to evaluate those privilege claims. OpenAI requests that the Court order The Times to supplement its logs by July 2.

1. **The Times's privilege logs lack sufficient information to evaluate its privilege claims.**

The Times served three privilege logs in April. All contained deficiencies.

*First*, 1,465 entries on the log are labeled with variations of "[document] reflecting confidential disclosure of trade association's legal strategy." But the logs contain no additional information about this "trade association"—no description of its relationship with The Times, its mission and members, or how its interests align with The Times's. The Times has withheld 1,278 of these documents based on an unspecified "First Amendment" privilege; 1,195 documents based on the common-interest privilege; and 1,372 documents based on the attorney-client privilege.

*Second*, The Times has asserted attorney-client privilege over documents related to "Generative AI Guidance." In meet-and-confer correspondence, OpenAI has noted that The Times has produced several documents referencing a "GAI Training Module" ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ but has not produced the underlying training documents. Ex. A (Baretto May 30, 2025 email to Muttalib); *see also* Exs. B–C (▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇) (▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇). OpenAI sought clarification from The Times regarding whether its "Generative AI Guidance" privilege log entries relate to the training documents the parties had previously discussed, and which The Times had refused to produce, but The Times has failed to respond.

On May 30, OpenAI asked The Times to provide additional information so that OpenAI could evaluate the privilege assertions. Ex. D (McManus May 30, 2025 letter to Muttalib). The Times refused to engage. Ex. E (Muttalib Jun. 4, 2025 email to McManus). OpenAI informed The Times that if it refused to provide substantive responses, OpenAI would have no choice but to seek relief. *Id.* (McManus Jun. 5 email to Muttalib).

   2. **The Times must promptly supplement its logs.**

A privilege log must "describe the nature of the documents . . . in a manner that . . . will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii); *see also* L.R. 26.2. The Times's boilerplate privilege log entries do not allow OpenAI to "make an intelligent determination about the validity of the assertion of the privilege." *Gunning v. N.Y. State Justice Ctr.*, 2022 WL 783226, at *6 (N.D.N.Y. Mar. 15, 2022). The Times must be ordered to supplement its logs and respond to OpenAI's inquiries. Although this list is not exhaustive, OpenAI sought and did not receive clarification from The Times about the following issues:

   A. **Trade Association Documents**

*First Amendment Privilege.* The Times asserts a First Amendment privilege over 1,287 trade association-related documents. These entries do not specify (and The Times has refused to explain) what this purported privilege is or how the privilege applies here. *E.g.*, Ex. F (NYT privilege log excerpts) log IDs 602, 606, 1208, 1529, 1602, 1995, 2012, 2019, 2036, 7586.[1]

To the extent The Times is asserting a purported "reporter's privilege," its descriptions of these documents do not reveal whether the information was gathered during "a journalistic investigation" with "the intent to disseminate [the information] to the public." *Chevron Corp. v. Berlinger*, 629 F.3d 297, 306–07 (2d Cir. 2011). OpenAI doubts that communications about purported "legal strategy" could be made with "intent to disseminate" information to the public, but it is unable to evaluate that claim—if it is The Times's claim—without additional information.

There is also a qualified First Amendment privilege for political associations, which applies "particularly where a group espouses dissident beliefs." *NAACP v. Alabama*, 357 U.S. 449, 462 (1958). Here too, if The Times is attempting to assert this privilege, OpenAI wouldn't know it from the logs—and to invoke this privilege, The Times would have to show a "direct and substantial" or "significant" interference with associational rights. *Doordash, Inc. v. City of N.Y.*, 754 F. Supp. 3d 556, 575–77 (S.D.N.Y. 2024) (no First Amendment privilege where non-parties' invocation "rest[ed] on their wish to keep their documents and communications private").

*Common-Interest Privilege.* The Times also asserts the common-interest privilege over 1,195 trade association communications. For this privilege to apply, the communications must be privileged in the first instance and made to a party that is engaged in a "common legal enterprise" pursuant to "some agreement, whether informal or formal, written or unwritten, to pursue a joint legal defense." *SR Int'l Bus. Ins. Co. Ltd. v. World Trade Ctr. Props. LLC*, 2002

---

[1] Citations to privilege log entries in this letter motion are exemplary, not exhaustive.

