SUSMAN GODFREY L.L.P.

June 13, 2025

Hon. Ona T. Wang
Southern District of New York
500 Pearl Street
New York, New York 10007

          Re:    *The New York Times Company v. Microsoft Corporation, et al.*,
                 No.: 23-cv-11195-SHS: Opposition to Microsoft's Motion to Compel

Dear Magistrate Judge Wang:

Plaintiff The New York Times Company ("The Times") opposes Microsoft's motion to compel the following categories of documents: (1) The Times's "guidelines and policies addressing corrections," (2) "admitted mistakes made in [The Times's] publications," (3) "limits on social media activity by journalists to avoid integrity problems," and (4) "work with third parties whose journalistic standards [The Times] does not control." Dkt. 625 at 1. Microsoft's contention that "The Times is refusing to produce evidence regarding its reputation and effects thereon" is inaccurate. *Id.* Most notably, The Times has already produced its own "Brand Tracker" reports reflecting The Times's own studies of *exactly* the issue on which Microsoft claims to need information—that is, how The Times's brand is viewed by readers. An example of one of these reports is attached as **Exhibit A**. The Times has, more generally, agreed to produce documents concerning its allegation that its trademarks are famous, as well as documents relating to harm or injury to its trademarks for which it is seeking recovery in this dispute. And just this week, after Defendants filed their motion, The Times agreed to run search terms for Microsoft related to its trademark dilution claim. This is more than sufficient to satisfy Microsoft's request for "evidence relevant to assessing [The Times's] reputation and what it would take to harm it." *Id.* at 3.

Under the theory behind Microsoft's demands, The Times should be required to turn over documents on any topic that some reader somewhere might take into account when forming a view of The Times—even where those documents otherwise have no relation to Defendants or their products in this case. The Court should not countenance Microsoft's fishing expedition.

**1.**   **The Times Already Agreed to Produce the Documents Relevant to its Trademark Dilution Claim.**

The Times has already produced the documents most relevant to assessing its reputation: its own Brand Tracker surveys, which include detailed breakdowns of how readers view The Times in categories such as relevance, trustworthiness, bias, and quality of news—*i.e.*, *exactly* the information Microsoft claims to need to assess public perception of The Times's trademark. *See* Ex. A.

More generally, The Times has agreed to produce multiple categories of documents regarding its trademark dilution claim, including:

(1) Documents concerning The Times's allegation that its trademarks are famous, as alleged in its Complaint;

June 13, 2025
Page 2

(2) Documents and communications upon which The Times will rely to support its contention that each of its trademarks has acquired secondary meaning;

(3) Documents sufficient to show the length and exclusivity of each of The Times's trademarks;

(4) Documents relating to harm or injury to its trademarks for which it is seeking recovery in this dispute;

(5) Documents concerning any internal or third-party studies evaluating The Times's trademarks before and after Defendants' alleged use;

(6) Documents and communications sufficient to show the use of The Times trademarks within its domains, including the extent and frequency of the use; and

(7) Documents sufficient to show agreements to license The Times trademarks from January 1, 2018, to the present.

However, Microsoft remained dissatisfied with The Times's production and served another set of RFPs (bringing the total number of RFPs it has served on The Times to 259), in which it sought additional categories of documents that allegedly bear on The Times's trademark dilution claim. Each requested category sought documents that were irrelevant, disproportionate to the needs of the case, and/or duplicative of prior requests.

