SUSMAN GODFREY L.L.P.

June 13, 2025

Hon. Ona T. Wang
Southern District of New York
500 Pearl Street
New York, New York 10007

        Re:    *The New York Times Company v. Microsoft Corporation, et al.*,
                  No.: 23-cv-11195-SHS: Opposition to OpenAI's Motion to Compel

Dear Magistrate Judge Wang:

        OpenAI's motion to compel at Dkt. 130 mischaracterizes The Times's position regarding its standard content licenses and seeks this Court's intervention prematurely. The Times has not "refus[ed] to produce its license agreements." Mot. at 1. As the very correspondence OpenAI attaches to its own letter demonstrates, The Times: (1) identified a significant burden associated with producing every one of its form content licenses given that many require notice to the licensor counterparties prior to disclosure (there are ███████████████████████████████████████████); (2) proposed a potential compromise with OpenAI to provide access to the relevant terms in a manner that would obviate the need to provide notice to ████████ counterparties; and (3) indicated it was willing to continue the conversation once OpenAI had the opportunity to review an additional sample of The Times's licenses. Rather than continue conferring on the matter, OpenAI sent The Times a Saturday afternoon email with a new condition not discussed by the parties at all—a renewed demand that The Times respond to OpenAI's contention interrogatories regarding markets for The Times's works—and then filed this motion without any further discussion. OpenAI's motion distorts The Times's representations and its production to date, which contains more than double OpenAI's claimed ████████████. The Court should deny OpenAI's motion, and OpenAI should engage in good faith with The Times to determine a reasonable scope of discovery for The Times's standard content licenses.

**1.    The Times has diligently produced relevant licenses and licensing information.**

        The Times has so far provided notice to ████████████████ and has produced ████████████████████ for The Times's content.[1] The Times anticipates producing additional licenses in the coming weeks, as it told OpenAI during the parties' most recent meet and confer. The Times has prioritized producing ████████████████████████████████████████████████████████████████████████ (and the current version of those terms are publicly available, *see* https://nytlicensing.com/terms/editorial/007507). However, The Times enters into ██████ ██████████████████████████████: The Times's records show that it had ██████████

---

[1] The Times's May 20 email to OpenAI identifies ████ Bates numbers or ranges and explains that produced licenses can be located at "or within" those ranges. ECF 130-2 at 10. Some of the ranges provided span multiple licenses. OpenAI's claim that The Times has produced ████ ██████ is false.

June 13, 2025
Page 2

███████████████████████████████ during the period from 2018 to 2024. ███████
████████████████████████████████

Given the burden associated with providing notice to ████████████████ The Times provided OpenAI with data maintained in the regular course of The Times's business showing the key terms of The Times's content licenses, including the contract's signing date, geographic sales region, the rights granted by the agreement, the number of articles that the licensee can print, monthly payment amounts, and end date. *See* ECF 130-3. As the Times told OpenAI, it is happy to explain the data fields if OpenAI has questions about what they mean. ECF 130-2 at 6. Due to confidentiality requirements, The Times redacted the account names; but it separately provided a full list of those account names, along with the names of the licensee publications, so that Defendants can see who the counterparties licensing The Times's content are—they just can't pair the licensee with a particular set of Terms.

The Times affirmatively flagged this data in its production for Defendants, explaining the burden associated with providing ████ notices and offering to meet and confer about a reasonable scope of production for further licenses. ECF 130-2 at 10. On that meet and confer, The Times suggested that it provide a sample of licenses from the produced spreadsheet, selected by OpenAI, and that the parties discuss further if OpenAI still had concerns about The Times's licensing production after reviewing that sample.

