

August 22, 2025

**VIA ECF**

Hon. Ona T. Wang
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

cc: *All Counsel of Record (via ECF)*

Re:   **Discovery dispute concerning The Times's destruction of evidence of its use of OpenAI's LLMs**
*In re OpenAI Copyright Infringement Litigation*, No. 1:25-md-03143-SHS-OTW
This Document Relates to: *NYT v. Microsoft et al*., No. 1:23-cv-11195-SHS-OTW

Dear Magistrate Judge Wang:

    OpenAI submits this letter brief pursuant to the Court's August 15, 2025 Order seeking supplemental briefing on Defendants' motions to compel The New York Times to produce evidence of its use of OpenAI's LLMs through ChatExplorer. ECF 459. The Court requested briefing on three issues: (1) relevance of the content of the ChatExplorer logs; (2) proportionality; and (3) burden of production, including the scope of any privilege review. *Id*. While both Defendants address burden and proportionality, to avoid duplication, OpenAI addresses the relevance of this evidence to the first and fourth fair use factors while Microsoft addresses the relevance to substantial noninfringing uses. OpenAI joins Microsoft's arguments.

    The content of the ChatExplorer logs is squarely relevant under Supreme Court precedent. *See Google LLC v. Oracle Am., Inc.*, 593 U.S. 1, 29 (2021). The Times's use of OpenAI's LLMs shows that (1) OpenAI's LLMs are transformative because they enable the creation of new works in furtherance of the goals of copyright law, which is relevant to fair use factor one, and (2) The Times benefited from using OpenAI's LLMs, which is relevant to factor four. *See id.* The contents of the logs will provide concrete proof of *how* The Times uses OpenAI's LLMs and *how* this makes The Times's works better for readers and more profitable to The Times. This includes business uses entirely separate from the creation of news articles like developing marketing materials and analyzing consumer insight data.

    These logs are not cumulative of other evidence. Indeed, when OpenAI tried to obtain evidence of how exactly The Times used OpenAI's LLMs through RFAs, The Times refused to provide it. Likewise, depositions are no substitute for these logs because witnesses are unlikely to

3031553

Page 2

remember specific examples of how they used ChatExplorer and may minimize the frequency, extent, and benefits of their use (intentionally or otherwise). These logs are essential to conduct effective depositions and discover the full truth of The Times's use. The "burden" on The Times to produce them is minimal—it can produce a single, exportable spreadsheet. The Times has failed to offer any evidence that reviewing this spreadsheet for privilege is any more burdensome than reviewing any other document produced in the case. Given the central importance of this evidence to fair use in this landmark copyright case, the Court should order full production of the logs.

I.   The contents of The Times's logs are relevant and discoverable.

The Times does not and cannot dispute that its use of OpenAI's LLMs is relevant to fair use. And The Times long ago "agreed to produce" discovery regarding its "use of . . . **OpenAI's** generative AI tools," NYT ECF 429 at 15 (emphasis added). Judge Stein expressly relied on these representations in denying OpenAI discovery regarding *non-party* genAI tools. *See* NYT ECF 592 at 10 ("The Times has already agreed to produce documents relating to its use of defendants' products."); *id.* at 7 n.6 (similar); NYT ECF 344 (Order) at 1.n1 (similar).[1] Despite its prior representations, The Times now claims that the contents of the ChatExplorer logs are irrelevant. The Times is wrong under binding Supreme Court precedent, as explained below.

a.   The records are relevant to fair use factor one.

The first fair use factor considers whether the use is "transformative." *Google*, 593 U.S. at 29. The Supreme Court found that "Google's use of the Sun Java API" was transformative in part because it sought "to create new products" and to "offer[] programmers ***a highly creative and innovative tool*** for a smartphone environment. . . . To the extent that Google used parts of the Sun Java API to create a new platform . . ., its use was consistent with that creative 'progress' that is the basic constitutional objective of copyright itself." *Id.* at 30 (emphasis added).

