SUSMAN GODFREY L.L.P.

August 22, 2025

Hon. Ona T. Wang
Southern District of New York
500 Pearl Street
New York, New York 10007

>   *In re OpenAI, Inc.*, *Copyright Infringement Litigation*, 25-md-3143 (SHS) (OTW)
>   This Document Relates to: *NYT v. Microsoft et al.*, 23-cv-11195 (SHS) (OTW)

Dear Magistrate Judge Wang:

Pursuant to the Court's August 15, 2025, Order, The New York Times Company ("The Times") submits this supplemental letter brief regarding Defendants' motions to compel the production of 82,150 unique ChatExplorer logs. *See* Dkts. 377 & 396; Dkt. 459. The Court should deny this request to produce tens of thousands of additional documents as they are not relevant and would be especially burdensome to review.

**1. ChatExplorer logs are not relevant to the claims or defenses in this litigation.**

Non Infringing Use: The fact that a product may be used in ways that are not infringing has no relevance to a claim against the uses of the product that are infringing. Rather, the defense of substantial non infringing use is only relevant when a rights holder asserts a claim of ***induced*** infringement by mere distribution of a product. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 934-35 (2005) ("We agree with MGM that the Court of Appeals misapplied *Sony*, which it read as limiting secondary liability quite beyond the circumstances to which the case applied. *Sony* barred secondary liability based on presuming or imputing intent to cause infringement solely from the design or distribution of a product capable of substantial lawful use, which the distributor knows is in fact used for infringement.") As Judge Stein has recognized, The Times has not asserted such a claim in this case. *See New York Times Co. v. Microsoft Corp.*, 777 F. Supp. 3d 283, 308–09 (S.D.N.Y. 2025).

Fair Use, Factor One: The logs in question are not relevant to the first fair use factor—concerning the purpose of ***the use***—for the simple reason that ***the use*** in question is not The Times's use of ChatExplorer. Rather, the types of use at issue include, by way of example: (i) The copying of The Times's works to create an internal dataset; (ii) The copying of The Times's works to train GPT models; and (3) The copying of The Times's works to ground results for GPT consumers. Again, The Times's use of ChatExplorer is none of these.

Fair Use, Factor Four: The logs are likewise not relevant to the fourth fair use factor—regarding the effect of ***the use*** on the market for the copyrighted works—because, once again, not only is The Times's use of ChatExplorer not ***the use*** in question, but because The Times's own internal use of ChatExplorer cannot conceivably have an effect on the market for The Times's own works, which The Times can use as it sees fit.

In sum, the logs are not relevant. And should not be produced for this reason alone.

**2. Defendants' requests are not proportional to the needs of the case.**

Assuming for the sake of argument the Court finds the logs relevant, their production goes against the tenants of Federal Rule of Civil Procedure 26(b)(1). *See* Fed. R. Civ. P. 26(b)(1). "Rule 26(b)(1) constrains the permissible scope of discovery to 'any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount of in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.'" *Id.* (emphasis added) (quoting Rule 26(b)(1)). Applying those factors here, the Court should deny Defendants' request.

**(1) Importance of the issues at stake in the action & (2) Amount in controversy.**

One of the few things both sides might agree on is that the issues at stake in this action are important, and the amount in controversy is significant. That, of course, is why The Times has readily agreed to provide significant discovery. Including, among other documents, agreeing to search 22 custodians, running 163 search terms, and readily putting up high-level executives for deposition.

The Times has likewise already produced significant discovery going to the particular issue of its own use of Defendants' products, including: (1) Documents regarding The Times's use of Defendants' Generative AI tools in reporting or presenting content; (2) Documents regarding The Times's trainings and policies relating to the use of Defendants' Generative AI products—including guidance specifically relating to ChatExplorer, which describes the tool in detail, its permitted and unpermitted uses, and the different GPT models that it employs, *see, e.g.*, Ex. A (Getting Started with ChatExplorer); (3) Documents relating to the AI Initiatives program; and (4) Audience Insight Group reports, which directly assess the impact of Generative AI on The Times. These productions should end the current inquiry as, if anything, it is the fact of The Times's use of ChatExplorer that is relevant under Defendants' theories—not the specific content of The Times's logs. *See* Aug. 12, 2025 Hearing Transcript at 7:22–25. And between the documents listed above, to say nothing of the forthcoming depositions, Defendants already have the admissions they need regarding The Times's use of ChatExplorer. Ex. B (The New York Times Company's Responses and Objections to OpenAI's Fourth Set of Requests for Admission).

