

KEKER VAN NEST & PETERS    LATHAM & WATKINS LLP    MORRISON FOERSTER

September 9, 2025

**VIA ECF**

Hon. Ona T. Wang
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

cc: *All Counsel of Record (via ECF)*

Re:     **_Discovery dispute concerning The Times's refusal to produce discovery regarding market impact of ChatGPT and other market forces_**
*In re OpenAI Copyright Infringement Litigation*, No. 1:25-md-03143-SHS-OTW
This Document Relates to: *NYT v. Microsoft et al.*, No. 1:23-cv-11195-SHS-OTW

Dear Magistrate Judge Wang:

One of The Times's core allegations in this case is that OpenAI's products "decrease[] traffic" and "impact its advertising and subscription revenue." NYT Sec. Am. Compl. ECF 72 at ¶ 135. OpenAI is entitled to discovery to rebut that allegation. Indeed, The Times has already agreed to produce discovery "regarding whether decreases in traffic to Times websites, if any, are attributable to [OpenAI's] GPT services *versus other market forces and factors*." ECF 82 at 9. And the Court relied on that commitment to deny OpenAI other discovery into The Times's theory of market harm. *See id*. OpenAI thus requests in RFPs 301-313 that The Times produce documents that consider the impact of OpenAI's GPT services—alongside **specific categories** of "other market forces" and "factors"—on The Times's traffic, revenues, and subscriptions. *See* Ex. A. These categories include documents that mention OpenAI's services and those of other technology companies[1] as well as broader market trends[2] likely to affect The Times's business. These requests should not be controversial. They hew closely to The Times's prior commitments, and are squarely relevant to fair use factor four. *See Google LLC v. Oracle Am., Inc.*, 593 U.S. 1, 35 (2021) (Fair use defense requires the court to "consider not just the amount but also the source of the [alleged] loss.").

---

[1] TikTok (RFP #301), Meta (RFP #302), X (RFP #303), Reddit (RFP #304). Ex. A at 4-7.

[2] Social media platforms (#305), search engines (RFP #306), the digital news industry (RFP #307), the audio-visual news industry (RFP #308), news aggregators (RFP #309), physical newspaper circulation (RFP #310), newsletter services (RFP #311), macro-news cycles (RFP #312), and post-2022 economic cycles (RFP #313). *Id.* at 7-14.

3080916

Page 2

OpenAI thus respectfully requests that the Court order that The Times produce documents and communications regarding the impact of OpenAI's services—alongside ***specific categories*** of "market forces" and "factors" identified in RFPs 301-313—on The Times's traffic, revenues, and subscriptions.[3]

### I. RFPs 301-313 seek relevant information and The Times identified no burden in producing responsive information.

OpenAI requests discovery into how its products and services, as compared to other market forces and factors, have affected The Times's traffic, revenue, and subscriptions. This discovery is plainly relevant. For example, if The Times's business has been affected by shifts in how people consume news–be it through new channels like TikTok, Facebook, Reddit, or X instead of traditional newspapers–then OpenAI is entitled to know. Likewise, to the extent The Times's business has been affected by broader market shifts–such as the rise of news aggregators, recessionary forces, or changing news cycles (e.g., elections)–then OpenAI is also entitled to know. Consistent with ECF 82 (Judge Stein's Order on Objections), OpenAI is not seeking documents and communications that mention these factors in isolation, but rather analyses that consider these factors alongside the impact of OpenAI's products and services.

The Times does not (and could not) contest that this discovery is relevant. The Times insists that OpenAI's products decrease traffic, revenues, and subscriptions for The Times.[4] In response, OpenAI intends to assert a fair use defense, which requires the Court to "consider not just the amount but also the source of the loss." *Oracle*, 593 U.S. at 35; *see also Harper & Row Publishers, Inc. v. Nation Enter.*, 471 U.S. 539, 567 (1985) (A defendant is entitled "to show that this damage would have occurred had there been no taking of copyrighted expression."). The requested discovery is thus directly relevant to fair use factor four, as well as The Times's theory of damages.

Notably, The Times has not asserted a burden objection to producing materials responsive to RFPs 301-313. Instead, it raises other objections, namely that the requested discovery is (1) "duplicative" of other requests, and (2) barred by prior court orders. Neither objection withstands scrutiny.

### A. The requested discovery is not duplicative.

---

[3] On August 25, 2025, the parties met and conferred, and The Times represented that it was standing on its objections that OpenAI's requested discovery was duplicative and barred by court orders. *See* Ex. B at 1, 6. OpenAI confirmed the parties' impasse on August 28, 2025. *See id.* at 1.

