

October 14, 2025

**VIA ECF**

Hon. Ona T. Wang
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

cc: *All Counsel of Record (via ECF)*

> Re:  **<u>Discovery dispute concerning The Times's refusal to produce evidence of OpenAI's allegedly-infringing and harmful outputs</u>**
> *In re OpenAI Copyright Infringement Litigation*, No. 1:25-md-03143-SHS-OTW
> This Document Relates to: *NYT v. Microsoft et al.*, No. 1:23-cv-11195-SHS-OTW

Dear Judge Wang:

OpenAI moves to compel The Times to produce any outputs which The Times alleges infringe its Asserted Works or cause market harm. The Times has made direct and contributory copyright claims predicated on allegations that outputs generated using OpenAI products infringe its Asserted Works. SAC, MDL ECF 72 ¶ 170 (OpenAI has directly infringed "[b]y disseminating generative output[s] containing copies and derivatives of Times Works.") & ¶ 186 (OpenAI is secondarily liable "to the extent an end-user may be liable as a direct infringer based on output[s]."). It has also suggested that "pink-slime organizations" use OpenAI's products to "flood the market" with "low-quality AI generated news content" that diverts Times consumers, even if those "low-quality" outputs do not directly infringe. MDL ECF 173 at 1.

Yet, nearly two years into this litigation, The Times has refused to identify which *specific* outputs are infringing and threatening the market for its Asserted Works. *See, e.g.*, Ex. 2 (Resp. to RFP 406). The Times first claimed this discovery is foreclosed by the Court's ruling with respect to Exhibit J. Not so. This motion does *not* concern expert-manufactured outputs such as those reflected in Exhibit J, which The Times has already confirmed that it will not rely on in this case, including to prove infringement. Ex. 1 (Sept. 12, 2024 Hr'g Tr.) at 59:8-11. Indeed, the Second Circuit and Judge Stein have held that The Times cannot rely on expert-manufactured outputs to prove liability. *See Matthew Bender & Co., Inc. v. W. Pub. Co.*, 158 F.3d 693, 706 (2d Cir. 1998); NYT ECF 514 at 16.

3161302

Case 1:23-cv-11195-SHS-OTW    Document 928    Filed 10/14/25    Page 2 of 4



Next, The Times claimed that pre-existing search terms resolve this dispute. They do not. The search terms The Times identified were crafted to identify *custodial communications* regarding infringement and harm, not to identify the actual outputs upon which The Times's claims are based.

Finally, and for avoidance of doubt, this motion does not concern user outputs in OpenAI's possession, which are the subject of negotiations with respect to sampling. This motion seeks any *other* outputs which The Times alleges infringe the Asserted Works or cause market harm. Simply put, The Times should produce those *other* outputs during fact discovery. Indeed, even assuming such outputs will be discussed in expert reports, "data for an expert report should be gathered during fact discovery." *City of Almaty, Kazakhstan v. Ablyazov*, No. 1:15-cv-05345 (KHP) (AJN), 2019 WL 275701, at *2 (S.D.N.Y. Jan. 22, 2019) (citation omitted). Holding otherwise "would mean that fact discovery could continue long after the close of fact discovery, so long as such discovery were made for purposes of developing expert reports." *Id.*

OpenAI is prejudiced by The Times's refusal: absent a clear identification, OpenAI cannot question Times witnesses regarding the specific outputs at issue, cannot adduce evidence proving that the allegedly-infringing outputs only copy unprotected elements of the Asserted Works, cannot investigate The Times's market harm allegations with respect to "pink slime" outputs, and cannot conduct myriad additional discovery and expert tasks. The Times should be ordered to either confirm no such outputs exist or else to produce them during the fact discovery period.

## I.   The output discovery is relevant and not unduly burdensome.

The specific outputs which The Times alleges infringe its Asserted Works and cause market harm are not merely "relevant" to The Times's copyright infringement claims. They underlie essential elements of those claims and OpenAI's fair use defense.

The Times "bears the burden of proving [copyright] infringement." *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 683 (2014). The Times will attempt to meet that burden on its *training* claims by showing that OpenAI copied its articles during training. But for the *output* claims, The Times must separately establish that specific outputs contain material that is "substantially similar to the protectible expression in" the Asserted Works. *Williams v. Crichton*, 84 F.3d 581, 587 (2d Cir. 1996). Similarly, to prove that OpenAI is secondarily liable for its users' creation of infringing outputs (SAC ¶¶ 185–87), The Times "must first prove that direct infringement . . . occurred by showing . . . unauthorized infringement of its protected material[.]" *Arista Records, Inc. v. Mp3Board,Inc.*, No. 00 CIV.4660(SHS), 2002 WL 1997918, at *3 (S.D.N.Y. Aug. 29, 2002) (Stein, J.).

