**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: | 25-md-3143 (SHS) (OTW) |
| OPENAI, INC., COPYRIGHT INFRINGEMENT LITIGATION | Hon. Sidney H. Stein<br>Hon. Ona T. Wang |
| This Document Relates To: | |
| *NYT v. Microsoft et al., No. 23-cv-11195* | |

**MEMORANDUM OF LAW IN SUPPORT OF OPENAI DEFENDANTS'**
**OBJECTION TO DISCOVERY ORDER AT ECF NO. 604**
**<u>PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 72(A)</u>**

# TABLE OF CONTENTS

I.     INTRODUCTION ....................................................................................................1

II.    BACKGROUND .....................................................................................................4

    A.    The Times alleges that OpenAI's LLMs will decimate its business. .....................4

    B.    The Times uses OpenAI's LLMs through ChatExplorer.........................................5

    C.    The Times agrees to produce evidence of its use of OpenAI's LLMs. ..................5

    D.    Notwithstanding its previous discovery commitments, The Times reneges
        on its offer to produce ChatExplorer logs. .............................................................6

    E.    OpenAI's motion to compel production of the ChatExplorer logs..........................6

    F.    The Order denies Defendants' motions to compel ChatExplorer logs. ..................7

III.    STANDARD OF REVIEW ......................................................................................8

IV.    ARGUMENT ...........................................................................................................8

    A.    The Order clearly erred by holding that The Times's uses of OpenAI's
        LLMs are irrelevant to fair use. .............................................................................8

        1.    The ChatExplorer logs are relevant to fair use factor one. .........................9

            a.    The Order is contrary to binding Supreme Court and
                Second Circuit precedent. .................................................................9

            b.    The Order permits The Times's ongoing efforts to paint an
                artificially limited picture of the transformative uses of
                OpenAI's LLMs..............................................................................12

            c.    The Order ignores that The Times itself put downstream
                uses at issue...................................................................................14

            d.    The Order rests on false premises regarding what The
                Times has produced regarding its use of OpenAI's LLMs............14

        2.    The ChatExplorer logs are relevant to fair use factor four. ......................15

            a.    Harm to The Times .........................................................................15

            b.    Public benefit .................................................................................18

    B.    The Order clearly erred by holding that The Times's uses of OpenAI's
        LLMs are irrelevant to Defendants' substantial non-infringing use defense.........20

    C.    The Order clearly erred by holding that production of the ChatExplorer
        logs was not proportionate to the needs of the case...............................................21

D.    The Order clearly erred by denying OpenAI the opportunity to depose a
Rule 30(b)(6) witness regarding NYT's destruction of ChatExplorer logs. ..........23

V.    CONCLUSION ...................................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Authors Guild, Inc. v. HathiTrust,*
  755 F.3d 87 (2d Cir. 2014)...........................................................................11, 17

*Authors Guild v. Google,*
  804 F.3d 202 (2d Cir. 2015)....................................................................10, 11, 12

*Campbell v. Acuff-Rose Music, Inc.,*
  510 U.S. 569 (1994).................................................................................11, 12

*Cartoon Network LP v. CSC Holdings, Inc.,*
  536 F.3d 121 (2d Cir. 2008).............................................................................21

*Condit v. Dunne,*
  225 F.R.D. 100 (S.D.N.Y. 2004) .......................................................................16

*Coventry Cap. U.S. LLC v. EEA Life Settlements Inc.,*
  333 F.R.D. 60 (S.D.N.Y. 2019) ..........................................................................8

*Equal Emp. Opportunity Comm'n v. M & T Bank Corp.,*
  2018 WL 11631436 (S.D.N.Y. May 4, 2018) .................................................21, 22

*Forte v. Liquidnet Holdings,*
  2014 WL 12775220 (S.D.N.Y. Dec. 2, 2014) ..................................................9, 19

*Google LLC v. Oracle Am., Inc.,*
  593 U.S. 1 (2021)............................................................................... *passim*

*Hachette Book Grp., Inc. v. Internet Archive,*
  115 F.4th 163 (2d Cir. 2024) .......................................................................11, 12

*John Wiley & Sons, Inc. v. Book Dog Books, LLC,*
  298 F.R.D. 184 (S.D.N.Y. 2014) ......................................................................22

*Sega Enters. Ltd. v. Accolade, Inc.,*
  977 F.2d 1510 (9th Cir. 1992) .........................................................................19

*Sony Comp. Ent., Inc. v. Connectix Corp.,*
  203 F.3d 596 (9th Cir. 2000) ..........................................................................11

*Sony Corp. of Am. v. Universal City Studios, Inc.,*
  464 U.S. 417 (1984)...................................................................................17, 21

iii

*Synopsys, Inc. v. Real Intent, Inc.*,
    2024 WL 5364480 (N.D. Cal. Aug. 26, 2024) ........................................................................10

*Teradyne, Inc. v. Astronics Test Sys., Inc.*,
    2025 WL 341828 (9th Cir. Jan. 30, 2025) ..............................................................................11

*A.V. ex rel. Vanderhye v. iParadigms, LLC*,
    562 F.3d 630 (4th Cir. 2009) ..................................................................................................11

**Federal Statutes**

17 U.S.C. § 107 ...............................................................................................................................8

**Rules**

Fed. R. Civ. P. 26 ...................................................................................................................9, 16, 19

Fed. R. Civ. P. 30(b)(6) ...............................................................................................................6, 23

Fed. R. Civ. P. 72 ...............................................................................................................................8

## I.    INTRODUCTION

OpenAI objects to Magistrate Judge Wang's Order ("the Order") allowing The Times to withhold discovery into its extensive use of ***OpenAI's*** large language models ("LLMs"). OpenAI recognizes that objections to a magistrate judge's discovery order are reserved for rare circumstances; this is one of them. If allowed to stand, the reasoning set forth in the Order will prevent the development of a complete record and risks injecting reversible error into the case.

Despite alleging that OpenAI's LLMs threaten to destroy its journalism business, The Times has used those same LLMs for a wide variety of tasks for years and continues to do so today. The Times's many and varied uses of OpenAI's LLMs are powerful party admissions that OpenAI's LLMs are transformative. They also show that these LLMs can be (and are) used to provide significant public benefits—and, contrary to The Times's assertions in its Complaint, can be (and are) used to benefit The Times itself. Evidence of The Times's use of OpenAI's LLMs is therefore critical to the fair use inquiry in this case, and The Times should not be permitted to shield this evidence from discovery. *See Google LLC v. Oracle Am., Inc.*, 593 U.S. 1 (2021) (downstream uses of the defendant's tool are relevant to fair use factors one and four).

