**VIA ECF**

October 15, 2025

Hon. Ona T. Wang
United States Magistrate Judge
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

*In re OpenAI, Inc.*, *Copyright Infringement Litigation*, 25-md-3143 (SHS) (OTW)
This Document Relates To: The New York Times, No. 1:23-cv-11195

Dear Magistrate Judge Wang:

The New York Times, the *Daily News* Plaintiffs, The Center for Investigative Reporting, The Intercept, and the *Ziff Davis* Plaintiffs (collectively, "News Plaintiffs") seek to compel OpenAI to immediately produce the agreed-upon 20 million records of consumer ChatGPT output log data dated December 2022-November 2024 (the "historical" ChatGPT output log data) for merits-based analysis. Despite the fact that News Plaintiffs requested discovery into OpenAI's output logs more than 500 days ago, OpenAI has yet to produce a single prompt-output pair from a user in the "real world." This delay is inexcusable and unworkable with Judge Stein's clear fact discovery cut-off.

News Plaintiffs initially began drafting this motion to compel OpenAI to produce these de-identified 20 million historical ChatGPT records – an initial sample size which was agreed upon following extensive negotiations and motion practice – by a date certain. Then, much to News Plaintiffs' shock, in the days leading up to this filing, OpenAI reneged on producing this heavily negotiated subset of data to News Plaintiffs. Specifically, for the very first time the day before this motion was due, OpenAI claimed that because of the "privacy interests of OpenAI's users," it will not produce the 20 million records and instead the parties must undertake some yet-to-be-discussed process to further "narrow[] the sample based on steps designed to identify the logs that are actually relevant to News Plaintiffs' claims." Ex. A at 1. That is, instead of producing the sample of records so News Plaintiffs can review them, OpenAI wants News Plaintiffs to work with OpenAI's attorneys to somehow identify – without revealing News Plaintiffs' work product – what subset of the sample records they have not seen are relevant to this case. News Plaintiffs do not need to tell OpenAI, let alone this Court, that this is not how discovery should work and would undermine the entire point of the agreed upon sampling process.

In the days leading up to this filing, OpenAI told News Plaintiffs that it had been deleting some historical ChatGPT output log data during the pendency of the Preservation Order (Dkt. 33) and will continue to do so. Ex. A at 1. Again, this is not how discovery should work.

OpenAI's about-face refusal to produce the complete sample that the parties agreed to, continuing deletions, and ongoing delay are improper. This output log evidence is in OpenAI's possession, has already been explicitly ordered by this Court to be preserved (Dkt. 33), is by

1

OpenAI's own admission relevant to this case (Dkt. 635 at 2), and given News Plaintiffs' longstanding request should be produced immediately.

### A. Factual Background

OpenAI produced on April 11 a metadata table identifying tens of billions of preserved ChatGPT records dated December 2022 to early December 2024 for the parties to sample.[1] As the result of extensive negotiations, motion practice, and a confidential conference with this Court, OpenAI agreed to produce a sample of 20 million records to News Plaintiffs. Dkts. 394, 410; *see also* Dkt. 394-6 (July 18, 2025 Letter from E. Bayley to J. Maisel stating that "anonymizing, decompressing, processing, producing, and analyzing" 120 million logs is too burdensome, but that "OpenAI has offered to provide *millions* of conversations logs," *i.e.* 20 million). News Plaintiffs provided OpenAI with a random sample of 20 million records from the metadata table on August 11, without prejudice to seeking additional records.

In a letter dated September 12, OpenAI advised News Plaintiffs that it could not retrieve 5% of News Plaintiffs' requested 20 million records because it had recently deleted them. Ex. B at 1. This extrapolates to approximately 2 billion deleted ChatGPT records from the total pool of records. News Plaintiffs further learned during the parties' negotiation concerning the stipulation to lift the Preservation Order (Dkt. 629) that, during the pendency of this Court's Preservation Order, OpenAI had continued to delete historical ChatGPT output log data. Ex. A at 1. OpenAI maintains that it was not obligated to preserve the historical ChatGPT output log data during the pendency of this Court's Preservation Order, and claims that it had made clear to News Plaintiffs and this Court its intention to continue deleting such data. News Plaintiffs disagree.[2]

### B. News Plaintiffs' Requested Relief

OpenAI should immediately produce the entirety of the 20 million records of historical ChatGPT output log data.

