# EXHIBIT 1

## EXHIBIT 1

| # | Topic | OpenAI's position |
|---|-------|-------------------|
| 1 | At a high level, OpenAI's development of GPT-1, GPT-2, and GPT-3 and the extent to which they impacted the development of subsequent, relevant models[1] | OpenAI has agreed to high level testimony, but Plaintiffs insist that OpenAI agree to provide the same depth of testimony related to its earliest models as to the models that are within the scope of this litigation. That demand is not only impractical, but also disproportionate to the needs of the case and unduly burdensome.<br><br>OpenAI's early models—GPT-1, GPT-2, and GPT-3—are not within the scope of the case. Indeed, the Court recently struck allegations related to GPT-1 and GPT-2 from the consolidated class complaint. Dkt. No. 707 at 1. But to avoid a dispute, OpenAI has nonetheless agreed to provide high-level testimony about these early models' development and their impact on the development of subsequent, in-scope models. More detailed testimony would be unduly burdensome if not impossible, due to the age of these early models and the few people at OpenAI with pertinent knowledge, contrary to Rule 26's dictate that discovery be proportional to the needs of the case, considering the importance of any discovery sought to resolving issues in the case. |
| 2 | Custom GPTs and ChatGPT plug-ins, including (A) the review and approval process for custom GPTs made available in Your Custom GPT Store and third-party ChatGPT plug- ins made available in Your ChatGPT plug-in store, (B) custom GPTs and plug-ins designed to remove paywalls, provide Journalism, or that otherwise reference Journalism and/or News Content, (C) Your ability to track or monitor custom GPT or plug-in usage, (D) any enforcement of OpenAI's Terms and Policies against custom GPT and ChatGPT plug-ins, (E) Your knowledge of custom GPTs and plug-ins that | This topic improperly seeks the "knowledge" of any OpenAI employee (current or former) related to certain custom tools associated with ChatGPT.<br><br>OpenAI has already offered testimony sufficient to cover this topic about Custom GPTs (tailored versions of ChatGPT configured with specific instructions and capabilities for particular tasks and organizations) and ChatGPT plug-ins (external tools that allow ChatGPT to interact with third-party services or data sources). This testimony already includes (a) OpenAI's general policies and practices related to the review and approval of Custom GPTs and ChatGPT plug-ins made available in OpenAI's Custom GPT and ChatGPT plug-in stores; (b) As a general matter, OpenAI's policies and practices related to its monitoring of Custom GPT and ChatGPT plug-in usage; (c) OpenAI's general policies and practices addressing material identified as copyrighted by a third party in Custom GPTs or ChatGPT Plug-Ins; and (d) OpenAI's financial statements produced in this case.<br><br>The dispute is limited to sub-part (e). But to the extent sub-part (e) is relevant and proportional to the needs of the case, it, too, is covered. OpenAI has agreed to provide testimony on how Custom GPTs and ChatGPT plug-ins are reviewed, how they are approved, how they are tracked, and how they are monitored. That will cover sub-part (e) to the extent |

---

[1] This topic is unique on this list as it is one offered by OpenAI rather than one noticed by Plaintiffs.

3323811

| | | |
|---|---|---|
| | reference news, paywalls, Journalism, News Content, or News Plaintiffs, and (F) revenues derived from Your Custom GPT Store. (News Topic 91 and Class Topic 94) | *OpenAI* has knowledge about such things. Plaintiffs' only dispute here appears to be as to scope. They demand that OpenAI prepare a witness to testify about the knowledge of *anyone* at OpenAI about this issue, which is irrelevant, unduly burdensome, and disproportionate to the needs of the case. *See* Dkt. 654 at 3 (citing *Trs. of the Loc. 854 Pension Fund v. Barrett*, 2024 WL 4026257, at *3 (S.D.N.Y. Sept. 3, 2024). |
| 3 | Your knowledge of and understanding of News Plaintiffs' Terms of Service or Terms of Use, including the provisions which govern use of News Plaintiffs' content and services. (News Topic 50) | This topic improperly seeks the "knowledge" of any OpenAI employee (current or former) and their "understanding" rather than specific, factual information.<br><br>The red text in this topic is subject to the same concerns raised in response to comparable text in topic 2 above. That concern is particularly acute for this topic, which seeks the knowledge of *anyone* who *ever* worked at OpenAI about the Terms of Use for *any* News Plaintiff's website. It is impractical and unduly burdensome, if even possible, to demand that OpenAI scour the company for evidence as minimally relevant as this.<br><br>To the extent Plaintiffs wish to explore such topics, OpenAI has two concerns: (1) the impracticality and burden to prepare OpenAI's witnesses; and (2) Plaintiffs threat to seek additional Rule 30(b)(6) time, even before taking a single 30(b)(6) deposition. *See* Dkt. No. 684 at 1 n.1 ("Plaintiffs may seek additional 30(b)(6) deposition hours but will come back when appropriate with a specific request."). Plaintiffs should not be permitted to spend the 25 hours allotted for OpenAI's deposition inefficiently and/or on irrelevant issues only to use that ill-spent time to justify leave for additional 30(b)(6) hours.<br><br>This topic also seeks OpenAI employees' *interpretation* of those terms of service, which is inappropriate because it amounts to lay testimony about the meaning of a contract (*i.e.*, a legal conclusion). *See* green text.<br><br>To the extent News Plaintiffs seek information regarding OpenAI's access to News Plaintiffs' websites, OpenAI is willing to provide a witness to testify to "whether the tools OpenAI used to access text data on the internet speak Terms of Use/Service language." That is all that Microsoft offered in response to this topic, without objection from Plaintiffs. |
| 4 | Your awareness of whether Your Text Generation AI Models and Generative AI Products and Service include and/or rely upon copyrighted content, in the past or present, including any awareness of | This topic improperly seeks the "awareness" of any OpenAI employee (current or former) related to a contention rather than factual information.<br><br>This red text in this topic is subject to the same concerns raised in response to comparable text in topic 2 above. |

