**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: | |
| OPENAI, INC., | 25-md-3143 (SHS) (OTW) |
| COPYRIGHT INFRINGEMENT LITIGATION | |
| This Document Relates To: | |
| No. 1:23-cv-11195 (SHS) (OTW) | |

**NEWS PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO OPENAI'S
RULE 72(a) OBJECTIONS TO THE ORDERS COMPELLING PRODUCTION OF
CHATGPT CONVERSATION LOGS AT MDL ECF NOS. 734, 896, AND 910**

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL BACKGROUND ............................................................................... 4

    A.    OpenAI's Refusal to Preserve and Search its Logs for News Plaintiffs' Works ................................................................................................... 4

    B.    The Sampling Negotiations Leading Up to the November 7 Order Compelling OpenAI to Produce 20 Million De-Identified Consumer ChatGPT Logs ................................................................................... 6

    C.    Procedural History ......................................................................... 9

III.  LEGAL STANDARDS ..................................................................................... 11

IV.   ARGUMENT ................................................................................................... 11

    A.    OpenAI Does Not Dispute the Relevance of the 20 Million De-Identified Consumer ChatGPT Logs .................................................. 12

    B.    Magistrate Judge Wang Fully Addressed the Privacy Interests of ChatGPT Users ............................................................................. 13

    C.    Magistrate Judge Wang Considered and Rejected OpenAI's Proposed "Alternative" to First De-Identify and Then Search the Consumer ChatGPT Logs ............................................................................. 17

V.    CONCLUSION ................................................................................................. 20

## TABLE OF AUTHORITIES

**Cases**

*Columbia Pictures Indus. v. Bunnell*,
  No. 06-cv-1093, 2007 WL 2080419 (C.D. Cal. May 29, 2007)............................................ 15

*Concord Music Group, Inc. et al. v. Anthropic PBC*,
  Case No. 5:24-cv-03811-EKL (N.D. Cal. Aug. 8, 2025) ........................................................ 20

*Concord Music Group, Inc. v. Anthropic PBC*,
  24-cv-3811 (EKL) (SVK), 2025 WL 1482734 (N.D. Cal. May 23, 2025) ...................... 3, 9, 20

*Fashion Exch. LLC v. Hybrid Promotions, LLC*,
  No. 14-cv-1254, 2021 WL 1172265 (S.D.N.Y. Mar. 29, 2021)............................................ 11

*Hachette Book Grp., Inc. v. Internet Archive*,
  115 F.4th 163 (2d Cir. 2024) ................................................................................................. 1

*In re OpenAI ChatGPT Litig.*,
  Case No. 23-cv-3223 (N.D. Cal.) ......................................................................................... 15

*Nichols v. Noom*,
  20-CV-3677 (LGS) (KHP), 2021 WL 1997542 (S.D.N.Y. May 18, 2021) ...................... 15, 16

*R.F.M.A.S., Inc. v. So et al.*,
  748 F. Supp. 2d 244 (S.D.N.Y. 2010) .................................................................................. 12

*S.E.C. v. Galleon Mgmt., LP*,
  274 F.R.D. 120 (S.D.N.Y. 2011) .......................................................................................... 17

*S.E.C. v. Rajaratnam*,
  622 F.3d 159 (2d Cir. 2010) ............................................................................................ 16, 17

*Smith v. City of New York*,
  754 F. Supp. 3d 581 (S.D.N.Y. 2024) .................................................................................. 11

*Structured Asset Sales, LLC v. Sheeran*,
  120 F.4th 1066 (2d Cir. 2024) .............................................................................................. 19

*Viacom Int'l Inc. v. YouTube Inc.*,
  253 F.R.D. 256 (S.D.N.Y. 2008) .......................................................................................... 15

**Other Authorities**

Chatterji et al. "How People Use ChatGPT,"
  Sep. 15, 2025 ........................................................................................................................ 13

**Rules**

Fed. R. Civ. P. 37(a)(5)(B) ................................................................................... 11

Fed. R. Civ. P. 37(b)(2)(C) ................................................................................... 11

Fed. R. Civ. P. 72(a) ............................................................................................. 11

## I.    INTRODUCTION

Magistrate Judge Wang correctly ordered OpenAI to produce evidence at the heart of this case: outputs of the large language models that OpenAI built by copying News Plaintiffs' copyrighted works. These logs will contain direct evidence of copyright infringement, but they are also key to the fair use analysis. The fourth and "most important" fair use factor requires this Court to consider the impact of OpenAI's copying on the market for News Plaintiffs' works. *Hachette Book Grp., Inc. v. Internet Archive*, 115 F.4th 163, 189 (2d Cir. 2024). In fact, at the pleading stage, OpenAI emphasized the centrality of this evidence to the question of substitution, arguing to this Court that "real world" ChatGPT queries and responses will show that people do not use ChatGPT in a manner that would substitute for The New York Times. *Times* ECF 52, at 1. Yet OpenAI now refuses to produce this important evidence.

For more than a year and a half, News Plaintiffs have sought production of ChatGPT user logs. Following extensive negotiations with OpenAI (including three separate "settlement conferences"), Magistrate Judge Wang ordered OpenAI to produce a small sample (about 0.05%) of the billions of user chats that it has retained.[1] Through this appeal, OpenAI continues its efforts to hamstring News Plaintiffs' ability to examine and test that critical evidence.

