

January 5, 2026

*VIA ECF*

Hon. Ona T. Wang
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

cc: All Counsel of Record (via ECF)

Re:  **_Discovery dispute concerning The Times's refusal to produce data underlying its surveys and studies concerning the health of The Times's business_**
*In re OpenAI Inc. Copyright Infringement Litigation*, No. 1:25-md-03143-SHS-OTW
This Document Relates to: *NYT v. Microsoft et al.*, No: 1:23-cv-11195-SHS-OTW

Dear Judge Wang:

OpenAI moves to compel The Times to produce the data underlying 10 specific surveys and studies that are cited within Times-produced presentations relating to the health of its business, including *specifically in relation to Generative AI*. The Times has made clear that it intends to rely on these presentations in support of its market harm and trademark dilution claims. Yet it refuses to produce the underlying data that would allow OpenAI to challenge the presentations' conclusions, as OpenAI does not know the questions asked, the sample size of those surveyed, or their individual responses. Instead, The Times seeks to present its packaged conclusions and prevent OpenAI from effectively responding to them. Although The Times's presentations contain references to myriad surveys and studies, OpenAI seeks the data for only 10 specific surveys and studies. *See* Appendix A. In particular, OpenAI seeks the data underlying only those studies which The Times specifically purports to support its claims regarding market harm and trademark dilution. Because the requested data is readily available, limited in scope, and necessary for OpenAI to effectively challenge The Times's conclusory allegations, The Times should be compelled to produce it during fact discovery.

Page 2

I.  **The Times has produced presentations drawing conclusions from surveys and studies, but it refuses to produce the underlying data.**

The Times has produced presentations citing surveys or studies that it performed or commissioned regarding its brand and GenAI, including Defendants' products, some of which were created after the commencement of this lawsuit. For example, ████████ ████████████████████████████████████████████████████ Ex. 1 (NYT_01034148). ██████████████████████████████████████████████ ████████████████ *Id.* at 8. Another presentation █████████████████ ██████████████████████████████████████████. *See* Ex. 2 (NYT_00832496). But the presentations merely claim that these surveys or studies support such conclusions; The Times has not produced the data that would allow OpenAI to test those assertions.

The Times has further produced several sets of "brand tracker" presentations—both for its overall brand and for "sub-brands" like Wirecutter and The Athletic. The presentations state that they ████████████████████████████████████████ *E.g.*, Ex. 3 (NYT_00832507) at 3. Each presentation contains ██████████████████████████████████████████████████ *E.g.*, *id.* at 22 (slide claiming █████████). ████████. *E.g.*, *id.* at 27 ████). But these presentations do not contain the data either.

These presentations are thus based on highly relevant data that OpenAI cannot access absent production by The Times. They are responsive to several of OpenAI's requests, including, *inter alia*, RFP 35, which seeks documents "relating to formal or informal analyses relating to trends in readership or online subscriptions and the causes thereof." Ex. 4. OpenAI identified specific presentations and asked The Times to commit to producing the purportedly supportive data. *See* Ex. 5 at 3 (12/17/25 C. Porto email). The Times refused, claiming that the request was "vague, overbroad, and unduly burdensome" without substantiating those objections. *Id.* at 2 (12/18/25 A. Muttalib response). When OpenAI reiterated that it had identified specific sets of data—with citations to specific Bates numbers—The Times again refused. *Id.* at 1–2 (12/20/25 S. McManus response). The Times stood on its refusal in telephonic meet-and-confer.

II.  **The data is relevant to key issues and its production is not unduly burdensome.**

The Times has not claimed that the data underlying the presentations isn't relevant to the issues in the case. On the contrary, The Times has explicitly stated that these presentations suffice to respond to various discovery requests and have refused to provide additional discovery on that basis. ***First***, The Times has pointed to presentations citing the surveys and studies at issue to establish market harm. Ex. 6 at 1 (10/26/25 A. Muttalib email). ***Second***, The Times has

2

3941747

Page 3

explicitly indicated that it intends to rely on its brand tracker data to demonstrate the fame of Times trademarks in connection with its trademark claims. Dkt. 186 (resisting additional discovery into trademark claim on basis that The Times already produced brand tracker presentations); Ex. 7 (4/23/25 A. Muttalib email) (denying request for additional discovery on basis of production of brand tracker reports). The Times also has not claimed that survey evidence related to its allegations of market harm and trademark dilution are irrelevant—to the contrary, The Times has produced at least some survey evidence related to subscription cancellations. *See* Dkt. 82 at 9 (recognizing Times concession that cancellation surveys are relevant to market harm).

