


LATHAM & WATKINS LLP

MORRISON FOERSTER

January 5, 2026

*VIA ECF*

Hon. Ona T. Wang
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

cc: *All Counsel of Record (via ECF)*

Re: In Re: OpenAI, Inc., Copyright Infringement Litigation, No. 1:25-md-3143,
This Document Relates To: NYT v. Microsoft et al., No. 23-cv-11195

Dear Magistrate Judge Wang:

OpenAI respectfully requests that the Court order The Times to produce its product-specific profit and loss ("P&L") statements for the key verticals identified in The Times's complaint: News, Wirecutter, Cooking, Games, and The Athletic. Complete P&L statements as to each of these verticals are necessary for OpenAI to test The Times's specific allegations that OpenAI's LLMS have caused harm to each of these products. The Times does not contest the relevance of the requested documents, nor does it make a burden objection. Instead, The Times contends that its production of aggregate, company-wide "Flash Books" should suffice to fulfill its discovery obligations. But the Flash Books provide only high-level, consolidated revenue information and obscure the product-level data that would allow OpenAI to challenge both the causes and extent of the specific alleged harms. Indeed, the handful of product-specific P&L statements that the Times ***did*** produce (apparently inadvertently) contain the precise data the OpenAI needs to test The Times's allegations. Accordingly, The Times should be ordered to produce its product-specific P&Ls for the five key verticals identified in its complaint.

**A. The Times maintains product-specific P&Ls, and Defendants have consistently sought them in discovery.**

The Times does not dispute that it keeps product-specific P&Ls in the regular course of business, or that Defendants have long sought such information in discovery. *See, e.g.*, Ex. A (NYT R&O to OpenAI's RFP Set One) at No. 27 (seeking "Documents sufficient to show [The Times's] total revenue, broken down by source" on a monthly basis) and No. 32 (seeking "Documents sufficient to show [The Times's] monthly expenses . . . broken down by category of expense . . . and category of content"); Ex. B (OpenAI's RFP Set 6) at No. 237 (seeking "Documents and Communications sufficient to show the average revenue generated per

subscriber to Your Products"). Indeed, recognizing the indisputable relevance of this information, The Times agreed to produce documents sufficient to show its "monthly expenses" and "total revenue, broken down by source . . . for each month" in April 2024. *See* Ex. A at Nos. 27, 32.

Then, on November 3, 2025—7 weeks after the substantial completion deadline, and ***19 months*** after The Times agreed to produce the relevant financial information—Gordon Diggs (former engineering director for NYT Cooking) testified that [REDACTED] Shortly thereafter, OpenAI requested that The Times produce such P&L statements, given The Times's longstanding commitment to produce this very category of data. *See* Ex. D at 8 (Nov. 25, 2025, C. Porto Correspondence). The Times refused. *See generally id.*

**B. Product-specific P&Ls are directly relevant to harm.**

The Times does not dispute that its product-specific P&L statements are relevant. Nor could it, as the requested statements reflect the financial performance of the specific products placed at issue by The Times's Complaint: News, Wirecutter, Cooking, Games, and The Athletic. *See, e.g.*, ECF 72 (Second Am. Compl.) at ¶ 14.

OpenAI is entitled to this information so that it can test The Times's specific allegations of harm to its business. Indeed, courts in this district routinely compel parties to produce their P&L statements and data. *See, e.g.*, *Iowa Pub. Employees' Ret. Sys. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 2019 WL 13198793, at *1 (S.D.N.Y. Dec. 26, 2019) (compelling production of "reports, data, and databases pertaining to [defendant's] profits and losses"); *Reseau De Voyage Sterling, Inc. v. Unigene Lab'ys*, 2001 WL 709244, at *1 (S.D.N.Y. June 25, 2001) (compelling production of "accounting documents, ledgers, balance sheets and profit and loss statements"); *c.f. A.V.E.L.A., Inc. v. Est. of Monroe*, 2014 WL 715540, at *10 (S.D.N.Y. Feb. 24, 2014) (compelling production of the "underlying financial documentation supporting [litigant's] balance sheets and profit and loss statements").

The product-specific P&L statements are particularly relevant here because The Times alleges that OpenAI's LLMs "deprive The Times of subscription, licensing, advertising, and affiliate revenue." Sec. Am. Compl. ¶ 5. But the aggregate financial data produced by The Times to date indicates that, [REDACTED]. If The Times nonetheless contends that OpenAI's LLMs have caused it harm, that allegation is presumably premised on a more nuanced, product-level theory of harm. *See* Ex. E (NYT Resp. to MSFT Rog. No. 11) [REDACTED]. Product-specific P&Ls are necessary to evaluate that theory of harm.

Additionally, the product-specific P&Ls provide necessary context for The Times's top-line revenue numbers. For example, The Times apparently inadvertently produced a [redacted] hese line-items show how The Times values and invests in its products and provide necessary context for the high-level numbers that The Times has produced thus far. For example, [redacted] *See id.* That type of detail explains revenue fluctuations that would otherwise be concealed by an aggregated "Flash Book," and provides necessary context for OpenAI to challenge The Times's theory of causation and damages.

**C. The Times has not even claimed undue burden, and the Flash Books do not suffice to satisfy its discovery obligations.**

A party resisting discovery on proportionality grounds "must show specifically how each request is burdensome . . . by submitting affidavits or some detailed explanation as to the nature of the claimed burden." *Equal Emp. Opportunity Comm'n v. M & T Bank Corp.*, 2018 WL 11631436, at *3 (S.D.N.Y. May 4, 2018). The Times has made no showing that producing the P&Ls would be unduly burdensome. Nor could it. OpenAI requests a discrete category of documents: P&Ls for five products. The Times's own witnesses have confirmed that [redacted] This testimony undermines any argument by The Times that such records will require a burdensome search to identify and produce.

Unable to claim burden, The Times indicates that its summary Flash Books suffice. They do not. [redacted] *See id.* The Times nonetheless claimed in meet and confer, without citation to any specific document, that [redacted] Ex. D at 2. That misses the point. Preliminary, aggregate revenue information for three verticals falls far short of the detailed information reported in the product-specific P&Ls.

[redacted]

[redacted] As explained in Section B, *supra*, this conceals the granular information needed to test The Times's allegations of harm, contextualize The Times's top-line numbers, and respond to The Times's theory of causation and damages. Summary documentation does not substitute for product-specific P&Ls—which The Times maintains in the ordinary course of business—that provide a granular, disaggregated view of each product's financial performance. *See, e.g.*, *Fashion Exch. LLC v. Hybrid Promotions, LLC*, 2019 WL 6838672, at *4 (S.D.N.Y. Dec. 16, 2019) (Wang, M.J.) (imposing sanctions on litigant for failing to preserve and produce financial data underlying a summary spreadsheet). Accordingly, The Times should be ordered to produce the product-specific P&Ls.

Respectfully,

KEKER, VAN NEST & PETERS LLP[1]

*/s/ Sarah Salomon*

LATHAM & WATKINS LLP

*/s/ Margaret Graham*

MORRISON & FOERSTER LLP

*/s/ Rose S. Lee*

[1] All parties whose electronic signatures are included herein have consented to the filing of this document.