

February 20, 2026

**VIA ECF**

Hon. Ona T. Wang
U.S. District Court for the Southern District of New York Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

      Re:    *In re OpenAI, Inc. Copyright Infringement Litig.*, No. 1:25-cv-03143, This Document Relates to All Actions

Dear Magistrate Judge Wang:

    Amid its many false accusations and mischaracterizations, Plaintiffs' motion, at bottom, demands that OpenAI identify, locate, and produce "[a]ll" copies of user data that might contain fragments and/or non-representative samples of ChatGPT conversations that OpenAI's various teams may have created, for any purpose, over the last three-and-a-half years. ECF 1312 ("Motion"). That is mind-boggling. The parties just finished a long and arduous process of generating a sample of 20 million conversations (the "20M Sample") that they can use to draw statistically valid conclusions about ChatGPT behavior generally. It makes no sense for Plaintiffs to now demand—less than two weeks before the close of fact discovery—that OpenAI undertake the massively burdensome process of producing non-representative, incomplete sources of user data that are both irrelevant and useless to this case. It is clear from the timing—Plaintiffs could have raised this unreasonable (and practically impossible) demand months ago—that Plaintiffs' only intent is to disrupt the court's schedule at the eleventh hour.

    To distract from the absurdity of that demand, Plaintiffs spin a false narrative to make it seem like OpenAI has been hiding the ball. OpenAI has never said that it is unable to search its training data; as Plaintiffs know, OpenAI has offered to run training data searches on Plaintiffs' behalf. Nor has OpenAI ever addressed the feasibility of running searches on incomplete copies of ChatGPT conversations—for the simple reason that, up until a week ago, no one had suggested that these incomplete copies had any plausible use in this litigation. *Infra* § B. Similarly, Plaintiffs include a litany of questions to make it seem like OpenAI is still not being forthright. Many of these questions are nonsensical; the others are questions that OpenAI has already answered or rehash disputes that have already been resolved. *See* <u>Appendix A</u>.

    Plaintiffs' demand for production of additional user data should be denied. **<u>To be clear: the copies of ChatGPT conversations that Plaintiffs demand in their Motion are not "new" sources of data. To the contrary, they are drawn from the same universe of conversation</u>**

**data that is represented by the 20M Sample.** Put another way, none of the copies of ChatGPT conversations that Plaintiffs reference in their motion contain data that was not logged in the data source that OpenAI used to derive the 20M Sample. As such, their production would serve no purpose in this litigation. As this Court has already explained, *see* Ex. A, Tr. of 05/27/2025 Hr'g at 5:18–25, the purpose of the 20M Sample was to be **representative** of the entire universe of relevant ChatGPT conversations. That sample will enable statistically relevant conclusions about the "prevalence" of different kinds of outputs generally. And because the records in the 20M Sample includes a full set of metadata, those conclusions can take full account of the context of each conversation—including, *e.g.*, the relevant model that created any outputs.

By contrast, the copies of user data Plaintiffs now seek are both **incomplete** and **non-representative**. They are incomplete because they contain fragments of conversations, and because they exclude critical metadata required to understand their context, including (in some cases) detail regarding which model generated the relevant outputs. And they are non-representative because they are sampled from subsets of conversation data—*e.g.*, from only certain kinds of users, and from limited time windows. Unlike the 20M Sample, none of these copies were generated for the purpose of extrapolating the kind of insights about ChatGPT behavior that are relevant to this litigation, and Plaintiffs' attempt to use them for this purpose would be highly misleading and prejudicial to OpenAI.

The Court should deny Plaintiffs' extraordinary (and incredibly untimely) request. *Infra* § C. So too for Plaintiffs' other demands: for answers to additional questions (which OpenAI has already answered, *infra* § D), for more deposition time with Vinnie Monaco (which is unnecessary and has already been briefed, *infra* § E), and for sanctions under Rule 37(a)(5) (which are not warranted, *infra* § F).

**A.  Procedural Background**

At the outset of this case, OpenAI conducted an investigation to identify how to satisfy Plaintiffs' demands for discovery into user data. Plaintiffs demanded "historical" records (*i.e.*, conversations going back to ChatGPT's launch in late 2022), and asked that those records include "intermediate" metadata regarding, *e.g.*, "classifiers" and the "retrieval augmented generation" process. ECF 262, ECF 394. OpenAI found one data source that satisfied all these Plaintiff-imposed criteria: its offline "data warehouse." Ex. A at 36:20–24.

