# Exhibit D

CONFIDENTIAL

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE:<br><br>OPENAI, INC.,<br>COPYRIGHT INFRINGMENT<br>LITIGATION<br><br>This Document Relates to:<br>23-cv-11195<br><br>THE NEW YORK TIMES COMPANY v.<br>MICROSOFT CORPORATION, et al. | Civil Action No. 1:23-cv-11195-SHS |

**PLAINTIFF THE NEW YORK TIMES COMPANY'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO MICROSOFT CORPORATION'S SECOND SET OF INTERROGATORIES (NOS. 12-18)**

Pursuant to Federal Rules of Civil Procedure 26 and 33, Plaintiff, The New York Times Company ("The Times") responds and objects to Defendant Microsoft Corporation's ("Microsoft") Second Set of Interrogatories (the "Interrogatories"). These responses and objections are based on The Times's knowledge, investigations, and analysis to date. The Times reserves all rights to supplement and amend its responses and objections accordingly.

**GENERAL OBJECTIONS**

1.     The Times objects to these Interrogatories to the extent they seek information subject to attorney-client privilege, work product, or any other applicable privilege or protection.

2.     The Times objects to these Interrogatories to the extent they seek information not within The Times's possession, custody, or control.

**CONFIDENTIAL**

Identify all outputs or results generated by or created from the processes You identified in response to Interrogatory No. 13 that you contend are infringing or are the result of infringement by Microsoft.

**RESPONSE TO NO. 14: (11/06/24)**

The Times incorporates the General Objections set forth above. The Times objects to this Interrogatory to the extent it calls for information beyond what The Times is required to provide under Local Rule 33.3. The Times further objects to this Interrogatory as vague and ambiguous, including as to the terms "outputs or results" and "generated by or created from." The Times further objects to this Interrogatory to the extent that it seeks premature expert discovery.

Based on these objections, The Times will not respond to this Interrogatory.

**FIRST SUPPLEMENTAL RESPONSE TO NO. 14: (1/16/26)**

The Times incorporates its general and specific objections stated above. The Times further objects to this Interrogatory as premature to the extent it asks The Times to identify all outputs or results generated by or created from Microsoft's retrieval augmented generation processes. The Times only gained access to OpenAI's output logs on December 15, 2025, in heavily redacted form, and never received any logs from Microsoft at all. As such, The Times will supplement its response to this Interrogatory after it has had adequate time to review Defendants' log data.

**INTERROGATORY NO. 15:**

Describe the complete factual basis for Your contention in Paragraph 5 of the Complaint that Microsoft's "tools undermine and damage The Times's relationship with its readers and deprive the Times of subscription, licensing, advertising, and affiliate revenue,"

CONFIDENTIAL

including the factual basis for any contention that the number of Your active subscribers, Your subscription-based revenue, Your advertising-based revenue, Your affiliate referral revenue, Your total page views for the digital versions of the Copyrighted Works-In-Suit, total user visits to www.nytimes.com, or click-through rates from Bing Search and/or Copilot to www.nytimes.com has decreased or otherwise been impacted by any allegedly-infringing activity of Microsoft.

**RESPONSE TO NO. 15: (11/06/24)**

The Times incorporates the General Objections set forth above. The Times objects to this Interrogatory to the extent it calls for information beyond what The Times is required to provide under Local Rule 33.3. The Times further objects to this Interrogatory to the extent that it seeks premature expert discovery.

Based on these objections, The Times will not respond to this Interrogatory.

**FIRST SUPPLEMENTAL RESPONSE TO NO. 15: (1/16/26)**

The Times incorporates its general and specific objections stated above. The Times further objects to this Interrogatory as premature to the extent it asks The Times to identify examples of infringing outputs from Microsoft's products. The Times only gained access to OpenAI's output logs on December 15, 2025, in heavily redacted form, and never received any logs from Microsoft at all. As such, The Times reserves its right to supplement its response to this Interrogatory after it has had adequate time to review Defendants' log data.

