KEKER
VAN NEST
&PETERS          LATHAM&WATKINS LLP          MORRISON FOERSTER

May 4, 2026

**VIA ECF**

Hon. Ona T. Wang
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007

RE:    OpenAI's Letter Opposition to Plaintiffs' Motion to Modify the Protective Order
(ECF 1518), *In re OpenAI, Inc. Copyright Infringement Litigation*, 25-md-03143
This Document Relates To: News Cases

Dear Judge Wang:

News Plaintiffs' motion presents itself as a modest request to help executives "understand and oversee" this litigation. It is not. Plaintiffs seek to give executives blanket access to OpenAI's "Highly Confidential - Attorneys' Eyes Only" ("AEO") expert reports and all AEO documents and testimony cited therein—materials encompassing precisely the categories of sensitive information the Protective Order ("PO") was designed to protect: financial data, proprietary technical information, customer and partner strategy, and pricing materials. The PO already provides a clear process for the access Plaintiffs seek—a process forged through at least seven submissions, extensive negotiation with Plaintiffs, and four orders from this Court. That process permits Plaintiffs to identify a reasonable number of AEO documents, subject to a screen for the Excluded Categories the parties negotiated and the Court approved. The screen exists because the designated executives lead organizations with commercial relationships involving OpenAI or its competitors, and make purchasing and investment decisions that could be influenced—even inadvertently—by access to OpenAI's competitively sensitive information. OpenAI remains prepared to follow this process. Plaintiffs should be, too.

Instead, Plaintiffs began the process exactly *once* but abandoned it before OpenAI could complete its review, demanded blanket access with no avenue for OpenAI to object, and filed this motion, all in one day and without conferring in good faith. The Court previously rejected Plaintiffs' nearly identical proposal as "not workable" because it would allow OpenAI's AEO materials to be shown to Plaintiffs' decisionmakers without any showing of necessity nor any mechanism for objection. Plaintiffs' two-page letter offers no basis to revisit that ruling. It cites no legal authority, identifies no concrete litigation decision that cannot be made through counsel, and does not contend that any particular OpenAI document is over-designated. The Court should deny the motion and direct Plaintiffs to use the process they helped design.

## I.    Plaintiffs Seek Blanket Access to Highly Sensitive Business Materials, Not a Modest Clarification

The PO provides a mechanism for the executive access Plaintiffs seek. Plaintiffs may identify a "reasonable number of [AEO] documents" that fall outside Excluded Categories

Hon. Ona T. Wang
May 4, 2026
Page 2

specified in the PO, and OpenAI then has an "opportunity to review" and confirm those documents may be disclosed.  ECF 367 ¶ 24(b).  That process was not accidental.  The Excluded Categories were negotiated with Plaintiffs' participation and reflect a principle all parties accepted: OpenAI's most sensitive business information—including financial data, proprietary technical information, customer and partner strategy, pricing, and other Plaintiffs' data access-related materials—should not be disclosed to executives absent the agreed-upon screen.

That screen matters.  The designated executives are decisionmakers at large media organizations with responsibilities that may include technology partnerships, vendor relationships, purchasing, investment, licensing, data access, and other AI-related commercial decisions.  Access to OpenAI's financial data, technical assessments, pricing, customer strategy, and partnership information could influence those decisions, even inadvertently.  The PO's review process exists to prevent that harm while allowing Plaintiffs to show executives appropriate materials when the agreed criteria are met.

Plaintiffs invoked that process for the first time recently, identifying 52 documents they wished to share with their executives.  ECF 1518-1 at 6-7.  Some of those documents implicate the concerns that the Excluded Categories address, including proprietary technical information and customer or partner strategy.  OpenAI worked diligently to review these documents, and had nearly finished when Plaintiffs declared it was "taking too long" and that "this process is not working."  *Id.* at 4-5.  Plaintiffs demanded disclosure of all AEO expert reports and all OpenAI AEO documents and deposition testimony cited therein, without regard to whether they fall into any Excluded Categories.  They also issued an ultimatum: "If OpenAI does not agree we will raise this issue with the Court tomorrow."  *Id.*  That expanded request dwarfs the 52-document request—News Plaintiffs' and OpenAI's opening expert reports alone cite hundreds of AEO documents.

OpenAI responded that it had "been diligently reviewing the 52 AEO-designated documents" and "expect[ed] to provide a response shortly," but explained that Plaintiffs' new proposal was "significant" scope expansion.  *Id*. at 3-4.  OpenAI also stated that it wished to "continue working cooperatively."  *Id.*

The next day, Plaintiffs confirmed they were no longer pursuing the original 52-document request and instead sought blanket access to all expert reports and cited materials.  *Id.* at 2-3.  Plaintiffs also acknowledged that they had *not* reviewed *any* of the documents cited in the expert reports to determine whether they fell outside the Excluded Categories—the predicate step required by the PO before executive disclosure.  Plaintiffs thus ask the Court to eliminate Plaintiffs' obligation to make a document-specific request and OpenAI's opportunity to object to disclosures based on the Excluded Categories.

