# Exhibit A

Q5CGOPE1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

IN RE: OPENAI, INC. COPYRIGHT
INFRINGEMENT LITIGATION.

                                      25-MD-3143


                                      Conference

------------------------------x

                                      New York, N.Y.
                                      March 12, 2026
                                      9:45 a.m.
Before:

                    HON. ONA T. WANG,
                              Magistrate Judge

                    APPEARANCES


SUSMAN GODFREY LLP
     Attorneys for Plaintiff The New York Times Company
BY:  DAVIDA BROOK
     ALEXANDER FRAWLEY
     DEMETRI BLAISDELL
     ALEJANDRA C. SALINAS
     J. CRAIG SMYSER
     KAREN CHESLEY

ROTHWELL FIGG ERNST & MANBECK P.C
     Attorneys for Plaintiffs The New York Times Company and
Daily News
BY:  JENNIFER B. MAISEL
     STEVEN LIEBERMAN

LOEVY & LOEVY
     Attorneys for Consolidated Plaintiff The Center for
Investigative Reporting, Inc.
BY:  MATTHEW TOPIC

KLARIS LAW, PLLC
     Attorneys for Plaintiff Ziff Davis
BY:  LANCE KOONCE


                    SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

Q5CGOPE1

APPEARANCES
(Continued)


MORRISON & FOERSTER LLP
        Attorneys for Defendant OpenAI Inc.
BY:  JOSEPH C. GRATZ
        -and-
KEKER, VAN VEST & PETERS LLC
BY:  NICK GOLDBERG
        EDWARD BAYLEY
        -and-
LATHAM & WATKINS LLP
BY:  MARGARET GRAHAM

ORRICK, HERRINGTON & SUTCLIFFE
        Attorneys for Defendant Microsoft Corporation
BY:  LARA NAJEMY
        LISA SIMPSON
        ANNETTE HURST
        -and-
FAEGRE DRINKER BIDDLE & REATH LLP
BY:  JARED B. BRIANT

Q5copen2

analyses that was done by OpenAI's outside counsel related to issues around regurgitation generally, even postdating the complaint.

And that I believe, your Honor, is unacceptable and not reasonable and well outside the scope of both the stipulated protective order and any bounds of reasonableness in this case.

THE COURT:  I am going to give you a little bit of my woo-woo things I say in settlement conferences.  My secret sauce about settlement.  Is when parties come to me in settlement conferences, when I talk separately and privately, I tell all the parties in our private caucus, I say, you know, the people on the other side have a different view of what they're seeing.  It's like the old fable about the blind people standing at different parts of the elephant.  And the person at the tail is going to have a fundamental disagreement about what an elephant is because they are at the tail, they'll have a fundamental disagreement with someone who is feeling the trunk or the tusk or feeling the leg.

And we come to a settlement conference, and I encourage people in meeting and conferring to do the same, is to come with the understanding that you may be at different parts of the elephant.  And that in order to reach some kind of an agreement, it's not about arguing so well or so hard that you convince the other side that they're wrong.  But you're

Q5copen2

meeting them somewhere, where their expectations are, and trying to take the extra step to say, okay, I get where you're coming from. I don't necessarily agree, but I hear where you're coming from.

That's why I asked the various questions about the chronology from last fall until now and the privilege rereview, is all of this was happening in the stew of all the other motions and litigation and the production and preparing for depositions.

So, when you meet and confer and when you talk about that, be more flexible than you are here in open court. I understand there are limits to how flexible you can be in public without disclosing some of the things that you all know because of the protective order. So do that.

So, I am going to break the requests or the asks by News Plaintiffs into three numbered issues, right. One is the five questions about the raw evaluation data I'm calling that number 1. Number 2 is log the clawed back data and include specific additional information that we asked for. And then number 3 is also please log any evaluations that you are claiming are withheld because they postdate the litigation, because it would go to what did OpenAI know at the time the parties were meeting and conferring and talking and making representations about the search and what was being found.

So number 3 we are not going to deal with right now.

Q5copen2

Okay.  However, that doesn't mean we are not going to deal with it later.  That is sort of classic discovery on discovery, but I'm not suggesting that there has been any bad faith or anything.  That's why I've been talking about context and chronology.  But, I can see why number 3 feels important to the plaintiffs because of the timing of how some of the things, important documents or what they think are hot docs or important docs got produced.  The way the timing of the flow of information led to a certain view or expectation that makes them feel like this is important to know about.

However, that information, we don't need it at this very moment.  It doesn't mean, I mean, I wish we weren't here arguing about this at all.  But, at the same time, that one I feel we can set aside for the moment.  Because what I heard from Mr. Bayley is on number 1 you will meet and confer and see what you can answer about the five particular questions.  I will say, yes, please go do that.

If there's particular questions that you can't answer because in your private meet and confer where you have all the protections of the protective order, plaintiffs are doing their best to try to make the requests clear.  Maybe they're not clear, and there is a reason why they are not clear, but you can get an understanding of what it is they are trying to get at.

So get them somehow the information as best you can,

Q5copen2

even if it's not verbatim answering every one of the five questions.  Right.  Have that conversation about what you can say and why or why not.

For number 2, also you are going to provide the information that would normally go on the log for that clawed back document or data.  And then you are going to meet and confer on whether, as you said it, Mr. Bayley, not me, I am not ordering you to because you said you would do it, I am just restating, and for the specific information they requested, in addition to the usual information, I think we've heard a lot of it on the record.  But meet and confer to the extent that there is other assurances you need.

My caution to News Plaintiffs is I get that from your perspective there are things that look suspicious to you, but I'm saying in the context of everything that's going on, in the context of what we got done in a very compressed amount of time with an incredible amount of data, think about how, whether it's possible that there are other explanations, and whether you need to pin down every last shred of evidence that supports you or supports their representations about the context.

Again, it's not to say that I won't take this up at a later time, but let's get those two taken care of, because those concern the actual discovery that you need to go forward.

I do understand that I've been kind of kicking the Rule 37 issues down the road a little bit.  I want to get you a

Q5copen2

little farther because we are past the date of fact discovery, and while issues are receding a little bit and they are calming down a little bit.  Like we don't need to throw that grenade in while we are in the process of trying to finish the actual fact discovery.  All right?  Clear?  Questions, anyone?

MR. BAYLEY:  No, your Honor.

THE COURT:  Okay.  Let's take a break.  10 minutes.

(Recess)

(Continued on next page)