**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE:<br><br>OPENAI, INC.,<br>COPYRIGHT INFRINGEMENT LITIGATION<br><br>This Document Relates to:<br><br>*The New York Times Co. v. Microsoft Corp. et al.*,<br>No. 1:23-cv-11195-SHS-OTW<br><br>*Daily News, LP et al. v. Microsoft Corp. et al.*,<br>No. 1:24-cv-03285-SHS-OTW<br><br>*The Center for Investigative Reporting, Inc. v. OpenAI, Inc. et al.*,<br>No. 1:24-cv-04872-SHS-OTW | Civil Action No. 1:25-md-03143-SHS-OTW |

**MICROSOFT CORPORATION'S MEMORANDUM OF LAW IN RESPONSE TO
NEWS PLAINTIFFS' MOTION FOR SANCTIONS AGAINST OPENAI**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................................................... 1

ARGUMENT................................................................................................................... 1

    I.    News Plaintiffs' Requested Evidentiary Sanctions Would Unduly Prejudice Microsoft............................................................................................................ 3

    II.    No Limiting Instruction Can Cure the Spillover Prejudice to Microsoft...................... 4

    III.    Separate Trials Also Would Prejudice Microsoft. .......................................................... 6

CONCLUSION................................................................................................................ 7

# TABLE OF AUTHORITIES

**Cases**                                                                          **Page(s)**

*Davidson v. Smith*,
   9 F.3d 4 (2d Cir. 1993)............................................................................................2

*Donato v. Fitzgibbons*,
   172 F.R.D. 75 (S.D.N.Y. 1997) ...................................................................2, 4, 5, 6

*Lekomtsev v. City of New York*,
   No. 13-cv-4530, 2020 WL 5878258 (E.D.N.Y. Oct. 2, 2020) ..................................6

*Martinez v. City of New York*,
   No. 16-cv-79, 2022 WL 17090267 (E.D.N.Y. Nov. 18, 2022) .................................2

*Perry v. Ethan Allen, Inc.*,
   115 F.3d 143 (2d Cir. 1997)......................................................................................1

*Ridge v. Davis*,
   639 F. Supp. 3d 465 (S.D.N.Y. 2022)........................................................................2

*Scalia v. Cty. of Kern*,
   658 F. Supp. 3d 809 (E.D. Cal. 2023)........................................................................6

*Secs. & Exchange Comm. v. Obus*,
   693 F.3d 276 (2d Cir. 2012)......................................................................................2

*United States v. Figueroa*,
   618 F.2d 934 (2d Cir. 1980)..........................................................................1, 2, 4, 6

*United States v. McDermott*,
   245 F.3d 133 (2d Cir. 2001)..............................................................................2, 4, 5

*Zhi Chen v. Dist. of Columbia*,
   839 F. Supp. 2d 7 (D.D.C. 2011) ..............................................................................6

**Statutes, Rules & Regulations**

Fed. R. Evid. 403 ...........................................................................................................1, 2

**INTRODUCTION**

News Plaintiffs did not file this Motion against Microsoft and have not alleged that Microsoft had any role in any alleged spoliation. Microsoft must respond, however, because of the significant risk of spillover prejudice to Microsoft if the Court were to issue the requested evidentiary sanctions and adverse inferences against OpenAI.

Under Second Circuit law, courts are cautioned to tread with extreme care to avoid spillover prejudice where multiple defendants' liability turns upon a common set of facts, as here. This is because there is essentially no way to effectively instruct a jury to apply the requested adverse inference and evidentiary sanctions only with respect to OpenAI. Nor is ordering separate trials an effective solution; a separate trial would exacerbate rather than solve the spillover prejudice because, in a separate trial, OpenAI's witnesses would be beyond the Court's subpoena power. Moreover, News Plaintiffs' request to prohibit OpenAI from relying on certain evidence would unduly prejudice Microsoft and would require Microsoft at this eleventh hour to develop its own rebuttal evidence, at substantial expense, on those issues.

Thus, Microsoft opposes the evidentiary sanctions sought in News Plaintiffs' Motion for Sanctions Against OpenAI (ECF 1618).[1]

**ARGUMENT**

In multi-defendant cases, the Second Circuit has held that courts must separately assess potential prejudice resulting from an evidentiary ruling as to each of the defendants. *United States v. Figueroa*, 618 F.2d 934, 944-46 (2d Cir. 1980).[2] The potential for spillover prejudice is even

---

[1] Microsoft takes no position on the remaining issues raised in the Motion.

