# EXHIBIT 7
# (Redacted Version)

# EXHIBIT K

**Elana Nightingale Dawson**
Direct Dial: 202.637.2303
elana.nightingaledawson@lw.com

555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004-1304
Tel: +1.202.637.2200 Fax: +1.202.637.2201
www.lw.com

LATHAM & WATKINS LLP

FIRM / AFFILIATE OFFICES
Austin
Beijing
Boston
Brussels
Century City
Chicago
Dubai
Düsseldorf
Frankfurt
Hamburg
Hong Kong
Houston
London
Los Angeles
Madrid
Milan
Munich
New York
Orange County
Paris
Riyadh
San Diego
San Francisco
Seoul
Silicon Valley
Singapore
Tel Aviv
Tokyo
Washington, D.C.

May 16, 2025

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

**VIA EMAIL**

Jennifer Maisel
jmaisel@rothwellfigg.com
Rothwell, Figg, Ernst & Manbeck, P.C.
901 New York Avenue, N.W.
Suite 900 East
Washington, D.C. 20001

*Re: The New York Times Company v. Microsoft Corp. et al., Case No. 24-cv-11195-SHS; Daily News, LP et al v Microsoft Corp. et al., Case No. 24-cv-3285-SHS*

Counsel:

We write regarding your April 2 and 11 letters to OpenAI, your May 12 supplemental letter to the Court, and our ongoing discussions related to OpenAI's user conversation data. After OpenAI responded to over *four dozen* of Plaintiffs' questions regarding ChatGPT user conversation logs (spanning OpenAI's written response to Plaintiffs' January 28 letter and the April 9 meeting between OpenAI's technical consultant and Plaintiffs' expert team), Plaintiffs followed up with a litany of further questions. Those questions, concerning everything from data compression ratios to Microsoft Bing Chat and Copilot, went far beyond what is necessary to achieve the purported goal of sampling the ChatGPT conversation data that is available. Despite this, OpenAI told Plaintiffs last week that it was endeavoring to respond to Plaintiffs this week. Instead of waiting for that response, Plaintiffs unilaterally filed a letter with the Court on Wednesday, May 7, 2025, replete with baseless speculation and material misstatements related to OpenAI's user data. Plaintiffs' unfounded accusations must stop.

Plaintiffs know full well that the very examples of alleged regurgitation on which Plaintiffs relied in their complaints were the result, not of proper use of OpenAI's products, but of Plaintiffs' own manipulation and exploitation of those products in direct contravention of OpenAI's terms of use. Plaintiffs have consistently attempted to conceal that history by refusing to provide discovery on their own creation of those examples while at the same time claiming that OpenAI must create a custom-built tool to retain other users' use of OpenAI's products notwithstanding those users' express requests to the contrary. Plaintiffs cannot have it both ways, simultaneously claiming that their own use of OpenAI's products should be concealed, not

just from the public eye but from OpenAI itself, while at the same time demanding that OpenAI's users have no protections at all. It is equally improper for Plaintiffs to rely on the very examples of alleged regurgitation that they have since *disclaimed* while at the same time contending that such regurgitation justifies their demand for wholesale retention. *See, e.g.*, 9/12 Hearing Tr. at 59.

We have been asking you since at least *November* to discuss "what might work with respect to sampling" the ChatGPT user conversation data that is available. *See* E. Nightingale Dawson 11/22/2024 Email. You *still* have not proposed a sampling approach. That is so even though we have (a) produced multiple samples of ChatGPT consumer conversation logs; (b) produced the metadata for over *40 billion* conversations for you to assess for purposes of sampling; (c) made OpenAI's source code available for inspection, including source code that provides further information about the data reflected in conversation logs; and (d) made a technical expert available to meet with your expert team to answer their questions about ChatGPT conversation logs.

Simply put, instead of focusing on the extensive information OpenAI has provided and the data that is available for sampling and analysis, Plaintiffs continue to treat OpenAI's good-faith attempts to collaborate as an opportunity to seek extralegal discovery via attorney letter, not for any reasonable or appropriate purpose, but to create a litigation burden at the expense of user privacy. That is improper. Unlike Plaintiffs, OpenAI has been committed to cooperation on facilitating the sampling of ChatGPT user conversation data. In our continued efforts to work with Plaintiffs—constructive efforts that Plaintiffs have *not* reciprocated—we have provided below additional information related to Plaintiffs' questions and the task at hand.

With respect to OpenAI's storage of ChatGPT Free, Plus and Pro user conversation data, we are not aware, based on a reasonable investigation, of any such data—that is, conversation prompts and outputs—in the Azure Cosmos database that predate December 9, 2022. OpenAI estimates that the compression ratio of compressed ChatGPT Free, Plus, and Pro conversation data to uncompressed data is, as a very rough estimate, approximately [redacted]. OpenAI does not have available, pursuant to a reasonable investigation, the average number of tokens per conversation. With respect to your question regarding the ability to search ChatGPT Free, Plus, and Pro conversation data, OpenAI can only search certain data from the last rolling 30 days' worth of decompressed data. With respect to conversation log fields, as we have previously explained, none of the fields beyond those in the metadata we provided are accessible and thus usable for purposes of sampling because the data at issue is compressed. As such, the fields available for sampling are those that are reflected in the billions of metadata records we provided: [redacted]. In addition, at least some of the information you have asked for is discernable from information to which Plaintiffs already have access such as the source code made available months ago.

* * *

Plaintiffs have long had more than enough information to propose a sampling plan so the parties can move forward. We are available to meet-and-confer on Monday, May 19 from 11am - 3pm

ET, Tuesday May 20 from 11am - 3pm ET, and on Wednesday May 21 from 12pm - 2pm ET – please provide a proposed sampling plan prior to our meet-and-confer. We are willing to make our technical expert available for an additional call once we have your sampling proposal in hand.

Best regards,

Elana Nightingale Dawson
of LATHAM & WATKINS LLP