**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE:<br>OPENAI, INC.,<br>COPYRIGHT INFRINGEMENT LITIGATION<br>This Document Relates To:<br>News Cases<br>1:23-cv-11195-SHS-OTW<br>1:24-cv-01515-SHS-OTW<br>1:24-cv-03285-SHS-OTW<br>1:24-cv-04872-SHS-OTW<br>1:25-cv-04315-SHS-OTW | 1:25-md-03143-SHS-OTW |

**MEMORANDUM OF LAW IN SUPPORT OF NEWS ORGANIZATIONS' MOTION FOR LEAVE TO FILE *AMICUS CURIAE* BRIEF**

Pursuant to this Court's Orders dated August 7, 2026, and September 24, 2026, News/Media Alliance, National Newspaper Association, The National Press Photographers Association, and Pro Publica, Inc. (collectively, "*Amici*") respectfully submit this Memorandum of Law in support of their Motion for Leave to File an *Amicus Curiae* Brief in support of News Plaintiffs' motion for partial summary judgment, and in opposition to Defendants' motions for summary judgment ("Brief").

**INTEREST OF *AMICI CURIAE***

News/Media Alliance ("NMA") is a nonprofit organization representing over 2,200 publishers in the United States, ranging from the largest news and magazine publishers in the country to hyperlocal newspapers, and from digital-only outlets to papers that have printed news since the nation's founding. Its members invest in the investigation, reporting, and publication of news stories and analysis that are foundational to an informed citizenry and democratic

governance. As the leading voice for the industry, NMA advocates for laws and policies that allow high-quality journalism to thrive, including a balanced interpretation of the fair use exception to copyright.

National Newspaper Association is a 141-year-old organization representing local community newspapers. It is a non-stock, not-for-profit corporation based in Florida. It represents members in every state. Its members publish in print and in all digital formats, including websites, mobile applications and commercial platforms. Its typical member is a 3,000 to 5,000 circulation nondaily newspaper with staff based in communities they serve.

The National Press Photographers Association ("NPPA") is a 501(c)(6) nonprofit organization founded in 1946 and dedicated to the advancement of visual journalism in its creation, editing, and distribution. As the voice of visual journalists, NPPA promotes its members' constitutional and intellectual property rights and has a vital interest in ensuring that AI uses of copyrighted journalistic work do not undermine licensing markets and the livelihoods of those who create it.

Pro Publica, Inc. ("ProPublica") is an independent, nonprofit newsroom that produces investigative journalism with moral force. It has won nine Pulitzer Prizes, most recently the 2026 prize for local reporting and the 2025 prize for public service. ProPublica is supported almost entirely by philanthropy and offers its articles for republication, both through its website, propublica.org, and directly to leading news organizations selected for maximum impact.

## RELEVANT BACKGROUND

On August 7, 2026, this Court entered an order permitting, and setting forth certain requirements for, the submission of *amicus curiae* briefs in connection with the parties' motions for summary judgment in all cases in the above-referenced multidistrict litigation. [ECF1663] ("Order").[1] The Order provided that anyone wishing to file an *amicus* brief in connection with the summary judgment motions should seek to file such a brief no later than October 16, 2026. The Order further provided that such a motion should include the proposed *amicus* brief, which should be no more than 6,000 words. On September 24, 2026, the Court granted an extension of time until October 30, 2026 to file such briefs. [ECF2049]

## ARGUMENT

"[D]istrict courts have broad discretion to permit or deny an appearance as amicus curiae in a case." *United States v. Adams*, 348 F.R.D. 408, 409 (S.D.N.Y. 2025) (internal quotation marks and citation omitted). *Amicus* participation is commonly granted where "the proposed submission assists the court by, inter alia, providing a point of view that may not be available from the parties." *McBeth v. Gabrielli Truck Sales, Ltd.*, 768 F. Supp. 2d 392, 394 (E.D.N.Y. 2011); *see also Women for Am. First v. De Blasio*, No. 20 Civ. 5746, 2020 WL 4904057, at *2 (S.D.N.Y. Aug. 18, 2020) ("An amicus brief should normally be allowed . . . when the amicus has unique information or perspective that can help the court beyond the help that lawyers for the parties are able to provide."); *Automobile Club of N.Y., Inc. v. Port Auth. of N.Y. and N.J.*, No. 11 Civ. 6746, 2011 WL 5865296, at *2 (S.D.N.Y. Nov. 22, 2011) ("The usual rationale for amicus curiae submissions is that they are of aid to the court and offer insights not available from the parties."). Courts are "more likely to grant leave to appear as an amicus curiae in cases

[1] Unless otherwise noted, all ECF references are to the docket in Case No. 1:25-md-03143.

involving matters of public interest." *Andersen v. Leavitt*, No. 03-cv-6115, 2007 WL 2343672, at *2 (E.D.N.Y. Aug. 13, 2007) (quoting 4 Am. Jur. 2d *Amicus Curiae* § 3 (2007)).

Here, *Amici*'s Brief provides important perspective on the impact of Defendants' fair use arguments on the news publishing industry writ large. Collectively, *Amici* represent thousands of news organizations of every type, including small and local publications occupying different segments of the marketplace than those represented by the parties. *Amici* thus can provide essential information on the multiple direct and derivative markets for news content, as well as on the broader consequences for the news industry if AI companies' mass-scale, unauthorized use of copyrighted works continues unabated. *Amici* respectfully submit that such information will greatly aid the Court's fair use analysis, including under the critically important fourth fair use factor. *See Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 568 (1985) (under fourth factor, courts consider adverse market impact "if the challenged use 'should become widespread'") (quoting *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 451 (1984)).

Moreover, the considerable public interest in the outcome of these cases counsels heavily in favor of participation by a broad range of stakeholders. In particular, *Amici* seek to respond to assertions made by the Defendants and U.S. Government in its Statement of Interest [ECF1682] regarding the broader implications of these cases for AI licensing markets and the copyright system as a whole.

**CONCLUSION**

For the foregoing reasons, *Amici* respectfully request that their Motion for Leave to File the attached Brief be granted.

DATED: October 30, 2026

Respectfully submitted,

By: /s/ Jacqueline C. Charlesworth

Jacqueline C. Charlesworth
Kevin R. Amer (*pro hac vice pending*)
BAYLA LAW GROUP, LLP
One Embarcadero Center
Suite 1200
San Francisco, California 94111
Telephone: 415.765.6633
jcharlesworth@baylalaw.com
kamer@baylalaw.com

*Attorneys for Amici Curiae News/Media Alliance, National Newspaper Association, The National Press Photographers Association, and Pro Publica, Inc.*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Civil Rule 7.1(c), I hereby certify that the foregoing Memorandum of Law contains 956 words according to the word-count feature of the word-processing program used to prepare it, and therefore it complies with paragraph 2.C of this Court's Individual Practices.

/s/ Jacqueline C. Charlesworth