**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In Re: OpenAI, Inc. Copyright Infringement Litigation<br><br>This Document Relates To:<br><br>1:23-cv-11195-SHS-OTW<br>1:24-cv-01515-SHS-OTW<br>1:24-cv-03285-SHS-OTW<br>1:24-cv-04872-SHS-OTW<br>1:25-cv-04315-SHS-OTW | Case No. 1:25-md-3143 (SHS) (OTW) |

**NEWS PLAINTIFFS' REPLY TO DEFENDANTS' RESPONSE TO NEWS PLAINTIFFS' RULE 56.1 STATEMENT IN SUPPORT OF NEWS PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

**REDACTED**

# TABLE OF CITATION CONVENTIONS

| Citation | Document | ECF No. |
|---|---|---|
| NP-SOF | News Plaintiffs' Corrected Rule 56.1 Statement of Material Undisputed Facts | 1985 |
| Bauerlein Decl. | Declaration of Monika Bauerlein in Support of News Plaintiffs' Motion for Summary Judgment | 1788 |
| Maisel Decl. | Declaration of Jennifer B. Maisel in Support of News Plaintiffs' Motion for Summary Judgment | 1815 |
| Goldstein Decl. | Declaration of Tom Goldstein in Support of News Plaintiffs' Motion for Summary Judgment | 1819 |
| Maisel MSJ-Opposition Decl. | Declaration of Jennifer B. Maisel in Support of News Plaintiffs' Omnibus Memorandum of Law in Opposition to Defendants' Motions for Summary Judgment | 2150 |
| Blanco Opp. Decl. | Allison S. Blanco Declaration in Support of OpenAI's Opposition to News Plaintiffs' Motions for Summary Judgment | 2183 |
| S. Krishnan Opp. Decl. (News) | Declaration of Sanjay Krishnan, Ph.D. in Support of OpenAI's Opposition to News Plaintiffs' Motion for Partial Summary Judgment | 2140 |
| Def-Resp-NP-SOF | Defendants' Response to News Plaintiffs' Rule 56.1 Statement | 2253 |
| NP Ex. | News Plaintiffs' Exhibits | 1777, 1785, 1786, 1790, 1792, 1799, 1803, 1807, 1809, 1812, 1823, 1829, 1830, 1833, 1834, 1837, 1839, 1841, 1842, 1843, 1844, 1846, 1847, 1849, 1851, 1852, 1854, 1856, 1857, 1861, 1863, 1869, 1871, 1874, |

| | | |
|---|---|---|
| | | 1876, 1877, 1878, 1880, 1882, 1885, 1887, 1888, 1891, 1893, 1896, 1897, 1899, 1902, 1903, 1905, 1909, 2136, 2148, 2162, 2163, 2165, 2166, 2168, 2172, 2176, 2177, 2178, 2182, 2186, 2193, 2198, 2209, 2214, 2219, 2221, 2223, and those Filed Concurrently with this Reply |
| Goldstein Opening Rep. | Declaration of Tom Goldstein in Support of News Plaintiffs' Motion for Summary Judgment (Exhibit A) | 1819-1 |
| Second Wenger Decl. | Second Declaration of Emily Wenger | Filed Concurrently with this Reply |
| Delorey Opening Rep. | Declaration of Daniel P. Delorey in Support of News Plaintiffs' Motion for Summary Judgment (Exhibit A) | 1774-1 |
| Delorey Supplemental Rep. | Declaration of Daniel P. Delorey in Support of News Plaintiffs' Motion for Summary Judgment (Exhibit D) | 1774-4 |
| Delorey Supp. Decl. | Supplemental Declaration of Daniel P. Delorey | Filed Concurrently with this Reply |
| Stricchiola NYT/DNP Opening Rep. | Declaration of Jessie Stricchiola in Support of News Plaintiffs' Motion for Summary Judgment (Exhibit A) | 1798-1 |
| Stricchiola Rebuttal Rep. | Declaration of Jessie Stricchiola in Support of News Plaintiffs' Motion for Summary Judgment (Exhibit C) | 1798-3 |

| | | |
|---|---|---|
| Feamster Opening Rep. | NP Ex. 410<br>(Expert Report of Dr. Nick Feamster) | 1851-19 |
| Feamster Rebuttal Rep. | NP Ex. 423<br>(Rebuttal Report of Dr. Nick Feamster) | 1854-7 |
| Second Koonce Decl. | Second Declaration of Lacy H. Koonce III | Filed Concurrently with this Reply |

Pursuant to Local Civil Rule 56.1, Plaintiffs The New York Times Company ("The Times"), Daily News Plaintiffs[1] ("DNP"), the Ziff Davis Plaintiffs[2] ("Ziff Davis" or "ZD"), the Center for Investigative Reporting, Inc. ("CIR") and The Intercept, (each a "News Plaintiff" and collectively, "News Plaintiffs"), respectfully submit the following responses to the "additional facts" offered by the OpenAI Defendants with their opposition to News Plaintiffs' motion for summary judgment (Dkt. 2253 ¶¶ 1826-1873). *See Adams v. Bloomberg L.P.*, 2023 WL 2662607, at *2 (S.D.N.Y. Mar. 28, 2023) ("[C]ourts in this district have previously permitted reply 56.1 statements, including where, as here, the non-movant's Rule 56.1 responses appeared to raise new facts not responsive to the movant's original Rule 56.1 statement.").

---

[1] "*Daily News* Plaintiffs" or "DNP" includes Daily News, LP ("New York Daily News"); Chicago Tribune Company, LLC ("Chicago Tribune"); Orlando Sentinel Communications Company, LLC ("Orlando Sentinel"); Sun-Sentinel Company, LLC ("Sun-Sentinel"); San Jose Mercury-News, LLC ("San Jose Mercury News"); DP Media Network, LLC ("Denver Post"); ORB Publishing, LLC ("Orange County Register"); and Northwest Publications, LLC ("Pioneer Press").

[2] "*Ziff Davis* Plaintiffs" or "Ziff Davis" includes Ziff Davis, Inc.; Ziff Davis, LLC; IGN Entertainment, Inc. ("IGN"); Everyday Health Media, LLC ("Everyday Health"); Mashable, Inc. ("Mashable"); and CNET Media, Inc. ("CNET").