2983179

WL 1334821, at *3-4 (S.D.N.Y. Jun. 19, 2002); *Denny v. Jenkins & Gilchrist*, 362 F. Supp. 2d 407, 415-16 (S.D.N.Y. 2004).  The log's entries provide no basis for evaluating The Times's privilege assertion against these standards.  The Times has identified neither the "common enterprise" nor its "legal character," particularly among what appear to be non-parties to this lawsuit.  *Id.  E.g.*, Ex. F log IDs 606, 1208, 1602, 1995, 2012, 2019, 2036.

*Attorney-Client Privilege.*  Finally, The Times has asserted attorney-client privilege as the sole basis for withholding almost 150 of the trade association communications.  Many of these communications, however, involve entities or individuals not employed by The Times, including the European Publishers Council and News Media Alliance, and other media organizations not party to these lawsuits, including The Washington Post and Hearst.  *E.g.*, Ex. F log IDs 7556, 7798.  "[C]ommunications between an attorney and a client that are made in the presence of or subsequently disclosed to third parties are not protected by the attorney-client privilege." *Stanan Inc. v. Mt. Hawley Ins. Co.*, 2025 WL 343212, at *1 (S.D.N.Y. Jan. 30, 2025).  Indeed, many of these emails do not involve individuals from The Times's list of privileged actors.  While OpenAI acknowledges that a communication may be privileged even without a lawyer recipient, The Times's log does not provide sufficient information to evaluate these entries.

### B. Generative AI Training

The Times has logged dozens of purportedly attorney-client privileged documents relating to "Generative AI Guidance."  *E.g.*, Ex. F log IDs 235, 238, 244, 4020, 4741.  But The Times has refused to explain what it means by this phrase.  This is critical because the parties have an existing dispute regarding The Times's improper privilege assertions over its "GAI Training Module."  Ex. A.  OpenAI repeatedly asked The Times to identify the entries corresponding to the Training, but it has not.  OpenAI then asked whether the Training and the Guidance are the same, but The Times has not responded.  Assuming these entries do relate to the documents the parties have previously discussed, these documents are not likely to be privileged because the module was compiled by non-lawyers and disseminated to Times employees.  *Id.*  At a minimum, The Times should confirm whether these entries relate to the training documents the parties have already conferred over and provide further information about its basis for claiming privilege over these documents.

### 3. The Times's refusal to engage regarding its logs frustrated meet-and-confer.

Rather than providing the information OpenAI requested, The Times has stonewalled, contending it need not even *engage* regarding its logs because OpenAI did not serve 75% of its privilege logs by April 30th.  Ex. E (Muttalib Jun. 4, 2025 email to McManus).  But The Times's issues with its own privilege log are completely unrelated to OpenAI's privilege logs.  As OpenAI has repeatedly explained since the MDL was instituted, the parties made that agreement with respect to logs before the MDL when the fact discovery cutoff was April 30th, when OpenAI was serving separate logs on separate plaintiffs.  Post-MDL, the parties agreed that OpenAI will serve an omnibus log.  OpenAI has been assiduously working on that log and will serve it on the parties' negotiated schedule.  MDL ECF 106 ¶ 16.  In contrast, The Times's logs are unaffected by MDL coordination.  *Id.* at 1 (McManus Jun. 5, 2025 email to Muttalib).  The Times's attempt to exploit the parties' difference in position to avoid answering for its own deficient logs smacks of gamesmanship, particularly given The Times's repeated representations

3

that discovery is nearly closed and Judge Stein's guidance to move this case along.  *See* May 22, 2025 Hr'g Tr. at 36:22–23; 58:9–12.

OpenAI accordingly requests that the Court compel The Times to supplement its privilege logs and respond to OpenAI's inquiries by July 2 to allow OpenAI to evaluate the privilege assertions, so the parties may complete their meet-and-confer.

Respectfully,

| KEKER, VAN NEST & PETERS LLP | LATHAM & WATKINS LLP | MORRISON & FOERSTER LLP |
|---|---|---|
| */s/ Sarah Salomon*[2]<br>Sarah Salomon | */s/ Elana Nightingale Dawson*<br>Elana Nightingale Dawson | */s/ Rose S. Lee*<br>Rose S. Lee |

---

[2] All parties whose electronic signatures are included herein have consented to the filing of this document.