2. **Documents Addressing The Times's Corrections and "Admitted Mistakes" Are Irrelevant and Disproportionate to the Needs of This Case.**

First, Microsoft seeks "guidelines and policies addressing [The Times's] corrections" and "admitted mistakes in its publications." Specifically, Microsoft requested (1) The Times's "guidelines and policies relating to 'Corrections' in the Guidelines on Integrity," (2) "[d]ocuments and [c]ommunications regarding [The Times's] policy to 'correct all' 'factual errors, large and small,' as referenced in the Guidelines on Integrity," and (3) "analyses regarding the error rate for information published by The Times from January 1, 2015 to present." However, Microsoft has failed to demonstrate how "corrections" or "admitted mistakes" are relevant to its defense against The Times's trademark dilution claim. Any impact that corrections have on readers' perception of The Times is purely speculative. Indeed, Microsoft's proposal would require thousands of mini-trials as the parties try to relitigate, *inter alia*, how significant or excusable an error was, how quickly the correction was made, and how many users saw the work before and after the correction. Microsoft need not infer impact to reputation from correction-related data: The Times has performed repeated studies of how readers perceive its reporting—and it has produced them in this case. *See, e.g.*, Ex. A.

Furthermore, even if Microsoft could establish some non-speculative connection between The Times's error corrections and its reputation, it would still need to demonstrate that such evidence is relevant to the claims or defenses *in this dispute*. As Microsoft itself notes, The Times's trademark allegations require it to demonstrate that its reputation has been harmed by AI outputs.

June 13, 2025
Page 3

*See* Dkt. 625 at 1. However, Microsoft has failed to show how The Times's own errors are analogous or related to the hallucinations of Defendants' generative AI products.

Notwithstanding the aforementioned relevance concerns, The Times agreed to produce prior final versions of the Guidelines on Integrity dating back to 2018, which should be sufficient to show the evolution of its "Corrections" policies since the advent of Defendants' products. Microsoft has offered no basis for its further demands.

### 3.  Documents Addressing Social Media Activity by Journalists Are Irrelevant.

Second, Microsoft seeks documents regarding "limits on social media activity by journalists to avoid integrity problems." Dkt. 625 at 1. Specifically, Microsoft seeks specific journalists' performance reviews and any potential "violations" or "notations" related to social media activity on those reviews. As an initial matter, this raises obvious privacy and confidentiality concerns. There is no reason why The Times should be required to turn over internal reviews for its journalists, especially when Microsoft has failed to plausibly explain the relevance of such information. The connection between the social media activity of Times journalists and trademark dilution is, once again, attenuated at best. Furthermore, The Times has already agreed to turn over prior versions of its Social Media Guidelines dating back to 2018. Accordingly, to the extent Microsoft wishes to understand The Times's social media policies and its "limits on social media activity," The Times has already produced that information.

### 4.  The Times Has Already Produced Documents Regarding its Work with Third Parties.

Finally, Microsoft seeks documents related to The Times's "work with third parties whose journalistic standards it does not control." Dkt. 625 at 1. Once again, Microsoft fails to demonstrate how these documents are relevant to The Times's trademark dilution claim or even explain what they are. It is unclear if Microsoft is seeking documents related to The Times's use of third-party content, third parties' use of The Times's works, or something else entirely. Regardless, The Times has already agreed to produce (1) documents sufficient to show its policies and procedures regarding the use of third party sources and/or content in creating its content, (2) documents sufficient to show The Times's policies and procedures regarding efforts to detect or prevent plagiarism, and (3) prior final versions of its Code of Conduct dating back to 2018, which documents The Times's evolving position on "work[ing] with third parties." Microsoft has failed to offer any explanation as to why this is insufficient.

* * *

Microsoft seeks information regarding public perception of The Times's trademarks, and the Times has already provided the discovery directly responsive to this request—most directly, its own Brand Tracker reports. Microsoft's request that The Times nevertheless provide data on the number of corrections it has made or its employees' social media usage or third parties beyond its control is disproportionate to the needs of this case and not tailored to produce relevant evidence. Rather, these demands continue a frustrating pattern of scattershot, wide-ranging document demands that seem designed more to harass than to uncover evidence germane to this case. The Times respectfully requests that the Court deny Microsoft's letter request.

June 13, 2025
Page 4

Respectfully submitted,

*/s/ Ian B. Crosby*
Ian B. Crosby
Susman Godfrey L.L.P.

*/s/ Steven Lieberman*
Steven Lieberman
Rothwell, Figg, Ernst & Manbeck

cc:    All Counsel of Record (via ECF)