OpenAI's motion pretends The Times never made this offer and instead asserts that OpenAI "proposed a compromise" and "The Times refused." Mot. at 3. This is not a fair characterization of the exchange. Rather:

- OpenAI asked The Times a series of questions about its production; The Times answered them. ECF 130-2 at 4-6.
- OpenAI asked The Times to clarify the fields on the produced spreadsheet; The Times agreed to do so. ECF 130-2 at 6.
- OpenAI asked The Times to confirm it would produce licenses on the spreadsheet that would "preclud[e]" The Time "from bringing copyright claims"; The Times confirmed no such licenses were listed. *Id*.
- And OpenAI demanded The Times produce a sample of ████████ selected by OpenAI; The Times countered with a proposal that OpenAI select ████████ to review and, if after reviewing OpenAI believed it needed more, the parties could continue discussing. *Id*.

At that point OpenAI effectively shut down the conversation: It demanded The Times agree to providing ████████ at the outset and that it also answer two interrogatories (with no explanation as to why those interrogatories are relevant to this dispute—they do not appear to be so)[2], then filed this motion.

---

[2] OpenAI's Interrogatory 9 asks The Times to identify and describe the "Market for its Asserted Works," and Interrogatory 19 asks The Times whether markets identified in response to

**2.      The Times is producing licenses and licensing information relevant to its claims.**

The Times has agreed to produce any license for use of its content for Generative AI training. It has also agreed to produce, and has produced, non-Generative AI content licenses: It has produced ▮▮▮▮▮ and has several more it anticipates producing shortly. The Times has also provided OpenAI with (1) a spreadsheet showing the key terms of ▮▮▮ form content licenses, (2) the names of the accounts and licensee publications, and (3) The Times's standard licensing terms. And, despite the claims in OpenAI's motion, The Times has never said this concluded its licensing production—rather, The Times itself proposed producing a further sample of its standard content licenses (selected by OpenAI) for OpenAI's review to inform the parties' discussion. However, each third-party license contains a confidentiality provision generally requiring notice before a party produces the counterparty's confidential information (which include the agreement itself under The Times's current standard terms). The burden of providing notice to ▮▮▮▮▮ (and potentially engaging in back and forth regarding production with each of those counterparties) is disproportionate to the needs of this case in light of The Times's existing and offered production.

The Times agrees its non-Generative AI licenses have some relevance to this litigation—for instance, its content licenses demonstrate, *inter alia*, that The Times's content is valuable and that third parties are willing to pay The Times for its use. However, given that OpenAI has (1) the key terms of each of The Times's active agreements during the relevant period, (2) the list of counterparties for those agreements, and (2) examples of The Times's full licensing terms, The Times does not understand why OpenAI would need each and every form license. Discovery must be proportionate, and the burden of providing notice ▮▮▮▮▮▮▮▮▮ is significant. OpenAI's protestation that *it* is complying with third party notice provisions is misplaced: OpenAI has never claimed to have anywhere remotely close to the volume of third-party licenses it is demanding from The Times (indeed, it has produced only ▮▮▮ total in this litigation so far).

The Times has been working in good faith to provide OpenAI with many of the licenses and information relevant to this litigation, and it is committed to continuing to do so. Indeed, The Times is actively looking into ways it could potentially streamline production of further content licenses—if it can do so, it will. The Times respectfully requests that the Court deny OpenAI's motion and instead narrow its request to an appropriate scope of production for The Times's standard content licenses.

---

Interrogatory 9 are "(i) traditional, (ii) reasonable, or (iii) likely to be developed market for the Asserted Works and their derivatives," and the basis for the contention. Ex. A, p.7; Ex. B, p.9. It is not clear to The Times how prematurely answering these questions about markets for The Times's works would inform the parties' dispute over whether OpenAI needs each and every one of The Times's form content licenses.

June 13, 2025
Page 4

                        Respectfully submitted,

                        */s/ Ian B. Crosby*
                        Ian B. Crosby
                        Susman Godfrey L.L.P.

                        */s/ Steven Lieberman*
                        Steven Lieberman
                        Rothwell, Figg, Ernst & Manbeck

cc:    All Counsel of Record (via ECF)