So too here. The logs will show that OpenAI's LLMs provide a "highly creative and innovative tool" for the journalism business. The fact that The Times–the plaintiff in this case and one of the preeminent newspapers in the world–has made extensive use of OpenAI's LLMs to help improve its journalism is powerful validation of the fact that OpenAI's products are "new" and "innovative," and that they can be and are "readily used" by journalists to create new works in ways consistent with the goals of copyright law. *See Google*, 593 U.S. at 30.

The sole ChatExplorer record that The Times has produced shows how one journalist at The Times used OpenAI's LLMs in creative and innovative ways. This employee used OpenAI's

---

[1] Yesterday, The Times offered to consider "running search terms for a tailored set of custodians across its ChatExplorer logs." Ex.3. The Times made this same vague offer over three months ago, subsequently refused to engage in a meet and confer over production of a representative sample of logs, and then rescinded the offer altogether. Ex. 4. While OpenAI is willing to engage in the meet and confer, search terms are inappropriate here, given that this is not an ESI search. The logs, which are contained in a database, are all likely relevant to fair use. Moreover, The Times has not substantiated burden, such that consideration of such limitations is necessary.

Page 3

LLMs to ███████████████████████████████████████ *See* Ex. 1. He also used them to ██████████████ of Times articles and ██████████ tasks that would have required a time-intensive, manual review, or a computerized review that lacked nuance, before OpenAI's LLMs existed. *See* Ex. 1. at 2, 6. These uses show that OpenAI's LLMs "add[] something new, with a further purpose" to the asserted works. *See also Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994) (the "central purpose" of factor one is determining whether the defendant's use is "transformative" in that it "adds something new, with a further purpose"). They also show that the "further purpose" enabled by OpenAI's use is entirely different from the original purpose of the asserted works. Logs from the other Times employees will show many other different uses. *See Google*, 593 U.S. at 31 (relying on the "***numerous ways***" that "[t]he record demonstrates . . . reimplementing an interface can further the development of computer programs" in finding fair use (emphasis added)). The Times should not be permitted to cultivate the impression that its use of OpenAI's LLMs is minimal or insignificant by refusing to produce the evidence that would prove the opposite. *See also id.* at 31 (relying on evidence that "Sun executives thought that widespread use of the Java programming language, including use on a smartphone platform, would benefit the company.").

OpenAI should not have to guess at the other ways The Times used its LLMs or rely on Times witnesses to accurately recall the key details in deposition. The documents are essential to effective cross-examination, "the greatest legal engine ever invented for the discovery of truth." *Lilly v. Virginia*, 527 U.S. 116 (1999). Permitting The Times to withhold them obscures the true nature, extent, and benefits of The Times's use and would be highly prejudicial to OpenAI.

### b. The records are relevant to fair use factor four.

The log records are also relevant to fair use factor four, which considers the harm to the market of the copyrighted work, as well as the "public benefits" of the copying. *Google*, 593 U.S. at 36. The ChatExplorer records are relevant to this factor because they: (1) undermine The Times's theory of harm, and (2) demonstrate the public benefits of OpenAI's technology.

***First***, records showing exactly how The Times uses OpenAI's LLMs to advance its journalism directly contravenes its allegations of market harm. The Times alleges that OpenAI's technology threatens its ability to produce its works and sell subscriptions. Sec. Am. Compl., ECF 72 at ¶ 164. The ChatExplorer records show that, in fact, The Times used OpenAI's technologies to ***benefit*** its business. As explained above, there are examples of such use in the few records that we have from a Times employee who ████████████████████████████████████████ *See* Ex. 1. But there are doubtless countless other potential examples in the unproduced logs. The Times has admitted that 17 of its ***business*** teams used OpenAI's LLMs, including its Data and Insights, Digital Products and Technology, and Marketing teams, among others. The content of these logs may show that those teams used OpenAI's technology to quickly distill large amounts of data—like subscription data, consumer insights, or financial records—to increase ad or subscription revenue. And The Times's staff could use OpenAI's technology to translate works for new audiences, develop recipes for NYT cooking, or generate captions for photos. Indeed, The Times's documents indicate that it was considering using genAI technology for these very purposes—all of which benefit the Times's business and profitability. ECF No. 377 at 4. The logs will show those specific uses and many others.