**(3) Parties' relative access to relevant information.**

While The Times is the party with access to the ChatExplorer logs, it is no doubt Defendants who have better access to relevant information about why its works are supposedly transformative. Defendants more or less conceded as much at the August 12 hearing when they identified the real reason they want this particular dataset from The Times: Not to establish that ChatGPT is transformative, but rather because they think they can score extra points with a jury by showing that The Times itself has used its products in arguably transformative ways. *See* Aug. 12, 2025

August 22, 2025
Page 3

Hearing Tr. 8:4–10. Discovery is not about scoring points with a jury. It is about accessing relevant information that is proportional to the needs of a case. As detailed above, Defendants already have what they need to make the point that The Times itself uses ChatExplorer, and Defendants are now free to follow-up with Times deponents to press further into exactly that subject.

**(4) Parties' resources.**

All parties are well resourced, but there is an obvious discrepancy between the two sides of the v. While The Times's present market cap is about 9.75 billion,[1] Microsoft's present market cap is around 3.75 trillion with a t.[2] And it has been widely reported that OpenAI is soon to be valued at around $500 billion.[3] This discrepancy in resources is reflected in the sheer volume of lawyers the Defendants have representing them in this litigation (to say nothing of those working behind the scenes). Indeed, as of today's filing Microsoft and OpenAI have filed notices of appearances for 58 attorneys across five law firms. This is in stark contrast to the 12 attorneys from just two firms representing The Times. This discrepancy is also significant to the Court's analysis as Defendants have previously claimed to both The Times and this Court that it would be unduly burdensome for Defendants' team to review even 600,000 core custodial documents as part of this action. *See* Dec. 3, 2024 Hearing Tr. at 63:7-22. They thus cannot now credibly argue that it would be anything other than a significant undertaking for The Times to take on the review of an additional 82,150 unique documents.

**(5) Importance of the discovery in resolving the issues.**

The requested logs are not important to resolving the issues in dispute. Again, for reasons articulated above and in prior briefing, the information sought is simply not relevant. And to the extent it has some marginal relevance, Defendants offer no further proof for the point. Defendants can already make do with their own documents as well as the documents and testimony The Times has already agreed to produce.

**(6) Whether the burden or expense of the proposed discovery outweighs its likely benefit.**

The burden of reviewing 82,150 (and growing) unique documents absolutely outweighs the likely benefit, and courts have noted this is the most important factor. *See Jones v. Goord*, 2002 WL 1007614, at *10 (S.D.N.Y. May 16, 2002) (noting that the most important factor in assessing the disclosure of evidence under Rule 26 is whether "the burden or expense of the proposed discovery outweighs its likely benefit").

Contrary to Defendants' assertions at the August 12 hearing, The Times's review process for these documents would be nothing approaching scanning a spreadsheet. Exporting the ChatExplorer data to a review platform generates a separate document for each call and response

---

[1] *See* https://finance.yahoo.com/quote/NYT/
[2] *See* https://stockanalysis.com/stocks/msft/market-cap/
[3] *See* https://www.reuters.com/business/openai-eyes-500-billion-valuation-potential-employee-share-sale-source-says-2025-08-06/

August 22, 2025
Page 4

pair, with header information indicating the user. The document may be less than a page, or it may span several pages. With regard to format, these documents are not unlike emails; reviewing an additional 82,150 emails would be an unreasonable ask in light of these documents' minimal relevance. However, review of these logs is significantly more burdensome than custodial email review for the following reasons.

While traditional document review is limited to mutually agreed-upon custodians and a tailored set of terms, The Times would be required to review the logs from 512 distinct users, most of whom are not custodians in this case, and that includes members of the newsroom. Specifically, these non-custodians are associated with over 81,000 of the 82,150 ChatExplorer logs. Thus, for a vast majority of these ChatExplorer logs (98.5%), a reviewer will need to go through at least the following steps for each and every unique log in order to properly understand the context:

(1) Determine who the relevant individual is;

(2) Determine what that individual's role (or more likely roles) at The Times entails;

(3) Determine what their prompt concerns;

(4) Determine whether the prompt includes any sensitive or confidential information; and

(5) Determine whether the prompt implicates any privilege (i.e., attorney-client and/or reporters' privilege—more on that below).

Much of this is information that The Times's attorneys do not have at their fingertips, and that it would take considerable time to go out and acquire. Most critically, unlike emails, which generally appear in a chain that provides some context, the context of a prompt can often be unclear from the face of the document—meaning reviewers could need to individually meet with users to clarify the answers to items (3), (4), and (5) above. Performing this exercise hundreds, let alone tens of thousands of times, is vastly more burdensome than is justified by any minimal relevance of these documents.