[4] *See, e.g.*, Sec. Am. Compl. ¶ 164 ("Defendants' unlawful conduct threatens to divert readers, including current and potential subscribers, away from The Times, thereby reducing the subscription, advertising, licensing, and affiliate revenues that fund The Times's ability to continue producing its current level of groundbreaking journalism.").

3080916

The Times asserts that the requests are duplicative of "audience reports" it previously agreed to produce. *See* Ex. B at 5-6. But The Times cannot cherry-pick documents *it* deems responsive and then assert anything else is "duplicative" sight unseen by Defendants. And the mere fact that The Times has already produced *some* responsive discovery that bears on OpenAI's requests does not relieve The Times of producing additional discovery. *See, e.g.*, *Walsh Constr. Co. v. Chicago Explosive Servs., LLC*, 2016 WL 3520190, at *2 (N.D. Ind. June 28, 2016) (rejecting the notion that "any overlap in subject matter" renders discovery request "unreasonably cumulative or duplicative"); *Pulsecard, Inc. v. Discover Card Servs., Inc.*, 1996 WL 397567, at *5 (D. Kan. July 11, 1996) (similar).

Regardless, the "audience reports" relied on by The Times do not suffice. *See* Ex. B at 6. The Times has produced a handful of "audience" presentations that aggregate trends in The Times's audience at a high level. Crucially, these reports do not address each of the factors identified in OpenAI's requests. Documents demonstrating that the source of The Times's alleged loss is the rise of news aggregators and social media platforms, for example, or the decline of print media—rather than ChatGPT—bear directly on factor four. *See, e.g.*, *Oracle*, 593 U.S. at 35 (courts must consider "the source of the [alleged] loss"). Further, OpenAI's requests seek the contemporaneous analyses, internal emails, memoranda, and communications in which The Times employees actually discussed OpenAI's products in relation to those particular competitive factors. None of that material is captured in high-level audience presentations.

Of course, to the extent that The Times has *no* additional responsive documents, then it should make that representation. In lieu of such a representation, The Times cannot assert that its prior production suffices.

### B. The requested discovery is consistent with the Court's discovery orders.

The Times complains that the Court has "previously denied" OpenAI's requested discovery. Ex. B at 6. This position misinterprets the Court's prior orders. In ECF 82, the Court denied OpenAI's requests for discovery into factors that affected The Times's revenues, subscriptions, and traffic, ***to the extent*** that the requested documents and communications did ***not*** consider those factors alongside OpenAI's products and services. *See id.* at 9. In so ruling, the Court expressly relied on the fact that The Times has agreed to produce "analyses and reports regarding whether decreases in traffic to Times websites, if any, are attributable to GPT services *versus other market forces and factors*." *Id.* (emphasis in original). As the Court explained, "[t]o measure [The Times's] particular harm, ***relevant evidence examines whether defendants' use, as opposed to some other factor, caused the particular harm***." *Id.* (emphasis added).

Finally, to the extent that The Times contends that ECF 82 permitted discovery regarding The Times's "traffic" but not discovery regarding The Times's "subscriptions and revenues," that contention should be rejected. Judge Stein's Order did not limit the production of such

analyses to those related to traffic. Instead, Judge Stein simply acknowledged that The Times had already agreed to produce such analyses for traffic. ECF 82 at 9. It is consistent with both the letter and the spirit of that ruling to require production of analyses addressing subscriptions and revenues as well. As reflected by The Times's own allegations, analyses of The Times's traffic, subscriptions, and revenues are inextricably intertwined.[5] Excluding the latter categories would arbitrarily truncate discovery, frustrate the purpose of the requests, and deprive OpenAI of evidence directly relevant to The Times's alleged damages and theory of harm. The Times's efforts to do so should be rejected.

| KEKER, VAN NEST & PETERS LLP[6] | LATHAM & WATKINS LLP | MORRISON & FOERSTER LLP |
|---|---|---|
| */s/ Paven Malhotra* | */s/ Elana Nightingale Dawson* | */s/ Rose Lee* |

---

[5] *See, e.g.*, Sec. Am. Compl. ¶ 45 (alleging that "traffic is a key source of advertising revenue and helps drive future subscriptions to The Times"); *see also id.* at ¶ 164 ("Defendants' unlawful conduct threatens to . . . reduc[e] the subscription, advertising, licensing, and affiliate revenues that fund The Times's . . . groundbreaking journalism.").

[6] All parties whose electronic signatures are included herein have consented to the filing of this document.

3080916