In other words, The Times cannot prevail on its output claims without proffering evidence that OpenAI's products have generated infringing outputs. Practically, neither the Court nor a jury can conduct the "detailed viewing . . . of the works" necessary to determine substantial similarity without knowing what outputs are at issue. *See Muller v. Twentieth Century Fox Film Corp.*, 794

3161302



F. Supp. 2d 429, 441 (S.D.N.Y. 2011); NYT ECF 514 at 40-42 (analyzing CIR's example outputs and holding that none are infringements).

These outputs are also critically relevant to the fourth fair use factor and damages because the Times has alleged that infringing outputs cause it great harm. See SAC ¶ 161. The Times has also signaled that it may pursue a free-floating market harm theory not tied to specific infringing outputs, but rather to broader allegations that "pink slime organizations" harm The Times by "flood[ing] the market with low-quality . . . content." MDL ECF 173. This theory is inconsistent with hornbook copyright law. See Authors Guild v. Google, Inc., 804 F.3d 202, 223 (2d Cir. 2015) (Factor four "focuses on whether the *copy* brings to the marketplace a competing substitute[.]") (emphasis added). But, to the extent The Times asserts this theory, it must produce the specific "pink slime" outputs at issue so that OpenAI can test The Times's assertions in discovery.

The Times has not argued that responding to this discovery is unduly burdensome. Instead, The Times has claimed that previously-agreed upon search terms resolve this issue. Ex. 3 (10/10/25 Muttalib email) at 2-3. However, it is undisputed that those search terms were crafted to identify *communications* related to Defendants' alleged infringement and The Times's allegations of harm in the ESI files of The Times's custodians. See id. It would make little sense to hunt for the actual outputs The Times intends to rely on in the custodial files of a handful of high-level executives using search terms.[1] OpenAI never agreed that such a search would suffice.

## II. The Times should not be permitted to defer production of allegedly-infringing outputs.

The Times also should not be permitted to delay responding to this basic and essential discovery.

Again, this motion has nothing to do with expert-generated outputs, upon which The Times has already said it will not rely at "summary judgment or at trial." Ex. 1 (Sept. 12, 2024 Hr'g Tr.) at 59:8-11. Indeed, The Times cannot rely on any expert-manufactured outputs–including those generated for Exhibit J, as part of the December 2024 model inspection, or in any other context–to prove infringement. See Matthew Bender, 158 F.3d at 706 (dismissing contributory infringement claim where plaintiff "ha[d] failed to identify any primary infringer, other than . . . [its] counsel"); NYT ECF 514 at 16. The Times's consultants need not be given more time to manufacture allegedly-infringing outputs that, in any event, cannot form the basis of The Times's claims.

---

[1] For example, the term "(*GPT* OR OAI OR "Open AI" OR OpenAI OR Bing OR Copilot OR Azure) AND (reproduc* OR display* OR distrib* OR copy* OR copie* OR regurgitat* OR memoriz* OR generat* OR infring* OR verbatim OR quot* OR publish*)" might hit on discussions regarding infringement, but would not hit on actual copies of the Asserted Works.



For similar reasons, The Times's ongoing efforts to take discovery regarding user outputs in OpenAI's possession does not foreclose the discovery sought here. OpenAI herein requests any outputs upon which The Times intends to rely that are *separate* from the ones they hope to discover as part of the user data process. If no such outputs exist, The Times can simply say so. But, it cannot buy itself time until expert discovery or later to produce these separate outputs without risking preclusion. *See* Fed. R. Civ. P. 37(c)(1).

This is especially true given that, as Judge Stein recently acknowledged, the substantial similarity inquiry here is not so "technical" that expert testimony on that issue is necessary. *Freeman v. Deebs-Elkenaney*, No. 22-CV-02435 (LLS) (SN), 2024 WL 3634738, at *2 (S.D.N.Y. Aug. 1, 2024); Ex. 4 (Oct. 8, 2025 Hr'g Tr.) at 43:9-13. But even if experts are to opine on the allegedly-infringing outputs, for any purpose, "data for an expert report should be gathered during fact discovery." *City of Almaty,* 2019 WL 275701, at *2. "It would make little sense to have separate cutoff dates for fact and expert discovery if discovery of any information which might form the basis for expert opinions could be deferred to the 'expert discovery' phase." *Ruiz-Bueno v. Scott*, No. 2:12-CV-0809, 2014 WL 576400, at *3 (S.D. Ohio Feb. 12, 2014).

<div align="center">***</div>

The Times must either produce, during fact discovery, the outputs it intends to rely on (separate of those it hopes to find in OpenAI's user data) or confirm they do not exist.

<div align="center">Respectfully,</div>

| KEKER, VAN NEST & PETERS LLP[2] | LATHAM & WATKINS LLP | MORRISON & FOERSTER LLP |
|---|---|---|
| */s/ Sarah Salomon* | */s/ Margaret Graham* | */s/ Rose S. Lee* |

---

[2] All parties whose electronic signatures are included herein have consented to the filing of this document.

3161302