The Times uses OpenAI's LLMs via an internal Times interface called ChatExplorer. OpenAI sought production of The Times's ChatExplorer logs, which reflect the inputs Times employees entered into OpenAI's LLMs via ChatExplorer and the outputs they received. The Times initially agreed to produce at least a subset of these logs, but later, when confronted with undisputed evidence that The Times had deleted some of the log data (including after the litigation had been filed), reneged on that commitment and refused to produce ***any*** logs. Judge Wang denied OpenAI's motion to compel production of the logs, and in so ruling, misinterpreted fair use law in a manner that threatens to unfairly and prejudicially limit OpenAI's ability to defend itself against The Times's claims, and to prevent the Court or a jury from resolving this case on a full and accurate evidentiary record. Indeed, the ramifications of the Order reverberate far beyond the ChatExplorer logs. Since the Order issued, The Times has repeatedly cited its erroneous reasoning to renege on prior discovery commitments and resist discovery into its other

uses of OpenAI's LLMs. Specifically, The Times has already relied on the Order to refuse

discovery into *at least* ████ *other tools* powered by OpenAI's LLMs that The Times uses.

The Order is contrary to law and should be set aside for three reasons.

*First*, the Order erroneously holds that the ChatExplorer logs are irrelevant to fair use

factor one because "the relevant inquiry under the first fair use factor concerns <u>defendant's use</u>

<u>of plaintiff's copyrighted material</u>, not a downstream use of defendant's allegedly infringing

material by a copyright-holder plaintiff." ECF 604 (the "Order") at 6-7 (emphasis in original).

But "defendant's use" here—OpenAI's (alleged) copying of The Times's asserted works—was

training its LLMs, which are new general-purpose *tools* that are meant to be used by others. The

new purposes and capabilities unlocked by OpenAI's LLMs are a key part of what makes them

so spectacularly transformative. *See Google*, 593 U.S. at 30 (considering downstream uses of the

defendant's tool as relevant to fair use factor one). The logs are uniquely powerful evidence of

those new purposes and capabilities.

The Order compounds the error by holding that The Times need not produce the logs

because The Times has already admitted that it uses OpenAI's LLMs, thereby rendering the logs

"duplicative" and "not relevant." Order at 7. But the details in the logs are necessary to show the

*specific* purposes and transformative capabilities of those LLMs. Moreover, The Times itself has

put log outputs at issue in this case. It has *repeatedly* argued that OpenAI's LLMs are *not*

transformative because others can allegedly use the LLMs to create outputs that compete with

the asserted works. Indeed, The Times compelled OpenAI to "preserve and segregate all output

log data," ECF 33, on the grounds that downstream use by ChatGPT users of the exact same

LLMs The Times uses was "*particularly germane to the fair use analysis*, including the first

factor (transformative use) and fourth factor (effect on the potential market)." ECF 212 at 6

(emphasis added). The Times should not be permitted to invade the privacy of non-parties and

compel burdensome discovery on this topic from OpenAI to pursue its claims, but then refuse to

produce its own log data when relevant to OpenAI's defenses. This one-sided approach to

discovery is prejudicial to OpenAI (and its users) and will result in a highly misleading record.

**Second**, the Order erroneously concludes that the ChatExplorer logs are irrelevant to fair use factor four because the benefits The Times receives from OpenAI's LLMs are "at best ancillary to the fair use analysis" and "not . . . probative of any public benefit[.]" Order at 7. But The Times itself has **repeatedly** alleged in this case that its journalism provides a vital public benefit and that OpenAI's LLMs threaten to destroy that benefit. *See, e.g.*, ECF 72 (Sec. Am. Compl.) ("Compl.") ¶¶ 1-2 (alleging that The Times has "given the world" a vital journalism service "for more than 170 years," and that OpenAI "threatens The Times's ability to provide that service"). And Class Plaintiffs have represented to the Court that "***the only way*** to be able to test how [defendants' use] impacts the market" under fair use factor four "***is to look at how the model actually works in the market***." Ex. A at 57:18-20 (Oct. 8, 2025, Hr'g Tr.) (emphasis added).

Having claimed that OpenAI's LLMs are a dire threat to its business, The Times should not be permitted to withhold evidence showing how The Times has used OpenAI's LLMs to benefit its business and the public at large through its journalism. Moreover, many of the ways The Times uses OpenAI's LLMs—███████████████████████████████████ ███████████████████████████—are similar to the ways in which the general public uses OpenAI's LLMs, which is clearly relevant under Supreme Court precedent. *Google*, 593 U.S. at 35 ("[W]e must take into account the public benefits the copying will likely produce."). The Order incongruously acknowledges that downstream uses that benefit the public are relevant to factor four, but holds that critical evidence of downstream uses in the ChatExplorer logs are somehow irrelevant because they come from The Times. The fact that evidence comes from The Times—the party who filed this lawsuit—makes the evidence more relevant here, not less.

**Third**, the Order erroneously holds that production of the logs would "not be proportional to the needs of this case" because of the purported burden to The Times of producing them. Order at 12. Specifically, the Order "assume[d]" it would take The Times "nearly 3 months" and "cost upwards of $1 million" to produce the ChatExplorer logs. *Id.* at 11-12. But there is no support for these numbers in the record. The Times did not submit a declaration or any other

evidence on this point, much less with these numbers, nor did it even attempt to substantiate or quantify the burden in its multiple briefs on this issue.

The Order's proportionality ruling stands in stark contrast to prior motions in this case. For example, when The Times demanded that OpenAI preserve ***tens of billions*** of ChatGPT logs of ***hundreds of millions of users*** across the world, OpenAI submitted sworn declarations by OpenAI personnel explaining the reasons why this request would come at an enormous cost— including tens of millions of dollars and months of engineering time. *See* ECF 64-4 ¶ 8. And when The Times demanded that OpenAI make available ***over one hundred million*** ChatGPT logs for expert analysis, OpenAI submitted a detailed, 7-page declaration from a member of its technical staff that explained each step of the sampling process in order to illustrate why retrieving such a vast quantity of records would be impracticable. *See* ECF 435-1. Only after OpenAI submitted this detailed testimony did Judge Wang decline to order the relief that The Times requested. The Times, however, submitted nothing to justify the purported burden of producing a minuscule fraction (80,000 logs) of what it sought from OpenAI. For this additional reason, the Order is clear error.