*First*, OpenAI reneged on its commitment to produce the 20 million records, adding further delay on top of OpenAI's stated estimate that "it would require up to 12 weeks [] to retrieve, decompress, process, de-identify and store a 20 million record sample." Dkt. 435-1 (Monaco Decl.), ¶ 2. Yesterday, however, OpenAI said for the first time that it will not produce this sample due to the "privacy interests of OpenAI's users." Ex. A. This new argument threatens to undo months of negotiations between the parties, during which News Plaintiffs narrowed their request (without prejudice) down to 20 million records from 120 million records precisely because they wanted to begin analyzing this data immediately. And OpenAI has not, and cannot, ignore its discovery obligations on user privacy grounds, especially in view of: (i) OpenAI's unconventional, expensive, and time consuming (but allegedly superior) de-identification process (*see* Dkt. 435-1 (Monaco Decl.)), ¶¶ 8-10, (ii) OpenAI's agreements with its customers that its use and disclosure

---

[1] This metadata does not contain the prompts, outputs, or RAG data.
[2] The stipulation "relates entirely to the segregated data tables that OpenAI created in response to the Preservation Order," not to the historical ChatGPT output log data. Dkt. 629, ¶ 4.

of output log data is subject to its legal obligations,[3] and (iii) OpenAI's ability to designate output log data with an appropriate level of confidentiality protections under the Protective Order. *See, e.g.*, *Viacom Int'l Inc. v. Youtube Inc.*, 253 F.R.D. 256, 262 (S.D.N.Y. 2008); *Columbia Pictures Indus. v. Bunnell*, No. 06-cv-1093, 2007 WL 2080419, at *8 (C.D. Cal. May 29, 2007); *Simmons v. Danhauer & Assocs., LLC*, No. 08-cv-3819, 2009 WL 10677391, at *2 (D.S.C. Sept. 15, 2009). Moreover, it would be far less burdensome for OpenAI to produce the ChatGPT records than to have News Plaintiffs engage in protracted technical discussions and experimentation (at the risk of revealing work product) over different mechanisms for analyzing the data.

*Second*, to keep the parties on track for the February 27, 2026, close of fact discovery, News Plaintiffs need OpenAI to immediately produce the 20 million records in a readily searchable format. News Plaintiffs are prejudiced by OpenAI's delay because, absent an identification of the outputs at issue (and in OpenAI's own words): News Plaintiffs cannot question "witnesses regarding the specific outputs at issue," "adduce evidence proving" infringement, investigate News Plaintiffs' "market harm allegations with respect to 'pink slime' outputs," or "conduct myriad additional discovery and expert tasks." Dkt. 635 at 2.

Moreover, News Plaintiffs agreed to sample a substantially smaller subset of records than initially requested so that they could more quickly determine whether additional sampling is needed – and OpenAI's undue delay harms News Plaintiffs' ability to issue follow-on requests. Indeed, in order to analyze the output log data, News Plaintiffs will need to prepare and run custom keyword and n-gram programs to search for, *inter alia*, regurgitations of News Plaintiffs' content, copying of News Plaintiffs' content as part of RAG, outputs that contain "hallucinations" that falsely attribute ChatGPT output to News Plaintiffs' famous publications, and other substitutive and dilutive uses of News Plaintiffs' content. Ex. C, Goldstein Decl., ¶¶ 3-4. News Plaintiffs anticipate it will take several weeks to develop and run these searches over at least 20 million different records, analyze the results, and identify any deficiencies—assuming there are no technical issues. *Id*. Given the work involved, and the many difficulties News Plaintiffs encountered when inspecting OpenAI's training data (*see, e.g.*, Times Dkt. 305), News Plaintiffs request that the data be produced in a readily searchable format. That is, the data should be produced via hard drive or to a dedicated private cloud to avoid further delays with burdensome onsite inspections. *Id*.

*Third*, <u>OpenAI has been, and is continuing to, delete more data</u>. Each day of delay means less historical data will be available for analysis.[4] News Plaintiffs continue to explore this issue with OpenAI, including through an interrogatory and 30(b)(6) testimony, but OpenAI cannot dispute that it continues to delete data that would otherwise be available for sampling. Ex. A.

*\*\*\**

News Plaintiffs respectfully request that this Court order OpenAI to immediately produce the 20 million sample of historical ChatGPT output log data in a readily searchable format. News

---

[3] *See Privacy Policy,* OpenAI, https://openai.com/policies/row-privacy-policy/ (last visited Oct. 15, 2025) ("We may share your Personal Data . . . if required to do so to comply with a legal obligation").

[4] OpenAI was deleting historical ChatGPT output log data at the very same time that its CEO, Sam Altman, was widely criticizing The Times and the Preservation Order. *See, e.g.,* Ex. D.

Plaintiffs reserve all rights to seek further relief, including with respect to OpenAI's ongoing deletions of this data.

Respectfully submitted,

*/s/ Steven Lieberman*
Steven Lieberman
Rothwell, Figg, Ernst & Manbeck P.C.
Counsel for The New York Times and *Daily News* Plaintiffs

*/s/ Davida Brook*
Davida Brook
Susman Godfrey LLP
Counsel for The New York Times

*/s/ Stephen Stich Match*
Stephen Stich Match
Loevy & Loevy
Counsel for The Center for Investigative Reporting and The Intercept

*/s/ Lacy H. Koonce, III*
Lacy H. ("Lance") Koonce, III
Klaris Law PLLC
Counsel for *Ziff Davis* Plaintiffs

cc:   All Counsel of Record (via ECF)