| | | |
|---|---|---|
| | whether Your Training Datasets include or included copyrighted content. (News Topic 64 and Class Topic 68) | This topic also improperly seeks OpenAI's contentions via Rule 30(b)(6) testimony. Such discovery should be conducted by contention interrogatories instead. Plaintiffs' opposition to OpenAI's letter brief cited a single case for the proposition it is generally appropriate to seek testimony about a party's knowledge of the intellectual property in-suit. *See* Dkt. 684 at 2 (citing *RiseandShine Corp. v. PepsiCo Inc.*, 2022 WL 1118890, at *1 (S.D.N.Y. Apr. 14, 2022). But the pertinent topic in that case asked the *plaintiff* to provide testimony about its knowledge of its own efforts to enforce the asserted trademark in the face of third-party's use of it. That has no bearing here. |
| 5 | Your knowledge of any use of Your Generative AI Products and Services, including by third parties, to create websites or social media posts containing AI-generated content, including to promulgate misinformation, disinformation, or poor quality "pinkslime" journalism. This Topic includes websites and entities that NewsGuard has identified as "Unreliable AI-Generated News Websites." This Topic also includes Your knowledge and efforts to track and/or prevent the same. (News Topics 100 and 60) | The topic improperly seeks testimony about the knowledge of *anyone* at OpenAI regarding *any third party's* use of AI to create online content, a minimally relevant and impossibly expansive inquiry that far exceeds Rule 26's limits.<br><br>The red text is subject to the same objections as related language discussed with regard to topic 2 above. Given the scope of this topic—*i.e.*, the purple text—Plaintiffs' demand is even more unreasonable: it seeks testimony about the knowledge of *anyone* who *ever* worked at OpenAI about *any* third party's creation of *any* website or social media post containing AI-generated content. Such testimony would be of minimal relevance and the associated preparation extremely onerous, such that this topic cannot satisfy Rule 26's proportionality standard.<br><br>OpenAI is willing, however, to provide testimony on OpenAI's terms of use and usage policies that govern how users may, and may not, use its products. |
| 6 | Your knowledge of "so-called" shadow libraries such as Library Genesis ("Libgen"), Zlibrary, Bibliotik, Sci-hub, Internet Archive, Anna's Archive, Books3, or others, including the purpose of the shadow library, the content available at the shadow library, the legality of the shadow library, and the efforts or lack of efforts of the shadow library to protect the copyrights of content available at the shadow library. (Class Topic 52) | This topic seeks subjective "knowledge" and legal conclusions about vague third-party sites wholly unrelated to OpenAI's conduct.<br><br>This red text in this topic is subject to the same concerns raised in response to comparable text in topic 2 above.<br><br>The topic lacks the requisite particularity to the extent it purports to cover all "'so-called' shadow libraries" without defining that term or providing a finite list. The list in the topic offers no guidance, as it includes sources that are not by any rational definition "shadow libraries." For example, Sci-hub is a website that provides access to academic research papers and the Internet Archive is a 501(c)(3) non-profit that preserves Internet sites.<br><br>The purple text is a non-exhaustive list of the types of "knowledge" sought by the topic. But |