OpenAI first contends that the orders do not properly balance the privacy interests of its users with the needs of the litigation. But in addition to finding that the discovery is relevant and proportional, Magistrate Judge Wang identified four "layers of protection" that more than adequately safeguard user privacy interests: (1) "reducing the total output logs subject to discovery from tens of billions to 20 million"; (2) "OpenAI has de-identified the 20 Million

---

[1] Since the filing of these lawsuits, OpenAI has destroyed and compressed the log data (thereby making it "unavailable" to News Plaintiffs). OpenAI's destruction of many other logs, and Magistrate Judge Wang's May 13 Preservation Order that this Court previously addressed (ECF 271), is not at issue for this motion, but News Plaintiffs intend to address the resulting prejudice from OpenAI's discovery tactics in a forthcoming motion.

ChatGPT Logs"; (3) "consumers' privacy is safeguarded by the existing protective order in this case, and by designating the output logs as 'attorneys' eyes only'"; and (4) "the November 7 order directed the parties to continue meeting and conferring on additional ways to protect OpenAI's consumers' privacy." ECF 896 at 8. OpenAI fails to address two of these four safeguards: the protective order and OpenAI's ability to seek additional protections through the meet-and-confer process. With respect to OpenAI's use of de-identification procedures, this Court has determined that both anonymization and sampling "mitigate the privacy concerns." ECF 303 at 286:12-15. OpenAI's new argument that its de-identification tool, which it says it uses in the ordinary course of business, is somehow insufficient to safeguard the privacy interests of its users contradicts its representations to the Court about the effectiveness of its tool.[2]

OpenAI also contends that Magistrate Judge Wang failed to consider OpenAI's "alternative" proposal that it spend four months processing and de-identifying the ChatGPT logs, only to then not produce them. ECF 935 at 3 ("By ignoring the more reasonable alternative… the Court below committed clear error."). This is not correct. Magistrate Judge Wang addressed OpenAI's proposal and rejected it:

> OpenAI's argument is also belied by its de-identification of the entire 20 million log sample. **If OpenAI never intended to produce the entire 20 Million**

---

[2] Here is what OpenAI's declarant represented to Magistrate Judge Wang about the efficacy of its de-identification tool:

> "OpenAI takes privacy very seriously. To protect our users, OpenAI built ███████████ ████████████████████████████████████████ That procedure is implemented through an application programming interface or "API," which supports various critical business functions, such as:
> - Removing or masking PII and other private information ██████████████████████;
> - Removing or masking PII and other private information ████████████████████ ███████████████;
> - Removing or masking PII and other private information ███████████████ ██████████████; and
> - Detecting PII and other private information █████████████████████ ████████████████."

ECF 435-1 at ¶ 8.

> **ChatGPT Logs, it would not have (and should not have) spent the time and money de-identifying the entire 20 million log sample**. Either OpenAI initially intended to produce the 20 million logs to News Plaintiffs and changed its mind, for one reason or another; or OpenAI never intended to produce the logs and de-identified the entire 20 million either as a discovery tactic, or for some other reason that has not been identified. Neither bode well for OpenAI.

ECF 896 at 9, n. 9 (emphasis added). News Plaintiffs thoroughly briefed why OpenAI's "alternative" proposal was unworkable in light of the case schedule and prejudicial to News Plaintiffs, including through the submission of unrebutted expert declarations outlining the technical problems and delays that would be caused by OpenAI's proposal. *See* Section IV.C, below; ECF 656 at ¶¶ 4-6.

Finally, despite repeatedly relying on the sampling procedures in *Concord Music Grp., Inc. v. Anthropic PBC,* OpenAI contends that production of output log data ordered by the Court in *Concord* is not instructive here. *See Concord Music Group, Inc. v. Anthropic PBC*, 24-cv-3811 (EKL) (SVK), 2025 WL 1482734 (N.D. Cal. May 23, 2025). In both the November 7 Order and December 12 Order, Magistrate Judge Wang considered the applicability of the sampling methodology and subsequent production of 5 million logs in *Concord*. OpenAI's only argument as to why *Concord* is not instructive here is because counsel in that case agreed to production, whereas here OpenAI now disclaims any agreement.

***

This motion concerns the simple question of whether Magistrate Judge Wang clearly erred by ordering OpenAI to produce, pursuant to the protective order, less than 0.05% of consumer ChatGPT logs OpenAI had already voluntarily de-identified. The answer is similarly straightforward: she did not.

## II.    FACTUAL BACKGROUND

The consumer ChatGPT logs at issue reflect prompts from users to ChatGPT, outputs from ChatGPT to users, and any content—including content belonging to News Plaintiffs—that ChatGPT fetched from the Bing Index or other data sources to generate a response as part of the retrieval augmented generation ("RAG") process. [3]  These logs contain direct evidence to support several of News Plaintiffs' claims based on: (1) regurgitations of News Plaintiffs' works, (2) "hallucinations . . . that misattribute content to plaintiffs that they did not in fact publish," and (3) RAG responses that include "paraphrases and direct quotes of plaintiffs' works, without referring users to plaintiffs' websites in the same manner as do regular internet search engines, thereby obviating the need for users to visit plaintiffs' websites." *Times* ECF 514 at 8-9.

Moreover, "output logs that do not contain reproductions of News Plaintiffs' works may still be relevant to OpenAI's fair use defense." ECF 896 at 6. The ChatGPT logs are also relevant to OpenAI's knowledge of, and reason to know, that removing CMI would induce or conceal infringement because the models are "capable of distributing unlicensed copies of copyrighted works." *Times* ECF 514 at 27.

### A.    OpenAI's Refusal to Preserve and Search its Logs for News Plaintiffs' Works

Over 500 days ago, in the early stages of discovery, News Plaintiffs requested that Defendants produce output log data that contains or uses News Plaintiffs works. ECF 841 at 2. But instead of preserving and searching its logs for News Plaintiffs' works, OpenAI repeatedly destroyed or compressed tens of billions of logs for its consumer ChatGPT product.

---

[3] "News Plaintiffs" include The New York Times, the *Daily News* Plaintiffs, the Center for Investigative Reporting, The Intercept, and the *Ziff Davis* Plaintiffs.