The Times's only response to the foregoing is that Defendants' requests are overbroad and unduly burdensome. *See* Ex. 5 at 2 (12/18/25 A. Muttalib email). This is both false and unsupported. Defendants are seeking only the data underlying 10 specific surveys and studies. The Times has failed to explain how producing discrete survey data cited in these presentations is unduly burdensome. *Eletson Holdings Inc. v. Levona Holdings Ltd.*, 2025 WL 1314239, at *2 (S.D.N.Y. May 6, 2025) ("A conclusory assertion of burdensomeness is entitled to no weight whatsoever."). The data is easily accessible to The Times—indeed, it conducted or commissioned the surveys, made summaries, and drew purported conclusions from the data in multiple presentations. And its burden claims ring particularly hollow given its demand that OpenAI produce 20 *million* user conversations in this litigation, orders of magnitude more than the 10 surveys and studies for which OpenAI seeks data (and for which there are no third party privacy considerations).

Clearly outweighing any burden claims The Times makes is the prejudice to OpenAI if the data is not produced. OpenAI does not possess the data from these surveys or studies, and it cannot recreate the data itself. OpenAI does not know the sample size, nor what questions were posed, nor what groups of users were asked the questions, nor whether users were asked questions that could undermine The Times's theories (such as whether a user now uses ChatGPT in addition to, rather than instead of, The Times). Absent production of the underlying data, OpenAI cannot effectively challenge the conclusions in the surveys or studies. *See Husky v. State Farm Fire & Cas. Ins. Co.*, 2025 WL 3552388, at *3 (N.D. Ill. Dec. 11, 2025) (compelling production of "38,000 data entries" and survey responses and demographic information for "over 850 survey respondents[]," even though court found survey was "minimally relevant").

**III.    The data production should occur during fact discovery, not later stages of the case.**

Finally, The Times should not be allowed to delay producing the data until later stages of the case, under the guise that it is expert discovery. The survey evidence relied on by The Times in these presentations was not created by its litigation experts and was disseminated to Times executives for business purposes. While experts in this case may opine on the conclusions to be drawn from the data, "data for an expert report should be gathered during fact discovery." *City of Almaty, Kazakhstan v. Ablyazov*, No. 1:15-cv-05345 (KHP) (AJN), 2019 WL 275701, at *2 (S.D.N.Y. Jan. 22, 2019). Otherwise, "fact discovery could continue long after the close of fact discovery, so long as such discovery were made for the purposes of developing expert reports." *Id.*

3941747

Page 4

Moreover, neither deposition questions nor expert discovery are on their own sufficient substitutes for the data. Absent the underlying survey data, deposition questioning will not be effective. Defendants' experts likewise need the data upon which The Times is relying in order to analyze and challenge The Times's conclusions.

Finally, The Times cannot avoid production on the grounds that the cited surveys merely go to its "state of mind." As an initial matter, these surveys do not reflect the "state of mind" of Times executives—they were purportedly designed to obtain the viewpoints of *Times customers* with respect to key issues related to market harm and trademark dilution. *See* Appendix A. Moreover, these real-time assessments are relevant, discoverable evidence that may contradict later-developed surveys administered by The Times's experts to support its claims.

***

The Times must produce, during fact discovery, the data underlying the surveys and studies concerning the health of The Times's business that OpenAI has identified.

Respectfully,

| KEKER, VAN NEST & PETERS LLP[1] | LATHAM & WATKINS LLP | MORRISON & FOERSTER LLP |
|---|---|---|
| */s/ Spencer McManus* <br> Spencer McManus | */s/ Allison Blanco* <br> Allison Blanco | */s/ Rose S. Lee* <br> Rose S. Lee |

---

[1] All parties whose electronic signatures are included herein have consented to the filing of this document.

3941747