**At no point did News Plaintiffs demand that OpenAI investigate other, less complete records of user data.** To the contrary, News Plaintiffs agreed that OpenAI could satisfy their requests by deriving a representative sample of conversation records from the offline data warehouse. *See, e.g.*, ECF 394-5 at 3 (News Plaintiffs agreeing to "narrow their request" to "5 million samples every month" from the offline data warehouse). OpenAI produced that sample on December 14, ECF 1128 ¶3, and then re-produced those records after adjusting its redaction

Hon. Ona T. Wang
February 20, 2026
Page 3

processes per this Court's order. (News Plaintiffs have not raised any concerns regarding the redactions applied to that sample for over four weeks.)

Plaintiffs have now no doubt realized that the 20M Sample reveals what OpenAI has said all along: the user behaviors that underlie Plaintiffs' legal theories (*e.g.*, regurgitation) are vanishingly rare or non-existent. Apparently for that reason, Plaintiffs have pivoted to demanding other, **non-representative** records of ChatGPT conversation data. *See* Mot. at 3 (demanding "[a]ll of OpenAI's reservoirs of de-identified and searchable output logs, including but not limited to the 10 million and 78 million reservoirs, and any post-training datasets of de-identified output logs that can be rendered searchable").

**B.    OpenAI Did Not Misrepresent Anything**

As a threshold matter, Plaintiffs' suggestions that OpenAI made misrepresentations to this Court are based on gross mischaracterizations of the relevant filings. ***First***, Plaintiffs claim that OpenAI misrepresented its ability to search its training data at the September 2024 discovery hearing. Mot. at 2. To the contrary, OpenAI explicitly disclosed it "*can* search for particular phrases" in its training data, but could not do so without Class Plaintiffs identifying "what they want us to search for." Ex. B, Tr. of 09/12/2024 Hr'g at 7:25–9:6, 13:25–14:11 (emphasis added). Moreover, OpenAI has affirmatively offered and repeatedly run for other Plaintiffs searches on agreed-upon portions of its training data—including as early as January 2025. *See, e.g.*, *NYT* ECF 462 at 2.

***Second***, Plaintiffs' claim that OpenAI misrepresented its ability to search output logs (Mot. at 2) is also false. In January 2025—roughly one year after learning about OpenAI's data retention policies, *see NYT* ECF 379-3—News Plaintiffs asked OpenAI to identify "output log data that contains News Plaintiffs' content" so that it can be preserved. *NYT* ECF 379 at 3. In response, OpenAI explained (again) that the data warehouse that includes the historical ChatGPT conversations they asked for contained billions of compressed data records, which meant that OpenAI could not use its existing tools to satisfy Plaintiffs request and would have to instead spend months building an entirely new system for this purpose. *NYT* ECF 425 ¶9. OpenAI's representation, in other words, had nothing at all to do with the feasibility of searching these incomplete copies of ChatGPT conversation data, which were not then at issue.

**C.    Plaintiffs' Belated Request for Incomplete User Data Records Should Be Denied**

Plaintiffs' belated request for discovery into additional copies of incomplete user data records should be denied for three independent reasons. ***First,*** Plaintiffs' request comes less than two weeks before the close of fact discovery, even though they have known about the existence of other user data records for months—if not years. They have had access to documents and source code relating to the "10 million and 78 million reservoirs" for over a year. ECF 1295 at 1–2. They also demand other "reservoirs," including "any post-training datasets" containing ChatGPT

conversation data. Mot. at 3. But Plaintiffs have known since before this lawsuit was filed that OpenAI trains its models in part using ChatGPT conversation data from users who have not opted out of such use. *See, e.g.*, Exs. C–D. At no point in the past two years have Plaintiffs sought discovery into these other copies of user data—even after Mr. Monaco discussed them in a declaration submitted **over seven months ago**. ECF 435-1 ¶8 (explaining use of de-identification pipeline to remove PII from ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮).

**Second,** Plaintiffs ignore that this Court has already laid out a procedure under which OpenAI can produce ChatGPT conversation data sufficient to allow the parties to "analyze the prevalence" of the alleged ChatGPT behaviors that underlie their case. ECF 394-1 ¶5; Ex. A at 5:18–25. That is precisely what the parties accomplished with the 20M Sample, which was selected by "uniformly randomly select[ing] conversations" across [a] two-year period" in an effort to "get as random and as hopefully statistically significan[t] of a sample as we could." Ex. E, Tr. of 01/15/2026 Hr'g at 15:13–19. The resulting sample contains many hundreds of thousands of ChatGPT conversations from each month since ChatGPT's launch in 2022. This Court ordered OpenAI to produce that sample to Plaintiffs on the assumption that it is what they need to evaluate the "prevalence" of the behaviors that underlie their claims. Plaintiffs have not called that assumption into question: indeed, while they explicitly reserved the right to request "additional sampling" upon review of the 20 million records, ECF 656 at 3, they have not done so.[1]

Instead, Plaintiffs now demand different, and uselessly incomplete, copies of user data. Mot. at 3. This is a striking departure from the statistically valid, Court-supervised sampling process. The data Plaintiffs seek does not include the metadata that would be required to understand the context of each ChatGPT interaction. It is not in any way representative of ChatGPT behavior generally—to the contrary, much of the data they demand is not randomly sampled and represents only subsets of ChatGPT users. Put simply: These records do not in any way qualify as representative samples of ChatGPT usage. Using them to draw conclusions about ChatGPT behavior generally would be highly misleading and prejudicial.