Subject to its objections, The Times further responds that the extent and nature of harm caused by Microsoft's products is the subject of ongoing fact and expert discovery. Information

CONFIDENTIAL

provided in this supplemental response is subject to theories and additional factual support to be set forth in any expert reports. The Times reserves the right to further supplement this response, including based on new information that comes to light.

Microsoft's accused products and services usurp the market for The Times's copyrighted works and offer competing substitutes to the marketplace. *See, e.g.*, MSFT_AI_MDL_000047588 ("[T]he things that I'm highly confident AI can do right now is generate highly-engaging text with superhuman cost per unit of engagement. For instance, what makes the money now for big text media outlets, like the NYT, is opinion writing. I'm convinced the big models could do a much better job than writers at these media outlets at materializing a bunch of op ed content designed for each individual reader's amygdala, versus ideological cohorts of amygdala as it's done now."); MSFT_AI_MDL_000949427. Specifically, Microsoft's products are prone to regurgitating content from The Times's works verbatim, despite The Times's works being behind a paywall. *See* MSFT_AI_MDL_002033129. Microsoft's products also summarize Times content, even where the articles are "correctly stamped with [the] NoArchive header." MSFT_AI_MDL_000661037. The model is "copying a paragraph verbatim from [a Times] article, which [constitutes] plagiarism." MSFT_NEWS_000948884. Microsoft has also acknowledged that its products rely on websites that plagiarize Times content, such as Dnuyz. *E.g.*, MSFT_NEWS_000908708.   The Times's internal Audience Insight Groups also analyze the negative implications of Generative AI on The Times. *See, e.g.*, NYT_00832494 (noting that 30% of surveyed individuals believe there is a high risk of GenAI replacing The Times).

**CONFIDENTIAL**

Thus, the primary value add of Microsoft's products is that they reduce the need for users to visit the websites that the Microsoft product relied on when providing its response. *See* MSFT_NEWS_000948603 ("The primary value add of the new Bing, ChatGPT, Bard, etc., is that they reduce the need to visit websites beyond the [search results page,] but they also existentially depend on those websites to work."). Specifically, if the output (i.e., Chat answer) is good enough, then users have a lower incentive to click on the underlying links. *See* MSFT_NEWS_000450554 ("The key point is that if Bing Search queries become Chat sessions, it is likely that publishers will see less traffic (and revenue in EU), because there are fewer links on a chat session than a [search engine results] page, and users have lower incentives to click on those links if the Chat answer is good enough."); MSFT_NEWS_000944197 ("[I]f ChatGPT can answer my questions, I wouldn't visit Reddit, StackOverflow or Wikipedia to answer those questions, threatening the viability of those essential LLM datasets. A similar argument can be made for news producers and their business models."). Furthermore, because there are fewer links on a chat session than a traditional search engine results page, publishers are less likely to see traffic to their websites. *See* MSFT_NEWS_000450554. Indeed, Defendants have readily acknowledged that "no matter how prominently" their products "show links, users won't click." OPCO_NEWS_0840828.

This is particularly concerning given that Defendants' Generative AI Systems – including Microsoft products built using OpenAI LLMs – are direct substitutes to news publishers' content. *See, e.g.*, OPCO_NEWS_0331380–81 (noting that OpenAI's models were "particularly good at predicting text of news articles," "excellent at news," and "very good at any

**CONFIDENTIAL**

news task").[1] And, Defendants' models are "particularly good at predicting text" of New York Times articles. OPCO_NEWS_0559958; *see* OPCO_NEWS_0331370 ("I think we are excellent at news btw. [E]very time I do any generative stuff on NYT it seems to predict the next sentence pretty well."). Given that Microsoft's products are providing users with verbatim copies and/or summaries of Times works, users of its products are less likely to click the website link to The Times's online material. *See* MSFT_AI_MDL_002033129; MSFT_AI_MDL_000661037. And, reduced traffic to The Times's websites—including the Athletic and Wirecutter—reduce subscriptions, advertising revenue, and affiliate revenue. *See* NYT_1036107; NYT_00832517. This harm is projected to continue through at least 2030, including as users become further accustomed to obtaining journalism content from generative AI products like ChatGPT and Microsoft Copilot. *See* NYT_01034150; NYT_00832517.