OpenAI was—and is—prepared to comply with the PO.[1]  The process has not shown to be unworkable; Plaintiffs abandoned it before it could be completed.

---

[1] OpenAI is prepared to provide its position before the May 12 hearing on the 52 documents from Plaintiffs' original request cited in any expert report.  OpenAI will also respond within 14 business days of any subsequent request(s)

Hon. Ona T. Wang
May 4, 2026
Page 3

### II.  Plaintiffs Have Not Shown Good Cause to Modify the Protective Order

This is not a new dispute.  In June 2025, Plaintiffs sought blanket executive access to OpenAI's AEO materials.  After multiple rounds of briefing, this Court found Plaintiffs' position "not workable for a number of reasons."  ECF 308 at 1.  The Court explained that Plaintiffs' approach "presumes that <u>all</u> OpenAI's AEO documents may be shown to the News Plaintiffs' clients' key decisionmakers, which News Plaintiffs have not shown is necessary under the circumstances."  *Id.* (emphasis in original).  The Court further found that Plaintiffs' proposal failed to "provide OpenAI any avenue by which to challenge disclosures of any particular document(s) before they are disclosed" and gave Plaintiffs "sole discretion to choose the documents that can . . . be shown" to their executives.  *Id.*  These findings led to the compromise embodied in the PO: Plaintiffs may seek executive access to a reasonable number of OpenAI AEO documents through a process that screens for the Excluded Categories the parties negotiated and the Court approved.  *See* ECF 102, 230, 254, 280, 286, 308, 310, 314, 321, 322, 344, 367.

Plaintiffs now ask the Court to set that compromise aside and adopt an approach the Court already rejected.  Their request is not limited in any meaningful way by the fact that it concerns expert reports and cited materials.  Plaintiffs' proposal would therefore give business executives access to a concentrated set of OpenAI's sensitive internal materials—including financial data, proprietary technical information, pricing, other Plaintiffs' data-access-related information, and customer or partner strategy—without the PO's required screen.

Because this Court found good cause to enter the PO, *see* ECF 367 at 4, "the burden is on the party seeking modification to show good cause for the modification."  *Medacist Sols. Grp. v. Omnicell, Inc.*, 2010 U.S. Dist. LEXIS 164084 (S.D.N.Y. Oct. 5, 2010) (internal citations omitted).  Plaintiffs have not met that burden.  At most, Plaintiffs raise a timing complaint.  But this alone is not good cause to discard the substantive protections the Court already approved.  Plaintiffs' two-page letter cites no legal authority, attaches no declarations, offers no evidence of necessity, and provides no explanation for why the existing process—which they used once and abandoned before OpenAI could finish its review—cannot work.

Nothing material has changed since the Court entered the PO.  Plaintiffs assert that "50%" of OpenAI's production is designated AEO, but that approximate rate is not new; it existed when the parties negotiated the current procedure, and OpenAI has previously explained that its designation rates are comparable to or lower than the rate of various Plaintiff groups.  Nor do Plaintiffs argue that any particular OpenAI document cited in an expert report is over-designated.  Instead, Plaintiffs seek blanket disclosure of the nearly 500 OpenAI AEO documents and deposition testimony cited in 19 expert reports—with rebuttal and reply reports yet to come—without any mechanism for OpenAI to object nor any showing that such access is necessary.

---

for a "reasonable number of documents" from Plaintiffs, provided that Plaintiffs have first fulfilled their obligation under the PO to meaningfully review each document for information falling within the Excluded Categories.

Hon. Ona T. Wang
May 4, 2026
Page 4

The PO's review mechanism exists for good reason.  Plaintiffs' executives can oversee this litigation through outside and in-house counsel, who already have access to AEO materials and can provide legal advice, summaries, recommendations, and risk assessments without disclosing protected details.  Plaintiffs offer no evidence that this process is insufficient.

Plaintiffs' reliance on a Microsoft-specific provision in the PO does not change the analysis.  That provision was a negotiated resolution of a separate dispute about *Microsoft's* designations.  It was not a ruling that Plaintiffs' executives should receive blanket access to *OpenAI's* AEO materials, and OpenAI did not agree to that Microsoft-specific compromise.  And unlike OpenAI—whose executives have no mechanism to review Plaintiffs' expert reports—Plaintiffs have a clear pathway to the disclosures they seek, provided the documents do not fall within an Excluded Category.  They need only follow the process the Court already approved.

\*        \*        \*

The Court should deny Plaintiffs' motion.  The PO provides the mechanism Plaintiffs need.  OpenAI stands ready to do its part.

Sincerely,

| KEKER, VAN NEST & PETERS LLP | LATHAM & WATKINS LLP | MORRISON & FOERSTER LLP |
|---|---|---|
| */s/ R. James Slaughter* | */s/ Margaret Graham* | */s/ Caitlin Sinclaire Blythe* |
| R. James Slaughter (*pro hac vice*) | Margaret Graham | Caitlin Sinclaire Blythe (*pro hac vice*) |

4