[2] Although *Figueroa* is a criminal case, the discussion related to prejudice to a co-defendant is grounded in Federal Rule of Evidence 403, which is equally applicable in civil cases. 618 F.2d at 944; *see also Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 151 (2d Cir. 1997) (civil case citing to

greater in derivative-liability cases where the prejudicial spillover is "so overwhelming" that limiting instructions cannot cure it because "there is an overwhelming probability that the jury will be called upon to perform humanly impossible feats of mental dexterity." *United States v. McDermott*, 245 F.3d 133, 139-40 (2d Cir. 2001). *McDermott*'s holding related to prejudicial spillover is based on the derivative-liability nature of the criminal charges; not on any heightened protections for criminal defendants. 245 F.3d at 139 ("Given that Pomponio and McDermott were on trial for conspiring to commit insider trading, that there was a large disparity between the government's case against Pomponio for perjury and its case against McDermott, ***that Ponponio could only be guilty on the substantive insider trading counts if McDermott also were guilty***, and that McDermott conceded having given some public information to Gannon, the potential for spillover was substantial.") (emphasis added); *see also Secs. & Exchange Comm. v. Obus*, 693 F.3d 276 (2d Cir. 2012) (civil case citing *McDermott*).

Likewise, courts have found undue spillover prejudice to an innocent party resulting from an adverse inference instruction sanction to another party cannot be rectified by a limiting instruction that would be "unduly confusing for the jury." *Donato v. Fitzgibbons*, 172 F.R.D. 75, 85 (S.D.N.Y. 1997). Further, there are "due process implications of requiring [innocent defendants] to bear the consequences of [another defendant's] violations of the Court's discovery orders." *Martinez v. City of New York*, No. 16-cv-79, 2022 WL 17090267, at *3 (E.D.N.Y. Nov. 18, 2022).

---

*Figueroa* for Rule 403 standard); *Davidson v. Smith*, 9 F.3d 4, 7 (2d Cir. 1993) (civil case citing to *Figueroa* for Rule 403 standard particularly as to whether to employ a limiting instruction); *Ridge v. Davis*, 639 F. Supp. 3d 465, 480 (S.D.N.Y. 2022) (civil case citing to *Figueroa* for the Rule 403 standard).

Here, News Plaintiffs' requested evidentiary sanctions would cause undue spillover prejudice to Microsoft even though there are no allegations of sanctionable misconduct against Microsoft. Neither a limiting instruction nor trial severance cures this prejudice. As such, Microsoft requests the Court deny the evidentiary sanctions sought by News Plaintiffs.

## I.    News Plaintiffs' Requested Evidentiary Sanctions Would Unduly Prejudice Microsoft.

News Plaintiffs' Motion lacks clarity regarding the full extent of evidentiary sanctions that they seek. While the introduction references five specific sanctions aimed at OpenAI's output logs, News Plaintiffs did not submit any proposed order, and the Motion alleges spoliation by OpenAI related to both training sets and output logs. Nor is it clear at this stage which claims will remain in the case for trial, and how those claims will interact, making it particularly imprudent to impose sanctions now for a later trial of uncertain scope. What is clear, however, is that the requested relief against OpenAI bears directly on predicate showings for News Plaintiffs' theories against Microsoft.

News Plaintiffs' claims seek, in various ways, to hold Microsoft secondarily liable for OpenAI's alleged direct infringement. Evidentiary sanctions specific to the data on which OpenAI's models were trained would undoubtedly prejudice Microsoft given that News Plaintiffs allege that Microsoft is secondarily liable for OpenAI's alleged infringement in training certain models. *See, e.g.*, ECF 72 ¶177; *Daily News* ECF 1 ¶203. Though ambiguous, News Plaintiffs also seem to suggest that Microsoft would somehow be liable for direct infringement arising from OpenAI's ChatGPT product. Evidentiary sanctions concerning ChatGPT output logs, specifically requested on pages 4-5 of the Motion, would therefore prejudice Microsoft inasmuch as News Plaintiffs may attempt to predicate a secondary infringement claim against Microsoft on alleged direct infringement through ChatGPT. News Plaintiffs essentially seek a dispositive finding that

3

there was substantial grounding on and verbatim reproduction of News Plaintiffs' copyrighted works by ChatGPT. Such a finding would directly and negatively impact Microsoft's ability to obtain a fair trial.