## News Plaintiffs' Responses to Defendant OpenAI's "Additional Facts"

| | |
|---|---|
| 1826. OpenAI's expert, Dr. Krishnan, was not able to replicate the number of "copies" identified by Dr. Goldstein in the declaration and working papers submitted in support of News Plaintiffs' summary judgment motion. S. Krishnan Opp. Decl. (News) ¶¶ 50–58. | **News Plaintiffs' Response:**<br><br>**Undisputed but immaterial.** The cited evidence shows that Dr. Krishnan purported to find 22 additional unique matches of OpenAI's training data records to The Times's and Daily News Plaintiffs' Asserted Works ("copies") in the raw analysis data compared to the 944,655 unique matches tabulated in Goldstein Declaration, Exhibit I; and to find 80 additional total matches, compared to the 3,924,653 tabulated in Goldstein Declaration, Exhibit I. Dr. Krishnan does not explain how he counted. The cited evidence also does not identify any issue with the Training Data Infringement Rule 1006 summaries (Maisel Declaration, Exhibits A and B) which, for each unique copy of an Asserted Work, link to (i) the Asserted Work, (ii) the copy in the training data record with the highest coverage score, and (iii) a side-by-side comparison. It is the Training Data Infringement Rule 1006 summaries (Maisel Declaration, Exhibits A and B) that identify which works are being moved on for summary judgment. The fact is therefore immaterial and there is no issue to be tried with respect to this fact.<br><br>Additionally, The Times and Daily News Plaintiffs note that they have dropped asserted works from their motion for summary judgment.<br><br>The Times has dropped 8 works: specifically, the 8 Times works identified in S. Krishnan Opp. Decl. (News), Appendix A). The total number of works The Times is moving on is 944,647. See NP-SOF-1186. Dropping these works has also resulted in 4 fewer works for which at least one piece of CMI |

| | |
|---|---|
| | has been removed. See NP-SOF-1363.<br><br>The Daily News Plaintiffs have dropped 1,882 works: specifically the 1,873 Daily News Plaintiffs works having a byline with one of Larry Magid, Jerry McDonald, or Joshua Melvin; the 1 Daily News Plaintiffs work identified as Blanco Opp. Decl. Ex. 90; the 7 Daily News Plaintiffs works identified in S. Krishnan Opp. Decl. (News), Appendix A; and the 1 Daily News Plaintiffs work identified in Maisel MSJ-Opposition Decl. ¶ 5. The total number of works Daily News Plaintiffs are moving on is 1,386,502. See NP-SOF-1187. Dropping these works has also resulted in 3,772 fewer Mercury News works; 4 fewer Chicago Tribune works; and 2 fewer Orlando Sentinel works for which at least one piece of CMI has been removed (with no change to the remaining Daily News Plaintiffs). See NP-SOF-1365-1380. |
| 1827. The News Plaintiffs' Motion for Summary Judgment, Goldstein Declaration Exhibit I, and Goldstein's working papers report different numbers of training-based infringement counts. S. Krishnan Opp. Decl. (News) ¶ 50. | **News Plaintiffs' Response:**<br><br>**Disputed but immaterial.** The cited evidence shows that Dr. Krishnan purported to find 22 additional unique matches in the raw analysis data compared to the 944,655 unique matches tabulated in Goldstein Declaration, Exhibit I; and to find 80 additional total matches, compared to the 3,924,653 tabulated in Goldstein Declaration, Exhibit I. Dr. Krishnan does not explain how he counted. Further, the raw analysis data referenced by the cited evidence (i.e., "Goldstein's working papers") do not "report" numbers; they are a collection of technical data formatted in a JSON format. As explained above, that Dr. Krishnan purports to have found additional matches in the raw analysis data is immaterial and there is no issue to be tried with respect to this fact. See Response to OpenAI's Fact # 1826. |

| | |
|---|---|
| 1828. The Times and Daily News's expert, Dr. Goldstein, provided a quantitative matching analysis for the New York Times Annotated Corpus in his summary judgment declaration but did not offer that analysis in his opening, rebuttal, or reply reports. S. Krishnan Opp. Decl. (News) ¶¶ 27–29. | **News Plaintiffs' Response:**<br><br>**Undisputed** that Dr. Goldstein's summary judgment declaration includes an updated version of Exhibit 11 to his opening expert report and that this updated version included a quantitative matching analysis regarding OpenAI's use of the New York Times Annotated Corpus, and that this matching analysis was not included in Dr. Goldstein's prior reports. Goldstein Decl. ¶ 10. Otherwise disputed because Dr. Goldstein's opening report addressed OpenAI's use of the New York Times Annotated Corpus. Goldstein Opening Rep. ¶¶ 228-59.<br><br>There is **no genuine issue to be tried** with respect to OpenAI's Fact # 1828 because there is no dispute that OpenAI acquired and used the New York Times Annotated Corpus. Def-Resp-NP-SOF-1119-20. In addition, insofar as Defendants' fact is meant to implicitly challenge the timeliness of Dr. Goldstein's analysis, that is not an issue the jury will decide. |
| 1829. The Times and Daily News's expert, Dr. Goldstein, identified "matches" between NYT/DN Asserted Works and OpenAI training data records where the matched text was third-party authored books and poetry. S. Krishnan Opp. Decl. (News) ¶ 61. | **News Plaintiffs' Response:**<br><br>**Undisputed but immaterial.** The cited evidence shows one work from The Times which is a published poem by John Ashberry (S. Krishnan Opp. Decl. (News), Fig. A.7 and Fig. A.8), and one work from the Chicago Tribune which is an excerpt from a book about Upton Sinclair (*id.*, Fig. A.9 and Fig. 1.10). These two works are no longer being asserted. The fact is therefore immaterial and there is no issue to be tried with respect to this fact. |

| | |
|---|---|
| 1830. CIR/Intercept's expert, Dr. Wenger, served a supplemental report on August 17, 2026. S. Krishnan Opp. Decl. (News) ¶ 6. | **News Plaintiffs' Response:**<br><br>**Undisputed**. |
| 1831. The SJ Asserted Works allegedly copied, as reported in Dr. Wenger's Supplemental Report Appendices, include thousands of works not in the Rule 1006 Summaries. S. Krishnan Opp. Decl. (News) ¶¶ 69–79. | **News Plaintiffs' Response:**<br><br>News Plaintiffs object to the statement as depending on an expert disclosure that is untimely and does not include the facts and data upon which it relied, since OpenAI's expert did not list the thousands of works he claims were absent from the Rule 1006 Summaries.<br><br>**Undisputed** that 7,315 works identified in Appendices 191 and 193 to Dr. Wenger's Supplemental Report were not contained in CIR's Rule 1006 Summaries. For that reason, CIR is withdrawing ownership claims for these works for summary judgment, but not for trial; thus, this fact is **immaterial** to News Plaintiffs' summary judgment motion. Dr. Wenger has analyzed the data these works removed. According to that analysis: OpenAI removed 292,640 pieces of CMI from copies of a CIR SJ Asserted Work, removed at least one piece of CMI from 81,157 copies of CIR SJ Asserted Works, and removed at least one piece of CMI from 30,038 different CIR SJ Asserted Works. Second Wenger Decl. ¶ 18.<br><br>Also **disputed** to the extent OpenAI suggests that any methodological errors caused the difference between the number of Mother Jones SJ Registered Asserted Works that CIR asserted at summary judgment for acquisition and training (743 and 682 respectively) and Dr. Wenger's corresponding findings (747 for acquisition, 682 for training). See S. Krishnan Opp. Decl. (News) ¶¶ 73-75. There is no genuine dispute of fact on that issue. As CIR's CEO Ms. |