3031553

Page 4

*Second*, the logs will show how OpenAI's LLMs generate substantial public benefits. *See Google*, 593 U.S. at 35 ("[W]e must take into account the public benefits the copying will likely produce."). Crucially, courts consider the effect on the ***plaintiff*** as particularly compelling in this context. In *Sega Enters. Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1523 (9th Cir. 1992), *as amended* (Jan. 6, 1993), the Ninth Circuit concluded that the defendant's use of Sega's videogame programs conferred a "public benefit" because it "led to an increase in the number of independently designed video game programs" that could be "offered for use" with ***Sega's*** console. *Id.* (emphasis added). Put differently, the defendant's copying was fair use because it enabled more games to be created ***using the plaintiff's platform***. So too here: the ChatExplorer records will show how OpenAI's technology enabled more and better content to be created ***by The Times***, which benefits The Times. *See Google*, 593 U.S. at 38 (emphasizing "evidence that Sun foresaw a benefit from the broader use of the Java programming language in a new platform like Android, as it would further expand the network of Java-trained programmers.").[2]

Moreover, the evidence is "especially relevant" to rebut The Times's central trial theme in this case: that OpenAI is destroying The Times's "ability to continue producing its current level of groundbreaking journalism." Sec. Am. Compl., ECF 72 at ¶ 164. *See, e.g.*, *United States v. Arroyo*, 600 F. App'x 11, 13–14 (2d Cir. 2015) (evidence is "especially relevant" when offered to rebut the opposing party's trial themes). The logs are needed to rebut The Times's claims of harm under factor 4 because The Times itself benefits from OpenAI's LLMs by using them to "advance [The Times's] journalism and" accelerate its "essential subscription strategy." Ex. 2.

## II.  Production of the ChatExplorer logs is neither unduly burdensome nor disproportionate to the needs of the case.

Production of the ChatExplorer logs is neither unduly burdensome nor disproportionate to the needs of this landmark case, in which The Times is seeking billions of dollars and an order compelling OpenAI to destroy its LLMs. *See* Fed. R. Civ. P. 26(b). OpenAI's fair use defense is the core issue in the case, and the outcome here will reverberate across the industry and with everyday people. Given the stakes, the production of these logs is clearly proportionate. *See id.* (Rule 26(b) "consider[s] the importance of the issues at stake in the action" and "the amount in controversy"). Indeed, as the Court is aware, The Times acknowledged the importance of the issues at stake when it argued for the preservation of hundreds of millions of private user conversations—based on pure speculation about what those conversations might show—despite the heavy burden on OpenAI and its users and the low likelihood of relevance. The Times instead argues their burden of reviewing and producing these (exponentially fewer) logs outweighs their

---

[2] While Judge Stein's Rule 72 Order observed that *Google* "does not stand for the proposition that evidence for the plaintiff's activities is *always* relevant," ECF No. 592 at 4-5 (emphasis in original), he also observed that The Times's use of OpenAI's LLMs was on different footing than its use of nonparty LLMs. *Id*. at 6. Indeed, Your Honor has acknowledged the relevance of discovery about a copyright plaintiff's use of a defendant's products. *See New York Times Co. v. Microsoft Corp.*, 757 F. Supp. 3d 594, 599 (S.D.N.Y. 2024) ("[I]f a copyright holder sued a video game manufacturer for copyright infringement, the copyright holder might be required to produce documents relating to their interactions with that video game manufacturer[.]").