And the need to review these logs carefully is critical. For example, The Times's ChatExplorer guidance explicitly permits users to input The Times's "source code." Ex. A at 2. Clearly, The Times's source code is highly sensitive information and references to it would need to be, at minimum, flagged for special treatment—again, an exercise that requires careful review and, quite possibly, consultation with Times employees regarding what code is or is not sensitive.

As just one other example, The Times's ChatExplorer guidance encourages all employees "to use ChatExplorer to experiment widely." *See* Ex. A at 2. While determining how, exactly, each employee used the tool would require the very burdensome review of the logs that The Times opposes here, it is possible that users entered sensitive information into their prompts, even if inadvertently. For example, some customer support employees may have used ChatExplorer to experiment with inputting customer comments in order to generate draft responses. Copying and pasting a customer email could easily result in inadvertently inputting personal identifiable information—which The Times would need to review for and redact from any production.

August 22, 2025
Page 5

Then, of course, are the privilege concerns. As discussed at the August 12 hearing, The Times would need to review the logs for inputs that are protected by the attorney-client or reporters' privilege—both of which require understanding the full context of any given input. Regarding the reporters' privilege in particular, the Second Circuit "has long recognized the existence of a qualified privilege for journalistic information" under federal common law. *Gonzales v. Nat'l Broad. Co., Inc.*, 194 F.3d 29, 32 (2d Cir. 1999); *see Baker v. F&F Inv.*, 470 F.2d 778, 782 (2d Cir. 1972) (noting that the reporter's privilege reflects the "paramount public interest in the maintenance of a vigorous, aggressive and independent press capable of participating in a robust, unfettered debate over controversial matters, an interest which has always been a principal concern of the First Amendment"). This privilege does not just protect sources, but rather: "The qualified reporter's privilege, accorded under the United States Constitution, the New York State Constitution, and the New York Shield Law, protects ***non-confidential*** as well as confidential information" "acquired in the course of gathering news." *Application of Behar*, 779 F. Supp. 273, 274–75 (S.D.N.Y. 1991). In determining the scope of the federal reporter's privilege, the Second Circuit has instructed courts to consider the applicable state law – here, New York's Shield Law, N.Y. Civ. Rights § 79-h, because courts should not "ignore New York's policy of giving protection to professional journalists." *von Bulow by Auersperg v. von Bulow*, 811 F.2d 136, 144 (2d Cir. 1987). That policy, captured in both the New York Constitution and the Shield Law, is "the strongest in the nation." *Holmes v. Winter*, 22 N.Y.3d 300, 310 (2013). New York courts have protected news organizations from the burdens of discovery in order to protect the "ability of the press freely to collect and edit news, unhampered by repeated demands for its resource materials," noting that the "practical burdens on time and resources, as well as the consequent diversion of journalistic effort and disruption of newsgathering activity, would be particularly inimical to the vigor of a free press." *O'Neill v. Oakgrove Constr., Inc.*, 71 N.Y.2d 521, 526-27 (1988). For example, reporters notes as well as drafts.

The Times would thus need to review newsroom employees' logs to ensure information protected by the reporters' privilege is not being produced. Consistent with The Times's Generative AI guidance, newsroom employees were permitted to "prompt the tools to help with brainstorming and editing, summarize Times-owned materials and non-proprietary information." Ex. C (Responsible Use of Company-Approved Generative AI Tools at The New York Times) at 24. In so doing, newsroom employees may have inputted "information acquired in the course of gathering news." *Application of Behar*, 779 F. Supp. at 274. at 274. Given that 1,285 individuals completed the ***newsroom*** Generative AI training and thus have access to ChatExplorer, there is reason to believe this will be a considerable issue. And while The Times opposes any production of these logs, under no circumstances have Defendants justified the production of logs from individual users associated with The Times's newsroom.

Simply put, producing 82,150 logs means reviewing that many additional unique documents—and, unlike with custodial emails, potentially repeatedly performing individual investigations into the context of potentially tens of thousands of prompts. In short, "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

***

August 22, 2025
Page 6

      For the foregoing reasons, The Times requests that the Court deny Defendants' motions to compel the production of ChatExplorer logs.

                                        Respectfully submitted,

                                        */s/ Davida Brook*
                                        Davida Brook
                                        Susman Godfrey L.L.P.

                                        */s/ Steven Lieberman*
                                        Steven Lieberman
                                        Rothwell, Figg, Ernst & Manbeck

cc:    All Counsel of Record (via ECF)