## II.    BACKGROUND

### A.    The Times alleges that OpenAI's LLMs will decimate its business.

The Times alleges that OpenAI's products threaten to destroy its business. It asserts that it has "given the world" a vital journalism service "for more than 170 years," and that OpenAI "threatens The Times's ability to provide that service." Compl. at ¶¶ 1-2. The complaint is rife with similar allegations of the existential threat that OpenAI's technology poses.[1] The Times

---

[1] *See, e.g.*, *id.* at ¶ 5 (alleging that OpenAI's technology threatens to "undermine and damage The Times's relationship with its readers and deprive The Times of subscription, licensing, advertising, and affiliate revenue"); *id.* at ¶ 164 (alleging that OpenAI threatens The Times's "ability to continue producing its current level of groundbreaking journalism").

even alleges that OpenAI's technology could destroy journalism itself.[2]

### B.    The Times uses OpenAI's LLMs through ChatExplorer.

The Times filed this case in December 2023. Although The Times publicized its Complaint with much fanfare, it omitted one important fact. One month earlier, in November 2023, The Times had launched an internal tool to its employees called "ChatExplorer" that runs on OpenAI's LLMs. *See* Ex. B (NYT_00765599); Ex. C (NYT _00696454). The Times developed ChatExplorer so that Times employees could use OpenAI's LLMs to "advance [The Times's] journalism and essential subscription strategy." Ex. C (NYT _00696454). As The Times instructed its employees, ChatExplorer was an interface that allowed them to prompt OpenAI's LLMs, and it looked and "work[ed] a lot like ChatGPT[.]" Ex. D (NYT_00207181). The Times appears to have encouraged its employees to use ChatExplorer to "enter prompts to send to OpenAI," and celebrated ChatExplorer as a "great way" to "unlock a lot of experimentation with GenAI." *Id.* For example, in what appears to be a ChatExplorer demo dated November 2023, The Times walked employees step-by-step through "common use cases"—including, for example, how to use ChatExplorer to develop recipes for NYT Cooking and analyze The Times' repositories of NYT Cooking content. *Id.*

### C.    The Times agrees to produce evidence of its use of OpenAI's LLMs.

The Times long ago committed to produce discovery regarding its use of OpenAI's LLMs, and used that promise to avoid discovery into its use of other third-party GenAI tools. Specifically, in September 2024, The Times argued that discovery into third-party GenAI tools was not necessary because The Times had already agreed "to produce . . . documents regarding The Times's use of both OpenAI and Microsoft's generative AI tools in reporting or presentation of content." NYT ECF 429 at 1. Judge Wang expressly relied on The Times's representation to deny OpenAI's requested discovery into third-party GenAI tools. *See* NYT ECF 344 at 1 n.1.

---

[2] *See id.* at ¶ 47 ("If The Times and other news organizations cannot produce and protect their independent journalism, there will be a vacuum that no computer or artificial intelligence can fill."); *id.* at ¶ 48 (alleging that if "less journalism" is "produced, . . . the cost to society will be enormous").

The Times subsequently reiterated its discovery commitments in briefing before this Court, in which it stated "where Defendants' technology is used to aid Times reporting or its presentation of content, ***The Times has already agreed to produce [such] documents to OpenAI***") (emphasis added). NYT ECF 429 at 1; *see also id.* at 5, 13. And, like Judge Wang, this Court expressly relied on The Times's representations to deny OpenAI's motion. *See* ECF 82 at 10 ("The Times has already agreed to produce documents relating to its use of defendants' products.").

**D.     Notwithstanding its previous discovery commitments, The Times reneges on its offer to produce ChatExplorer logs.**

OpenAI requested that The Times produce its ChatExplorer logs on February 10, 2025. *See* Ex. E at 2 (Feb. 10, 2025, Ltr. from M. Deamer). The Times initially agreed to produce at least a subset of those ChatExplorer logs. *See* Ex. F at 5 (July 24, 2025, Correspondence from M. Deamer); *id.* at 14 (March 25, 2025, Correspondence from A. Muttalib). The parties were in the midst of negotiating the extent of The Times's production when OpenAI noticed some discrepancies in The Times's log counts. *See id.* at 10-11 (May 30, 2025, Correspondence from M. Deamer). OpenAI surfaced these discrepancies in May 2025, *see id.*, and The Times informed it that, several months prior, The Times had ***permanently destroyed*** its ChatExplorer logs from the November 2023-March 2024 timeframe, *i.e.*, in the month leading up to filing the lawsuit and the critical months immediately ***after*** the lawsuit was filed. *See id.* at 8 (June 24, 2025, Correspondence from K. Peaslee). It was only after this destruction surfaced that The Times changed course and took the position that ***none*** of its ChatExplorer logs were relevant to the case. *See id.* The Times refused to produce any ChatExplorer logs, including the 82,149 logs it retained for the period between March 2024 and June 27, 2025. *See id.*; ECF 417 at 2. The Times continues to use ChatExplorer and to generate additional logs even today. *See* Order at 1 n.2.

**E.     OpenAI's motion to compel production of the ChatExplorer logs.**

On July 29, 2025, OpenAI moved to compel production of The Times's ChatExplorer logs and requested a four-hour Rule 30(b)(6) deposition regarding The Times's data

preservation. *See* ECF 377. Microsoft also moved to compel, arguing that the ChatExplorer logs are relevant to Defendants' substantial noninfringing use defense. *See* ECF 396. Judge Wang heard arguments on the motion during the Court's August 12, 2025, omnibus discovery status conference. Following the hearing, the Court ordered supplemental briefing on the relevance of the ChatExplorer logs, as well as the proportionality and burden associated with their production. *See* ECF 459 (Aug. 15, 2025, Order). The parties filed supplemental briefs on August 22, 2025. *See* ECF 472 (OpenAI Suppl. Br.); ECF 477 (The Times Suppl. Br.).

> **F.    The Order denies Defendants' motions to compel ChatExplorer logs.**

The Court denied Defendants' motions to compel on September 19, 2025. *See* ECF 604 (Order). The Court held that the logs were irrelevant, and that the burden imposed on The Times to produce them was not proportionate to the needs of the case. *See id.* at 4-11.

As to fair use factor one, which considers the "purpose and character of the use," the Court held that "the relevant inquiry under the first fair use factor concerns a <u>defendant's use of a plaintiff's copyrighted material</u>, not a downstream use of defendant's allegedly infringing material by a copyright-holder plaintiff." *Id.* at 5-6 (citing *New York Times Co. v. Microsoft Co.*, 757 F. Supp. 3d 594, 597 (S.D.N.Y. 2024)) (emphasis in original). The Court further held that because The Times admitted that it "uses a version of Defendants' LLMs through ChatExplorer," the logs were "at best, duplicative evidence" and "are thus not relevant." *Id.* at 7.

As to fair use factor four, which considers the "effect of the use," the Court held that the logs were irrelevant to market harm because, "NYT cannot be a competing substitute for itself or deprive itself of revenue." *Id.* at 8. The Court stated that "[p]rivate monetary benefits to a copyright holder" such as The Times "is, at best, ancillary to the fair use analysis," and that The Times's use "would be probative only of a potential benefit to [The Times] and would not be probative of any <u>public</u> benefit." *Id.* at 7 (emphasis in original).