| | | it contains only subject matter not within the purview of Rule 30(b)(6) testimony: third-parties' intent, third-parties' conduct, and legal conclusions related thereto. Moreover, this topic seeks irrelevant information to the extent it relates to sources *not* used by OpenAI to acquire books. And to the extent it seeks testimony about repositories that OpenAI *has* used, it is duplicative: OpenAI has already agreed to provide testimony on its actual sources for books. |
|---|---|---|
| 7 | Your efforts to acquire data from "so-called" shadow libraries such as Library Genesis ("Libgen"), Z-library, Bibliotik, Sci-hub, Internet Archive, Anna's Archive, Books3, or others, including, but not limited to, the identity of all individuals involved with the decision to acquire each dataset, the identity of the individuals who downloaded each dataset, the website each dataset was acquired from, the date each dataset was first acquired, how and where each dataset was stored once acquired, and any discussion or deliberation about whether to acquire each dataset. (Class Topic 48) | This topic demands exhaustive detail and privileged deliberations about every alleged dataset acquisition, far beyond what Rule 30(b)(6) permits. The red text of this topic makes clear that it relates to "efforts to acquire data" as opposed to the *actual* acquisition of data. Given that such evidence is both burdensome and minimally relevant, preparation of a witness would be disproportionate to the needs of the case. OpenAI has already agreed to provide testimony on its acquisition of data and its related policies and practices. That testimony covers anything relevant that is sought here. The green text of topic is also subject to the same concerns raised above regarding topic 6's list of "'so-called' shadow libraries". This topic also lacks reasonable particularity to the extent the purple text is not an exhaustive list of the subject matter covered by this topic. *See* orange text. Finally, the purple text is not appropriate subject matter for 30(b)(6) testimony. Courts routinely hold that Rule 30(b)(6) depositions are not "memory contests" and they "strike notice topics that would result in a witness merely testifying to information readily available through document production." *See* Dkt. No. 654 at 3-4). |
| 8 | Your use of books datasets such as Library Genesis ("Libgen"), Z-library, Bibliotik, Sci- hub, ELibra, Internet Archive, or other in training and developing Your Text Generation AI Models including, but not limited to, the identification of which datasets were used to train each model, the identity of all | The topic is unreasonably broad and seeks privileged, cumulative, and burdensome discovery—covering every model, dataset, and deliberation without temporal or relevance limits. The purple text suffers from the same issues as above topic 7. Even if a witness could reasonably cover the sub-topics in purple, the topic lacks reasonable particularity to the extent it is non-exhaustive (*see* green text) and purports to cover all "books datasets" without offering a definition of that term. Similar to topics 6-7 above, the |

3323811

| | | |
|---|---|---|
| | individuals involved in the decision to use the datasets to train each model, how many copies of each dataset were made in training and development of each model, any modifications or analyses conducted on the datasets, and any discussion or deliberation about whether to use each dataset to train each model. (Class Topic 49) | list that follows offers no guidance, as it includes sources that are not repositories of books.<br><br>OpenAI has already agreed to provide substantial testimony on no fewer than 20 topics related to the training of its relevant models and products and the data used for that purpose, which cover the relevant aspects of this topic, including (a) "OpenAI's use of books, generally, in training the relevant LLMs"; (b) "OpenAI's general process for training, including how many times a training dataset is reviewed by a model, and how, if at all, data is strategically ordered during training"; and (c) "As a general matter, how text data is filtered, cleaned, tokenized, or otherwise altered for use in pretraining and mid-training for OpenAI's LLMs." |
| 9 | The storage, organization, preservation, and/or deletion of data or content used for any stage of training and/or developing Your Text Generation AI Models and Generative AI Products and Services. This Topic includes where and how You stored the data or content, any modifications to the data or content and the individuals involved in storing the data or content. (News Topic 13 and Class Topic 14) | This topic seeks duplicative 30(b)(6) testimony.<br><br>Plaintiffs already received a 4.5 hour custodial deposition, which included testimony on this topic. Indeed, the notice Plaintiffs served for the custodial deposition of OpenAI in January 2025 included one that covered the same ground: "The existence, organization, preservation, storage, and deletion of Training Datasets, as well as the identification of tools used to acquire and process Training Datasets."<br><br>Plaintiffs cannot re-depose a corporation on the same 30(b)(6) topic without leave of court, which Plaintiffs have not sought (nor is it warranted). Fed. R. Civ. P. 30(a)(2)(A)(ii). |
| 10 | Your acquisition and use of (1) any of the following corpora from the Linguistic Data Consortium at the University of Pennsylvania: the NYT Annotated Corpus, the Concretely Annotated New York Times, the North American News Text Corpora, and all editions of the English Gigaword (News Topic 45), or (2) the "NYT Datasets," any contracts or Agreements related the NYT Datasets, Your ingestion and | There is no dispute as to this topic. OpenAI agreed to at least 20 topics on the acquisition and use of training data, including News Plaintiffs' content, and this testimony will address the substance of the two topics listed here. |

| | processing of the NYT Datasets, any evaluation of the NYT Datasets, and Your use of the NYT Datasets. E.g., OPCO_NEWS_0561518 (News Topic 44) | |
|---|---|---|

3323811