Over the course of the litigation, OpenAI destroyed virtually all of the API logs, represented that it does not have possession, custody, or control of the enterprise ChatGPT logs, and destroyed billions of consumer ChatGPT logs that correspond to "temporary" chats or were the subject of a user-initiated deletion without first searching those logs for responsive information and preserving it.

This appeal, however, is directed solely to the consumer ChatGPT logs that OpenAI did not destroy, but instead repeatedly compressed over the course of the litigation in a manner that rendered them unsearchable. OpenAI admits in footnote 4 of its brief that it compressed its consumer ChatGPT logs on at least twenty-four separate occasions since The New York Times filed its lawsuit:

> **[E]ach month, OpenAI compresses conversation log data before placing it into long-term, "offline" storage.** *See* ECF 43-18. After a conversation log is compressed, only a limited amount of metadata about the conversation, such as the date it was created, remains visible and in a searchable format. *See* ECF 864 Ex. K, at 2. To view and search the full content of the logs, the logs must first be decompressed. *Id*. **In other words, OpenAI cannot, for example, search for every conversation in which a user mentioned "The New York Times" without first decompressing and processing every single one of the billions of ChatGPT conversations in offline storage.**

ECF 935 at 4, n. 4 (emphasis added). Contrary to OpenAI's representation, News Plaintiffs never "agreed that the appropriate way to test News Plaintiffs' output-based infringement claims is to decompress a sample of ChatGPT conversations so that statically significant conclusions can be drawn about the full set of historical conversation data." *Id*. Random sampling of the log data is the consequence of OpenAI's refusal to search the consumer ChatGPT logs it compressed for outputs that copy or are otherwise substitutive of News Plaintiffs' works.

**B.    The Sampling Negotiations Leading Up to the November 7 Order Compelling OpenAI to Produce 20 Million De-Identified Consumer ChatGPT Logs**

The present dispute relates only to ChatGPT logs that OpenAI did not destroy and has voluntarily decompressed pursuant to the parties' negotiations. For these retained ChatGPT logs, the parties engaged in extensive meet-and-confers, including with their technical experts who offered differing views on an appropriate sampling methodology. ECF 394 and 435. OpenAI first produced metadata identifying the ChatGPT logs that were then available for sampling on April 11, 2025.[4] ECF 656 at 2. On May 20, News Plaintiffs proposed a methodology to sample the consumer ChatGPT logs over a two-year period from Dec. 2022-Nov. 2024. ECF 394-3.

The parties eventually reached an impasse as to the appropriate size of the sample to draw from the retained consumer ChatGPT logs. News Plaintiffs requested production of 120 million anonymized consumer ChatGPT logs. Because OpenAI would agree to produce only up to 20 million output logs, *see* ECF 394-4 and ECF 394-6, News Plaintiffs filed a motion to compel production of the full requested set of 120 million logs (ECF 394). In opposing that motion, OpenAI disclosed, for the very first time, that it would take "roughly 12 weeks" for OpenAI to pull, decompress, and anonymize the sample of 20 million output logs. ECF 435 at 1. In view of OpenAI's 12-week estimate, News Plaintiffs agreed to an initial set of approximately 20 million logs, while reserving their right to seek their "request for the full 120M samples." ECF 719-2.[5]

On October 14, 2025, OpenAI announced that it was refusing to "produce" the 20 million ChatGPT logs because of "the privacy interests of OpenAI's users." ECF 656-1. For the very first

---

[4] OpenAI represented it had deleted approximately 5% of the logs it originally proffered for sampling by the time News Plaintiffs requested the 20 million sample; News Plaintiffs still do not know when or why that occurred. ECF 656-2 at 1.
[5] Having now gained access to the data, News Plaintiffs note that the 20 million logs would fit on a single flash drive.

time, OpenAI argued that there must be further negotiations to "narrow[] the sample based on steps designed to identify the logs that are actually relevant to News Plaintiffs' claims—including, for example, running searches to identify outputs with text regurgitated from news Plaintiffs' articles." *Id*. In response, News Plaintiffs filed a motion to compel OpenAI to immediately produce the agreed-upon 20 million sample of consumer ChatGPT logs. ECF 656.

At the October 28, 2025, Discovery Conference, Magistrate Judge Wang ordered the parties to submit simultaneous five-page supplemental briefs on the dispute. News Plaintiffs argued that OpenAI's purported concerns about user privacy are without merit because:

> (1) "[B]y the time the output log data samples will be ready for production, OpenAI will have spent three months pulling, decompressing, and anonymizing the records," such that "the output log data will not be tied to a specific individual or entity;"

> (2) "OpenAI may choose to designate the output log data with an appropriate level of confidentiality protections under the Protective Order," and "OpenAI's argument presupposes, without justification, that News Plaintiffs and their experts will violate that protective order;" and

> (3) "OpenAI's agreements with its customers provide that its use and disclosure of output log data is subject to its legal obligations," "OpenAI's agreement with its customers permits OpenAI to use output log data 'to improve [its] Services, for example to train the models that power ChatGPT,'" and "the population of historical ChatGPT output log data does not have any heightened privacy considerations that OpenAI raised in connection with its oppositions to the Preservation Order because OpenAI has already destroyed the logs corresponding to temporary chats and user-initiated deletions."

ECF 719 at 3-4.