**Third,** Plaintiffs' belated demand that OpenAI identify "[a]ll" incomplete copies of ChatGPT conversation data is prohibitively burdensome. As OpenAI explained in a sworn declaration over six months ago, the company uses ChatGPT conversation data in a variety of ways, subject to its disclosures and opt-out procedures. ECF 435-1 ¶8; *see also* OpenAI, Data Controls FAQ, https://help.openai.com/en/articles/7730893-data-controls-faq ("Data Controls let you decide how ChatGPT uses your conversations and interactions."). OpenAI has employed many hundreds of AI researchers over the years—"many of whom are no longer OpenAI employees," *Alter* ECF 282 ¶4—any one of whom may have used some subset of ChatGPT

---

[1] News Plaintiffs suggest that the 20M Sample is insufficient due to "ongoing" redaction issues. Mot. at 4. But they have not contested any redactions since OpenAI addressed the issues they identified during the January discovery conference. *See supra.*

conversation data in their work.  *See* Declaration of Vinnie Monaco ¶4.  It would be impossible to identify "[a]ll" spreadsheets, databases, or tables that might contain some small subset of "de-identified and searchable output logs" before the close of fact discovery.  *See* Mot. at 2; Monaco Decl. ¶4.

In sum: Plaintiffs' demand is prejudicial, massively burdensome, incredibly belated, and would seriously jeopardize the case schedule Judge Stein has laid out.  This Court should deny it.

C.   **OpenAI Has Already Answered Plaintiffs' Additional Questions and Requests**

Plaintiffs' recent motion also includes a litany of other questions and requests, almost all of which OpenAI has already answered.  For clarity, OpenAI provides responses to each of Plaintiffs' requests in the table provided in Appendix A.

D.   **Mr. Monaco's Deposition Should Not Be Reopened**

The parties have already briefed the question of additional deposition for Vinnie Monaco. *See* ECF 1220 at 4–5 (Plaintiffs moving for additional deposition time); ECF 1267 at 3–4 (OpenAI's response).  After the parties did so, the Court ordered Plaintiffs to submit the video of Mr. Monaco's deposition, set a schedule for Plaintiffs to file a new motion to compel to address any other issues, and stated that "[t]he issue of Monaco's deposition will be resolved separately." ECF 1297 § I.1.  Nonetheless, Plaintiffs saw fit to re-raise the issue of Mr. Monaco's deposition in their new motion.  Mot. at 4.  That section of their motion simply rehashes the same arguments raised in Plaintiffs' submission at ECF 1220.  Those arguments are meritless for the reasons OpenAI explained in its responsive filing.  *See* ECF 1265 at 3–4 (arguing that Plaintiffs did not identify any in-scope topics that Mr. Monaco was unprepared to testify about).

E.   **Plaintiffs' Request for Sanctions Is Meritless**

Plaintiffs' motion for sanctions should be denied for at least two other independent reasons. ***First***, Rule 37(a)(5) states that the Court "must not order" sanctions if "the movant filed the motion before attempting in good faith to obtain the disclosure of discovery without court action." Plaintiffs made no attempt to confer with OpenAI as to these new requests, notwithstanding the fact that this Court ordered them to do so.  Ex. F, Tr. of 02/11/2026 Hr'g at 27:17–21; *see also id.* at 31:24–32:1.  ***Second***, OpenAI's conduct is "substantially justified."  *See* Fed. R. Civ. P. 37(a)(5)(A).  Plaintiffs' assertions that OpenAI has made misrepresentations to the Court or withheld relevant discovery are simply false.  *See supra*.  Both the parties and the Court worked for months to satisfy Plaintiffs' demands for user data while balancing OpenAI's obligation to preserve its users' privacy.  That process has resulted in exactly the representative sample Plaintiffs asked for.  The fact that Plaintiffs have now decided to pivot their attention to these other, incomplete records does not mean that OpenAI's conduct is sanctionable.  *Rakower Law PLLC v. Berner*, No. 21-cv-6439, 2022 WL 17820861, at *2–3 (S.D.N.Y. Dec. 14, 2022) (Wang, M.J.)