Microsoft's products also substitute for traditional search and, consequently, cause harm to The Times because users are far less likely to navigate to the underlying source. *See* MSFT_NEWS_000450554. A key factor for The Times's competitive success is "visibility on search engines" and "the extent to which these platforms direct traffic" to The Times's websites. The New York Times SEC Form 10-K for the fiscal year ended December 31, 2024, p. 6. However, the "primary value add" of the Accused Products "is that they reduce the need to visit websites beyond the [search results page.]" MSFT_NEWS_000948603.

---

[1] *See also* https://www.linkedin.com/posts/microsoft-365_draft-meeting-agendas-anytime-anywhere-activity-7323793020196147202-zWPf/?utm_medium=ios_app&rcm=ACoAAADVhkABbLReYP3g__03DX_9B1giKT3HI-Q&utm_source=social_share_video_v2&utm_campaign=copy_link (advertising the ability of 365 Copilot Chat to "[m]onitor industry news" by "prepar[ing] a daily brief of news").

CONFIDENTIAL

In Q4 2024, a Tollbit study found that GenAI products "on average are sending 95.7% less referral traffic than traditional search." TollBit Artificial Intelligence User Agent Index (State of the Bots Q4 2024). And, a Tollbit Q2 2025 report found that "Google's organic (non-AI) search delivers on average across the top-10 results position, a click 8.6% of the time" whereas for "AI applications, th[e] figure remains below 1%." TollBit State of the Bots, Q2, 2025, pp. 40-41. In other words, GenAI products deliver approximately 90% fewer referrals as compared to traditional search. Metrics data produced by Defendants supports the same conclusion. According to data produced by Microsoft about News Plaintiffs' sites, click-through rates have been substantially higher for traditional Bing Search relative to the Bing Chat generative AI product. *E.g.*, MSFT_AI_MDL_002873679. And as Microsoft itself has acknowledged, "[i]f outgoing links are clicked on 30% less," then "[c]ontent creators can no longer produce the[ir] content." MSFT_NEWS_000944197.

Microsoft's products are also prone to hallucinations and misattribution of content. *See, e.g.*, MSFT_AI_MDL_000388803. Specifically, Microsoft's products "fabricate false information," MSFT_NEWS_000013696, and improperly attribute these fabrications to The Times. Furthermore, Microsoft's products incorrectly attribute certain answers to The Times— when, in fact, they are summarizing from other sources. *See* MSFT_AI_MDL_000388803. For instance, one study by the BBC found that when responses from a group of GenAI tools, including Copilot, were assessed for five key journalistic values (sourcing, accuracy, context, opinions vs. facts, and editorialization), 45% of responses had significant issues, and 81% had *some* issues. NYT_01034147 at slide 55; BBC. "News Integrity in AI Assistants - An

**CONFIDENTIAL**

international          PSM          study."          October          2025, *available*

*at* https://www.bbc.co.uk/mediacentre/documents/news-integrity-in-ai-assistants-report.pdf. In

other words, Copilot provides hallucinations that may implicate factual inaccuracies, but could

also involve, for example, editorialization that runs counter to The Times's journalistic standards,

a   failure   to   provide appropriate   context, or assertions   of   opinion   presented   as

fact. Providing hallucinated content in  response  to  a  user  query  about what  was  published

by Wirecutter or  The New  York  Times,  or using  The  Times's  protected  marks  in  a response

that contains hallucinations, tarnishes The Times's marks by associating them with inaccuracies

and content that is otherwise below The Times's journalistic standards. The Times has expended

significant efforts and expense over decades building trust in its brand and earning the trust of its

readers and subscribers. Microsoft's unauthorized use of The Times's trademarks on lower-

quality and inaccurate writing harms The Times's reputation for accuracy, originality, and quality,

which has and will continue to cause it economic loss—including reduced traffic, subscriptions,

and licensing revenue.