In addition to the obvious effect on the vicarious liability claims against Microsoft that are founded on OpenAI's underlying direct liability, the adverse inference would also flow to News Plaintiffs' direct infringement claims against Microsoft given that those claims also implicate OpenAI's models and grounding. *See, e.g.*, ECF 72 ¶¶ 168-69; *Daily News* ECF 1 ¶¶ 193-95; ECF 1620 ¶¶ 139, 156-59, 166.  As such, the requested adverse inference "would prejudice [Microsoft] unfairly, and with no finding of fault on [its] part." *Donato*, 172 F.R.D. at 85.

The risk of prejudice to Microsoft here is even greater given the derivative-liability nature of News Plaintiffs' claims against Microsoft. *See McDermott*, 245 F.3d at 139 (finding "the potential for spillover was substantial" given presence of derivative-liability claims). In this case, Microsoft relied on OpenAI to analyze its own ChatGPT output logs and to develop evidence and arguments to refute News Plaintiffs' claims related to those logs. If the Court grants News Plaintiffs' requested relief and now prohibits OpenAI from relying on its logs or presenting any evidence contrary to the requested adverse inference, then Microsoft must develop its own evidence and arguments on these points in order to fully defend itself. At a minimum, this would require the Court to re-open both fact and expert discovery to allow Microsoft the opportunity to marshal this evidence by permitting it to gather any additional fact evidence necessary from OpenAI and to submit additional expert reports on these topics. This substantial expense and delay resulting from such an evidentiary sanction would cause further undue prejudice to Microsoft.

## II.    No Limiting Instruction Can Cure the Spillover Prejudice to Microsoft.

The Second Circuit has found that limiting instructions are generally ineffective to guard against overwhelming spillover prejudice. *See McDermott*, 245 F.3d at 139-40; *Figueroa*, 618

4

F.2d at 946. This is because "there is no instruction to the jury that could avoid the possibility that the adverse inference against [the sanctioned party] would 'contaminate' the mind of the fact finder in its consideration of" the case against the non-sanctioned party. *Donato*, 172 F.R.D. at 85. Put another way, "it is not reasonable to expect a jury to find a fact one way as to one defendant, and find the same fact another way as to [another defendant]. Any instruction which may suggest such a possibility would be unduly confusing for the jury." *Id.* As the Second Circuit has found, in such cases, "the jury will be called upon to perform humanly impossible feats of mental dexterity." *McDermott*, 245 F.3d at 139-40.

The same would be true here should the Court grant the News Plaintiffs' requested relief. As explained above, the claims against Microsoft are derivative of and intertwined with the claims against OpenAI such that even if a jury was instructed that only OpenAI was responsible for the alleged misconduct and the adverse inference should only be held against OpenAI and not Microsoft, it would be near-impossible for a jury to properly view liability of the two defendants within such a framework. Indeed, it would potentially require the jury to find a fact one way as to the claims against OpenAI, but another way as to the claims against Microsoft, which is, of course, "not reasonable." *Donato*, 172 F.R.D. at 85.

The potential for continued spillover prejudice in this case is even greater due to the nature of the evidentiary sanctions sought by News Plaintiffs, specifically the mandatory adverse inference instruction and order prohibiting OpenAI from relying on the ChatGPT logs or presenting rebuttal evidence related to the contents of the ChatGPT logs. In other multi-defendant cases, courts have balanced the need for sanctions with potential spillover prejudice by imposing a permissive adverse inference instruction along with a limiting instruction that provides both defendants with the ability to submit sufficient rebuttal evidence to persuade the jury not to draw

5

the adverse inference. *See, e.g.*, *Scalia v. Cty. of Kern*, 658 F. Supp. 3d 809, 817 (E.D. Cal. 2023); *Lekomtsev v. City of New York*, No. 13-cv-4530, 2020 WL 5878258, at \*4 (E.D.N.Y. Oct. 2, 2020). Here, News Plaintiffs seek a mandatory adverse inference together with an order prohibiting OpenAI from providing rebuttal evidence. In any event, a permissive adverse inference would present the same spillover prejudice to Microsoft if a jury were to impose such an inference. Further, as discussed above, even if Microsoft has the theoretical ability to submit such rebuttal evidence, in practice, the time and expense that would be required to now develop such rebuttal evidence through additional fact and expert discovery on the eve of, or potentially after, summary judgment, and does not cure, the spillover prejudice.