| | |
|---|---|
| | Bauerlein explained, CIR discovered upon further analysis that four works originally included in the SJ Registered Asserted Works list were not registered with the Copyright Office, and withdrew those works. Bauerlein Decl. ¶ 17 n.1. Because Dr. Wenger served her Supplemental Report before this discovery, her totals are four higher than the number of works CIR has claimed. Second Wenger Decl. ¶ 11. |
| 1832. Dr. Wenger's Supplemental Report identified a 75-word article as a "match" to OpenAI's training data records. S. Krishnan Opp. Decl. (News) ¶ 74. | **News Plaintiffs' Response:**<br><br>News Plaintiffs object to this statement as **misleading**. **Undisputed** that Dr. Wenger's Supplemental Report identifies the 75-word article referenced at paragraph 74 of Dr. Krishnan's Declaration. However, Dr. Wenger's report identifies that article in the section presenting raw, unfiltered results that do not filter CIR's and The Intercept's works by word count. To the extent OpenAI insinuates that this represents a flaw in Dr. Wenger's methodology, that would be incorrect, since this article does not appear in the version of Dr. Wenger's results filtered by word count. Second Wenger Decl. ¶ 13. |
| 1833. Ziff Davis's expert, Mr. Delorey, served a supplemental report on September 4, 2026. S. Krishnan Opp. Decl. (News) ¶ 5. | **News Plaintiffs' Response:**<br><br>**Undisputed.** Mr. Delorey submitted a supplemental report that identifies a narrow set of Asserted Works and matches for summary judgment, which are a subset of those identified in his opening report. |
| 1834. OpenAI's expert, Dr. Krishnan, was not able to replicate the number of "copies" identified by Mr. Delorey in the declaration and working papers submitted in support of | News Plaintiffs' Response:<br><br>**Denied, and assertion does not create a triable issue** |

| | |
|---|---|
| News Plaintiffs' summary judgment motion. S. Krishnan Opp. Decl. (News) ¶¶ 105, 108 & Tables 13, 14. | **of fact.**<br><br>As to ¶ 105 and Table 13 of Dr. Krishnan's new declaration: Dr. Krishnan could and did replicate the number of "copies" identified by Mr. Delorey. Indeed, Dr. Krishnan himself notes that he was able to use the scripts and supporting material that Mr. Delorey provided to reproduce Mr. Delorey's figures. S. Krishnan Opp. Decl. (News) ¶¶ 105, 108; Delorey Supp. Decl. ¶ 12.<br><br>In asserting that Dr. Krishnan was unable to replicate Mr. Delorey's numbers, fact # 1834 relies on Dr. Krishnan's erroneous suggestion that Mr. Delorey was purporting to sum the rows from two of the Webtext2 datasets. S. Krishnan Opp. Decl. (News) ¶ 105. However, Mr. Delorey was not. ECF 1774-4 [Delorey Supplemental Rep.] ¶ 38; Delorey Supp. Decl. ¶¶ 10-11. In any event, Mr. Delorey provided the corrected number of "copies" and the number of Asserted Works in the Webtext2 datasets. Delorey Supp. Decl. ¶¶ 10-11. The Webtext2 datasets contain 132,820 "copies" and 66,781 Asserted Works. *Id.*<br><br>**Immaterial as to News Plaintiffs' Motion for Summary Judgement**: as to Table 14 and ¶ 108 of Dr. Krishnan's declaration, Ziff Davis has not relied on the metrics that are discussed by Dr. Krishnan and therefore his new rebuttal is irrelevant for purposes of summary judgement. In any event, Mr. Delorey has re-computed the relevant table identified by Dr. Krishnan using the scripts already produced. Delorey Supp. Decl. ¶ 12; *id.* at Appendix B; *id.* at n.22. |

| | |
|---|---|
| 1835. Ziff Davis's expert, Mr. Delorey, included 1,689 articles in his analysis that do not appear in Ziff Davis's Rule 1006 summaries. S. Krishnan Opp. Decl. (News) ¶ 113. | **News Plaintiffs' Response:**<br><br>**Denied, and assertion does not create a triable issue of fact.**<br><br>OpenAI's fact #1835 relies on Dr. Krishnan's count of URLs in the 1006 summaries, not the Asserted Works. There is no genuine dispute that each of the 1,636,586 Asserted Works that Mr. Delorey analyzed in § 11 of his supplemental report appear in Ziff Davis's Rule 1006 summaries. Delorey Supp. Decl. ¶¶ 8-9; *id.* at n.6. Mr. Delorey has also provided a key that traces each work he analyzed to the record of that work in the 1006 summaries. *Id.* |
| 1836. Ziff Davis has identified 1,636,586 Asserted Works on which it seeks summary judgment as to ownership. S. Krishnan Opp. Decl. (News) ¶¶ 112–13. | **News Plaintiffs' Response:**<br><br>**Undisputed**. However, Ziff Davis is no longer seeking summary judgement as to 90 articles. Ziff Davis does not concede that the opinions proffered by OpenAI's experts are proper, admissible, or correct, but has removed these works to moot any potential dispute. Ziff Davis has recomputed the number of Asserted Works, matches, and relevant figures for the Court's convenience in the concurrently filed supporting declaration of Daniel Delorey. Delorey Supp. Decl. ¶¶ 3-7.<br><br>See Responses to Facts 1867, 1869, and 1870. |
| 1837. Mr. Delorey's supplemental MSJ report identifies 1,644,150 Asserted Works. S. Krishnan Opp. Decl. (News) ¶¶ 112–13. | **News Plaintiffs' Response:**<br><br>**Denied in part, but this statement does not create a material issue of fact.** |

| | |
|---|---|
| | Both Mr. Delorey and Dr. Krishnan agree that Mr. Delorey's Supplemental Report identified 1,636,586 Asserted Works. S. Krishnan Opp. Decl. (News) ¶ 112; id. at n. 188; ECF 1774-4 [Delorey Supplemental Rep.] ¶ 39; id. at n. 45. All of these are a subset of the works identified in Mr. Delorey's opening report. ECF 1774-4 [Delorey Supplemental Rep.] ¶¶ 5-6. Further, as to the referenced 1,644,150 figure, OpenAI seems to rely on Dr. Krishnan's count of URLs, not the count of Asserted Works. S. Krishnan Opp. Decl. (News) ¶ 112, Table 15. There is no genuine dispute that each of the 1,636,586 Asserted Works Mr. Delorey analyzed in § 11 of his Supplemental Report appear in Ziff Davis's Rule 1006 summaries. Delorey Supp. Decl. ¶¶ 8-9; *id.* at n. 6.<br><br>See Response to fact # 1836. |
| 1838. Mr. Delorey's "matches" between Ziff Davis Asserted Works and OpenAI training data records include statements by government officials. S. Krishnan Opp. Decl. (News) Appendix C, Fig. C.7. | **News Plaintiffs' Response:**<br><br>**Disputed as immaterial** to News Plaintiffs' motion for summary judgment, as Ziff Davis will withdraw the Asserted Work in which this content appears.<br><br>**Objection**: As Dr. Krishnan explained at his deposition, out of nearly six million matches identified by Mr. Delorey, Dr. Krishnan identified "six examples of what [he] call[ed] false positives" and was "[redacted]". *Id.* at NP Ex. 93 [Krishnan Dep. Tr.] at 346: 13 – 355: 18. Dr. Krishnan further admitted that [redacted] *Id.* at 371:19 – 372:5; *see also* |