Page 5

clear relevance. But this too is speculation unsupported by any declaration, report, or analysis. Conversely, here, OpenAI has clear evidence that The Times uses OpenAI's LLMs for purposes that are directly relevant to fair use and the volume of data that OpenAI is seeking pales in comparison to what The Times has sought from OpenAI and its users. Where the other proportionality factors weigh so heavily in favor of production, The Times should not be able to avoid production based on vague and unsubstantiated claims of "burden," especially given that it has already admitted to deleting three months of ChatExplorer logs *after* filing suit.

Contrary to The Times's suggestion, OpenAI is not requesting that The Times produce "80,000 documents" Ex. 5, Aug. 12, 2025, Hr'g Tr. at 27:22-28:2. Rather, The Times can produce a single, exportable spreadsheet that contains all of the ChatExplorer logs. *See, e.g.*, Ex. 1. This would be less than 2GB of data. And while The Times may need to review the document for potentially privileged information, that is true of any document produced in discovery. If the need for a privilege review were sufficient to show undue burden, no documents would ever be produced. The Times has provided no reason to believe that these records are *uniquely* burdensome to review for privilege, and there are plenty of reasons to think otherwise. *See* ECF 376-1 (explaining that The Times legal department does not use ChatExplorer and its policies prohibit entry of source information); *see also id.* (noting that many of the departments using OpenAI's LLMs are business departments).

Nor can The Times avoid production by suggesting that the information sought is cumulative of other evidence or by claiming that it has already "admitted" the relevant facts. *See* Ex. 5, Aug. 12, 2025, Hr'g Tr. at 14:18-20. In fact, OpenAI asked The Times to admit to 23 specific ways in which The Times has used OpenAI's LLMS, including "to generate headlines," RFA No. 101, "in drafting one or more of Your news articles," RFA No. 102, to "improve contextual targeting for Your advertisements," RFA No. 109, to "identify Your content that is relevant to advertiser brand or campaign goals," RFA No. 110, to "improve Your code assistance and data analysis," RFA No. 111, to "automatically generate Wirecutter product lists that Your editors can edit before publishing," RFA No. 115, to "improve automation of customer care emails," RFA No. 117, and to "generate email responses for common user issues," RFA No. 118. *See* Ex. 6 RFA Nos. 97 – 120. The Times provided the same evasive response to each Request, claiming that it "cannot provide a straightforward answer" and admitting only that it "***permits***" certain uses of OpenAI's LLMs. In short, The Times refused to admit *how* its employees *actually used* ChatExplorer in their work, for example, the specific prompts employees asked OpenAI's LLM to address–evidence that can only be obtained through these logs, to the extent The Times has not already destroyed it. And, regardless, The Times cannot head-off damaging discovery by "stipulat[ing] the evidence away." *DeLeon v. Perkins*, 2017 WL 6415355, at *1 (D. Ariz. June 6, 2017) (quoting *Old Chief v. United States*, 519 U.S. 172 (1997) and collecting cases).

Moreover, despite The Times's assertions to the contrary, Ex. 5, Aug. 12, 2025 Hr'g Tr. at 27:06-12, it has only produced a handful of documents that relate to ChatExplorer, the majority of which have been appended to OpenAI's previous briefing on this issue. ECF 377, NYT ECF 618. These few documents confirm the Times's use of OpenAI's LLMs, but fail to provide any of the details contained in the logs. *See* ECF 377 at Exs. 2-8. The logs should be produced.

Page 6

                            Respectfully,

| KEKER, VAN NEST & PETERS LLP[3] | LATHAM & WATKINS LLP | MORRISON & FOERSTER LLP |
|---|---|---|
| */s/ Sarah Salomon* <br> Sarah Salomon | */s/ Margaret Graham* <br> Margaret Graham | */s/ Caitlin Sinclaire Blythe* <br> Caitlin Sinclaire Blythe |

---

[3] All parties whose electronic signatures are included herein have consented to the filing of this document.

3031553