The Court also concluded that that logs were irrelevant to Defendants' substantial non-infringing use defense, "because <u>NYT is the copyright holder and cannot infringe its own copyrights</u>," and "[w]hat is relevant is how <u>other consumers</u> are using Defendants' LLMs, and

whether <u>those consumers are using Defendants' LLMs for substantially non-infringing purposes or not.</u>" *Id.* at 11 (emphasis in original).

The Court also found that production of the ChatExplorer logs was not proportional to the needs of the case. *See id.* at 11-12. Even though The Times failed to submit a declaration or even attempt to quantify its purported burden to produce the ChatExplorer logs, the Court "assume[d]" that The Times would need to spend 1,333 hours to review the ChatExplorer logs, and that it would take three months and "cost upwards of $1 million for the privilege review alone." *Id.* at 12. Based on these unsupported assumptions, the Court found the discovery not proportionate.

Finally, the Court also denied OpenAI's request for a deposition regarding The Times's destruction of over five months of ChatExplorer logs. *See id.* at 12-13.

## III.    STANDARD OF REVIEW

A district court may "modify or set aside" any part of a magistrate judge's non-dispositive order "that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). An order is "contrary to law" if it "fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Coventry Cap. U.S. LLC v. EEA Life Settlements Inc*., 333 F.R.D. 60, 64 (S.D.N.Y. 2019) (quoting *R.F.M.A.S., Inc. v. So*, 748 F. Supp. 2d 244, 248 (S.D.N.Y. 2010)). An order is "clearly erroneous" if it provides the reviewing court a "definite and firm conviction that a mistake has been committed." *Id.*

## IV.    ARGUMENT

### A.    The Order clearly erred by holding that The Times's uses of OpenAI's LLMs are irrelevant to fair use.

Fair use "permits courts to avoid rigid application of the copyright statute," so that the copyright laws do not "stifle the very creativity" that they were "designed to foster." *Google*, 593 U.S. at 18 (quoting *Stewart v. Abend*, 495 U.S. 207, 236 (1990)). The Supreme Court has instructed that fair use is a "flexible" doctrine, and that the four factors enumerated at 17 U.S.C. § 107 "are not exhaustive." *Google*, 593 U.S. at 18. In particular, the Court has emphasized that the fair use inquiry requires "judicial balancing, depending upon relevant circumstances" and

consideration of "significant changes in technology." *Id.* (quotation omitted).

Rule 26 permits discovery "if there is '***any possibility*** that the information sought may be relevant to the subject matter of the action.'" *Forte v. Liquidnet Holdings*, Inc., 2014 WL 12775220, at *1 (S.D.N.Y. Dec. 2, 2014) (emphasis added) (quoting *Daval Steel Prod., a Div. of Francosteel Corp. v. M/V Fakredine*, 951 F.2d 1357, 1367 (2d Cir. 1991)). Fair use is the core issue in this landmark copyright case, and the ChatExplorer logs are directly relevant to fair use.

### 1.    The ChatExplorer logs are relevant to fair use factor one.

The Order's conclusions under fair use factor one should be set aside for at least four reasons: (a) they are contrary to binding Supreme Court and Second Circuit precedent; (b) they permit The Times's ongoing efforts to improperly and prejudicially limit and manipulate the discovery record of the transformative uses of OpenAI's LLMs; (c) they ignore that The Times itself has put downstream uses at issue and persuaded Judge Wang to compel OpenAI to preserve billions of ***third-party*** output logs; and (d) they rest on false premises regarding what The Times has agreed to produce and has produced regarding its use of OpenAI's LLMs.

### a.    The Order is contrary to binding Supreme Court and Second Circuit precedent.

Under fair use factor one, courts evaluate whether the defendant's use is transformative, such that it "adds something new and important" to the asserted work. *Google*, 593 U.S. at 29 (quoting *Campbell v. Acuff-Rose Music, Inc*., 510 U.S. 569, 577 (1994)). The Order concludes that the ChatExplorer logs are irrelevant to this inquiry because The Times's use of OpenAI's LLMs are "a downstream use of defendant's allegedly infringing material." Order at 5-6. According to the Order, the only "use" relevant to evaluating whether OpenAI's use is "transformative" is ***OpenAI's*** use of The Times's works. *Id.* at 6. This conclusion is contrary to Supreme Court and Second Circuit precedent, and fails to account for the fact that the purpose of OpenAI's alleged use of The Times's works was to create ***tools*** that can be used by others.

 In *Google*, the Supreme Court found that Google's use of Oracle's Sun Java API to create the Android platform was transformative. 593 U.S. at 29. In reaching that conclusion, the

Court relied on the fact that Android was a "highly creative and innovative tool for a smartphone environment" that could be used by engineers and developers. *Id.* at 30. Google built the Android platform so that developers could use it to create new applications for Android-based smartphones. *Id.*; *see also id.* at 7 ("A platform provides the necessary infrastructure for computer programmers to develop new programs and applications. One might think of a software platform as a kind of factory floor where computer programmers (analogous to autoworkers, designers, or manufacturers) might come, use sets of tools found there, and create new applications for use in, say, smartphones.").

The Supreme Court did not limit its factor one inquiry to defendant ***Google's*** use of Oracle's APIs to create the Android platform. Instead, the myriad of ways in which ***developers***—downstream users of Google's ultimate product—could use the Android platform to "create new products" and applications and "expand the use and usefulness of Android-based smartphones" is what made Google's use transformative. *Id.* at 30. As the Court put it, "[t]o the extent that Google used parts of the Sun Java API to create a new platform that could be readily ***used by programmers***, its use was consistent with that creative 'progress' that is the basic constitutional objective of copyright itself." *Id.* (emphasis added) *Google* thus confirms that where, as here, the defendant makes a tool to be used by others, the purposes of the tool—as used by others—bear directly on whether the defendant's use is transformative. *See, e.g.*, *Synopsys, Inc. v. Real Intent, Inc.*, 2024 WL 5364480, at *19 (N.D. Cal. Aug. 26, 2024) (concluding that the "effect on end users of the product incorporating the copied material . . . supports a transformative finding" under fair use factor one) (citing *Google*, 593 U.S. at 31). The ChatExplorer logs are uniquely relevant evidence of the purposes and capabilities of OpenAI's LLMs. They are party admissions from The Times, but unlike a generalized admission that The Times uses OpenAI's LLMs, the logs will show exactly ***how*** those LLMs can be and are used for new purposes.