News Plaintiffs also addressed OpenAI's "alternative" proposal, explaining how and why the proposal would reveal News Plaintiffs' work product to OpenAI, and would be completely unworkable. For example, it would be impossible for News Plaintiffs to identify which "subset[s] of the sample records—none of which News Plaintiffs have seen—are relevant to this case." *Id*. at 4. News Plaintiffs explained that "OpenAI has not identified any technical burden in producing

the data, and it would be far less burdensome for OpenAI to produce the ChatGPT records than to have News Plaintiffs engage in protracted technical discussions and experimentation (at the risk of revealing their work product) over different mechanisms for analyzing the data." *Id.* at 5. News Plaintiffs also submitted a declaration from one of their technical experts explaining why it would be impracticable and inefficient to somehow identify a subset of data without first seeing the data, and that identifying outputs that copy or otherwise substitute for News Plaintiffs' works within the produced logs will likely be an iterative process with many searches built on the results of prior searches. Goldstein Decl., ECF 656-3, ¶ 4. News Plaintiffs' expert also explained the delays that OpenAI's alternative proposal would cause. *Id.* at ¶¶ 5-6.

On November 7, 2025, Magistrate Judge Wang issued an Order (ECF 734) granting News Plaintiffs' motion to compel production of the 20 million de-identified Consumer ChatGPT Logs (ECF 656).[6] That Order explains that production is appropriate because: "OpenAI has failed to explain how its consumers' privacy rights are not adequately protected by: (1) the existing protective order in this multidistrict litigation or (2) OpenAI's exhaustive de-identification of all the 20 million Consumer ChatGPT Logs." ECF 734 at 1. The Order further explains that: "OpenAI has consistently relied on the use of Cochran's Formula by Judge Keulen in *Concord Music Group, Inc. v. Anthropic PBC*, 24-cv-3811 (EKL) (SVK), 2025 WL 1482734 (N.D. Cal. May 23, 2025) in support of its previous proposed methodology for conversation data sampling, (*see, e.g.*, ECF 104), but fails to explain why Judge Keulen's subsequent order directing production of the entire 5-million record sample to the plaintiff in that case is not similarly instructive here." *Id.* at 2.

---

[6] While the Order is dated November 7, 2025, News Plaintiffs were not served with the Order by the ECF system until November 10, 2025. Maisel Decl. ¶ 3.

### C.    Procedural History

On November 12, 2025, OpenAI moved for reconsideration of Magistrate Judge Wang's November 7 Order and sought a stay (ECF 742).  News Plaintiffs opposed OpenAI's request that same day. ECF 746. On November 13, 2025, Magistrate Judge Wang ordered OpenAI to file a reply and denied OpenAI's request to stay her November 7 Order. ECF 750. OpenAI filed its reply on November 14, 2025. ECF 742. On November 24, 2025, OpenAI filed its initial Rule 72 objection to the November 7 Order. ECF 841. OpenAI did not ask this Court to stay Magistrate Judge Wang's November 7 Order in its initial Rule 72 objection.

On December 2, 2025, Magistrate Judge Wang denied OpenAI's motion for reconsideration in a carefully written nine-page opinion and order, finding that production of the logs is relevant and proportional to the needs of the case. ECF 896. While Magistrate Judge Wang noted that OpenAI's motion for reconsideration "should be denied because OpenAI has failed to put forth any facts or law that the Court did not consider and that would compel a different conclusion," she nonetheless went further to "address OpenAI's arguments." *Id.* at 5 (internal citation and quotations omitted).

On relevance, Magistrate Judge Wang held that "[t]he 20 Million ChatGPT Logs are clearly relevant to News Plaintiffs' output claims to the extent that they contain partial or whole reproductions of News Plaintiffs' copyrighted works, and to OpenAI's affirmative defenses to the extent that they contain other user activity—and News Plaintiffs are entitled to discovery on both." *Id*. at 7. On burden and proportionality, Magistrate Judge Wang found that the "20 million sample here represents less than 0.05% of the total logs that OpenAI has retained in the ordinary course of business," and that "the burden of production is minimal at this point; OpenAI has completed (or nearly completed) the extensive process of applying its internal de-identification

tool—which OpenAI itself has lauded as significantly more effective at removing both personally identifiable information <u>and</u> private information, (*see* ECF 435 at 1)—and OpenAI has articulated no additional burden with producing the de-identified output logs to News Plaintiffs." *Id*. at 7 (emphasis in original).

Magistrate Judge Wang also highlighted the "multiple layers of protection in this case" that adequately safeguard user privacy interests, including: (1) "reducing the total output logs subject to discovery from tens of billions to 20 million," (2) "OpenAI has de-identified the 20 Million ChatGPT Logs," (3) "consumers' privacy is safeguarded by the existing protective order in this case, and by designating the output logs as 'attorneys' eyes only,'" and (4) "the November 7 Order directed the parties to continue meeting and conferring on additional ways to protect OpenAI's consumers' privacy." *Id*. at 8.

This Court subsequently ordered OpenAI to file an updated memorandum in support of its Rule 72(a) objection to address the order denying reconsideration and the timeliness of OpenAI's original objection. ECF 903.

On December 8, 2025, OpenAI filed a letter with Magistrate Judge Wang again asking to stay the November 7 Order, ECF 909, and News Plaintiffs opposed OpenAI's request that same day, ECF 915. On December 9, Magistrate Judge Wang again denied OpenAI's request for a stay, warning OpenAI that failure to produce the 20 million consumer ChatGPT logs "may result in the imposition of costs under Fed. R. Civ. P. 37(a)(5)(B) (requiring courts to award expenses incurred on a discovery motion unless the motion was substantially justified) and/or Fed. R. Civ. P. 37(b)(2)(C) (requiring courts to impose costs on a party that disobeys a discovery order). ECF 932 at 2.

OpenAI filed its updated memorandum in support of its Rule 72(a) objection on December 10. ECF 935. This memorandum addresses OpenAI's objection to the November 7 Order docketed at ECF 734 directing OpenAI to produce the 20 million de-identified consumer ChatGPT logs to News Plaintiffs, and the December 3 order docketed at ECF 896 denying OpenAI's request for reconsideration of the November 7 order. The order docketed at ECF 910 is directed to cross-production of the logs to Class Plaintiffs.