Hon. Ona T. Wang
February 20, 2026
Page 6

(where "there are genuine disputes over the appropriateness of the [conduct] . . . sanctions are not appropriate").

Sincerely,

| KEKER, VAN NEST & PETERS LLP | LATHAM & WATKINS LLP | MORRISON & FOERSTER LLP |
|---|---|---|
| */s/ Edward Bayley* | */s/ Luke A. Budiardjo* | */s/ Joseph C. Gratz* |
| Edward Bayley (*pro hac vice*) | Luke A. Budiardjo | Joseph C. Gratz (*pro hac vice*) |

cc: All Counsel of Record (via ECF)

## APPENDIX A

| Plaintiffs' Question | OpenAI's Response |
|---|---|
| Plaintiffs ask "whether there are any other reservoirs of searchable output logs" other than the two addressed in ECF 1295. | Plaintiffs have known for months that other copies of ChatGPT conversation data exist. *See supra*. It would not be feasible to identify all such copies, much less before the close of fact discovery. *See* Monaco Declaration. |
| Plaintiffs ask whether OpenAI has "identified text from Plaintiffs' works—or books or news content more broadly—in its output logs in any way" not already disclosed in ECF 1295. | No. OpenAI is aware of no other searches to identify specific text from books or news articles in ChatGPT user data. ECF 1295. OpenAI has performed separate analyses to identify material for inclusion in its output filters as part of its system-level efforts to mitigate regurgitation. The data underlying those analyses was the subject of a separate motion to compel documents and data relating to regurgitation (*see* ECF 1055 & 1132), which the parties resolved by OpenAI agreeing to produce additional source code and data. ECF 1176; *see also* ECF 1274-2 at pp. 6-7. |
| Plaintiffs ask "why did OpenAI lead Plaintiffs to believe they couldn't search the output logs and instead they had to do an inferior sampling process." | Plaintiffs are vague as to what representations by OpenAI they are referring to or what they mean by "*the* output logs." The repository of output logs that all parties agreed to use—OpenAI's offline "data warehouse"—is not searchable, and OpenAI is not aware of any other repository of ChatGPT user data that contains all of the data required to satisfy Plaintiffs' discovery requests. OpenAI has never denied (or otherwise misled) Plaintiffs as to the existence of other, incomplete and non-representative samples of historical ChatGPT records. To the contrary, OpenAI produced source code and other documents referencing those records more than a year ago, and Plaintiffs specifically printed source code files referencing the sample of 78 million incomplete ChatGPT conversation data (*see* OPCO_NDCAL_SRC_CODE00000998). There can be no doubt that Plaintiffs have long known about these records. *See also* OPCO_NDCAL_SRC_CODE00000863, Ex. G (produced November 11, 2024), Ex. H (produced January 20, 2025), and Ex. I (produced May 16, 2025). |
| Plaintiffs ask why OpenAI did not "simply search the output logs" for the Asserted Works. | See above. Moreover, OpenAI could not have "simply search[ed]" anything because News Plaintiffs have (to this day) refused to identify their Asserted Works, *see* ECF 1065, and have similarly refused to propose a search methodology |

|  | that OpenAI could deploy for this purpose, *see* ECF 717 at 5. |
|---|---|
| Plaintiffs demand "[t]he results of OpenAI's searches for Plaintiffs' copyrighted content in its training datasets, to the extent not already encompassed by the 'Giraffe' datasets." | Plaintiffs have had access to OpenAI's training data since June 2024, so they can run such searches.  OpenAI has also coordinated with Plaintiffs to search the training datasets on their behalf.  *NYT* ECF 462 at 2; *see also NYT* ECF 305 & 441; ECF 1115 & 1315.  In any case, OpenAI is not aware of any non-privileged efforts to search its training data for Plaintiffs' copyrighted content, other than the searches it has already disclosed in ECF 1295. |
| Plaintiffs demand "[t]he results and statistical analyses of OpenAI's searches for copyrighted content from its training datasets in the reservoirs of output logs." | OpenAI is not aware of any specific "searches for copyrighted content" beyond what it has already disclosed in ECF 1295.  To the extent Plaintiffs seek the results of searches performed to identify content for inclusion in OpenAI's output filters, that data has already been produced to resolve a prior motion to compel.  *See supra* (citing ECF 1055, 1132, 1176, and 1274-2 at pp. 6-7). |
| Plaintiffs demand "[t]he tools OpenAI used for its searches and analyses of the output logs and training datasets, including the source code to the extent not already produced." | OpenAI has made available for over a year the source code corresponding to the so-called "tools" identified by Plaintiffs.  Indeed, Plaintiffs printed copies of this code.  *See, e.g.*, OPCO_NDCAL_SRC_CODE00000863. |

2