Microsoft's infringement has also deprived The Times of licensing revenue. Most

obviously, The Times was harmed by the loss of "the fair market value of a license covering

[Microsoft's] infringing use." *On Davis v. The Gap, Inc.*, 246 F.3d 152, 172 (2d Cir. 2001). The

Times is entitled to such a licensing fee, which should be enhanced because—*inter alia*—the

payment is depressed by the uncertainty around fair use, Microsoft's willingness to steal The

Times's content, and Microsoft's significant advantage from entering the market more quickly

than   otherwise   possible,   resulting   in   a   significant   competitive   advantage.   Microsoft's

CONFIDENTIAL

infringement negatively impacted The Times's negotiations for a licensing deal with both OpenAI and Microsoft. These negotiations never resulted in any agreement, including because of Defendants' (incorrect) position that it was entitled to use Times content to train and ground its models and products without permission. As explained in a March 2023 message by one Microsoft employee responsible for negotiating licensing deals for Bing, "we will not entertain securing a LLM license from Reddit given the negative impact that would set for our fair use rights as a search engine to crawl public data." MSFT_AI_MDL_000934456. The upshot is that Microsoft has refused to enter into a fair content licensing agreement with The Times because Microsoft fears that doing so would undermine its (incorrect) position that Defendants' conduct qualifies as fair use.

The same position has negatively impacted The Times's licensing negotiations with other generative AI companies, including The Times's content licensing deal with Amazon. *See* NYT_00890201. This deal undervalues The Times's content, as proven through an analysis prepared by Boston Consulting Group. *See* NYT_00271181.

For all of the aforementioned reasons discussed in this interrogatory response, Microsoft's infringement has caused price erosion to The Times's licensing business. With respect to licensing for GenAI purposes, due to Microsoft's infringement, The Times has been harmed in its ability to sell and/or license the copyrighted works for the value they would have been worth absent the infringement—thereby depriving The Times of licensing revenue.

**INTERROGATORY NO. 16:**

Dated: January 16, 2026

/s/ Ian Crosby

Ian Crosby *(pro hac vice)*
Katherine M. Peaslee *(pro hac vice)*
Genevieve Vose Wallace *(pro hac vice)*
SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101
Telephone: (206) 516-3880
Facsimile: (206) 516-3883
icrosby@susmangodfrey.com
kpeaslee@susmangodfrey.com
gwallace@susmangodfrey.com

Davida Brook *(pro hac vice)*
Emily K. Cronin (*pro hac vice*)
Adnan Muttalib *(pro hac vice)*
SUSMAN GODFREY L.L.P.
1900 Ave of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
dbrook@susmangodfrey.com
ecronin@susmangodfrey.com
amuttalib@susmangodfrey.com

Elisha Barron (5036850)
Zachary B. Savage (ZS2668)
Alexander Frawley (5564539)
Tamar Lusztig (5125174)
Eudokia Spanos (5021381)
SUSMAN GODFREY L.L.P.
One Manhattan West
New York, NY 10001
Telephone: (212) 336-8330
Facsimile: (212) 336-8340
ebarron@susmangodfrey.com
zsavage@susmangodfrey.com

1

afrawley@susmangodrey.com
tlusztig@susmangodfrey.com
espanos@susmangodfrey.com

Scarlett Collings (4985602)
SUSMAN GODFREY L.L.P.
1000 Louisiana St., Suite 5100
Houston, TX  77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
scollings@susmangodfrey.com

Steven Lieberman (SL8687)
Jennifer B. Maisel (5096995)
Kristen J. Logan *(pro hac vice)*
ROTHWELL, FIGG, ERNST & MANBECK, P.C.
901 New York Avenue, N.W., Suite 900 East
Washington, DC 20001
Telephone:  (202) 783-6040
Facsimile: (202) 783 6031
slieberman@rothwellfigg.com
jmaisel@rothwellfigg.com
klogan@rothwellfigg.com

***Attorneys for Plaintiff***
***The New York Times Company***

2