## III.     Separate Trials Also Would Prejudice Microsoft.

In certain cases where courts have found that spillover prejudice cannot be cured by a limiting instruction, they have considered instead potential severance of trials. *See, e.g.*, *Figueroa*, 618 F.2d at 944; *Zhi Chen v. Dist. of Columbia*, 839 F. Supp. 2d 7, 16 (D.D.C. 2011); *Donato*, 172 F.R.D. at 85. At an absolute minimum, such a separate trial would be necessary to safeguard Microsoft's due process rights. But doing so would not eliminate the prejudice entirely, and, in some ways, it would exacerbate it. In addition to the prejudice discussed above in having to develop its own evidence, including expert testimony, to refute News Plaintiffs' evidence regarding the ChatGPT output logs, Microsoft also would be prejudiced by the fact that OpenAI witnesses relevant to Microsoft's defenses are not within the subpoena power of the Court and therefore may not be available for a separate trial involving only Microsoft. Further, a verdict against OpenAI due in part to any evidentiary sanctions would likely be well-publicized and in all likelihood taint the jury pool for any such subsequent, separate trial against Microsoft. Severance is not a viable option in this case.

6

## **CONCLUSION**

For these reasons, the spillover prejudice to Microsoft resulting from News Plaintiffs' requested evidentiary sanctions is overwhelming and cannot be cured by either a limiting instruction or ordering separate trials. As such, the Court should deny News Plaintiffs' Motion as it relates to the non-monetary sanctions.


Dated: August 13, 2026                    Respectfully Submitted,


                                          */s/ Jared B. Briant*
                                          FAEGRE DRINKER BIDDLE & REATH LLP
                                          Jeffrey S. Jacobson
                                          1177 Avenue of the Americas
                                          New York, New York 10036
                                          Telephone: (212) 248-3191
                                          jeffrey.jacobson@faegredrinker.com

                                          Jared B. Briant (admitted pro hac vice)
                                          Kirstin L. Stoll-DeBell (admitted pro hac vice)
                                          1144 15th Street, Suite 3400
                                          Denver, Colorado 80202
                                          Telephone: (303) 607-3588
                                          jared.briant@faegredrinker.com
                                          kirstin.stolldebell@faegredrinker.com

                                          Lora A. Brzezynski (admitted pro hac vice)
                                          Brianna Lynn Silverstein (admitted pro hac vice)
                                          1500 K Street, N.W., Suite 1100
                                          Washington, DC 20005
                                          Telephone: (202) 230-5000
                                          Facsimile: (202) 842-8465
                                          lora.brzezynski@faegredrinker.com
                                          brianna.silverstein@faegredrinker.com

                                          Carrie A. Beyer (admitted pro hac vice)
                                          320 South Canal Street, Suite 3300
                                          Chicago, IL 60606-5707
                                          Telephone: (312) 569-1000
                                          Facsimile: (312) 569-3000
                                          carrie.beyer@faegredrinker.com

Elizabeth M.C. Scheibel (admitted pro hac vice)
2200 Wells Fargo Center, 90 S. 7th Street
Minneapolis, MN 55402
Telephone: (612) 766-7000
Facsimile: (612) 766-1600
elizabeth.scheibel@faegredrinker.com


ORRICK, HERRINGTON & SUTCLIFFE LLP
Annette L. Hurst (admitted pro hac vice)
Daniel Justice (admitted pro hac vice)
Amanda H. Schwartz (admitted pro hac vice)
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
Telephone: (415) 773-5700
Facsimile: (415) 773-5759
ahurst@orrick.com
djustice@orrick.com
aschwartz@orrick.com

Christopher J. Cariello
Marc Shapiro
Lisa T. Simpson
51 West 52nd Street
New York, NY 10019
Telephone: (212) 506-3778
Facsimile: (212) 506-5151
ccariello@orrick.com
lsimpson@orrick.com

Sheryl Koval Garko (admitted pro hac vice)
Laura Brooks Najemy (admitted pro hac vice)
222 Berkley Street
Boston, MA 02116
Telephone: (617) 880-1800
Facsimile: (617) 880-1801
sgarko@orrick.com
lnajemy@orrick.com

8

Monica Svetoslavov (admitted pro hac vice)
Louis Andrew Schreiber
2100 Pennsylvania Avenue NW
Washington, DC 20037
Telephone: (202) 339-8400
Facsimile: (202) 339-8500
msvetoslavov@orrick.com
aschreiber@orrick.com

*Attorneys for Defendant Microsoft Corporation*

9