| | |
|---|---|
| | *id.* at 368:2-15, 370:6 – 371:1 (admitting [redacted]. For purposes of summary judgement, Ziff Davis relied on those undisputed matches.<br>Now, OpenAI has submitted a new and untimely declaration from Dr. Krishnan that purports to identify sixteen new alleged false positives. S. Krishnan Opp. Decl. (News) Appendix C; *id.* at Fig C.7. These new cherry-picked examples are wrong. *See* Delorey Supp. Decl. ¶¶ 4-5 & n.3.<br><br>However, there is no genuine issue to be tried with respect to OpenAI's Fact# 1838 because admissible evidence confirms that no reasonable trier of fact could credit OpenAI's statement. The example OpenAI relies on does not support OpenAI's implication. The training record in question contains several lines of original text authored by Ziff Davis in addition to a statement by a government official. S. Krishnan Opp. Decl. (News) at 132-33; Delorey Supp. Decl. ¶ 2; *id.* at n.3.<br><br>There is no genuine dispute as to the remaining matches. |

| | |
|---|---|
| 1839. The Times and Daily News's expert, Dr. Goldstein, identified at least 4 million instances of "CMI removals" where the information allegedly removed originated from website footers, headers, and navigation bars. S. Krishnan Opp. Decl. (News) ¶ 63; S. Krishnan Opp. Decl. (News) Ex. A (S. Krishnan Rebuttal Rep. (Goldstein)) ¶ 198 & Table 7, Appendix B & Tables B.1–B.8 (4 million footers). | **News Plaintiffs' Response:**<br><br>**Undisputed**. |
| 1840. Ziff Davis's expert, Mr. Delorey, identified at least 6 million instances of "CMI removals" where the information allegedly removed originated from website footers, headers, and navigation bars. S. Krishnan Opp. Decl. ¶ 121; News Ex. 1167 (S. Krishnan Rebuttal Rep. (Delorey)) ¶¶ 177–88 & Table t12 (6 million removals attributable to sitewide content). | **News Plaintiffs' Response:**<br><br>**Undisputed**. |
| 1841. 91% of the weak "copyright notices" and 80% of the "strong" notices Mr. Delorey identified as "removed" contained registration dates that did not reflect the publication or registration dates of Ziff Davis's Asserted Works. S. Krishnan Opp. Decl. (News) ¶ 121; News Ex. 1167 (S. Krishnan Rebuttal Rep. (Delorey)) ¶¶ 177–78. | **News Plaintiffs' Response:**<br><br>**Undisputed** that OpenAI generally removed copyright notices at a rate approaching nearly 100%. The remainder of this statement is immaterial to News Plaintiffs' Motion for Summary Judgement.<br><br>As Dr. Krishnan admitted at his deposition, [redacted] NP Ex. 94 [Krishnan Dep. Tr.] at 501:2 – 502:21. Dr. Krishnan further admitted that [redacted] *Id.* at 513:21 – 515:1. |

| | |
|---|---|
| 1842. In millions of instances, Plaintiffs' experts have extracted, and characterized as "CMI," information from raw HTML files that differs from the CMI present in their Asserted Works datasets. S. Krishnan Opp. Decl. (News) ¶¶ 63, 121; News Ex. 1167 (S. Krishnan Rebuttal Rep. (Delorey)) ¶¶ 196–97 & Table 13; S. Krishnan Opp. Decl. (News) Ex. A (S. Krishnan Rebuttal Rep. (Goldstein)) ¶¶ 197–209, Table 7 & Appendix B, Tables B.1–B.8. | **News Plaintiffs' Response:**<br><br>**Disputed**. However, there is no genuine issue to be tried with respect to OpenAI's Fact # 1842 because OpenAI's statement is immaterial to News Plaintiffs' motion for summary judgment. What OpenAI appears to mean is that in some instances the title, or other CMI, differed from that reflected in Plaintiffs' Rule 1006 summaries of the Asserted Works. Plaintiffs' allegations are that OpenAI removed the specific CMI that was extracted from the versions of the works OpenAI downloaded, not that OpenAI removed other CMI present in "Asserted Works datasets."<br><br>**Disputed** for CIR/Intercept as unsupported by the cited evidence, none of which pertains to their expert's analysis.<br><br>**Denied as to Ziff Davis as unsupported**. OpenAI has failed to present admissible evidence that information from raw HTML files differs from the CMI present in the Asserted Works Datasets. Admissible evidence shows that Mr. Delorey corroborated the captured CMI from Common Crawl files with Ziff Davis's Asserted Work datasets to ensure consistency. ECF 1774-4 [Delorey Supplemental Rep.] ¶ 24. It is undisputed that even accounting for Dr. Krishnan's critiques, OpenAI removed the CMI from the Asserted Works. ECF 1774-4 [Delorey Supplemental Rep.] ¶¶ 41-42; Delorey Supp. Decl. Appendix A at § 11.2. Neither Dr. Krishnan nor OpenAI has presented evidence to the contrary. |

| | |
|---|---|
| 1843. The Times and Daily News's expert, Dr. Goldstein, has identified approximately 7 million instances of "CMI" where the identified information "removed" is a publisher. S. Krishnan Opp. Decl. (News) ¶ 63, Appendix D; S. Krishnan Opp. Decl. (News) Ex. A (S. Krishnan Rebuttal Rep. (Goldstein)) ¶¶ 202–03 & Tables 5, 7, 10 (7 million publisher "removals" and millions of malformed copyright notices). | **News Plaintiffs' Response:**<br><br>**Undisputed**. |
| 1844. Ziff Davis's expert, Mr. Delorey, has identified at least 3.6 million of instances of "CMI" where the identified information "removed" is a publisher. S. Krishnan Opp. Decl.(News) ¶ 121; Ex. 1167 (S. Krishnan Rebuttal Rep. (Delorey)) ¶ 211 & Table 14 (3.6 million publisher "removals"). | **News Plaintiffs' Response:**<br><br>**Undisputed.** However, for purposes of summary judgement, Mr. Delorey identified a subset of instances where the "publisher" information conveyed in connection with a Ziff Davis Asserted Work was removed from OpenAI's training data records. NP-SOF ¶¶ 1397, 1402; ECF 1774-4 [Delorey Supplemental Rep.] ¶ 41; Delorey Supp. Decl. Appendix A at ¶ 41. |
| 1845. The training datasets for the in-scope models were assembled prior to the spring of 2024. ECF 1774-1 (D. Delorey Decl. Ex. A) (Opening Rep.) ¶¶ 171–76, 229. | **News Plaintiffs' Response:**<br><br>**Undisputed** that OpenAI began assembling the training data sets for the in-scope models prior to the spring of 2024. The remainder of the statement is unsupported by the cited evidence because Mr. Delorey never rendered an opinion as to the date certain models' assembly was completed. ECF 1774-1 [Delorey Opening Rep.] ¶¶ 171–75, 229. |
| 1846. Ziff Davis's expert, Mr. Delorey, did not conduct any analysis to determine whether Ziff Davis works had been registered within three months of their publication. A. Blanco Opp. Decl. Ex. 190 (D. Delorey Tr.) 84:3–8. | **News Plaintiffs' Response:**<br><br>**Undisputed.** |