Second Circuit precedent also holds that downstream use of a defendant's tool is relevant to transformative use. For example, in *Authors Guild v. Google, Inc.*, the Circuit concluded that the defendant's scanning of millions of the plaintiff's works was "transformative" because of the

downstream uses it enabled for readers, researchers, and members of the public. 804 F.3d 202, 215 (2d Cir. 2015). Similarly, in *Authors Guild, Inc. v. HathiTrust*, the Circuit concluded that the defendant's use was "quintessentially transformative" because it created a product that could be used by others in a way that had a "different in purpose, character, expression, meaning, and message" than the underlying works. 755 F.3d 87, 97 (2d Cir. 2014). In both cases, the Circuit expressly relied on ***downstream*** use of the defendant's technology.[3] The Order is also irreconcilable with Judge Wang's prior rulings in this case, in which the Court concluded that third-party output logs ***are*** relevant and subject to discovery. ECF 42 at 3 n.5.

The Order cites *Campbell v. Acuff-Rose Music, Inc*., 510 U.S. 569, 579 (1994) and *Hachette Book Grp., Inc. v. Internet Archive*, 115 F.4th 163, 179 (2d Cir. 2024) as support for its conclusion. Order at 6. But ***both cases expressly consider downstream use*** as relevant to fair use factor one. *Campbell* involved a defendant that reproduced a portion of the plaintiff's song in its own music. 510 U.S. at 573. The Court concluded that the defendant's use of that music was transformative because downstream listeners could "perceive[]" the song "as commenting on the original . . . to some degree." *Id.* at 579. In *Hachette*, the Second Circuit engaged in a lengthy analysis of whether the defendant's use was "transformative" because it enabled new efficiencies for downstream users attempting to access the plaintiffs' books. 115 F.4th at 183. The court concluded that the defendant's use was not transformative in part because it "[did] not improve the efficiency of delivering content" to those downstream users. *Id.* (internal quotation and alteration omitted). Neither case stands for the proposition that downstream uses of the accused product are categorically irrelevant.

---

[3] Cases from other circuits have taken the same approach. *See, e.g.*, *Sony Comp. Ent., Inc. v. Connectix Corp*., 203 F.3d 596, 606 (9th Cir. 2000) (finding the defendant's use "transformative" because it "created a new platform" that could be used by consumers to play videogames); *Teradyne, Inc. v. Astronics Test Sys., Inc.*, 2025 WL 341828, at *1 (9th Cir. Jan. 30, 2025) (unpublished) (defendant's use was "transformative in that it enabled customers to continue using their own test program sets . . . on [defendant's] compatibility software"); *A.V. ex rel. Vanderhye v. iParadigms, LLC*, 562 F.3d 630, 640 (4th Cir. 2009) (finding the defendant's use "transformative" because it created a service that could be used by educators to detect plagiarism).

Regardless, fair use is often context-specific, and this case presents unique circumstances that were not present in either *Campbell* or *Hachette*. *Campbell* involved a defendant that reproduced exact portions of the plaintiff's song. 510 U.S. at 573. *Hachette* involved a defendant that scanned and reproduced digital copies of plaintiffs' books in their entirety, and then provided those exact copies to readers for free. 115 F.4th at 164. In both cases, the accused product was a reproduction of at least some protectable aspects of the asserted works. Here, however, OpenAI's LLMs are general-purpose tools that are ***meant to be used by others for a wide variety of purposes, including to create new content***. Given that context, the ways in which others—including The Times—use these tools is far more relevant than in a typical copyright case. *See Google*, 593 U.S. at 21 (fair use must be "applied by courts on a case-by-case basis" and "consider the realities of how technological works are created and disseminated"). That is also why the contents of the ChatExplorer logs are critical: evidence that The Times has used OpenAI's models for new and distinct purposes, and to enable novel capabilities, that further (not hinder) the purposes of copyright will disprove The Times's claim that there is "nothing 'transformative'" about those models. Compl. ¶ 8; *see infra* Sec. IV.A.1.b (discussing The Times's likely uses of ChatExplorer).[4]

        **b.**    **The Order permits The Times's ongoing efforts to paint an artificially limited picture of the transformative uses of OpenAI's LLMs.**

The ChatExplorer logs will provide concrete examples of the new uses unlocked by OpenAI's LLMs. How does the Court know this? ███████████████████████████

███████████████████████████████████████████████████████

███████████████████████ *See* Ex. G (NYT_00207091). ████████

---

[4] And unlike logs generated by third-party users with no involvement in this litigation—whose privacy should not be invaded without good cause—the logs at issue here were generated by a plaintiff who affirmatively chose to bring this lawsuit seeking "billions of dollars in statutory and actual damages." Compl. ¶ 9. Having made that choice, The Times cannot be permitted to withhold and delete evidence admitting that, notwithstanding its litigation position, *id.* ¶ 8, it has used OpenAI's models in a manner that confirms that they "serv[e] copyright's overall objective of contributing to public knowledge." *Authors Guild v. Google*, 804 F.3d at 214 (discussing transformative uses).

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████. *See id.* This is ***just one*** instance
of a much larger trove of evidence of transformative use that The Times refuses to produce in
this case. The Times has likely used ChatExplorer to:

- generate social media materials
- summarize datasets
- proof articles
- respond to reader questions
- translate articles
- transcribe podcasts or audio
- create marketing materials, and
- generate recipes for NYT cooking.

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████ Ex. H (NYT_00832534); Ex. D
(NYT_00207181). ███████████████████████████████████
████ whereas the ChatExplorer logs will reveal the nature and extent of The Times's ***actual*** use.
The Times should be required to produce the latter, because it is relevant under Supreme Court
precedent. *See, e.g.*, *Google*, 593 U.S. at 31 (relying on the "***numerous ways***" that "[t]he record
demonstrates . . . reimplementing an interface can further the development of computer
programs" in finding fair use) (emphasis added). In short, The Times should not be permitted to
create the false impression that OpenAI's technology has minimal new and beneficial uses by
refusing to produce the very evidence that would prove the opposite. *See also id.* at 31 (relying
on evidence that "Sun executives thought that widespread use of the Java programming

language, including use on a smartphone platform, would benefit the company").[5]

### c.    The Order ignores that The Times itself put downstream uses at issue.

The Order also overlooks that ***The Times itself*** put downstream use of OpenAI's technology at issue. The Times's copyright claim is premised on allegations that OpenAI's products can be used in ways that generate infringing outputs and undermine journalism. *See, e.g.*, Compl. ¶¶ 94-123. And ***The Times itself*** has demanded discovery into uses of OpenAI's technology on the grounds that such use is relevant to the fair use analysis, including factor one. For example, The Times requested and received an order compelling OpenAI to "preserve and segregate all output log data," ECF 33—resulting in preservation of ***billions*** of ChatGPT conversations of ***hundreds of millions of users***—on the grounds that downstream use by ChatGPT users was "particularly germane to the fair use analysis, including the first factor (transformative use) and fourth factor (effect on the potential market)." ECF 212 at 6. Similarly, The Times argued that it is entitled to "discovery into the use of OpenAI's generative AI tools to generate pink-slime journalism" because such use "is relevant to fair use factors one and four." ECF 559 at 1. There are numerous other such examples.[6] The Times should not be permitted to argue that downstream uses of OpenAI's LLMs are relevant and must be preserved only to change course when The Times's own downstream use is under the microscope.