## III.    LEGAL STANDARDS

Federal Rule of Civil Procedure 72(a) provides that a district judge must "modify or set aside any part" of a magistrate judge's non-dispositive pretrial order "that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). "A decision is 'clearly erroneous' when the reviewing [c]ourt is left with the definite and firm conviction that a mistake has been committed." *Smith v. City of New York*, 754 F. Supp. 3d 581, 583 (S.D.N.Y. 2024) (citation omitted); *see also Fashion Exch. LLC v. Hybrid Promotions, LLC*, No. 14-cv-1254, 2021 WL 1172265, at *1 (S.D.N.Y. Mar. 29, 2021) (Stein, J.). "Similarly, a finding is contrary to law 'when it fails to apply or misapplies relevant statutes, case law, or rules of procedure.'" *R.F.M.A.S., Inc. v. So et al.,* 748 F. Supp. 2d 244, 248 (S.D.N.Y. 2010) (citation omitted). "[P]ursuant to these standards, a magistrate judge's determinations on discovery matters are entitled to substantial deference." *Id.*

## IV.    ARGUMENT

OpenAI argues that Magistrate Judge Wang's order compelling production of the 20 million de-identified consumer ChatGPT logs is "clearly erroneous" because (i) "the Order failed to adequately consider the privacy interests of absent non-parties" and (ii) "the Order failed to consider (and did not even acknowledge) a far less burdensome means to satisfy the needs of this

case." ECF 935 at 8. Magistrate Judge Wang's careful orders are not "clearly erroneous" and should be affirmed.

###### A.    OpenAI Does Not Dispute the Relevance of the 20 Million De-Identified Consumer ChatGPT Logs

OpenAI does not dispute Magistrate Judge Wang's finding that "the 20 Million ChatGPT Logs are relevant to the case." ECF 896 at 5-6. In fact, OpenAI's only challenge as to relevance is its false assertion that News Plaintiffs have estimated that only "0.001 to 0.006% of ChatGPT conversations" have "some particularized relevance to Plaintiffs' claims." ECF 935 at 2-3 (emphasis in original). OpenAI made a similar assertion to Magistrate Judge Wang, who observed that OpenAI "cites nothing in the record to support this proposition." ECF 896 at 4, n.4 (finding no "'concession' by News Plaintiffs that less than 0.1% of the output logs are relevant"). Notably, OpenAI raised the 0.006% percentage in the last output log dispute before this Court, which News Plaintiffs also disputed, and this Court rejected. ECF 271; ECF 303 at 288-289. No matter how many times OpenAI says it, there is simply no evidence in the record to support OpenAI's assertion that 99.994-99.999% of logs "do not have any particularized relevance to the claims at issue here." ECF 935 at 3.

Instead, in the briefing before Magistrate Judge Wang, News Plaintiffs cited OpenAI's own public research on how people use ChatGPT, which suggests that 14-24% of all ChatGPT users search for information about people, current events, products, and recipes – namely, the very type of content the News Plaintiffs publish. ECF 791 at 5 (citing Chatterji et al. "How People Use ChatGPT," Sep. 15, 2025, pp. 2, 14 (available at https://cdn.openai.com/pdf/a253471f-8260-40c6-a2cc-aa93fe9f142e/economic-research-chatgpt-usage-paper.pdf). In fact, in the few days that News Plaintiffs have had to search OpenAI's consumer ChatGPT logs first made available

on Monday December 15, News Plaintiffs have already found (in the small sample that OpenAI has produced) references to News Plaintiffs' content and substitutive uses of News Plaintiffs' content—notwithstanding OpenAI's extensive and inappropriate redactions applied to the data. Maisel Decl. ¶ 2. The over 8 million hits on News Plaintiffs' domains and publication names in Microsoft's Bing Chat data–which, unlike the ChatGPT logs, was preserved in a searchable format–further point to the same conclusion: discovery into the log data is reasonably calculated to show evidence in support of News Plaintiffs' copyright infringement claims. ECF 950 at 7-8.

### B.    Magistrate Judge Wang Fully Addressed the Privacy Interests of ChatGPT Users

The orders fully addressed and balanced the privacy concerns at stake with the needs of the case. As Magistrate Judge Wang correctly noted: "privacy considerations" are "only one factor in the proportionality analysis, and cannot predominate where there is clear relevance and minimal burden." ECF 896 at 7. Magistrate Judge Wang appropriately weighed these privacy considerations, identifying four "layers of protection" that adequately safeguard user privacy interests: (1) "reducing the total output logs subject to discovery from tens of billions to 20 million," (2) "OpenAI has de-identified the 20 Million ChatGPT Logs," (3) "consumers' privacy is safeguarded by the existing protective order in this case, and by designating the output logs as 'attorneys' eyes only,'" and (4) "the November 7 order directed the parties to continue meeting and conferring on additional ways to protect OpenAI's consumers' privacy." ECF 896 at 8.

*First*, OpenAI's new-found concerns about the alleged inadequacies of its de-identification process are belied by its prior representations to the Court (and News Plaintiffs), as well as its own business practices. Magistrate Judge Wang cited OpenAI's numerous representations about its "its comprehensive internal de-identification tool," and how OpenAI will de-identify the logs "using the same rigorous process that OpenAI applies to other user data."

13

ECF 896 at 3 (quoting ECF 435 at 1). For example, OpenAI's declarant testified: "To protect our

users, OpenAI built a ███████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████." ECF 435-1 at ¶ 8. Furthermore, OpenAI's

argument that the de-identification process it uses in the ordinary course of business is sufficient

for its own uses of the logs but not for production to News Plaintiffs is baffling. ECF 935 at 10.