| | |
|---|---|
| 1847. OpenAI uses blocklists to filter out certain content from being included in or used by its models. News Ex. 410 (N. Feamster Opening Rep.) ¶¶ 250–51. | **News Plaintiffs' Response:**<br><br>**Disputed**. *See* Stricchiola Rebuttal Rep. ¶¶ 136–139 (explaining why Dr. Feamster's use of the term "blocklist" is a "misapplication of a critical security term"). What OpenAI appears to mean by the term "blocklist" is a function that controls how its *own* system operates via what appear to be filters invoked at various stages. That is distinct from how the term "blocklist" is typically used in the industry (i.e., a system to protect against *external* threats) and the definition Dr. Feamster cites in his Opening Report—"a security tool that prevents specific entities, such as IP addresses, email addresses, or websites from accessing a system or network." Feamster Opening Rep. ¶ 250, n.254.<br><br>**Undisputed** that OpenAI utilizes a function that controls how its own system operates via what appear to be filters invoked at various stages in order to filter out certain content from being included in or used by its models.<br><br>However, there is no genuine issue to be tried with respect to OpenAI's Fact # 1847 because OpenAI's statement is immaterial to News Plaintiffs' motion for summary judgment. Regardless of which definition of blocklist applies, it is undisputed that OpenAI's bots accessed News Plaintiffs' sites through February 2026, well after News Plaintiffs' sites were added to the blocklists. *See* Stricchiola NYT/DNP Opening Rep. ¶¶ 270, 276–278; Feamster Rebuttal Rep. ¶¶ 87–90, 101, 104 (OpenAI's expert). |

| | |
|---|---|
| 1848. A blocklist is a common cybersecurity mechanism that is often employed to prevent specific Internet entities from accessing a system or network. News Ex. 410 (N. Feamster Opening Rep.) ¶¶ 250–51. | **News Plaintiffs' Response:**<br><br>**Undisputed**.<br><br>However, OpenAI's statement is immaterial to News Plaintiffs' motion for summary judgment. Regardless of which definition applies, it is undisputed that OpenAI's bots accessed News Plaintiffs' sites through February 2026, well after News Plaintiffs' sites were added to the blocklists. *See* Stricchiola NYT/DNP Opening Rep. ¶¶ 270, 276–278; Feamster Rebuttal Rep. ¶ 87–90, 101, 104 (OpenAI's expert). |
| 1849. OpenAI applies blocklists [redacted] News Ex. 410 (N. Feamster Opening Rep.) ¶¶ 250–51. | **News Plaintiffs' Response:**<br><br>**Disputed**. *See* Stricchiola Rebuttal Rep. ¶¶ 136–139 (explaining why Dr. Feamster's use of the term "blocklist" is a "misapplication of a critical security term"). What OpenAI appears to mean by the term "blocklist" is a function that controls how its *own* system operates via what appear to be filters invoked at various stages. That is distinct from how the term "blocklist" is typically used in the industry (i.e., a system to protect against *external* threats) and the definition Dr. Feamster cites in his Opening Report—"a security tool that prevents specific entities, such as IP addresses, email addresses, or websites from accessing a system or network." Feamster Opening Rep. ¶ 250, n.254.<br><br>**Undisputed** that OpenAI utilizes a function that controls how its own system operates via what appear to be filters invoked [redacted].<br><br>However, there is no genuine issue to be tried with respect to OpenAI's Fact # 1849 because OpenAI's statement is |

| | |
|---|---|
| | immaterial to News Plaintiffs' motion for summary judgment. Regardless of which definition applies, it is undisputed that OpenAI's bots accessed News Plaintiffs' sites through February 2026, well after News Plaintiffs' sites were added to the blocklists. *See* Stricchiola NYT/DNP Opening Rep. ¶¶ 270, 276–278; Feamster Rebuttal Rep. ¶¶ 87–90, 101, 104 (OpenAI's expert). |
| 1850. The benefit of the multilayered blocklist system described above is that it ensures updated blocklists can be applied even after initial data collection. News Ex. 410 (N. Feamster Opening Rep.) ¶¶ 250–51. | **News Plaintiffs' Response:**<br><br>**Disputed** to the extent the "multilayered blocklist system" referenced in OpenAI's Fact #1850 conflicts with how the term is typically used in the industry (i.e., a system to protect against *external* threats) and the definition Dr. Feamster cites in his Opening Report—"a security tool that prevents specific entities, such as IP addresses, email addresses, or websites from accessing a system or network." Feamster Opening Rep. ¶ 250, n.254; *see* Stricchiola Rebuttal Rep. ¶¶ 136–139 (explaining why Dr. Feamster's use of the term "blocklist" is a "misapplication of a critical security term").<br><br>**Undisputed** that OpenAI utilizes a function that controls how its own system operates via what appear to be filters, which can be updated after the initial data collection.<br><br>However, OpenAI's statement is immaterial to News Plaintiffs' motion for summary judgment. Regardless of which definition applies, it is undisputed that OpenAI's bots accessed News Plaintiffs' sites through February 2026, well after News Plaintiffs' sites were added to the blocklists. *See* Stricchiola NYT/DNP Opening Rep. ¶¶ 270, 276–278; Feamster Rebuttal Rep. ¶¶ 87–90, 101, 104 (OpenAI's expert). |