### d.    The Order rests on false premises regarding what The Times has produced regarding its use of OpenAI's LLMs.

The Order incorrectly concluded that the ChatExplorer logs would be "duplicative . . . and thus not relevant" because The Times has admitted to using OpenAI's LLMs. Order at 6-7.

---

[5] The Order incorrectly states that "Defendants do not explain how the content of [The Times's] ChatExplorer logs would have any bearing on how the uses of Defendants' LLMs might or might not be transformative or commercial." Order at 6. OpenAI addressed this exact argument—citing specific examples—at pages 2-3 of its supplemental brief. *See* ECF 472.

[6] *See, e.g.*, *id.* at 2 (arguing that discovery into "[w]hether OpenAI's models can and are used to generate substitutive news articles . . .will inform the 'transformative' inquiry on which OpenAI has heavily relied to claim fair use"); *id.* (arguing that "News Plaintiffs are entitled to full discovery into . . . pink-slime uses of OpenAI's products and models").

This is erroneous because, as OpenAI explained in its briefing, ECF 472 at 5, The Times has **refused** to provide concrete evidence or clear admissions on this point. For example, before moving to compel, OpenAI asked The Times to admit to 23 specific ways that The Times used OpenAI's LLMs. *See* Ex. I (NYT R&Os to OAI RFA Set 4). The Times provided the same response to each RFA: it stated that it "cannot provide a straightforward answer" and admitted only that it "**permits**" certain uses of OpenAI's LLMs. *See id.* (emphasis added). This generic "admission" does not excuse production of the logs or render them "duplicative." *Contra* Order at 7.

### 2.    The ChatExplorer logs are relevant to fair use factor four.

The ChatExplorer logs are also relevant to fair use factor four, which considers the harm to the market for the copyrighted work, as well as the "public benefits" of the alleged use. *Google*, 593 U.S. at 36. Only the content of the logs (as opposed to a general admission of "use") will show the specific type and extent of the benefit that OpenAI's LLMs have provided The Times and the public. Without this evidence, the record is incomplete and, likely, misleading.

### a.    Harm to The Times

As noted above, The Times has repeatedly argued that OpenAI's technology threatens its ability to run its business and produce quality journalism.[7] Evidence showing that The Times uses OpenAI's LLMs to benefit its business and improve its journalism is therefore relevant to rebut that claim. The Order does not address this theory of relevance, aside from asserting that "Defendants do not explain how the content of the ChatExplorer Logs would support . . . any conclusion of market harm (or lack thereof)." Order at 7. ***But Defendants addressed this exact argument at pages 3-4 of their supplemental brief,*** see ECF 472, ***as well as page 4 of its motion to compel,*** see ECF 377. As OpenAI explained in both filings, the ChatExplorer logs are likely to

---

[7] *See, e.g.*, Compl. at ¶¶ 1-2 (alleging that OpenAI's technology "threatens The Times's ability to provide" its journalism); *id.* at ¶ 5 (alleging that OpenAI's technology threatens to "undermine and damage The Times's relationship with its readers and deprive The Times of subscription, licensing, advertising, and affiliate revenue"); *id.* at ¶ 164 (alleging that OpenAI threatens The Times's "ability to continue producing its current level of groundbreaking journalism").

provide concrete examples showing that, contrary to The Times's allegations, The Times uses OpenAI's technologies to generate revenue and improve its journalism. The Times should not be permitted to make sweeping claims of harm and destruction of its business and then shield (and delete) from discovery the evidence that would undermine those same claims. *See* Fed. R. Civ. P. 26(b)(1) (defining the scope of discovery by what is relevant to "any party's claim or defense"); *see also Condit v. Dunne*, 225 F.R.D. 100, 112 (S.D.N.Y. 2004) (compelling production of discovery in light of the "broad interpretation of relevance for discovery purposes" and "plaintiff opening the door" to such discovery via allegations in its complaint).

The scant documentation related to ChatExplorer that The Times has produced provides some examples of the benefits The Times receives. *See* Ex. G (NYT_00207091); Ex. D (NYT_00207181). For instance, a November 2023 ChatExplorer demo appears to have instructed Times employees on how to use ChatGPT to quickly generate lists of content produced by a given author. Ex. D. Additionally, at least one Times employee prompted ChatExplorer for insight into the ideal paywall strategy at The Times. Ex. B (NYT_00765599). There are doubtless countless other examples in the unproduced ChatExplorer logs. After all, The Times has admitted that 17 of its ***business*** teams used OpenAI's LLMs, including its Data and Insights, Digital Products and Technology, and Marketing teams, among others. Ex. J (Times's Resp. to Preservation Questions). And The Times has built at least one advertising product ███████████████ Ex. F at 4 (Aug. 8, 2025, Correspondence from K. Peaslee); Ex. K (NYT Advertising Launches BrandMatch).

The Order brushes aside these examples—and the countless others in the ChatExplorer logs—by reasoning that The Times "cannot be a 'competing substitute' for itself or deprive itself of revenue." Order at 8. But this ignores the fact that The Times has made sweeping allegations that OpenAI's LLMs are destroying its business and the business of journalism generally. The contents of the logs, which would show the pro-journalism uses of OpenAI LLMs (in addition to many, many other uses), directly rebut ***those allegations.*** For that reason alone, they are relevant and discoverable. *See, e.g., Condit*, 225 F.R.D. at 112. And The Times's non-journalism related

uses of ChatExplorer, which can only be discerned from the contents of the logs, are relevant, too. These uses show that OpenAI's LLMs are used for purposes different from the asserted works—i.e., they are not a substitute for the asserted works in the market. *See, e.g.*, *HathiTrust*, 755 F.3d at 99 ("under Factor Four, any economic 'harm' caused by transformative uses does not count because such uses, by definition, do not serve as substitutes for the original work").

Class Plaintiffs' arguments in the recent hearings before this Court further confirm the relevance of the logs to factor four. On October 8, 2025, Class Plaintiffs argued before this Court that "***the only way*** to be able to test how [defendants' use] impacts the market" under fair use factor four "***is to look at how the model actually works in the market***." Ex. A at 57:18-20 (Oct. 8, 2025, Hr'g Tr.) (emphasis added). They asserted that without evidence of how products "actually work in the market as a practical matter, . . . we would be handicapped when we go into a summary judgment hearing over fair use." *Id.* at 58:01-03. Thus, even in Class Plaintiffs' view, factor four requires an analysis of how OpenAI's products are actually used in the market. The ChatExplorer logs provide that evidence.