OpenAI's agreement with its customers permits OpenAI to use output log data "to improve [its]

Services, for example to train the models that power ChatGPT," thus making clear to users that

their prompts and the returned answers (de-identified using the same tools) could be used for

other purposes.[7] If this de-identification process is flawed, why is OpenAI training its own models

on de-identified user conversations that can be regurgitated by OpenAI products?

*Second*, and for now the third time, OpenAI fails to address why the Protective Order

entered and agreed upon by the parties is not sufficient to address users' privacy interests over

the de-identified ChatGPT logs. Magistrate Judge Wang correctly held (twice) that OpenAI failed

to address why the Protective Order is not sufficient. ECF 896 at 8 ("As I stated in the November

7 order, OpenAI has 'failed to explain how its consumers' privacy rights are not adequately

protected by . . . the existing protective order in this multidistrict litigation' and OpenAI's de-

identification process" (ECF 734) and "asserts only in passing in its reply (and without support)

that the Protective Order is 'not a reason to disclose' the 20 Million ChatGPT Logs. (ECF 752).

---

[7] https://openai.com/policies/row-privacy-policy/. In the Northern District of California class action, prior to
centralization in this MDL, OpenAI relied on this privacy policy to seek discovery about how the plaintiffs used
ChatGPT. According to OpenAI, the privacy policy makes clear that users' prompts and output data "may be used"
to "comply with legal obligations and legal process," and OpenAI can use "information in ChatGPT inputs" to
"defend itself." *In re OpenAI ChatGPT Litig.*, Case No. 23-cv-3223, ECF 153 at 2 (N.D. Cal.), June 18, 2024.
Translation: privacy is important to OpenAI but only when respecting privacy is helpful to its position.

*See also Viacom Int'l Inc. v. YouTube Inc.*, 253 F.R.D. 256, 262 (S.D.N.Y. 2008) ("defendants cite no authority barring them from disclosing such information in civil discovery proceedings, and their privacy concerns are speculative"); *Columbia Pictures Indus. v. Bunnell*, No. 06-cv-1093, 2007 WL 2080419, at *8 (C.D. Cal. May 29, 2007) ("The court finds that defendants' asserted interest in maintaining the privacy of the users of their website can be adequately protected by the protective order already entered in this action and the masking of the users' IP addresses.").

In addressing the sole decision cited in OpenAI's prior briefing, *Nichols v. Noom*, 20-CV-3677 (LGS) (KHP), 2021 WL 1997542 (S.D.N.Y. May 18, 2021), Magistrate Judge Wang correctly found that Judge Parker "explicitly stated that redaction of personally identifying information and medical information was not necessary given the protective order in that case, and given the ability of Noom to designate the chats attorney's eyes only." ECF 896 at 8-9. Magistrate Judge Wang further found that the protections in this case are even greater than those in *Noom* because "OpenAI will complete its de-identification of the 20 Million ChatGPT Logs <u>before</u> production to News Plaintiffs." *Id.* OpenAI identified no clear error in Magistrate Judge Wang's legal analysis.

Moreover, the *S.E.C. v. Rajaratnam*, 622 F.3d 159, 185 (2d Cir. 2010) case that OpenAI cites for the first time in its brief before this Court is inapposite. In that case, the Second Circuit addressed the district court's order compelling the appellants to produce in a civil proceeding wiretapped conversations originally provided to appellants in a parallel criminal proceeding. *Id.* As an initial matter, unlike News Plaintiffs' request that OpenAI produce 20 million <u>de-identified</u> conversation logs, the wiretapped conversations in *S.E.C. v. Rajaratnam* were not de-identified or subjected to any other process to anonymize the wiretapped conversations at issue.

15

Furthermore, in *S.E.C. v. Rajaratnam*, the Second Circuit recognized that the significance of the privacy concerns at stake was almost entirely dictated by the legality of the wiretapped conversations, which had not yet been decided in the parallel criminal proceedings. *Id.* at 185. Because the District Court compelled production of the wiretapped conversation prior to a ruling on whether the conversations were lawfully intercepted, the Second Circuit held that the District Court abused its discretion. *Id.* at 186-87. The Second Circuit noted that "a determination that the wiretaps were legal would reduce the privacy concerns" but further stated in a footnote that should the wiretaps be found to have been illegal, "the district court's protective order limiting disclosure to the SEC and other parties to the litigation was not sufficient to protect the privacy interests at stake." *Id.* at 186, n.27.

Simply put, the Second Circuit in *S.E.C. v. Rajaratnam* did not hold, nor did it suggest, that the protective order would be inadequate to protect privacy interests should the appellants be required to disclose lawfully obtained wiretapped conversations. In fact, OpenAI does not disclose that after the Second Circuit's opinion in *S.E.C. v. Rajaratnam*, the Court presiding over the parallel criminal proceeding determined that the wiretapped conversations were lawfully intercepted, and consequently, the Court in the civil proceeding found that the weight of the privacy interests "diminished considerably" in view of the Court's protective order. *See S.E.C. v. Galleon Mgmt., LP*, 274 F.R.D. 120, 124 (S.D.N.Y. 2011). Ordering the production of the wiretapped conversations, the Court further noted that "whatever privacy interests remain [...] had to be balanced against the SEC's weighty interest in obtaining the wiretaps without further delay" because, as the Second Circuit noted, "the SEC has already suffered and continues to suffer prejudice as a result of defendants' unilateral access to the wiretaps." *S.E.C. v. Galleon Mgmt., LP*, 274 F.R.D. at 125.