| | |
|---|---|
| 1851. OpenAI's blocklist [redacted] includes the following domains associated with Plaintiffs: [redacted] N. Feamster Opp. Decl. ¶ 40. | **News Plaintiffs' Response:**<br><br>**Undisputed** that OpenAI's source code listed these domains. **Disputed** to the extent that OpenAI's Fact #1851 implies that OpenAI's bots were no longer accessing News Plaintiffs' sites after they were added to OpenAI's source code. Neither party disputes that OpenAI's bots accessed News Plaintiffs' sites through February 2026, well after News Plaintiffs' sites were added to the OpenAI's source code. *See* Stricchiola NYT/DNP Opening Rep. ¶¶ 270, 276–278; Feamster Rebuttal Rep. ¶¶ 87–90, 101, 104 (OpenAI's expert). |
| 1852. Ziff Davis's expert Dr. Krein confirmed that Ziff Davis domains were added to OpenAI's blocklist on July 19, 2024. ECF 1769-1 (J. Krein Decl. Ex. A) ¶ 125. | **News Plaintiffs' Response:**<br><br>**Undisputed** that Dr. Krein observed that some (but not all) Ziff Davis domains were added to one OpenAI "blocklist" as of July 19, 2024 and were removed two months later. ECF 1769-1 (J. Krein Decl. Ex. A) ¶ 125. Also, there is no dispute that what OpenAI terms "blocklist" actually functions as an override list, which can override a default to honor a webpage's robots.txt preference. ECF 1769-1 (J. Krein Decl. Ex. A) ¶¶ 82-85, 99; NP Ex. 446; Feamster Reply at ¶146. |
| 1853. Bots, including those operated by OpenAI, retrieve webpage content by sending a request to the server where that website is stored, and the server then decides whether to send back a response consisting of the requested webpage content. N. Feamster Opp. Decl. ¶ 14. | **News Plaintiffs' Response:**<br><br>**Undisputed**. |

| | |
|---|---|
| 1854. When a website owner implements a subscription enforcement mechanism to restrict access to content on a website, the technical implementation of the subscription enforcement mechanism can enable bots to access content even when it is not visible to human users. N. Feamster Opp. Decl. ¶¶ 10–11. | **News Plaintiffs' Response:**<br><br>**Disputed** to the extent OpenAI's Fact #1854 implies that News Plaintiffs have allowed all bots to access their content. *See, e.g.*, NP Exs. 309, 419–421.<br><br>**Undisputed** that when a website owner implements a paywall to restrict access to content on a website, it is possible that the technical implementation of the paywall can enable some bots to access content even when it is not visible to human users.<br><br>In any event, OpenAI's statement is immaterial to News Plaintiffs' motion for summary judgment. Copyright law does not require a copyright owner to implement technical measures to protect copyrighted content nor does a failure to implement a technical measure grant a license to third parties to misappropriate that protected content. |
| 1855. If a website owner implements a subscription enforcement mechanism on the client side, the code that performs the subscription check runs on the client side, and the server does no authentication check before sending the full content of the requested webpage in response to the initial request. N. Feamster Opp. Decl. ¶ 12. | **News Plaintiffs' Response:**<br><br>**Disputed**. News Plaintiffs use internal mechanisms and various third-party services to determine whether to authenticate incoming traffic, whether it is human users or bots. Def-Resp-NP-SOF ¶¶ 473, 477, 488-490, 494–99, 502-04, 518, 519, 522, 523, 525, 526, 530, 532–47. Furthermore, disputed that the server always sends the full content of the requested webpage in response to the initial request. NP Ex. 1380 [NYT_00701445].<br><br>In any event, OpenAI's statement is immaterial to News Plaintiffs' motion for summary judgment. Copyright law does not require a copyright owner to implement technical measures to protect copyrighted content nor does a failure to |

| | |
|---|---|
| | implement a technical measure grant a license to third parties to misappropriate that protected content. |
| 1856. If the client is a human user's browser, the browser then runs code that performs an authorization check and obscures the content for unauthorized users. The user is presented with a log-in or subscription page, even though the server response contains the underlying webpage content. N. Feamster Opp. Decl. ¶ 13. | **News Plaintiffs' Response:**<br><br>**Disputed** that the server response always contains the entirety of the underlying webpage content. NP Ex. 1380 [NYT_00701445].<br><br>**Undisputed** that when a human user browser hits a paywall, the user is presented with a log-in or subscription page. |
| 1857. If the client is instead a bot, it receives the full webpage content returned by the server but, unlike a browser, does not execute JavaScript code for an authorization check. In this circumstance, a bot may access content that would otherwise be hidden in a human user's browser because the server chose to return the requested content to the bot. N. Feamster Opp. Decl. ¶ 14. | **News Plaintiffs' Response:**<br><br>**Disputed**. The identity of the bot determines whether it receives the webpage content returned by the server. NP Exs. 309, 419–421. Furthermore, even if the bot is permitted, it may not always receive the full webpage content. NP Ex. 1 at 14.<br><br>In any event, OpenAI's statement is immaterial to News Plaintiffs' motion for summary judgment. Copyright law does not require a copyright owner to implement technical measures to protect copyrighted content nor does a failure to implement a technical measure grant a license to third parties to misappropriate that protected content. |
| 1858. Bots do not read, understand, or agree to Terms of Service, as there is no technically feasible mechanism for bots to reliably locate, interpret, and comply with such terms. N. Feamster Opp. Decl. ¶ 15. | **News Plaintiffs' Response:**<br><br>**Disputed**. *See* Stricchiola Rebuttal Rep. ¶ 107 (explaining why Dr. Feamster's opinion is technically inaccurate).<br><br>However, there is no genuine issue to be tried with respect to |

| | |
|---|---|
| | OpenAI's Fact # 1858 because OpenAI's statement is immaterial to News Plaintiffs' motion for summary judgment. Whether OpenAI's bots can "read" or "interpret" News Plaintiffs' sites' Terms of Services is beside the point. OpenAI employees can read and interpret them, and OpenAI should not have deployed their bots in a manner that violates News Plaintiffs' sites' terms of service and copyright law. |
| 1859. Pretraining does not enable retrieval of information published after a model's knowledge cutoff, which is at least several months before a model is released. A. Blanco Opp. Decl. Ex. 267 (N. Ryder 30(b)(6) Tr. (Jan. 29, 2026)) 135:19–25, 136:18–137:2, 137:12–15; A. Blanco Opp. Decl. Ex. 268 (E. Rynerson 30(b)(6) Tr. (Feb. 10, 2026)) at 115:4–19; A. Blanco Opp. Decl. Ex. 270 (J. Schulman Tr.) at 26:5–23. | **News Plaintiffs' Response:**<br><br>**Disputed** to the extent OpenAI contends that all the content in a model's pre-training data is "at least several months old" at the time of the model's release. GPT-4 Turbo, initially released November 6, 2023, was mid-trained using [redacted]. NP Ex. 1368 [OPCO_MDL_000478120]; NP Ex. 1369 [OPCO_MDL_002141667] at 2 (reporting that for the initial GPT-4 Turbo model "[redacted]").<br><br>Moreover, OpenAI [redacted] NP Ex. 1368 [OPCO_MDL_000478120]; NP Ex. 1369 [OPCO_MDL_002141667] at 2 (reporting that [redacted]). Consistent with this practice, OpenAI's GPT-4 Turbo mid-training data includes News Plaintiffs' articles published up to and post-dating GPT-4 Turbo's initial November 6, 2023 launch date. Maisel Decl., Exs. A and B.<br><br>Moreover, using a given publisher's content during pre-training facilitates retrieval of that publisher's content through retrieval augmented generation. OpenAI has |