The Order also holds that "[p]rivate monetary benefits to a copyright holder if a challenged use is permitted is, at best, ancillary to the fair use analysis." Order at 8-9. But the Supreme Court has recognized that evidence concerning benefits to the plaintiff/copyright holder are directly relevant, and far from "ancillary," to factor four. *See Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 454 (1984) (discussing factor four and quoting trial court finding that, "It is not implausible that ***benefits could also accrue to plaintiffs***, broadcasters, and advertisers, ***as the Betamax makes it possible for more persons to view their broadcasts***.") (emphasis added); *Google*, 593 U.S. at 37 (discussing factor four and observing that, "[T]he jury also heard evidence that [plaintiff] ***Sun foresaw a benefit*** from the broader use of the Java programming language in a new platform like Android, as it would further expand the network of Java-trained programmers.") (emphasis added). Given The Times's allegations of harm in this case, evidence of its own benefit is even more important than in those cases.

**b.    Public benefit**

The ChatExplorer logs are relevant to factor four for the additional reason that they are probative of the public benefit of OpenAI's alleged use. *See Google*, 593 U.S. at 35 ("[W]e must take into account the public benefits the copying will likely produce."). The Order erroneously holds that The Times's use of OpenAI's LLMs "would be probative only of a potential benefit to NYT and would not be probative of any <u>public</u> benefit." Order at 7 (emphasis in original). This is wrong for two reasons.

*First,* the Order takes far too narrow a view of relevance. The ChatExplorer logs demonstrate specifically how OpenAI's tools can be used for a wide variety of tasks and purposes. Those tasks and purposes are beneficial to the general public, *in addition* to being beneficial to The Times. Indeed, based on the sparse records that The Times has produced, The Times uses OpenAI's LLMs in much the same way as other members of the public would—

. Ex. G (NYT_00207091). This evidence is more (not less) relevant because it comes from The Times—the plaintiff in the case—rather than a third-party. Indeed, it is a powerful party admission regarding the benefits of OpenAI's LLMs.

*Second*, the Order fails to acknowledge the connection between this evidence and The Times's allegations in this case. The Times alleges that it provides a vital public service and that OpenAI's LLMs will prevent it from providing the quality journalism that is crucial to *public* discourse. Compl. at ¶ 1 (alleging that The Times has "given the world" a journalism service that is "vital to our democracy"). And, according to The Times, OpenAI's conduct could create "a vacuum that no computer or artificial intelligence can fill." *Id.* at ¶ 48; *see also id.* at ¶ 47 (alleging that if "[l]ess journalism" is "produced, . . . the cost to society will be enormous"). Having alleged that OpenAI's LLMs are an existential threat to the public interest in quality journalism, The Times should not be permitted to shield from discovery evidence of the ways in which OpenAI's LLMs *promote* quality journalism. That evidence is in the ChatExplorer logs,

which show both a benefit to The Times *and* the public. There is no rule that evidence relevant to showing a "private monetary benefit," Order at 8, cannot also be relevant to showing a public benefit. *See, e.g., Google*, 593 U.S. at 38 (discussing evidence that the plaintiff "foresaw a benefit" from use of the Java language in Android and that programmers and the public also benefited from that use); *Sega Enters. Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1523 (9th Cir. 1992), as amended (Jan. 6, 1993) (noting that defendant's use "led to an increase in the number of independently designed video game programs" that could be "offered for use" with *Sega's* console, which would benefit Sega and the public).[8] Whether viewed as a "private benefit," a "public benefit," or a combination of both, the ChatExplorer logs are relevant to factor four.

### 3. The Order's erroneous fair use reasoning will materially impact this case.

The impact of the Order extends beyond the ChatExplorer logs. Since the Order issued, The Times has relied on it to withhold discovery into additional relevant uses. For example, on September 23, The Times seized upon the Order's language to withhold a document regarding The Times's in-house advertising tool (BrandMatch), ███████████████████ *See* Ex. L at 2 (Sep. 24, 2025, Correspondence from A. Muttalib); Ex. F at 4 (Aug. 8, 2025, Correspondence from K. Peaslee). ██████████████████ ███, Ex. M at 73:08-19 (Sep. 26, 2025, Robins Depo. Tr.), and publicly touts it as a "GenAI-powered targeting solution that provides a new way to match a brand's message with the most relevant articles and the most interested audiences." Ex. K at 1 (NYT Advertising Launches BrandMatch) (July 24, 2024). Nonetheless, according to The Times, discovery into BrandMatch is irrelevant because "the downstream use of defendant's allegedly infringing material by a copyright-holder plaintiff" is irrelevant to fair use. Ex. L at 2 (Sep. 24, 2025, Correspondence from A. Muttalib) (quoting Order). The Times has relied on the same language to withhold

---

[8] The Order acknowledges that the court in *Sega* considered "that Sega may have derived some financial benefit from the defendant's copying" as part of the public benefits analysis. Order at 9 n.12. According to the Order, this is of no moment because *Sega* "still focused on the 'public benefit.'" *Id.* But evidence need not be the "focus" of the fair use inquiry to be discoverable under Rule 26. *Forte* , 2014 WL 12775220, at *1.

discovery on numerous occasions since. For example:

- The Times cited that same language above *over eighty times* as a basis to object to Defendants' discovery requests. *See* Ex. N (NYT R&Os to OpenAI RFP Set 8); Ex. O (NYT R&Os to OpenAI RFA Set 5); Ex. P (NYT R&Os to MSFT RFA Set 2); Ex. Q (NYT R&Os to MSFT Rogs Set 4).

- Relying on the Order, The Times has now refused to produce documents regarding ███████████████████████████, in addition to ChatExplorer. Ex. F at 4 (Aug. 8, 2025, Correspondence from K. Peaslee).[9]

In short, The Times is parlaying the Order not only to deny discovery into the ChatExplorer logs, but also to deny discovery into its use of OpenAI's LLMs more broadly—the very discovery that it earlier assured this Court it would produce. *See* NYT ECF 429 at 1 (representing that The Times agreed "to produce . . . documents regarding The Times's use of both OpenAI and Microsoft's generative AI tools in reporting or presentation of content"). Indeed, in meet-and-confer communications regarding The Times's discovery responses, The Times expressly confirmed that it will no longer be providing discovery that, prior to the Order, The Times had agreed was discoverable. *See* Ex. R at 6 (Oct. 7, 2025 Correspondence from V. Sorrentino). The Order thus threatens to improperly curtail the scope of discovery in this case and to preclude the presentation of plainly relevant evidence to the court at summary judgment or the jury at trial.