16

News Plaintiffs have similarly been prejudiced by OpenAI's unilateral access to its output log data which, as Magistrate Judge Wang has recognized, is relevant to News Plaintiffs' infringement claims, as well as to OpenAI's defenses in these cases. *See* ECF 896 at 6-7.

Finally, OpenAI's brief wholly fails to address the parties' ongoing meet-and-confer efforts on additional privacy-protection measures, as ordered by Magistrate Judge Wang. On December 5, the parties met and conferred about OpenAI provisioning secure laptops to Plaintiffs. Maisel Decl., ¶ 4. As a result of that conferral, the parties agreed to continue to "meet and confer about use of the log data in the litigation, and in the meantime, Plaintiffs agree not to export data out of the laptops." *Id*.

Accordingly, the orders were not clearly erroneous in balancing the privacy interests of ChatGPT users with the needs of the case.

### C.    Magistrate Judge Wang Considered and Rejected OpenAI's Proposed "Alternative" to First De-Identify and Then Search the Consumer ChatGPT Logs

Magistrate Judge Wang correctly considered and rejected OpenAI's "alternative" proposal to first de-identify the ChatGPT logs and then search them. As outlined in Section II.A and II.B, *supra*, the parties have engaged in negotiations over a period of more than 500 days, during which OpenAI refused to search its ChatGPT logs for News Plaintiffs' works and (repeatedly) destroyed the logs or compressed them (thereby making them unsearchable). Recognizing that time is of the essence to keep the schedule on track, News Plaintiffs agreed to proceed initially with a dramatically limited sample of 20 million ChatGPT logs (less than .1% of the tens of billions existing ChatGPT logs).[8] *See* Section II.B, *supra*.

---

[8] News Plaintiffs expressly reserved the right to request additional sampling or productions. ECF 719-2.

It makes no sense for OpenAI to have spent <u>four months</u> processing and de-identifying the data, only to then not produce it. News Plaintiffs submit this was yet another thinly veiled attempt by OpenAI to delay or obstruct the production of direct evidence to support News Plaintiffs' claims. In Magistrate Judge Wang's own words:

> OpenAI's argument is also belied by its de-identification of the entire 20 million log sample. **If OpenAI never intended to produce the entire 20 Million ChatGPT Logs, it would not have (and should not have) spent the time and money de-identifying the entire 20 million log sample**. Either OpenAI initially intended to produce the 20 million logs to News Plaintiffs and changed its mind, for one reason or another; or OpenAI never intended to produce the logs and de-identified the entire 20 million either as a discovery tactic, or for some other reason that has not been identified. Neither bode well for OpenAI.

ECF 896 at 9, n. 9 (emphasis added).

In addition to its incorrect assertion that between 99.994% and 99.999% of the logs are not relevant, *see* Section IV.A, *supra* (in fact, OpenAI reported that 14-24% of all ChatGPT users search for news or current events), OpenAI makes the stunning, and incorrect, assertion that "it is uncontested that OpenAI's alternative is a less burdensome means to satisfy the needs of this case." ECF 935 at 15. Not so. Rather than "vaguely gesture to 'work product'" concerns, ECF 935 at 15, News Plaintiffs thoroughly briefed why OpenAI's "alternative" proposal was unworkable with the case schedule and prejudicial to News Plaintiffs. In their initial motion to compel, News Plaintiffs argued that "it would be far less burdensome for OpenAI to produce the ChatGPT records than to have News Plaintiffs engage in protracted technical discussions and experimentation (at the risk of revealing work product) over different mechanisms for analyzing the data." ECF 656 at 3. News Plaintiffs and their expert (in an unrebutted declaration) further explained to the Court that for each iteration of a search (and there will likely be many such iterations) they "anticipate it will take several weeks to develop and run [] searches over at least

20 million different records, analyze the results, and identify any deficiencies—assuming there are no technical issues." ECF 656 at 3.

As this Court correctly recognized, analyzing substantial, and hence infringing, similarity "presents one of the most difficult questions in copyright law, and one that is the least susceptible of helpful generalizations." (ECF 701 at 4) (quoting *Structured Asset Sales, LLC v. Sheeran*, 120 F.4th 1066, 1078 (2d Cir. 2024)). News Plaintiffs demonstrated these difficulties to Magistrate Judge Wang, and shared why it would be very difficult to craft searches for their works without first seeing the data, in their supplemental brief:

> No single search, or handful of searches, are likely going to capture the diversity of content in the millions of copyrighted works at issue or identify all infringing or substitutive outputs. Instead, News Plaintiffs' work with the produced output logs will likely be an iterative process, with many searches built on the results of prior searches. Goldstein Decl., Dkt. 656-3, ¶4. News Plaintiffs will also wish to run searches over the metadata fields to analyze, for example, how their content was accessed and used as part of RAG.

ECF 719 at 5.

Finally, in both the November 7 Order and December 12 Order, Magistrate Judge Wang considered the applicability of the sampling methodology and subsequent production of 5 million logs in *Concord Music Grp., Inc. v. Anthropic PBC* to support production of the 20 million de-identified ChatGPT logs here. In the November 7 Order, Magistrate Judge Wang noted that "OpenAI has consistently relied on the use of Cochran's formula by Judge Keulen in *Concord*," but "fails to explain why Judge Keulen's subsequent order directing production of the entire 5-million record sample to plaintiff in that case is not similarly instructive here." ECF 734 at 1-2. In the December 12 Order, Magistrate Judge Wang further explained: "OpenAI did have an opportunity to explain why a case that it has relied on consistently for nearly a year did not apply, it simply chose not to address it because it did not support OpenAI's argument." ECF 896 at 6, n.