| | |
|---|---|
| | admitted that [redacted] NP Ex. 1374 [OPCO_MDL_004772532]; NP Ex. 1375 [OPCO_MDL_004810138] ([redacted]).<br><br>Additionally, to the extent OpenAI contends training, generally, do not enable the retrieval of information published after a model's knowledge cut off, that contention is contradicted by OpenAI's post-training data, which teaches the model to perform this behavior, including for tasks such as "[redacted]" See NP Ex. 1376 [OPCO_MDL_004898318], NP Ex. 1377 [OPCO_MDL_004898283], NP Ex. 1378 [OPCO_MDL_004898299], NP Ex. 1379 [OPCO_MDL_004898275].<br><br>However, there is no genuine issue to be tried with respect to OpenAI's Fact # 1859 because OpenAI's statement is immaterial to News Plaintiffs' motion for summary judgment. The date of News Plaintiffs' works is beside the point. OpenAI's models generate responses to user queries by drawing from their training data which includes millions of copies of News Plaintiffs' works. |

| | |
|---|---|
| 1860. Common Crawl maintains its own robots.txt compliance policy, and used this same compliance policy at the time that OpenAI relied on Common Crawl to train its models. N. Feamster Opp. Decl. ¶ 46.<br><br>*See* Frequently Asked Questions - Common Crawl, The Wayback Machine (Dec. 30, 2021), https://web.archive.org/web/20211230021339/http://commoncrawl.org/big-picture/frequently-asked-questions/ ("How can I block this bot? You configure your robots.txt file which uses the Robots Exclusion Protocol to block the crawler. Our bot's Exclusion User-Agent string is: CCBot."). | **News Plaintiffs' Response:**<br><br>**Disputed as immaterial**. Common Crawl's robots.txt compliance policy has no bearing on whether OpenAI lawfully acquired News Plaintiffs' Asserted Works from Common Crawl.<br><br>Also **denied** on the ground that the statement is unsupported by the cited evidence, to the extent Defendants rely on Common Crawl's robots.txt policy as evidence Common Crawl respected Plaintiffs' own robots.txt directives. Common Crawl's robots.txt compliance policies do not control how a third-party uses the content. |
| 1861. News Plaintiffs did not block Common Crawl's crawler during the time that OpenAI relied on Common Crawl to train its models. N. Feamster Opp. Decl. ¶ 47. | **News Plaintiffs' Response:**<br><br>**Disputed as immaterial**.<br><br>First, this statement, if true, would not establish that News Plaintiffs authorized Common Crawl to scrape their content. Second, even if News Plaintiffs had authorized Common Crawl to scrape their Asserted Works, the cited evidence would not establish that any such authority extended to OpenAI's acquisition of their Asserted Works and use of those works to train its models.<br><br>Also **disputed** to the extent this statement asserts that no News Plaintiff blocked Common Crawl's crawler during the stated time period. In fact, at least two Ziff Davis sites implemented a block on Common Crawl's crawler prior to the time that OpenAI obtained a Common Crawl dataset for use in training GPT 4o. NP Ex. 754 (Common Crawl data set |

| | |
|---|---|
| | obtained by OAI in October 2023); NP Ex. 440 (CCBot blocked on everydayhealth.com and migraineagain.com as of September 18, 2023). Similarly, The Times disallowed Common Crawl's bot in Robots.txt on April 3, 2023. NP Ex. 309 (Procas 30(b)(6) Tr.) at 248:23-249:1. |
| 1862. Ziff Davis registered 1,463,999 Identified Articles in 2025. J. Borck Opp. Decl. ¶ 50. | **News Plaintiffs' Response:**<br><br>**Undisputed**. |
| 1863. 2,581 Asserted Articles associated with "BabyCenter" were registered the day Ziff Davis filed suit or after. J. Borck Opp. Decl. ¶ 50. | **News Plaintiffs' Response:**<br><br>**Disputed as immaterial**, as no copyright registrations for "BabyCenter" articles were sued upon in ZD's original Complaint, but were added in ZD's Amended Complaint, filed on July 2, 2025, after those registrations were issued. |
| 1864. Ziff Davis did not produce copyright registrations for 180,011 Asserted Works. J. Borck Opp. Decl. ¶ 51. | **News Plaintiffs' Response:**<br><br>**Disputed as immaterial**, as ZD identified these IGN registrations in its original Complaint by registration number. While ZD did not have the actual certificates in its corporate files, it has obtained them from the Copyright Office and has now produced them. November 20, 2026 Declaration of Lacy Koonce III ("Second Koonce Decl."), ¶¶ 2–3. |
| 1865. The New York Times/Daily News Plaintiffs seek summary judgment regarding infringement based on content from President Lincoln's Second Inaugural Address. S. Krishnan Opp. Decl. (News) Appendix A, Figure A.13. | **News Plaintiffs' Response:**<br><br>**Disputed and immaterial**. The Times has disclaimed the intent to assert ownership of third-party works and has withdrawn the Asserted Work in which this content appears. |

| | |
|---|---|
| 1866. The New York Times/Daily News Plaintiffs seek summary judgment regarding infringement based on content from the Bill of Rights. S. Krishnan Opp. Decl. (News) Appendix A, Figure A.23. | **News Plaintiffs' Response:**<br><br>**Disputed and immaterial**. The Times has disclaimed the intent to assert ownership of third-party works and has withdrawn the Asserted Work in which this content appears. |
| 1867. Ziff Davis seeks summary judgment regarding infringement based on content from the complaint filed in *Cisco v. Apple*, 3:07-cv-00198 (N.D. Cal. 2007). S. Krishnan Opp. Decl. (News) Appendix C, Figure C.11. | **News Plaintiffs' Response:**<br><br>*See* Response to Paragraphs 1836, 1838.<br><br>**Disputed as immaterial** to News Plaintiffs' motion for summary judgment. While OpenAI's new expert opinion is inadmissible and incorrect, Ziff Davis does not seek summary judgment as to this match. |
| 1868. The New York Times/Daily News Plaintiffs seek summary judgment regarding infringement based on content from the Supreme Court Decision in *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833 (1993). S. Krishnan Opp. Decl. (News) Appendix A, Figure A.25. | **News Plaintiffs' Response:**<br><br>**Disputed and immaterial**. The Daily News Plaintiff have disclaimed the intent to assert ownership of third-party works and have withdrawn the Asserted Work in which this content appears. |
| 1869. Ziff Davis seeks summary judgment regarding infringement based on the track list of the soundtrack from *Grand Theft Auto: San Andreas*. S. Krishnan Opp. Decl. (News) Appendix C, Figure C.27. | **News Plaintiffs' Response:**<br><br>*See* Response to Paragraphs 1836, 1838.<br><br>**Disputed as immaterial** to News Plaintiffs' motion for summary judgment. While OpenAI's new expert opinion is inadmissible and incorrect, Ziff Davis does not seek summary judgment as to this match. |