**B.    The Order clearly erred by holding that The Times's uses of OpenAI's LLMs are irrelevant to Defendants' substantial non-infringing use defense.**

The Order should be set aside for the additional reason that it erroneously concluded that the ChatExplorer logs were irrelevant to showing substantial non-infringing uses. The Times

---

[9] 

claims that Defendants are secondarily liable for end-users' use of Defendants' GenAI tools. Compl. ¶¶ 185-187. However, when a product is "capable of substantial noninfringing uses," the provision "of such equipment to the general public does not constitute contributory infringement." *Sony*, 464 U.S. at 456; *see also Cartoon Network LP v. CSC Holdings, Inc.*, 536 F.3d 121, 133 (2d Cir. 2008). The ChatExplorer logs are relevant to this substantial non-infringing use defense because (as explained above) they provide concrete examples of how OpenAI's technology is used for purposes ***other than*** infringing The Times's copyrights. *See generally* ECF 396 (Microsoft Motion to Compel).

The Order concludes that the logs are irrelevant because "<u>NYT is the copyright holder and cannot infringe its own copyrights</u>" and that only use by potential infringers is relevant to a substantial non-infringing use defense. Order at 11 (emphasis in original). The Order cites no authority for this proposition, which is incorrect. Secondary non-infringing use considers whether the technology is "***capable*** of substantial noninfringing uses" by members of "***the general public***." *Sony*, 464 U.S. at 456 (emphases added). Evidence that The Times—an entity in the general public—***can and does*** use the technology for non-infringing purposes (*e.g.*, to generate new recipes) is plainly relevant to that inquiry. *See, e.g.*, *id.* at 446 n.28 (considering as relevant to substantial non-infringing use defense the fact that copyright holders had "created a substantial market for a paradigmatic non-infringing use of [defendant's] product").

**C.    The Order clearly erred by holding that production of the ChatExplorer logs was not proportionate to the needs of the case.**

A party resisting discovery on proportionality grounds "must show specifically how each request is burdensome . . . by submitting affidavits or some detailed explanation as to the nature of the claimed burden." *Equal Emp. Opportunity Comm'n v. M & T Bank Corp.*, 2018 WL 11631436, at *3 (S.D.N.Y. May 4, 2018).  Here, The Times must carry an exacting burden to oppose production given the enormous stakes of this case: the ChatExplorer logs are highly relevant, The Times seeks ***billions of dollars*** and the ***destruction*** of OpenAI's LLMs in this lawsuit, and the outcome of this litigation will reverberate throughout the industry.

Yet The Times made *no* showing of undue burden. It did not provide any declaration or affidavit supporting its assertions, nor did it even attempt to quantify the burden associated with producing the ChatExplorer logs. It therefore failed as a matter of law to carry its burden in refusing this discovery. *See, e.g.*, *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 298 F.R.D. 184, 186 (S.D.N.Y. 2014) (party refusing discovery must demonstrate burden "by submitting affidavits or offering evidence revealing the nature of the burden"); *Equal Emp. Opportunity Comm'n*, 2018 WL 11631436, at *3 (rejecting party's burden objection because it lacked "the thorough, factual proof necessary to justify curtailing discovery of relevant information").

The Order "assume[d]" that The Times would need to spend 1,333 hours to review the ChatExplorer logs, and that it would take three months and "cost upwards of $1 million for the privilege review alone," Order at 12, but these figures appear nowhere in the record. The only basis The Times provides for its burden objection was, in sum and substance, that its attorneys would "need to review the logs for inputs that are protected by the attorney-client or reporters' privilege." ECF 839 at 2. That is true of any discovery. It does not justify refusing to produce key discovery *that The Times itself put at issue*, in a case in which it is seeking billions of dollars.

The insufficiency of The Times's burden objection is particularly striking when viewed in light of the discovery it has compelled from OpenAI. The Times has demanded that OpenAI preserve *tens of billions* of ChatGPT conversations from *hundreds of millions of users* worldwide, without regard for the privacy interests of these individuals or the enormous time and expense imposed on OpenAI. *See, e.g.*, ECF 92 (Memorandum of Law In Support of OpenAI's Objection to Preservation Order). In opposing those demands, OpenAI submitted sworn declarations from multiple OpenAI employees attesting to these costs—including declarations prepared by OpenAI's technical staff and data preservation personnel—precisely describing the tens of millions of dollars and months of engineering times that it would require. *See id.* OpenAI additionally produced sworn testimony that the preservation of user logs undermined third-party

privacy interests,[10] and that such interests are of the utmost importance to the company. *See id.* By contrast, The Times is refusing to produce limited sets of its own ChatExplorer data—which bear directly on the core claims in this case and represent a minuscule fraction of the burden imposed on OpenAI—without any such declarations or support. That does not suffice.

### D. The Order clearly erred by denying OpenAI the opportunity to depose a Rule 30(b)(6) witness regarding NYT's destruction of ChatExplorer logs.

Finally, the Order's denial of OpenAI's request for a limited deposition regarding The Times's destruction of the ChatExplorer logs was also clearly erroneous. *See* Order at 13. The Order concluded that the deposition was unwarranted based on its findings that the destroyed logs are irrelevant and not proportional to the needs of the case. As explained above, those findings are clearly erroneous and contrary to binding law. The Court should thus order a limited Rule 30(b)(6) deposition on this issue, which is the same relief Judge Wang ordered when Class Plaintiffs raised an issue with OpenAI's preservation efforts. *See* ECF 270 at 2.

## V.    CONCLUSION

For the foregoing reasons, OpenAI respectfully requests that the Court set aside the Order under Rule 72(a) and order The Times to produce its ChatExplorer logs and sit for a limited deposition regarding its preservation of those logs.

Respectfully submitted,

Keker, Van Nest & Peters LLP

Dated: October 14, 2025

By:    */s/ Robert Van Nest*

---

[10] Third parties have petitioned the Court with the same concern. *See* ECF 49; ECF 95; ECF 484.

Robert Van Nest  *(pro hac vice)*
633 Battery Street
San Francisco, CA 94111-1809
rvannest@keker.com
Telephone: 415 391 5400


Latham & Watkins LLP

Dated: October 14, 2025

By:    */s/ Margaret Graham*
Margaret Grahm
1271 Avenue of the Americas
New York, NY 10020
Telephone:  212.906.1200
margaret.graham@lw.com


Morrison & Foerster LLP

Dated: October 14, 2025

By:    */s/ Rose Lee*
Rose Lee *(pro hac vice)*
707 Wilshire Boulevard, Suite 6000
Los Angeles, CA 90017
Telephone: 213.892.5200
roselee@mofo.com

Attorneys for Defendants
OPENAI, INC., OPENAI GP, LLC,
OPENAI, LLC, OPENAI OPCO LLC,
OPENAI GLOBAL LLC, OAI
CORPORATION, LLC, OPENAI
HOLDINGS, LLC

* All parties whose electronic signatures are included herein have consented to the filing of this document, as contemplated by Rule 8.5(b) of the Court's ECF Rules and Instructions.