19

7. Tellingly, OpenAI again cannot explain why *Concord* is not instructive here–its sole argument is that Anthropic produced the logs in that case after being ordered to do so, without raising privacy concerns. OpenAI is wrong. In *Concord,* Anthropic raised similar privacy concerns and the Court had acknowledged that these concerns were "important and do need to be addressed." *See* Ex. C at 10-11 (*Concord Music Group, Inc. et al. v. Anthropic PBC*, Case No. 5:24-cv-03811-EKL, Dkt. 399 (N.D. Cal. Aug. 8, 2025)). With these privacy concerns in mind, the Court ordered Anthropic to produce the log data in a secured environment thereby, "balancing Anthropic's interest in the security of this data." ECF 719-3 at 4.

Accordingly, Magistrate Judge Wang did not overlook OpenAI's "alternative" proposal— she appropriately rejected it.

## V.    CONCLUSION

News Plaintiffs respectfully request that this Court affirm the orders docketed at ECF 734 and 896.

Dated: December 19, 2025                 */s/Ian Crosby*

Ian Crosby *(pro hac vice)*
Katherine M. Peaslee *(pro hac vice)*
SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101
Telephone: (206) 516-3880
Facsimile: (206) 516-3883
icrosby@susmangodfrey.com
kpeaslee@susmangodfrey.com

Davida Brook *(pro hac vice)*
Emily K. Cronin (*pro hac vice*)
Adnan Muttalib (*pro hac vice*)
SUSMAN GODFREY L.L.P.
1900 Ave of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

dbrook@susmangodfrey.com
ecronin@susmangodfrey.com
amuttalib@susmangodfrey.com

Elisha Barron (5036850)
Zachary B. Savage (ZS2668)
Alexander Frawley (5564539)
Eudokia Spanos (5021381)
SUSMAN GODFREY L.L.P.
One Manhattan West
New York, NY 10001
Telephone: (212) 336-8330
Facsimile: (212) 336-8340
ebarron@susmangodfrey.com
zsavage@susmangodfrey.com
afrawley@susmangodrey.com
espanos@susmangodfrey.com

Steven Lieberman (SL8687)
Jennifer B. Maisel (5096995)
Kristen J. Logan *(pro hac vice)*
ROTHWELL, FIGG, ERNST & MANBECK, P.C.
901 New York Avenue, N.W., Suite 900 East
Washington, DC 20001
Telephone:  (202 783-6040
Facsimile: (202) 783 6031
slieberman@rothwellfigg.com
jmaisel@rothwellfigg.com
klogan@rothwellfigg.com

***Attorneys for Plaintiff***
***The New York Times Company***

*/s/ Steven Lieberman*
Steven Lieberman (SL8687)
Jennifer B. Maisel (5096995)
Robert Parker *(pro hac vice)*
Jenny L. Colgate *(pro hac vice)*
Michael Jones (pro hac vice)
Mark Rawls *(pro hac vice)*
Kristen J. Logan *(pro hac vice)*
Bryan B. Thompson (6004147)
ROTHWELL, FIGG, ERNST &
MANBECK, P.C.

21

901 New York Avenue, N.W., Suite 900 East
Washington, DC 20001
Telephone: (202) 783-6040
Facsimile: (202) 783-6031
slieberman@rothwellfigg.com
jmaisel@rothwellfigg.com
rparker@rothwellfigg.com
jcolgate@rothwellfigg.com
mjones@rothwellfigg.com
mrawls@rothwellfigg.com
klogan@rothwellfigg.com
bthompson@rothwellfigg.com

***Attorneys for Plaintiffs***
***Daily News, LP; The Chicago Tribune Company,***
***LLC; Orlando Sentinel Communications***
***Company, LLC; Sun-Sentinel Company, LLC;***
***San Jose Mercury-News, LLC; DP Media***
***Network, LLC; ORB Publishing, LLC; and***
***Northwest Publications, LLC***


*/s/ Matthew Topic*
Jonathan Loevy (*pro hac vice*)
Michael Kanovitz (*pro hac vice*)
Lauren Carbajal (*pro hac vice*)
Stephen Stich Match (No. 5567854)
Matthew Topic (*pro hac vice*)
Thomas Kayes (*pro hac vice*)
Steven Art (*pro hac vice*)
Kyle Wallenberg (*pro hac vice*)

LOEVY & LOEVY
311 North Aberdeen, 3rd Floor
Chicago, IL 60607
312-243-5900 (p)
312-243-5902 (f)
jon@loevy.com
mike@loevy.com
carbajal@loevy.com
match@loevy.com
matt@loevy.com
steve@loevy.com
kayes@loevy.com
wallenberg@loevy.com

22

***Attorneys for Plaintiff***
***The Center for Investigative Reporting, Inc. and***
***The Intercept***

*/s/ Lacy H. Koonce, III*
Lacy H. ("Lance") Koonce, III
KLARIS LAW PLLC
161 Water Street
New York, NY 10038
Telephone: (646) 779-4882
lance.koonce@klarislaw.com

Guy Ruttenberg
Ruttenberg IP Law, A Professional Corporation
1801 Century Park East
Suite 1920
Los Angeles, CA 90067
Telephone: (310) 627-2270
ZD-AICopyright@ruttenbergiplaw.com

***Attorneys for Plaintiffs Ziff Davis, Inc., Ziff Davis,***
***LLC, IGN Entertainment, Inc., Everyday Health***
***Media, LLC, Mashable, Inc., and CNET Media,***
***Inc.***

23

## **CERTIFICATE OF COMPLIANCE**

In accordance with Local Civil Rule 7.1(c), I certify that the foregoing Memorandum of Law is 6,330 words, exclusive of the caption page, table of contents, table of authorities, and signature block. The basis of my knowledge is the word count feature of the word-processing system used to prepare this memorandum.

Dated: December 19, 2025                     */s/Jennifer Maisel*
                                             Jennifer Maisel