| | |
|---|---|
| 1870. Ziff Davis seeks summary judgment regarding infringement based on a concert schedule for the band As Tall As Lions. S. Krishnan Opp. Decl. (News) Appendix C, Figure C.29. | **News Plaintiffs' Response:**<br><br>*See* Response to Paragraphs 1836, 1838.<br><br>**Disputed as immaterial** to News Plaintiffs' motion for summary judgment. While OpenAI's new expert opinion is inadmissible and incorrect, Ziff Davis does not seek summary judgment as to this match. |
| 1871. Sam Felix testified that The Times was aware at least by February 2023 of Common Crawl crawling its site. Felix Tr. 198:13-17. | **News Plaintiffs' Response:**<br><br>**Undisputed**. |
| 1872. Sam Felix testified that The Times was aware at least by February 2023 of OpenAI relying upon data from Common Crawl to train its models. Felix Tr. 198:18-24. | **News Plaintiffs' Response:**<br><br>**Undisputed**. |
| 1873. The Times did not contact Common Crawl regarding its crawling of The Times's site until July 25, 2023. Felix Tr. 201:22-202:5; Felix Dep. Ex. 116-117. | **News Plaintiffs' Response:**<br><br>**Disputed**. The New York Times disallowed Common Crawl's bot in robots.txt on April 3, 2023. NP Ex. 309 (Procas 30(b)(6) Tr.) at 248:23-249:1.<br><br>There is no genuine issue to be tried with respect to OpenAI's Fact 1873 because OpenAI's assertion is immaterial to News Plaintiffs' motion for summary judgment. The issues on which News Plaintiffs have moved do not turn on when The Times first contacted Common Crawl regarding its crawling of The Times's sites. |

Dated: November 20, 2026

*<u>/s/ Ian Crosby</u>*
Ian Crosby (*pro hac vice*)
Katherine M. Peaslee (*pro hac vice*)
Susman Godfrey L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101
Telephone: (206) 516-3880
Facsimile: (206) 516-3883
icrosby@susmangodfrey.com
kpeaslee@susmangodfrey.com

Davida Brook (*pro hac vice*)
Emily K. Cronin (*pro hac vice*)
Adnan Muttalib (*pro hac vice*)
Susman Godfrey L.L.P.
1900 Ave of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
dbrook@susmangodfrey.com
ecronin@susmangodfrey.com
amuttalib@susmangodfrey.com

Elisha Barron (5036850)
Zachary B. Savage (ZS2668)
Alexander Frawley (5564539)
Eudokia Spanos (5021381)
Susman Godfrey L.L.P.
One Manhattan West
New York, NY 10001
Telephone: (212) 336-8330
Facsimile: (212) 336-8340
ebarron@susmangodfrey.com
zsavage@susmangodfrey.com
afrawley@susmangodrey.com

espanos@susmangodfrey.com

Steven Lieberman (SL8687)
Jennifer B. Maisel (5096995)
Kristen J. Logan (*pro hac vice*)
Rothwell, Figg, Ernst & Manbeck, P.C.
901 New York Avenue, N.W., Suite 900 East Washington, DC 20001
Telephone: (202) 783-6040
Facsimile: (202) 783 6031
slieberman@rothwellfigg.com
jmaisel@rothwellfigg.com
klogan@rothwellfigg.com

*Attorneys for Plaintiff*
*The New York Times Company*

*/s/ Steven Lieberman*
Steven Lieberman (SL8687)
Jennifer B. Maisel (5096995)
Robert Parker (*pro hac vice*)
Jenny L. Colgate (*pro hac vice*)
Alexandra Hughes (*pro hac vice*)
Mark Rawls (*pro hac vice*)
Michael H. Jones (*pro hac vice*)
Kristen J. Logan (*pro hac vice*)
Bryan B. Thompson (6004147)
Mary L. Mullins (*pro hac vice*)
Rothwell, Figg, Ernst & Manbeck, P.C.
901 New York Avenue, N.W.
Suite 900 East Washington, DC 20001
Telephone: (202) 783-6040
Facsimile: (202) 783-6031
slieberman@rothwellfigg.com
jmaisel@rothwellfigg.com
rparker@rothwellfigg.com

jcolgate@rothwellfigg.com
ahughes@rothwellfigg.com
mrawls@rothwellfigg.com
mjones@rothwellfigg.com
klogan@rothwellfigg.com
bthompson@rothwellfigg.com
mmullins@rothwellfigg.com

*Attorneys for Daily Plaintiffs*

/s/ *Jon Loevy*
Jon Loevy (pro hac vice)
Michael Kanovitz (*pro hac vice*)
Matthew Topic (*pro hac vice*)
Thomas Kayes (*pro hac vice*)
Steven Art (*pro hac vice*)
Kyle Wallenberg (pro hac vice)
Shelley Geiszler (*pro hac vice*)
LOEVY & LOEVY
311 North Aberdeen, 3rd Floor
Chicago, IL 60607
312-243-5900 (p)
312-243-5902 (f)
jon@loevy.com
mike@loevy.com
matt@loevy.com
kayes@loevy.com
steve@loevy.com
wallenberg@loevy.com
geiszler@loevy.com

Stephen Stich Match (No. 5567854)
Lauren Sonnenberg (*pro hac vice*)
Loevy & Loevy
222 Sutter Street, Suite 600A

San Francisco, CA 94108
(312) 243-5900
match@loevy.com
sonnenberg@loevy.com

*Attorneys for Plaintiffs The Center for Investigative Reporting, Inc. and The Intercept Media, Inc.*

/s/ *Lance Koonce, III*

Lacy H. ("Lance") Koonce, III
Matthew A. Leish
Brendan Kehoe
Lucy Hoffman
Maya Katalan Klaris Law PLLC
161 Water Street
New York, NY 10038
Telephone: (646) 779-4882
lance.koonce@klaris.com
matthew.leish@klarislaw.com
brendan.kehoe@klarislaw.com
lucy.hoffman@klarislaw.com
maya.katalan@klarislaw.com

Guy Ruttenberg (*pro hac vice*)
Ruttenberg IP Law, A Professional Corporation
1801 Century Park East Suite 1920
Los Angeles, CA 90067
Telephone: (310) 627-2270
ZD-AICopyright@ruttenbergiplaw.com

John R. Cuti
Cuti Frisch PLLC
233 Broadway, Suite 1720
New York, NY 10279

*Attorneys for Plaintiffs Ziff Davis, Inc., Ziff Davis, LLC, IGN*

*Entertainment, Inc., Everyday Health Media, LLC, Mashable, Inc., and CNET Media, Inc.*